

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Eleanor M. Lackman
Partner
(212) 878-4890 Phone
eml@msk.com

July 9, 2020

**VIA ECF**
The Honorable Mary Kay Vyskocil, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY  10007

Re:   *Penske Media Corp. v. Shutterstock, Inc.*, 20-cv-4583 (MKV);
      Request for Pre-Motion Conference

Dear Judge Vyskocil:

We are counsel for defendant Shutterstock, Inc. ("Defendant") in the above-referenced action.  In accordance with Section 4.A.i. of Your Honor's Individual Rules, we respectfully submit this letter to request a pre-motion conference with the Court in conjunction with Defendant's proposed partial motion to dismiss.

This action filed by plaintiff Penske Media Corporation ("Plaintiff") arises out of a June 1, 2015 agreement between the parties pertaining to the creation, licensing, and use of photographic content (the "Agreement"). Compl. ¶ 2. Plaintiff publishes brands that include *Variety*, *Rolling Stone*, and *WWD* (*Women's Wear Daily*), *id.* at ¶ 10, which gives Plaintiff access to red carpet and runway content that, at least while the event is newsworthy, carries a high value. As Section 3 of the Agreement shows, a core portion of the Agreement was premised on photography created at high-profile fashion and entertainment events, including the Tony Awards, the Emmy Awards, the Cannes Film Festival, and the Toronto Film Festival, as well as a wide variety of movie premieres and other live events of interest to the public. See *id.* at ¶ 17. Defendant paid, and continues to pay, a handsome amount for this material. *Id.* at ¶ 22.[1]

Unfortunately, as a result of the COVID-19 pandemic, none of these events – nor many others at which in-demand photographs are taken – will go forward as planned. While Plaintiff insists that some events may happen digitally, nobody can dispute that there is no demand for images from a "virtual" red carpet. Thus, identifying the pandemic as frustrating the core points and purpose of the Agreement, and without cooperation from Plaintiff, on May 18, 2020 Defendant invoked Section 8 (the termination provision) of the Agreement and issued a notice to Plaintiff, which provided the required 45-day cure period. See *id.* at ¶ 27. Rather than responding, Plaintiff sued. Hearing nothing from Plaintiff other than that it had sued Defendant, on July 2, 2020 Defendant sent the required notice of termination, providing notice that the Agreement would be terminated no earlier than 10 business days later. The Agreement will now terminate on July 17, 2020.

---

[1] The Agreement likewise gives Plaintiff access to Defendant's extensive database of content on a free or reduced-price basis.

437 Madison Ave., 25th Floor, New York, New York 10022-7001
Phone:  (212) 509-3900  Fax:  (212) 509-7239  Website: WWW.MSK.COM



The Honorable Mary Kay Vyskocil, U.S.D.J.
July 9, 2020
Page 2

Plaintiff commenced this action on June 15, 2020 and asserts four causes of action: (1) breach of contract/anticipatory breach; (2) breach of the implied covenant of good faith and fair dealing; (3) violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 ("DMCA"); and (4) "in the alternative," copyright infringement arising from display and/or use of 23 images subject to the parties' Agreement. Defendant seeks to move to dismiss the last three causes of action on grounds that they fail to satisfy the pleading test.

**Breach of Implied Covenant.**  The Agreement provides that Plaintiff will provide to Defendant credentials to certain Third Party Events, and that Plaintiff will receive rights to content captured by Defendant's photographers using Plaintiff's credentials at those events. *See* Sections 3(a)(iii), 3(c). Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by attending Third Party Events using credentials Defendant independently obtained, therefore depriving Plaintiff of rights in the content generated at those events that Plaintiff would have had if Defendant had used Plaintiff's credentials. Compl. ¶¶ 42-43, 63-65. This claim fails because the Agreement does not contain any implied covenant requiring Defendant to use Plaintiff's credentials or restricting Defendant's use of its own credentials. While "a covenant of good faith and fair dealing in the course of contract performance" is "[i]mplicit in all contracts," "no obligation can be implied that would be inconsistent with other terms of the contractual relationship." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, (1995). Further, "the implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'" *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (internal quotes omitted). The Agreement does not contain any requirement that Defendant use the credentials provided by Plaintiff to Third Party Events, any requirement that Defendant generate content using Plaintiff's credentials at those Third Party Events, or any limitation on Defendant's right to independently obtain access to those Third Party Events to generate content. By contrast, the parties *did* expressly agree that Defendant was obligated to provide coverage at Plaintiff's *own* events (Section 3(a)(ii)). Because the parties clearly were capable of expressing their intention that Defendant be required to cover certain events, but did not include any such requirement for Third Party Events, the Agreement cannot be read to contain an implied covenant with any such requirement or any restriction of Defendant's right to attend those events using credentials it independently obtained.

