

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Cynthia S. Arato
carato@shapiroarato.com
Direct: 212-257-4882

July 14, 2020

The Honorable Mary Kay Vyskocil
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

        Re:    *Penske Media Corp. v. Shutterstock, In*c., 20-cv-4583 (MKV)

Dear Judge Vyskocil:

We respond on behalf of Plaintiff Penske Media Corporation ("PMC") to Defendant Shutterstock, Inc.'s July 9, 2020 pre-motion letter. PMC filed this contract and copyright action because Shutterstock (1) purported in May of this year to terminate the parties' Archive & Event Image Hosting And Licensing Agreement (the "Archive and Event Agreement) based on a pretextual invocation of the COVID-19 pandemic to end a deal from which Shutterstock continues to benefit; (2) breached other terms of the Archive and Event Agreement and the covenant of good faith and fair dealing inherent in the contract; (3) has been providing false copyright information identifying itself as the copyright owner of photographs owned by PMC; and (4) continued to exploit PMC's photographs even after purporting to terminate the agreement from which Shutterstock's exploitation rights emanate. Shutterstock's pre-motion letter concerns points 2-4 above, which we address below.[1]

**Breach of the Implied Covenant**. PMC has properly pled that Shutterstock violated the implied covenant by attending, and taking photographs at, various third-party events for its own benefit and not for PMC—and thereby "injur[ing]" PMC's right "to receive the fruits of the contract." *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995).

As PMC alleges in its Complaint, the Archive & Event Agreement (1) contemplates that Shutterstock will attend and photograph various third-party events using PMC's credentials (Agmt. § 3(a)(iii), Compl. ¶ 25); (2) prohibits PMC from giving its credentials to anyone else, so that Shutterstock can "be the sole third party to leverage and utilize PMC's credentials and

---

[1] Shutterstock does not seek to dismiss PMC's claim of wrongful termination and it is therefore unclear why Shutterstock challenges PMC for not responding to Shutterstock's May 18, 2020 termination letter.  Nor is it clear why Shutterstock believes PMC was required to "cooperate" with Shutterstock's termination position. Suffice it to say, Shutterstock repeatedly told PMC in both written and oral communications, and in no uncertain terms, that it would renege on its contractual obligations under the Archive and Event Agreement, thus necessitating this suit.

The Honorable Mary Kay Vyskocil  Page 2
July 14, 2020

access to capture" photographs on PMC's behalf (Agmt.§ 3(a)(iii); Compl. ¶ 43); and (3) provides that PMC will own the photographs that Shutterstock captures and that the parties will jointly monetize those works (Agmt.§ 3(a), 3(c), 5,6; Compl. ¶ 22).

As PMC further alleges, Shutterstock (1) rejected credentials that PMC provided to Shutterstock to access third-party events on PMC's behalf Shutterstock (Compl. ¶ 43); (2) nevertheless attended and shot photographs at those events for itself (*id*.); and (3) is therefore claiming those photographs for itself and preventing PMC from benefitting from those works. *Id*. and ¶ 65.

These allegations state a valid claim for breach of the implied covenant because they allege that Shutterstock diverted to itself PMC's expected benefits under the Archive & Event Agreement—ownership of, and a percentage of licensing revenue earned from, photographs that Shutterstock took at the events. *See, e.g.*, *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *6 (S.D.N.Y. June 8, 2020) (allegations that defendant diverted business away from plaintiff and to itself states claim for breach of the implied covenant).

Shutterstock cannot deprive PMC of these expected benefits simply because the Archive & Event Agreement does not affirmatively obligate Shutterstock to photograph these third-party events. The "lack" of such an express contractual term might have prevented PMC from suing Shutterstock for breach of the implied covenant had Shutterstock passed *altogether* on the third-party events, thereby failing to generate any photographs for *either* Shutterstock or PMC to exploit. But that is not what Shutterstock did. Rather, Shutterstock passed on *PMC's credentials* but nevertheless attended and photographed these third-party events for itself and not for PMC, contrary to what the Archive & Event Agreement contemplated would occur.

