UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENSKE MEDIA CORPORATION,

               Plaintiff,

    -against-

SHUTTERSTOCK, INC.,

               Defendant.

Case No. 20-cv-04583 (MKV)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT SHUTTERSTOCK, INC.'S MOTION TO DISMISS
## THE SECOND AND THIRD CAUSES OF ACTION IN THE COMPLAINT

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.   SUMMARY OF RELEVANT FACTS AND ALLEGATIONS ....................................... 2
      A.    The Contract Between the Parties ....................................... 2
      B.    Background of the Current Dispute ...................................... 4
      C.    PMC's Claims and Allegations ........................................... 5

III.  THE COURT SHOULD DISMISS PMC'S SECOND AND THIRD CLAIMS ............... 7
      A.    Governing Legal Standards .............................................. 7
      B.    The Second Claim For Breach Of The Implied Covenant Of Good Faith And
            Fair Dealing Fails To State A Claim Upon Which Relief Can Be Granted .......... 8
            1.    Legal Standard ................................................. 8
            2.    The Contract Does Not Include PMC's Alleged Implied Terms .............. 10
      C.    PMC's Allegations Do Not State a Claim for a Violation of the DMCA ............. 16

IV.   CONCLUSION ................................................................... 23

12377950.8/50744-00002

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allen v. WestPoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991)................................................................................................8

*AppSoft Dev., Inc. v. Diers, Inc.*,
    No. 3:13-cv-1520, 2014 WL 3893316 (M.D. Fla. Aug. 8, 2014)...........................................23

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... passim

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................22

*Calico Cottage, Inc. v. TNB, Inc.*,
    No. 11-CV-0336 DLI MDG, 2014 WL 4828774 (E.D.N.Y. Sept. 29, 2014) ........................14

*Chevrestt v. Am. Media, Inc.*,
    204 F. Supp. 3d 629 (S.D.N.Y. 2016)......................................................................................19

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
    650 F. Supp. 2d 314 (S.D.N.Y. 2009)......................................................................................9

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384 (1995) ................................................................................................8, 9, 11

*Design Basics, LLC v. WK Olson Architects, Inc.*,
    No. 17 C 7432, 2018 WL 3629309 (N.D. Ill. July 31, 2018) .................................21

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)......................................................................................10

*Fischer v. Forrest*,
    Nos. 18-2955-cv, 18-2959-cv, 2020 WL 4457943 (2d Cir. Aug. 4, 2020) ............................17

*Free Speech Sys., LLC v. Menzel*,
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) ..............................................................................18

*Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*,
    850 F.3d 785 (5th Cir. 2017) ..............................................................................................19

ii

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>Page(s)</u>

*George Town Assocs. S.A. v. Abakan, Inc.*,
  No. 15CV3435 DLC, 2015 WL 4923040 (S.D.N.Y. Aug. 18, 2015) ......................................9

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998)...................................................................................16

*In'l Fid. Ins. Co. v. Cty. of Rockland*,
  98 F. Supp. 2d 400 (S.D.N.Y. 2000)...................................................................................11

*Int'l Audiotext Network, Inc. v. AM. Tel & Tel. T Co.*,
  62 F.3d 69 (2d Cir.1995)......................................................................................................8

*Integra FX3X Fund, L.P. v. Deutsche Bank, AG*,
  No. 14-CV-8400 (JPO), 2016 WL 1169514 (S.D.N.Y. Mar. 22, 2016)................................15

*Kelly v. Arriba Soft Corp.*,
  77 F. Supp. 2d 1116 (C.D. Cal. 1999) .................................................................................17

*Keogh v. Big Lots Corp.*,
  No. 3:04-00738, 2006 WL 1129375 (M.D. Tenn. Apr. 27, 2006) .........................................19

*Krechmer v. Tantaros*,
  747 F. App'x 6 (2d Cir. 2018) .............................................................................16, 19, 22

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*,
  No. 17 Civ 8613, 2018 WL 4830091 (S.D.N.Y. Oct. 4, 2018) ...........................................20

*M/A-COM Sec. Corp. v. Galesi*,
  904 F.2d 134 (2d Cir. 1990)..........................................................................9, 13, 14

*Masck v. Sports Illustrated*,
  No. 13-10226, 2014 WL 12658971 (E.D. Mich. Mar. 10, 2014)...........................................20

*Merideth v. Chicago Tribune Co.*,
  No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ....................................................19

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
  716 F. Supp. 1504 (S.D.N.Y. 1989)..............................................................................13, 16

iii

# TABLE OF AUTHORITIES
<u>(continued)</u>

<u>**Page(s)**</u>

*Morgan v. Associated Press,*
   No. 15-03341-CBM, 2016 WL 6953433 (C.D. Cal. Mar. 16, 2016) ....................................22

*Odom v. Navarro,*
   No. 09-21480-CIV-UNGARO, 2010 WL 11505459 (S.D. Fla. Mar. 11, 2010)....................18

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.,*
   No. 11 C 5177, 2012 WL 414803 (N.D. Ill. Feb. 8, 2012)....................................21

*Philpot v. Alternet Media, Inc.,*
   No. 18-cv-0449-TSH, 2008 WL 6267876 (N.D. Cal. Nov. 30, 2018) ...................................19

*Photographic Illustrators Corp. v. Orgill, Inc.,*
   118 F. Supp. 3d 398 (D. Mass. 2015) ....................................................................21

*Poller v. BioScrip, Inc.,*
   974 F. Supp. 2d 204 (S.D.N.Y. 2013)....................................................................14

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.,*
   No. 10 Civ .25 PGG, 2011 WL 3251554 (S.D.N.Y. July 28, 2011) .................................9, 15

*Roth v. Jennings,*
   489 F.3d 499 (2d Cir. 2007)..........................................................................8

*Rowe v Great Atl. & Pac. Tea Co.,*
   46 N.Y.2d 62 (1978) .........................................................................8, 10, 16

*Schiffer Pub., Ltd. v. Chronicle Books, LLC,*
   No. Civ.A. 03-4962, 2004 WL 2583817 (E.D. Pa. Nov. 12, 2004).......................................17