**DMCA.**  Although the allegation is not very clear, Plaintiff appears to claim that in the course of the parties' relationship, Defendant has added its name and omitted credit to Plaintiff as to some unidentified "at least 2,500 photographs" in the course of Defendant's licensing activities. *See* Compl. ¶¶ 44-48, 67-70. This made-for-litigation claim fails both under the Agreement and as a matter of law.  *First*, Section 3(d) of the Agreement expressly provides for how credit is to be applied: it states that Defendant "shall use commercially reasonable efforts to include in all license agreements" that any of Plaintiff's content "licensed and used by licensees shall include a copyright attribution to [Plaintiff] if such [Plaintiff] content is used in an editorial context." Moreover, for certain event content, Section 4 places the burden on Plaintiff to provide the proper metadata. Plaintiff does not allege that Defendant is in violation of the relevant terms, nor does it allege that it gave Defendant notice and an opportunity to cure. *Second*, while scienter issues are factual, they must be pleaded. Here, Plaintiff provides no information sufficient to put



The Honorable Mary Kay Vyskocil, U.S.D.J.
July 9, 2020
Page 3

Defendant on notice of the facts at any time, including about what the 2,500 photographs were or whether the information that was provided was not otherwise within the scope of the Agreement. Plaintiff likewise does not identify any example of such use, much less a use that fell outside of the parties' Agreement and, as required by the language of the statute, would be infringed as a result and resulting in injury to Plaintiff. Indeed, it is implausible to believe that Defendant – a party that relies on proper licensing for its existence – intentionally and knowingly sought to provide false information for purposes of inducing, enabling, facilitating, or concealing the infringement of the unidentified 2,500 works when the entire point of the parties' relationship was to earn licensing revenue from licensed, not infringing, uses. *See* 17 U.S.C. § 1202(a) ("knowingly and with the intent to induce, enable, facilitate, or conceal infringement"); *Krechmer v. Tantaros*, 747 F. App'x 6, 9-10 (2d Cir. 2018) (finding DMCA claim in "straightforward breach of contract claim" improper and affirming motion to dismiss for failure to plausibly allege that defendant knowingly provided false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement).[2]

**Copyright Infringement.** Plaintiff assumes, "in the alternative," that the Agreement terminated on the day that Defendant issued notice to Plaintiff under Section 8 of the Agreement. The plain language of the Agreement and the referenced May 18, 2020 notice pursuant thereto show that this is not possible. Section 8 of the Agreement contains a schedule for terminating the Agreement that requires, first, a 45-day Cure Period, and second, notice of termination of not less than 10-business days. Thus, Defendant's May 18, 2020 notice—which expressly referenced Section 8—was not intended to and, under the terms of the Agreement, could not have terminated the Agreement as of that date. Nor can Plaintiff treat the notice as an anticipatory repudiation of the Agreement as of May 18, 2020. Anticipatory repudiation requires "an unqualified and clear refusal to perform with respect to the entire contract." *De Lorenzo v. Bac Agency Inc.*, 681 N.Y.S.2d 846, 848 (1998). By invoking the termination procedures in Section 8 of the Agreement, the May 18, 2020 notice was not "an unqualified and clear refusal to perform" as of that date; at most, it reflected a future intent to end performance after the required Cure Period and notice period. Even if the notice were a repudiation, Plaintiff would have had the "mutually exclusive" option to either claim damages or to wait for performance to become due, then sue. *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). By failing to immediately claim damages, while both continuing to perform under the Agreement and accepting the benefits of Defendant's continued performance, Plaintiff elected not to treat the Agreement as immediately terminated. Once made, Plaintiff's election is final.

The proposed motion is without consent of Plaintiff.

Respectfully submitted,

Eleanor M. Lackman

EML

---

[2] The language of the Complaint appears to allege a violation of Section 1202(a) and not 1202(b), but the latter claim would fail for similar reasons as the former.