Shutterstock also cannot avoid its duty of good faith and fair dealing simply because the Archive & Event Agreement does not expressly bar Shutterstock from independently obtaining access to the third-party events. Rather, the implied covenant "encompasses any promise that a reasonable promisee would understand to be included" in a contract even if the promise is not expressly stated (*Dalton*, 87 N.Y.2d at 389), and the whole point of the covenant is to allow a court to "fill a gap" left open by a contract's express terms. *In re Musicland Holding Corp*, 386 B.R. 428, 439 (S.D.N.Y. 2008). Accordingly, the absence of an express contractual bar does not preclude PMC's implied covenant claim—it is what allows PMC's claim to proceed.

It is irrelevant that courts may not imply duties under the implied covenant that are inconsistent with express contractual terms. Shutterstock has not identified any provision of the Archive & Event Agreement that is inconsistent with Shutterstock's implied obligation to photograph the applicable third-party events, if at all, using PMC's credentials, and no such term exists.

**DMCA**. PMC states a valid claim for Shutterstock's rampant violation of Section 1202(a) of the Digital Millennium Copyright Act, based on Shutterstock's mislabeling of PMC's copyrighted works as Shutterstock's own on Shutterstock's websites and therefore "providing" "copyright information that is false." 17 U.S.C. § 1202(a).

No term of the Archive & Event Agreement relieves Shutterstock of its obligations under the DMCA to properly identify PMC as the copyright owner of PMC's works. Section 3(d) of the

The Honorable Mary Kay Vyskocil  
July 14, 2020

Page 3

agreement mandates what Shutterstock must do to ensure that its licensees properly credit PMC when those licensees use PMC's works; it does not govern how Shutterstock credits PMC on Shutterstock's sites. Moreover, Shutterstock's practice of falsely claiming the photographs as its own does not satisfy any standard of commercial reasonableness. Section 8's notice and cure provision conditions a party's rights to terminate the deal; it does not impose conditions on PMC's right to assert its DMCA claim. Section 4 requires that PMC provide Shutterstock with a limited set of metadata for various photographs taken by PMC's photographers; it does not obligate PMC to identify itself (as opposed to Shutterstock) as the copyright owner of those works or to provide Shutterstock with metadata for the photographs that Shutterstock takes on PMC's behalf. Nor does it relieve Shutterstock of liability for falsely identifying itself as the owner of PMC's works.

*Second*, PMC's DMCA contentions more than satisfy the "short and plain statement" required under Rule 8(a) and give Shutterstock ample notice of the claim. The Complaint, moreover, identifies the photographer, date, and event name for many sets of photographs that Shutterstock unlawfully identified as its own. Compl. ¶ 46.

*Third*, PMC properly plead scienter. *E.g.* Fed. R. Civ. P. 9(b) ("[I]ntent…may be alleged generally."); *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) (even "tenuous inferences" of scienter "survive motions to dismiss" because "such issues are 'appropriate for resolution by the trier of fact'"). Shutterstock's "implausibility" contention misreads PMC's claim. PMC is not alleging that Shutterstock failed to provide any copyright management information for the photographs, such that Shutterstock is encouraging third parties to use the works without obtaining a license from Shutterstock. PMC alleges that Shutterstock improperly identified *itself* as the copyright owner of the works, instead of PMC, thereby concealing and/or facilitating infringement of PMC's rights, both now and/or in the future.

**Copyright Infringement**. Shutterstock sent PMC a letter dated May 18, 2020, purporting to be a "[N]otice of termination for cause." Compl. ¶¶ 27–28. Shutterstock now contends that this notice should have been understood as providing for a cure period under Section 8 of the Archive & Event Agreement, rather than immediate termination of the Agreement. However, among other things, the May 18th letter provided no cure period, as required by Section 8 (a party may terminate for cause by giving notice "providing for a forty-five (45) day cure period") and, instead, expressly stated that the Archive & Event Agreement was "entirely frustrated" and such frustration "excuses payment" to PMC. Compl. ¶¶ 27–28. Nevertheless, to the extent Shutterstock now contends that the Archive & Event Agreement terminates no earlier than July 17, 2020 (Ltr. 3), PMC will voluntarily dismiss its copyright infringement claim without prejudice and before any deadline for Shutterstock to respond to the Complaint expires, <u>provided</u> that Shutterstock ceases its exploitation of PMC's works before that purported termination date—a commitment notably absent from Shutterstock's letter.

 Sincerely,

 <u>/s/ Cynthia S. Arato</u>  
 Cynthia S. Arato  
 Lauren M. Capaccio