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.,*
   769 F.3d 807 (2d Cir. 2014)..........................................................................9

*Spinelli v. Nat'l Football League,*
   903 F.3d 185 (2d Cir. 2018)..........................................................................19

*Sterling Inv'r Servs., Inc. v. 1155 Nobo Assocs. LLC,*
   30 A.D.3d 579 (2006) ...............................................................................11

iv

## TABLE OF AUTHORITIES
<u>(continued)</u>

<u>**Page(s)**</u>

*Stevens v. Corelogic, Inc.*,
  194 F. Supp. 3d 1046 (S.D. Cal. 2016)......................................................................21

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018), *cert denied*, 139 S. Ct. 1222 (2019)........................19

*Vacuum Concrete Corp. of Am. v. Am. Mach. & Foundry Co.*,
  321 F. Supp. 771 (S.D.N.Y. 1971) ............................................................................13

*Verzani v. Costco Wholesale Corp.*,
  641 F. Supp. 2d 291 (S.D.N.Y. 2009)..........................................................................8

*Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*,
  No. 18-CV-11449 (JGK), 2020 WL 3051768 (S.D.N.Y. June 8, 2020) ...........12, 13

*Ward v. Nat'l Geographic Soc.*,
  208 F. Supp. 2d 429 (S.D.N.Y. 2002).........................................................................17

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
  323 F. Supp. 3d 501 (S.D.N.Y. 2018)...........................................................................2

*Werner v. Penske Media Corp.*,
  No. 2:17-cv-6191, 2017 WL 9519565 .........................................................................17

*Wolff v. Rare Medium, Inc.*,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002)..........................................................................16

### STATUTES

17 U.S.C.
  § 1202...................................................................................................... passim
  § 1202(a) ................................................................................................ passim
  § 1202(b)...........................................................................................................19

### OTHER AUTHORITIES

Federal Rule of Civil Procedure
  Rule 8 ............................................................................................................14
  Rule 12(b)(6)....................................................................................................2, 7

v

## I.     INTRODUCTION

Plaintiff Penske Media Corporation ("PMC"), a supplier of photographs primarily depicting live events, commenced this lawsuit after the COVID-19 pandemic made it impossible for PMC to deliver the content for which defendant Shutterstock, Inc. ("Shutterstock") had contracted.  Despite that PMC cannot perform and the purpose of the parties' contract is frustrated, PMC brought this action to force Shutterstock to pay a significant monetary advance for the July 2020-June 2021 period.  However, as a smokescreen for its breach of contract claim that seeks a windfall payment for performing essentially no services, PMC has conjured up three other bogus claims.  PMC has already dismissed one of them voluntarily.

The other two claims likewise are implausible and insufficient.  First, its claim for breach of the implied covenant of good faith and fair dealing runs counter to fundamental principles of New York contract law.  PMC seeks to impose on Shutterstock a new contractual bar on Shutterstock attending and photographing third party events using Shutterstock's own credentials, an improper restriction on Shutterstock's ability to develop its business and relationships with third parties.  Had PMC wished to limit Shutterstock in such a way, it should have bargained for the restriction when entering into the Contract.  It did not.  The implied covenant cannot be used to create a new contractual restriction on Shutterstock to prohibit it from doing something the Contract allows.  Further, PMC has not pleaded that Shutterstock's actions deprive it of the benefits of the Contract; PMC has still been paid a sizable monetary advance on royalties, which it keeps whether or not those royalties are earned, and is not prohibited from itself using its credentials to photograph the third party events and obtaining ownership of those photos and royalties from their use.

1

Second, PMC brings a claim under a section of the Copyright Act that has infringement as a prerequisite, yet PMC alleges nothing relating to infringement of any type. Indeed, despite that Section 1202(a) of the statute contains requirements that Shutterstock know that the information it used was false, *and* that Shutterstock know that its use of false information would help aid infringement, *and* that infringement has and would likely result, PMC complains only that there was "misattribution" and the claimed acts would cause further misattribution. PMC also puts forth no facts that the unidentified "at least 2,500" photographs contained false information, nor that Shutterstock was aware of such falsity. Indeed, PMC never mentioned this claim to Shutterstock before filing this lawsuit. At bottom, PMC cannot plausibly claim that Shutterstock—a photography supplier that is dependent on licensing—caused infringement of whatever unidentified photographs are behind PMC's facially defective claim. It does not meet the *Twombly/Iqbal* test, nor can it given the elevated pleading requirements that apply. What is clear from the face of the Complaint is that the Section 1202(a) claim is a contract claim in disguise; it does not arise under the copyright laws, and the Court should dismiss the claim with prejudice accordingly.

## II.     SUMMARY OF RELEVANT FACTS AND ALLEGATIONS[1]

### A.     <u>The Contract Between the Parties</u>

This action arises out of a June 1, 2015 agreement between the parties pertaining to the

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's factual allegations as true. *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 510 (S.D.N.Y. 2018) ("In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff.").

2

creation, licensing, and use of photographic content (the "Contract").  Compl. ¶ 2.[2]  PMC

publishes brands that include *Variety*, *Rolling Stone*, and *WWD* (*Women's Wear Daily*), *id.* at

¶ 10, which gives PMC access to red carpet and runway content that, at least while the event is

newsworthy, carries a high value.

The Contract provided that PMC would license to Shutterstock previously-created

archival images and new content created at a variety of events.  Compl. ¶ 2; Contr. § 3.  It also

provided opportunities to create content at two different types of new events.  First, PMC agreed

to provide Shutterstock with access to events that PMC put on (defined as "PMC Events"), and

the right to use photographs taken at those events.  Contr. § 3(a)(ii).  Second, PMC agreed to

provide Shutterstock with PMC's credentials to attend and photograph certain "Third Party

Events," such as awards shows and prominent film festivals.  Contr. § 3(a)(iii), Schd. D.

In exchange, Shutterstock agreed that PMC would retain ownership of the photographs

Shutterstock's photographers took at PMC events or at Third Party Events using PMC's

credentials.  Contr. § 3(c).  Shutterstock also agreed to pay PMC royalties on revenue generated

from PMC's content, both archival and new, along with substantial nonrefundable advances paid

on a yearly basis.  *Id.* § 6.  PMC received free access to much of Shutterstock's library, and

discounted access to the remainder.  *Id.* § 2(a).

Notably, the Contract differed in the express requirements it imposed on Shutterstock for

PMC Events versus Third Party Events.  For PMC Events, the Contract required that

"Shutterstock will provide editorial photographic event coverage, at Shutterstock's expense, for

---

[2] The parties' Contract is attached as Exhibit A to the Declaration of Eleanor M. Lackman, dated
August 13, 2020, and filed under seal.  It is referred to hereinafter as the "Contract" or "Contr."

all PMC Events." Contr. § 3(a)(ii); *see also* Compl. ¶ 41. The Contract does not contain any

such requirement that Shutterstock provide similar coverage at Third Party Events.[3] *See* Contr.

§ 3(a)(iii). Nor does it contain any prohibition on Shutterstock covering Third Party Events

using its own credentials or credentials it obtains from sources other than PMC. *Id.*

Further, while the Contract provides that Shutterstock will have "the right to be the sole

third party to leverage and utilize PMC's credentials and access to capture Third Party Event

Content at Third Party Events," it does not preclude PMC from using its own credentials to

create content at those events. Contr. § 3(a)(iii). In fact, the Contract expressly contemplated

that PMC would continue to use its own photographers at Third Party Events, requiring that "The

in-house staff photographers currently employed by PMC shall produce images, footage and/or

audio content that will be contributed to … Third Party Event Content." Contr. § 3(e).

The Contract contains an integration clause, providing that "This Agreement constitutes

the entire agreement between the parties relating to subject matter hereof and supersedes all prior

or simultaneous agreements, discussions, negotiations and statements, written or oral, including

the Term Sheet." Contr. § 16.

### B. <u>Background of the Current Dispute</u>

The parties' relationship was largely without dispute for nearly five years. Compl. § 23.

However, like many other business relationships, it was jolted by the COVID-19 pandemic. *Id.*

§§ 27-28. As a direct result of the pandemic, the events that form the backbone of the Contract

---

[3] As part of its claim for breach of contract, PMC claims that Shutterstock failed to provide
photographers for certain PMC Events. Compl. §§ 41, 60. PMC does not appear to assert that
simply not photographing Third Party Events was an express breach of contract, just that doing
so using credentials other than PMC's breached the implied covenant. *See* Compl. § 64.

were cancelled, or if not cancelled, presented in an extremely limited or online-only basis that precluded the very content for which Shutterstock had agreed to pay substantial yearly advances.[4]  This presented a classic example of frustration of purpose: the purpose for which Shutterstock had entered into the Contract—access to and the ability to generate new, in-demand content from high profile events—simply no longer existed in any meaningful way.

Thus, on May 18, 2020, Shutterstock delivered a letter to PMC stating that its intent to terminate the Contract under its termination provision.[5]  Compl. ¶ 27.  Rather than engage in any discussion to amicably resolve this dispute in a manner that recognizes the reality of the current once-in-a-lifetime environment, PMC resorted to this preemptive lawsuit.

### C.    PMC's Claims and Allegations

PMC filed this action on June 17, 2020.  In its Complaint, PMC asserts four claims: (1) Breach of Contract/Anticipatory Breach; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 ("DMCA"); and (4) Copyright Infringement. PMC voluntarily dismissed the fourth cause of

---

[4] For instance, the 2020 Cannes Film Festival was cancelled.  *See* https://variety.com/2020/film/global/coronavirus-cannes-cancels-physical-edition-venice-official-selection-1234603004/.  The 2020 Tony Awards, scheduled for June 7, 2020, were postponed indefinitely.  *See* https://variety.com/2020/biz/news/tony-awards-postponed-coronavirus-shutdown-1203544976/.  The 2020 Emmy Awards, scheduled for September 20, 2020, will be virtual.  *See* https://variety.com/2020/tv/news/emmys-2020-virtual-jimmy-kimmel-1234720151/.  The 2021 Academy Awards, Screen Actors Guild Awards, and Directors Guild Awards have all already been rescheduled for nearly two months each.  *See* https://www.oscars.org/news/academy-and-abc-set-april-25-2021-new-show-date-93rd-oscarsr, https://variety.com/2020/film/news/sag-awards-delayed-coronavirus-1234696990/, and https://variety.com/2020/film/news/dga-awards-2021-date-1234718741/.

[5] PMC makes various unfound allegations ascribing ill motives to Shutterstock's decision to notify PMC of termination of the Contract.  While these allegations are false, they are not relevant to determination of this Motion.

action for Copyright Infringement, eliminating the factual allegations contained in Paragraphs 49-55 and claim allegations contained in Paragraphs 74-81 of the Complaint.  ECF Nos. 17-19.

This Motion is directed to PMC's Second Claim for Breach of the Covenant of Good Faith and Fair Dealing and its Third Claim for violation of the DMCA.

PMC's claim for Breach of the Implied Covenant of Good Faith and Fair Dealing alleges that, "[o]n various occasions,"[6] Shutterstock attended Third Party Events using credentials it obtained itself rather than credentials provided by PMC, and thus, Shutterstock claimed ownership of the photographs taken by Shutterstock's photographers at those events rather than granting ownership rights to PMC.  Compl. ¶ 43.  PMC alleges that, because the Contract granted Shutterstock the right to be the sole third party to use PMC's credentials to photograph Third Party Events, "rejecting the use of PMC's credentials unfairly interferes with PMC's right to receive the benefits it expected to receive under the contract, unfairly competes with PMC, and violates Shutterstock's duty of good faith and fair dealing by diminishing the value of PMC's photograph collection by reducing the number of photographs PMC owns and adds to that collection."  *Id.*

PMC's claim for violation of the DMCA alleges briefly (in four paragraphs) that Shutterstock has misrepresented itself, rather than PMC, as the copyright owner of "at least 2,500 photographs" that PMC claims it owns, including some taken at "red-carpet" events within the past year or, somehow, in the future.  *Id.* at ¶¶ 45-46.[7]  PMC claims further, "[o]n

---

[6] PMC does not identify in its Complaint what events this claim relates to, or whether they are any of the Third Party Events specifically identified in Schedule D to the Complaint.

[7] In particular, some of the claimed events did not happen (*e.g.*, HBO's Golden Globes Party on June 6, 2020) and others are currently scheduled for dates in the future and thus have not happened (*e.g.*, HBO's Emmy Party on September 22, 2020).  PMC provides no explanation as

6

information and belief," that Shutterstock's licensees for such photographs misattributed the ownership of the photographs in their own uses. *Id.* at ¶ 47. PMC believes that "other photographs" may have been sublicensed after they have been displayed with Shutterstock's name as "copyright owner," and PMC claims (on information and belief) that the information on such licensed uses is false. *Id.* at ¶ 48. PMC does not provide any specific examples showing what the claimed misattribution looks like, nor does it appear to allege that any sublicensee identified Shutterstock as the copyright owner (as opposed to the supplier) of any images in contravention of the terms of Section 3(d) of the Contract or otherwise. PMC's claimed injury is misattribution of the photographs by licensees of Shutterstock; it identifies no other injury. *See id.* ¶¶ 45-48.

## III.   THE COURT SHOULD DISMISS PMC'S SECOND AND THIRD CLAIMS

### A.   <u>Governing Legal Standards</u>

The Court must dismiss a complaint, or any portion thereof, that fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) unless it provides sufficient facts that, if "accepted as true, … 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In addition to the well-pleaded "facts stated on the face of the complaint," on a motion to dismiss, the Court may consider "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken." *Allen v.*

---

to how Shutterstock could misattribute photographs of events that have not taken place. *See* Compl. ¶ 46.

*WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  This includes the contract that forms the basis of a plaintiff's claims.  "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment."  *Int'l Audiotext Network, Inc. v. AM. Tel & Tel. T Co.,* 62 F.3d 69, 72 (2d Cir.1995) (considering agreement that is "integral to the complaint"); *see also Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297–98 (S.D.N.Y. 2009) ("where the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim").

### B.   The Second Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Fails To State A Claim Upon Which Relief Can Be Granted

#### 1.   Legal Standard

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).  The implied covenant includes "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Rowe v Great Atl. & Pac. Tea Co.,* 46 N.Y.2d 62, 69 (1978) (quoting 5 Williston, *Contracts* § 1293, at 3682 (Rev. Ed. 1937)).  It also "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Dalton*, 87 N.Y.2d at 389 (quoting *Kirke La Shelle Co. v Paul Armstrong Co.,* 263 N.Y. 79, 87 (1933)).

However, an allegation that a defendant's actions have reduced some benefits a plaintiff might have received under a contract is not sufficient: "the implied covenant does not extend so

8

far as to undermine a party's general right to act on its own interests in a way that may

incidentally lessen the other party's anticipated fruits from the contract.'" *M/A-COM Sec. Corp.*

*v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (internal quotes omitted).  Rather, "[t]he covenant

will be breached only in a narrow range of cases." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769

F.3d 807, 817 (2d Cir. 2014).  Those narrow circumstances "include situations where 'an implied

promise was so interwoven in the whole writing of a contract as to be necessary for effectuation

of the purposes of the contract' or 'a party's acts subsequent to performance on the contract so

directly destroy the value of the contract for another party that the acts may be presumed to be

contrary to the intention of the parties.'" *George Town Assocs. S.A. v. Abakan, Inc.*, No.

15CV3435 DLC, 2015 WL 4923040, at *9 (S.D.N.Y. Aug. 18, 2015) (quoting *M/A-COM*, 904

F.2d at 136).

 The terms that may be implied are limited: "no obligation can be implied that would be

inconsistent with other terms of the contractual relationship." *Dalton*, 87 N.Y.2d at 389.  *See*

*also Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 324

(S.D.N.Y. 2009) (the implied covenant "cannot be used to impose obligations that were not

explicitly part of the agreement …, or to create, in essence, new, affirmative duties … that were

not expressly set forth in the contract.") (internal quote marks and citations omitted).  Moreover,

"where the instrument contains an express covenant in regard to any subject, no covenants are to

be implied in respect to the same subject." *RJ Capital, S.A. v. Lexington Capital Funding III,*

*Ltd.*, No. 10 Civ .25 PGG, 2011 WL 3251554, at *13 (S.D.N.Y. July 28, 2011).

 Because "it is not the function of the courts to remake the contract agreed to by the

parties, but rather to enforce it as it exists," "a party who asserts the existence of an implied-in-

fact covenant bears a heavy burden." *Rowe*, 46 N.Y.2d at 69.  "Thus, a party making such a claim must prove not merely that it would have been better or more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced *is in fact implicit in the agreement viewed as a whole*."  *Id.* (emphasis added).  Here, PMC cannot meet its heavy burden.

### 2.     The Contract Does Not Include PMC's Alleged Implied Terms.

PMC asserts that Shutterstock breached the implied covenant of good faith and fair dealing by "declining to use the credentials for third party events that PMC was required to provide exclusively to Shutterstock under the Archive & Event Agreement's terms and instead attending these events using credentials that Shutterstock obtained for itself, and thereafter claiming ownership of the resulting photographs."[8]  Compl. ¶ 64.  The unexpressed, implied terms PMC assumes by this allegation simply cannot coexist with the express terms in the parties' contract.

### a.     The Contract Does Not Require Shutterstock To Attend And Photograph Third Party Events.

As a threshold matter, Shutterstock is not required to photograph *any* Third Party Events under the Contract.  Under well-established rules of contract interpretation, this conclusion is indisputable.

---

[8] PMC's Complaint is not a model of clarity. To the extent PMC is alleging any of the other purported breaches of contract alleged in the Complaint are breaches of the implied covenant of good faith and fair dealing, such claims are duplicative of PMC's express breach of contract claim and must be dismissed.  *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 205 (S.D.N.Y. 2011) ("A claim for breach of the implied covenant can be maintained in conjunction with a breach of contract claim only if the damages sought by the plaintiff[s] for breach of the implied covenant are not intrinsically tied to the damages allegedly resulting from breach of contract." (alteration in original, quote marks omitted)).

Section 3(a)(ii) of the Contract requires Shutterstock to photograph every PMC Event. Contr. §3(a)(ii) ("During the License Period, Shutterstock will provide editorial photographic event coverage, at Shutterstock's expense, for all PMC Events."). As to Third Party Events, the Contract contains no such requirement. *Cf.* §3(a)(iii).

The parties' omission of a parallel requirement that Shutterstock photograph all Third Party Events, while at the same time—and in the same subsection of the Contract—including such a requirement for PMC Events, means that Shutterstock is *not* required to photograph all Third Party Events. "Under accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional." *Sterling Inv'r Servs., Inc. v. 1155 Nobo Assocs. LLC*, 30 A.D.3d 579, 581 (2006); *see also In'l Fid. Ins. Co. v. Cty. of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000) ("Sophisticated lawyers, such as those drafting standard forms ... must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so, and how to use different words and construction to establish distinctions in meaning.").

The parties knew how to require that Shutterstock photograph all Third Party Events— they did so, expressly, as to PMC Events. The absence of such language is incontrovertible: As to Third Party Events, Shutterstock had no such obligation. *See also, e.g., Dalton*, 87 N.Y.2d at 389 ("no obligation can be implied that would be inconsistent with other terms of the contractual relationship").

        **b.**    **Shutterstock's Use of Its Own Credentials to Photograph Third Party Events Did Not Deprive PMC of the Benefits of Its Bargain.**

It necessarily follows that, as a matter of law, PMC cannot establish that it has been denied the fruits or the benefits of the Contract. While PMC vaguely alludes to "unfair

11

competition" (addressed below), the only harm PMC specifically articulates is that it did not

receive ownership of photos taken at those Third Party Events that Shutterstock attended with

credentials other than PMC's.  Compl. ¶ 43 ("[R]ejecting the use of PMC's credentials …

violates Shutterstock's duty of good faith and fair dealing by diminishing the value of PMC's

photograph collection by reducing the number of photographs PMC owns and adds to that

collection.").

On inspection, this supposed injury is hollow: If Shutterstock had not attended the Third

Party events at all—which, as explained above, the Contract plainly allows—PMC would have

suffered the same illusory harm.  Thus, PMC has not alleged damages—a necessary element of

any contract claim—that are traceable to Shutterstock's alleged breach of the covenant PMC

asks this Court to read into the Contract, *i.e.*, that Shutterstock is *required* to use PMC's

credentials at all Third Party Events.

PMC's allegation that it has been denied the benefits of the Contract is also contradicted

by other plain language.  The Contract expressly contemplated that PMC could still send its own

photographers to Third Party Events to generate Third Party Event Content, which it would own

and on which it would be paid royalties.  Contr. § 3(e).  That Shutterstock used its own

credentials to attend Third Party Events did not preclude PMC from exercising these rights.[9]  *See*

---

[9] That Shutterstock did not preclude PMC from using its own credentials, or interfere with
PMC's ability to obtain credentials, distinguishes this case from *Vibes Int'l Inc., SAL v. Iconix
Brand Grp., Inc.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *6 (S.D.N.Y. June 8, 2020),
the only case PMC cited in its response to Shutterstock's pre-motion letter where an implied
covenant was found to exist.  In *Vibes*, the plaintiff alleged that the defendant convinced
customers to stop doing business with the plaintiff and instead do business only with the plaintiff
"for the purpose of ousting it from its position as the exclusive carrier of the defendant's marks
in the territory."  *Id.*  No similar diversion of business is alleged here.

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1517 (S.D.N.Y. 1989) (implied covenant only protects party from deprivation of "express, explicitly bargained-for benefits" of contract).

In reality, PMC has received substantial and numerous benefits under the Contract.  For the grant that Shutterstock be the only third party that can use PMC's credentials at Third Party Events, PMC received access to Shutterstock content, payment of royalties, and sizeable nonrefundable royalty advances, among other upsides, regardless of whether Shutterstock used PMC's credentials or its own.  *See* Contr. §§ 2(a)-(d), 6.[10]

Thus, PMC has not alleged any action by Shutterstock that "so directly destroy[s] the value of the contract for [PMC] that the acts may be presumed to be contrary to the intention of the parties," such that "the implied covenant of good faith may be implicated."  *M/A-COM*, 904 F.2d at 136.

      **c.**      **The Alleged Implied Covenant Would Improperly Impose an Un-Bargained For Restriction on Shutterstock.**

Rather, if PMC's argument is that the Contract allows Shutterstock to refrain from attending Third Party Events, but that a purported implied covenant in that Contract bars

---

[10] PMC has not even alleged, for instance, that it was deprived of royalties over and above the advances it received, because Shutterstock used its own credentials on some, unidentified occasions.  Even the grantor of exclusive rights is not entitled to an implied covenant, enforceable against the grantee, when the parties' written agreement provides for minimum advances, allows the grantor to exploit the rights themselves, and contains an integration provision, as this Contract does.  *See Vacuum Concrete Corp. of Am. v. Am. Mach. & Foundry Co.*, 321 F. Supp. 771, 774 (S.D.N.Y. 1971) ("We conclude that the foregoing provisions of the Agreement, when considered together and as a whole, preclude us as a matter of law from implying a covenant on the part of AMF to exercise the alleged standard of diligence (whether it be termed 'best efforts,' 'due diligence,' or something along these lines) in the exploitation of the patented lifting device.").

Shutterstock from attending them using its own credentials, it is nothing more than an attempt "to undermine [Shutterstock]'s general right to act on its own interests" in a way that—at most— "may incidentally lessen [PMC]'s anticipated fruits from the contract." *M/A-COM*, 904 F.2d at 136. This is an attempt at court-sanctioned "unfair competition"—not the other way around. [11]

New York has a "general public policy favoring robust and uninhibited competition." *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 214 (S.D.N.Y. 2013). This policy is so strong that even express anti-competition covenants in contracts are routinely found to violate public policy. *See Calico Cottage, Inc. v. TNB, Inc.*, No. 11-CV-0336 DLI MDG, 2014 WL 4828774, at *5 (E.D.N.Y. Sept. 29, 2014) (courts balance "the competing public policies in favor of robust competition and freedom to contract") (quoting *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 611 (S.D.N.Y.2001) (alteration in original, quote marks omitted)).

There is no express clause here, and the implied covenant cannot be applied as a "gap-filler" to apply the hand-cuffs PMC now wishes to impose. Had PMC intended to restrict Shutterstock's ability to develop its own relationships and enjoy the fruits of the same—and had Shutterstock been willing to concede such servitude—the parties knew how to memorialize those kinds of terms. Instead, the parties restricted PMC's right to lend its access to Third Party Events to others, and did not restrict Shutterstock's right to use its own credentials. That the parties negotiated express covenants on this subject precludes the Court from inferring an implied covenant on the same subject. *RJ Capital*, 2011 WL 3251554 at *13; *see also Integra*

---

[11] PMC's bare allegation that Shutterstock's use of its own credentials constitutes "unfair competition," without allegations of facts supporting such a conclusion, are not sufficient to meet Rule 8's pleading standard, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

14

*FX3X Fund, L.P. v. Deutsche Bank, AG*, No. 14-CV-8400 (JPO), 2016 WL 1169514, at *3 (S.D.N.Y. Mar. 22, 2016) ("Nor may the Court infer a covenant of good faith and fair dealing where the contract contains an express covenant ... in respect to the same subject.") (alteration in original, quote marks omitted).

Further, it was entirely foreseeable that Shutterstock would obtain credentials through new relationships (to say nothing of the relationships that Shutterstock already had, which Shutterstock would have forfeited under PMC's inconceivable theory). Indeed, PMC admits that this relationship-building would be a natural consequence of the Contract. *See* Compl. ¶ 21 (Shutterstock viewed the Contract as a means to "finally 'step[]into the world of red carpets and fashion runways.'"). Of course, PMC knew (or should have known) that upon stepping into that world Shutterstock would develop its own relationships with third parties to obtain its own event credentials. Despite this, PMC did not negotiate any restriction precluding Shutterstock from using those credentials.

It could have done so very easily. For example, PMC could have simply demanded a requirement that Shutterstock always use PMC's credentials if they were available (as they essentially did for PMC Events), an absolute bar to Shutterstock attending Third Party Events using credentials other than PMC's, or a provision that photographs Shutterstock takes using its own credentials are deemed Third Party Event Content to which PMC has ownership rights.

But PMC did not demand any of these or similar terms. This fact is dispositive, because "it is not the function of the courts to remake the contract agreed to by the parties" to add terms that PMC now believes "would have been better or more sensible to include." *Rowe*, 46 N.Y.2d at 69. Such do-overs are not allowed via the implied covenant of good faith and fair dealing or

12377950.8/50744-00002

otherwise.  *See Metro. Life Ins. Co*, 716 F. Supp. at 1519 ("While the Court stands ready to employ an implied covenant of good faith to ensure that such bargained-for rights are performed and upheld, it will not, however, permit an implied covenant to shoehorn into an indenture additional terms plaintiffs now wish had been included.").  *See also Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) ("[T]he obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract."); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306 (S.D.N.Y. 1998) ("Any purported duty of good faith 'cannot add to, detract from, or alter the terms of the contract itself.'") (citation omitted).  And as noted above, PMC received substantial consideration supporting Shutterstock's right to be the sole third-party recipient of PMC access.

***

For all of the foregoing reasons, the implied covenant that PMC asks this Court to recognize does not exist in the parties' Contract.  Therefore, the Court should dismiss the Second Claim, with prejudice.

### C.      PMC's Allegations Do Not State a Claim for a Violation of the DMCA

As PMC's allegations—threadbare as they are—show, PMC's claim for a violation of Section 1202(a) of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a), has no place in PMC's "straightforward breach of contract claim."  *Krechmer v. Tantaros*, 747 F. App'x 6, 10 (2d Cir. 2018).  To plead a cause of action for a violation of Section 1202(a), PMC must proffer sufficient facts to meet multiple elements.  Despite its awareness of, and avocation for, a strict pleading standard for DMCA claims, *see* Defs.' Memo. of Law, *Werner v. Penske Media Corp.*, No. 2:17-cv-6191, 2017 WL 9519565, § III.C (C.D. Cal. Nov.13, 2017), PMC has not come close to meeting the test.  Indeed, by its own admissions, it cannot do so.

16

**1.  PMC Fails to Plead the Core Fact of Infringement that the DMCA Requires.**

As a threshold matter, PMC's claim ignores the fundamental element of infringement. This is fatal to its claim.  As the text of the statute makes clear, the DMCA's purpose and function is to curtail infringement of copyright rights.  *See* 17 U.S.C. § 1202(a) (providing that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal *infringement* – (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false.") (emphasis added); *see also Fischer v. Forrest*, Nos. 18-2955-cv, 18-2959-cv, 2020 WL 4457943 at 14-15 (2d Cir. Aug. 4, 2020) (describing purposes of DMCA and elements in conjunction with infringement). Accordingly, actual or likely infringement must result.  *Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 449-50 (S.D.N.Y. 2002) (noting that an intent to induce, enable, facilitate or conceal an infringement is a prerequisite for liability under Section 1202(a)); *Schiffer Pub., Ltd. v. Chronicle Books, LLC*, No. Civ.A. 03-4962, 2004 WL 2583817, at *13 (E.D. Pa. Nov. 12, 2004); *compare Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (DMCA claim failed where thumbnail images, offered for purposes of identification, omitted CMI, and plaintiff failed to show that users were more likely to infringe other than as should be reasonably expected).  Failure to allege facts relating to some infringement gives the DMCA no viability. *See id.*; *see also Odom v. Navarro*, No. 09-21480-CIV-UNGARO, 2010 WL 11505459, at *7 (S.D. Fla. Mar. 11, 2010) (Section 1202(a) "clearly requires a showing of Defendants' intent to induce, enable, facilitate, or conceal infringement of the Images.").

PMC alleges no facts suggesting that the alleged swap of PMC's name for Shutterstock's name will "induce, enable, facilitate, or conceal" any infringement of any type.  It alleges only that as a result of the license of certain of the 2,500 "Misattributed Photographs," Shutterstock's customers and licensees will in turn "*misattribute* the copyright ownership information in connection with their own uses of the licensed images."  Compl. ¶ 47 (emphasis added).  This is no different than saying that PMC may not get credit, or that Shutterstock will account incoming license revenue to itself rather than to PMC.  Thus, putting aside that PMC fails to allege that any of these scenarios has ever happened in the first place such that the allegation is non-speculative, neither of these scenarios sounds in infringement:  at best, if true, they are breaches of the parties' contract, and even then, they are unsupported.[12]

But perhaps most telling as to the sufficiency of the claim, as well PMC's belief in it, is that the *only* place that the term "infringement" is alleged in conjunction with the DMCA claim is in the boilerplate recitation of elements at Paragraph 70 of PMC's Complaint.  This indisputably "will not do" under the *Twombly/Iqbal* pleading standards.  When looking at the five paragraphs relating to the DMCA in the factual background, *see* Compl. ¶¶ 44-48, the word "infringement" does not appear even *once*.  Therefore, the facial deficiency of the DMCA is clear and the claim should be dismissed.

---

[12] If PMC believes it is not being paid for the licensed uses, its recourse is against Shutterstock under the contract; likewise, if Shutterstock's licensees are not properly providing credit, PMC can look to Shutterstock under Section 3(d) of the Contract.  At this stage, Shutterstock has insufficient information to know what the nature or extent of the photographs is supposed to be. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (dismissing DMCA claim where plaintiff provided no facts to show what CMI was removed and how).

18

### 2. PMC Fails to Meet the Pleading Test for the Double Scienter Requirement Under Section 1202(a).[13]

While the DMCA claim already fails for the reasons set forth above, the failure to

sufficiently set forth facts to meet the "double scienter requirement," as described by the Second

Circuit in *Krechmer*, underscores that the DMCA is not the proper vehicle for PMC's claims.

747 F. App'x at 9.  "In order to plead a violation of § 1202(a), plaintiff … must plausibly allege

that defendant knowingly provided false information *and* that the defendant did so with the intent

to induce, enable, facilitate, or conceal an infringement."  *Id.*  Here, in addition to there being no

pleaded infringement, PMC has failed to plausibly plead both scienter elements, as the law

additionally requires.[14]

---

[13] While the Complaint does not specify which subsection of Section 1202 PMC intends to invoke, PMC's pre-motion letter identifies Section 1202(a) specifically as the basis for the claim. ECF No. 15.  Regardless, claims pertaining to removal or alteration under Section 1202(b) contain similar elements and similarly are routinely dismissed at the pleading stage for failure to identify how identifiable infringements have been or will be affected, *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673-75 (9th Cir. 2018), *cert denied*, 139 S. Ct. 1222 (2019), or failure to identify specifically what and how CMI was removed, *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018), or failure to plead facts supporting mental state.  *See Philpot v. Alternet Media, Inc.*, No. 18-cv-0449-TSH, 2008 WL 6267876, at *5 (N.D. Cal. Nov. 30, 2018) (granting motion to dismiss); *Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 632 (S.D.N.Y. 2016) (motion to dismiss granted where complaint contained no allegations that defendant was made aware of its allegedly infringing actions); *Merideth v. Chicago Tribune Co.*, No. 12 C 7961, 2014 WL 87518, at *4 (N.D. Ill. Jan. 9, 2014) (granting motion to dismiss); *Keogh v. Big Lots Corp.*, No. 3:04-00738, 2006 WL 1129375, at *2 (M.D. Tenn. Apr. 27, 2006) (granting motion to dismiss for failure to plead mental state to proper level).

[14] While intent can be pleaded generally, a plaintiff still needs to proffer enough facts.  *Iqbal*, 556 U.S. at 686-87 ("Rule 9 merely excuses a party from pleading [malice] under an elevated pleading standard.  It does not give him license to evade the less rigid – though still operative – strictures of Rule 8"); *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 790 (5th Cir. 2017) (affirming dismissal of plaintiff's claim for removal of copyright management information, which was dismissed "because its allegations in support of those claims were speculative and conclusory"); *Masck v. Sports Illustrated*, No. 13-10226, 2014 WL 12658971, at *4 (E.D. Mich. Mar. 10, 2014) (amended complaint futile because it made "only a conclusory allegation with no factual basis for this Court to plausibly infer actual knowledge

19

*First*, the Complaint is vague as to whether and what information is false and, if false, supplied by Shutterstock with knowledge that it was false.  As PMC acknowledges in its pre-motion letter, PMC supplies the metadata for images under the Contract.  *See* ECF No. 15 at 3 (referencing Section 4 of the Contract).  If the information it supplied caused the alleged misattribution, then Shutterstock had no basis to know that the credit was false, and PMC is the one responsible for the purported error.

Of course, PMC's vague Complaint sheds no light on what it alleges is its injury.  Apart from making passing reference to some unspecified photographs that allegedly were taken at a few events—at least one of which never happened and the other of which is at a date *in the future*—PMC fails to provide any specificity or examples of what these 2,500 "Misattributed Photographs" are, how they were supplied and to whom, what the misinformation looked like (for example, whether "owner" referred to party responsible for licensing versus party with copyright ownership versus creator of the photograph, as is possible under Paragraph 3(c) of the parties' Contract), or any other fact that show that the information is false.  This deficiency resulting from PMC's general pleading makes it impossible to determine what purportedly went wrong in any instance, much less in "at least 2,500 photographs" and possibly "other photographs" that have allegedly been sublicensed.  Where that predicate information is unknown, it cannot be assumed that Shutterstock provided anything that constituted false CMI. *See Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, No. 17 Civ. 8613, 2018 WL 4830091, at *3 (S.D.N.Y. Oct. 4, 2018) (finding bare allegation that defendant replaced plaintiff's CMI with its own to be conclusory under *Iqbal*); *Photographic Illustrators Corp. v. Orgill, Inc.*, 118 F. Supp.

---

under the DMCA").

20

3d 398, 406-07 (D. Mass. 2015) (rejecting section 1202 claim where there was no evidence that images received by the defendant contained CMI).[15]

In any event, assuming *arguendo* that PMC had satisfactorily alleged there was an error at the fault of Shutterstock, PMC likewise fails to identify facts that would lead Shutterstock to *know* that these unidentified 2,500+ photographs were in fact misattributed.  It is pivotal on the knowledge question that PMC does not allege that it ever gave Shutterstock—a multiyear licensee under a significant contract—notice of the alleged problem and an opportunity to cure. Indeed, the concern may never have arisen because the licensees *did* credit PMC pursuant to Section 3(d) of the Contract, and it was only the desire to manufacture an expensive-looking cause of action that led to PMC's sudden realization of alleged "rampant" violations, none of which PMC has identified with any specificity.[16]

Regardless, at its core, the existence and terms of Contract make it implausible to support the requisite knowing falsity.  Even PMC hedges: when it comes time to put forth the "who,

---

[15] Moreover, because PMC does not include any examples of the violation, it inherently proffers nothing to show that the information provided was in fact false CMI in any instance, much less all of them, which would provide yet another basis to dismiss the claim.  *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012) (no DMCA claim where claimed information was not CMI); *see also Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016) (placing one's own copyright notice on the same page as plaintiff's photographs does not constitute false CMI).  Where a plaintiff does "not identify the CMI at issue in the case" the defendants are left "without a basis to understand the nature of the claim against them" and the claim should be dismissed. *Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17 C 7432, 2018 WL 3629309 at *4 (N.D. Ill. July 31, 2018).

[16] Paragraph 3(d) provides how credit is to be supplied where a licensee uses a PMC photograph. *See* Agr. § 3(d) ("Shutterstock shall use commercially reasonable efforts to include in all license agreements entered into after the date hereof that any PMC Content licensed and used by licensees shall include a copyright attribution to PMC if such PMC Content is used in an editorial context.  PMC shall have the right to waive the foregoing requirement in its sole reasonable discretion. PMC hereby acknowledges that Shutterstock has no obligation to amend any existing license agreements, the terms of which may include broad waivers of attribution.").

what, where, why, and how," PMC's only allegations as to knowing falsity are made "on

information and belief." *See* Compl. ¶¶ 47-48; *compare Morgan v. Associated Press*, No. 15-

03341-CBM, 2016 WL 6953433, at *3 (C.D. Cal. Mar. 16, 2016) (DMCA claim dismissed

"because a formulaic recitation of the elements of a cause of action, including allegations

regarding a defendant's state of mind, are not sufficient"; further noting that where defendant

believed it had permission to use the photos, allegations of intent against defendant were "not

plausible"). Accordingly, in light of the above, the Complaint falls far short of providing

sufficient facts to plead that Shutterstock "knowingly provided false [copyright management]

information." *Krechmer*, 747 F. App'x at 9.

  *Second*, it is implausible that Shutterstock provided false information with the intention

to "induce, enable, facilitate, or conceal" an infringement. *See id.* As noted above, even PMC

cannot bring itself to say that Shutterstock's goal was to conceal or encourage infringement;

PMC's only claimed injury is misattribution. Moreover, it is absurd to think that an entity with

licensing as its lifeblood was seeking to promote unlicensed uses in allegedly providing the

unspecified 2,500 photographs without the attribution that PMC alleges was warranted.

  Even where intent may be pleaded generally, plausibility is still required. *Twombly*, 550

U.S. at 561-62. And an allegation has facial plausibility only "when the plaintiff pleads factual

content that allows the court to draw the *reasonable* inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). A complaint's factual allegations

should be rejected as implausible in the face of an "obvious alternative explanation." *Id.* at 682

(citation omitted). Courts have thus declined to accept factual allegations that, as here, are

contrary to "common sense." *Id.* at 679. Moreover, in the only paragraph where infringement is

mentioned in the context of the DMCA claim, *see* Compl. ¶ 70, PMC alleges intent only on information and belief, with no supplied facts.  This is not enough.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a legally viable claim.) (citation omitted); *AppSoft Dev., Inc. v. Diers, Inc.*, No. 3:13-cv-1520, 2014 WL 3893316, at *4 (M.D. Fla. Aug. 8, 2014) (reciting language of Section 1202(a) and making generalized allegations that defendants have committed the act constituting a violation of the section was insufficient to avoid dismissal of DMCA claim).

Accordingly, because PMC fails to plead likelihood of infringement, knowing falsity of the information provided in the unidentified 2,500 "Misattributed Photographs," *and* Shutterstock's intent to aid infringement, PMC cannot state a claim.  Moreover, as the elements cannot be pleaded under the circumstances alleged, namely where no further infringement is alleged at all much less plausibly, the DMCA claim should be dismissed with prejudice.

## IV.    CONCLUSION

While Shutterstock disputes PMC's breach of contract claim, its lawsuit sounds in nothing more than that.  As a matter of law, PMC cannot renegotiate the parties' contract to give it a claim for breach of the implied covenant, and its DMCA claim has no place in a dispute arising from a contract and where no infringement is alleged.  Accordingly, Shutterstock respectfully requests that this Court dismiss PMC's Second and Third Causes of Action with prejudice.

12377950.8/50744-00002

DATED:  New York, New York
             August 13, 2020

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By:  s/Eleanor M. Lackman
       Eleanor M. Lackman
       437 Madison Ave., 25th Floor
       New York, New York 10022-7001
       Telephone: (212) 509-3900
       Facsimile: (212) 509-7239
       Email:  eml@msk.com

*Attorneys for Defendant*
*Shutterstock, Inc.*

24