UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENSKE MEDIA CORPORATION,

                  Plaintiff,

    -against-

SHUTTERSTOCK, INC.,

                  Defendant.

Case No. 20-cv-04583 (MKV)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHUTTERSTOCK, INC.'S MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF RELEVANT FACTS AND ALLEGATIONS ........................ 3
        A.      The Contract Between the Parties .......................................................... 3
        B.      Background of the Current Dispute ........................................................ 4
        C.      PMC's Claims and Allegations ............................................................... 5

III.    THE COURT SHOULD DISMISS THE SECOND THROUGH FOURTH CLAIMS ..... 7
        A.      The Second Claim For Breach Of The Implied Covenant Of Good Faith And
                Fair Dealing Fails To State A Claim Upon Which Relief Can Be Granted ........... 8
                1.      Legal Standard ............................................................................ 8
                2.      The Contract Does Not Include PMC's Alleged Implied Terms ............... 9
                3.      The Parties' Negotiations and PMC's Alleged Subjective
                        Understanding of the Contract Cannot Create a New Contract Term. ..... 14
        B.      PMC's Allegations Do Not State a Claim for a Violation of the DMCA ............. 15
                1.      PMC Fails to Plead the Core Facts of Actual Infringement that the
                        DMCA Requires. ....................................................................... 16
                2.      PMC Fails to Meet the Pleading Test for the Double Scienter
                        Requirement Under Section 1202(a). ............................................. 19
        C.      PMC Has Failed to State a Claim for Copyright Infringement ......................... 23

IV.     CONCLUSION ................................................................................................ 25

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Allen v. WestPoint-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991)........................................................................................7

*AppSoft Dev., Inc. v. Diers, Inc.*,
    No. 3:13-cv-1520, 2014 WL 3893316 (M.D. Fla. Aug. 8, 2014)...........................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... passim

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................22

*Calico Cottage, Inc. v. TNB, Inc.*,
    No. 11-CV-0336 DLI MDG, 2014 WL 4828774 (E.D.N.Y. Sept. 29, 2014) ........13

*Cartoon Network LP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)...................................................................................24

*Chevrestt v. Am. Media, Inc.*,
    204 F. Supp. 3d 629 (S.D.N.Y. 2016).....................................................................19

*Cole v. John Wiley & Sons*,
    No. 11 Civ. 2090 (DF), 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ...................23

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
    650 F. Supp. 2d 314 (S.D.N.Y. 2009)......................................................................9

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384 (1995) .....................................................................................8, 9, 10

*Design Basics, LLC v. WK Olson Architects, Inc.*,
    No. 17 C 7432, 2018 WL 3629309 (N.D. Ill. July 31, 2018) .................................21

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011).....................................................................10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991).................................................................................................24

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>Page(s)</u>

*Fischer v. Forrest*,
   2020 WL 4457943 (2d Cir. Aug. 4, 2020)..............................................................16

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
   139 S.Ct. 881 (2019)..................................................................................................25

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ...........................................................17, 18

*George Town Assocs. S.A. v. Abakan, Inc.*,
   No. 15CV3435 DLC, 2015 WL 4923040 (S.D.N.Y. Aug. 18, 2015) ......................8

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998)........................................................................15

*Int'l Fid. Ins. Co. v. Cty. of Rockland*,
   98 F. Supp. 2d 400 (S.D.N.Y. 2000)........................................................................10

*Int'l Audiotext Network, Inc. v. AM. Tel & Tel. T Co.*,
   62 F.3d 69 (2d Cir.1995)..............................................................................................8

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999) ...............................................................17, 18

*Krechmer v. Tantaros*,
   747 F. App'x 6 (2d Cir. 2018) .................................................................16, 19, 22

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*,
   No. 17 Civ. 8613, 2018 WL 4830091 (S.D.N.Y. Oct. 4, 2018) ............................20

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
   83 F. Supp. 3d 501 (S.D.N.Y. 2015)........................................................................23

*M/A-COM Sec. Corp. v. Galesi*,
   904 F.2d 134 (2d Cir. 1990)......................................................................................12

*Masck v. Sports Illustrated*,
   No. 13-10226, 2014 WL 12658971 (E.D. Mich. Mar. 10, 2014)...........................19

iii

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>**Page(s)**</u>

*Medforms v. Healthcare Mgmt. Solns, Inc.*,
    290 F.3d 98 (2d Cir. 2002).................................................................................25

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
    716 F. Supp. 1504 (S.D.N.Y. 1989)...........................................................11, 14

*Minden Pictures, Inc. v. BuzzFeed, Inc.*,
    390 F. Supp. 3d 461 (S.D.N.Y. 2019)..................................................................24

*Morgan v. Associated Press*,
    No. 15-03341-CBM, 2016 WL 6953433 (C.D. Cal. Mar. 16, 2016) .....................21

*Noland v. Janssen*,
    17-cv-5452 (JPO), 2020 WL 2836464 (S.D.N.Y. June 1, 2020)...........................24

*Odom v. Navarro*,
    No. 09-21480-CIV-UNGARO, 2010 WL 11505459 (S.D. Fla. Mar. 11, 2010)...................17

*Palmer Kane LLC v. Scholastic Corp.*,
    No. 12 CV 3890, 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) ..............................23

*Parker v. Paypal, Inc.*,
    No. CV 16-4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017)............................24

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ...........................................................................24

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
    No. 11 C 5177, 2012 WL 414803 (N.D. Ill. Feb. 8, 2012)...................................20

*Poller v. BioScrip, Inc.*,
    974 F. Supp. 2d 204 (S.D.N.Y. 2013)..................................................................12

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*,
    No. 10 Civ. 25 PGG, 2011 WL 3251554 (S.D.N.Y. July 28, 2011) .................9, 13

*Rosen v. eBay, Inc.*,
    No. CV 13-6801 MWF (Ex), 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015)...........................24

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>Page(s)</u>

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)....................................................................................7

*Rowe v Great Atl. & Pac. Tea Co.*,
    46 N.Y.2d 62 (1978) ...............................................................................8, 9, 14

*Schiffer Pub., Ltd. v. Chronicle Books, LLC*,
    No. Civ.A. 03-4962, 2004 WL 2583817 (E.D. Pa. Nov. 12, 2004).......................17

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*,
    769 F.3d 807 (2d Cir. 2014)....................................................................................8

*SNS Bank, N.V. v. Citibank, N.A.*,
    777 N.Y.S.2d 62 (2004)........................................................................................15

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018)..................................................................................19

*Sterling Inv'r Servs., Inc. v. 1155 Nobo Assocs. LLC*,
    30 A.D.3d 579 (2006) ...........................................................................................10

*Stevens v. Corelogic, Inc.*,
    194 F. Supp. 3d 1046 (S.D. Cal. 2016).................................................................20

*Stevens v. Corelogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018), *cert denied*, 139 S. Ct. 1222 (2019)......................19

*Vacuum Concrete Corp. of Am. v. Am. Mach. & Foundry Co.*,
    321 F. Supp. 771 (S.D.N.Y. 1971) .......................................................................12

*Verzani v. Costco Wholesale Corp.*,
    641 F. Supp. 2d 291 (S.D.N.Y. 2009)....................................................................8

*Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*,
    No. 18-CV-11449 (JGK), 2020 WL 3051768 (S.D.N.Y. June 8, 2020) ...............11

*W.W.W. Assocs., Inc. v. Giancontieri*,
    77 N.Y.2d 157 (1990) ...........................................................................................14

TABLE OF AUTHORITIES
<u>(continued)</u>

<u>Page(s)</u>

*Ward v. Nat'l Geographic Soc.*,
    208 F. Supp. 2d 429 (S.D.N.Y. 2002)......................................................................16

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
    323 F. Supp. 3d 501 (S.D.N.Y. 2018)......................................................................3

*Werner v. Penske Media Corp.*,
    No. 2:17-cv-6191, 2017 WL 9519565 ..................................................................16

*Wolf v. Travolta*,
    167 F. Supp. 3d 1077 (C.D. Cal. 2016) .................................................................24

### STATUTES

17 U.S.C.
    § 1202..............................................................................................................5, 19
    § 1202(a) ....................................................................................................... passim

### OTHER AUTHORITIES

Federal Rule of Civil Procedure
    Rule 8 ...................................................................................................................12
    Rule 12(b)(6)......................................................................................................3, 7

## I.  INTRODUCTION

Plaintiff Penske Media Corporation ("PMC") is the owner of 22 media brands that include *Rolling Stone* and *Variety*. As to defendant Shutterstock, Inc. ("Shutterstock"), PMC was until recently a supplier of photographs primarily depicting live events such as red-carpet arrivals and fashion shows. PMC commenced this lawsuit after the COVID-19 pandemic made it impossible for PMC to deliver the content for which defendant Shutterstock had contracted. Despite that PMC cannot perform and the purpose of the parties' contract is frustrated, PMC brought this action to force Shutterstock to pay a significant monetary advance for the last year of the parties' contract. But as a smokescreen for its breach of contract claim that seeks a windfall payment for performing essentially no services, PMC has conjured up three other baseless claims, one of which it initially dismissed. Following Shutterstock's filing of its motion to dismiss, PMC eliminated an estimated 2,500 photographs from its case, effectively dismissing its claim under the Digital Millennium Copyright Act ("DMCA") as well, and replaced the photos in its claim with an estimated 2,300 new photographs. In its First Amended Complaint ("FAC"), PMC also adds in a perfunctory copyright infringement claim alleging infringement based on the same photographs.

The second, third, and fourth claims remain implausible and insufficient. First, PMC's claim for breach of the implied covenant of good faith and fair dealing runs counter to fundamental principles of New York contract law. PMC seeks to imply a contractual bar on Shutterstock attending and photographing third party events using Shutterstock's own credentials, an improper restriction on Shutterstock's ability to develop its business and relationships with third parties. Had PMC wished to limit Shutterstock in such a way, it should have bargained for the restriction when entering into the contract. It did not. The implied

covenant cannot be used to create a new contractual restriction on Shutterstock to prohibit it from doing something the contract allows, and absent from the FAC is any claim that Shutterstock's actions deprive it of the benefits of the contract.

Second, Section 1202(a) of the DMCA contains requirements that Shutterstock know that the information it used was false, *and* that Shutterstock know that its use of false information would help aid infringement, *and* that infringement has and would likely result. PMC complains only that there was "misattribution" and the claimed acts would cause further misattribution. PMC also puts forth no facts that the unidentified "at least 2,300" photographs contained false information, nor that Shutterstock was aware of such falsity. Indeed, PMC never mentioned this claim to Shutterstock before filing this lawsuit, and its first go at the claim was admittedly insufficient given that PMC withdrew a similar claim after Shutterstock moved to dismiss. At bottom, PMC cannot plausibly claim that Shutterstock—a photograph supplier that depends on licensing—caused infringement of whatever photographs PMC claims contained improper credit. The claim fails to meet the *Twombly/Iqbal* test as to several key elements that PMC must allege.

Third, PMC now hypothesizes that Shutterstock infringed at least 2,300 photographs that PMC claims (falsely) are its own and which PMC rushed to register with the Copyright Office for the sake of creating an infringement claim. Yet PMC provides no facts indicating what acts Shutterstock took and when, or as to which photographs; PMC's bulk pleading is insufficient to put a party on notice of what it has allegedly done wrong. In scouring the FAC, it appears that PMC mentions only one photograph—used in a printed publication by a *licensee* with a cover date of just 10 days after the termination of the parties' agreement—which is not even alleged to be among the over 2,400 thumbnail images attached to the FAC.

2

What is clear from the face of the Complaint is that the copyright claims are contract claims in disguise; they do not arise under the copyright laws, and the Court should dismiss the claims with prejudice accordingly.

## II.    SUMMARY OF RELEVANT FACTS AND ALLEGATIONS[1]

### A.    The Contract Between the Parties

This action arises out of a June 1, 2015 agreement between the parties pertaining to the creation, licensing, and use of photographic content (the "Contract"). FAC ¶ 2.[2] The Contract provided that PMC would license to Shutterstock previously-created archival images and new content created at a variety of events. FAC ¶ 2; Contr. § 3. It also provided opportunities to create content at two different types of new events. First, PMC agreed to provide Shutterstock with access to events that PMC put on (defined as "PMC Events"). Contr. § 3(a)(ii). Second, PMC agreed to provide Shutterstock with PMC's credentials to attend and photograph certain "Third Party Events" not hosted by PMC. Contr. § 3(a)(iii), Schd. D.

In exchange, Shutterstock agreed that PMC would retain ownership of the photographs Shutterstock's photographers took at PMC events or at Third Party Events using PMC's credentials. Contr. § 3(c). Shutterstock also agreed to pay PMC royalties on revenue generated from PMC's content, both archival and new, along with substantial nonrefundable advances paid

---

[1] On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's factual allegations as true. *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 510 (S.D.N.Y. 2018).

[2] The parties' Contract is attached as Exhibit A to the Declaration of Eleanor M. Lackman, dated October 9, 2020, and filed under seal. It is referred to hereinafter as the "Contract" or "Contr." PMC publishes brands that include *Variety*, *Rolling Stone*, and *WWD* (*Women's Wear Daily*), *id.* at ¶ 10, which gives PMC access to red carpet and runway content that can carry a high value where timely. Despite its cries of poverty in its pleadings, as of late last month (in exchange for a reported $225 million payment), PMC also owns an 80% stake in well-known publications *The Hollywood Reporter* and *Billboard*. *See* Keith J. Kelly, *Penske Media paid $225M for 80% Stake in The Hollywood Reporter Parent*, N.Y. Post, Sept. 24, 2020.

3

on a yearly basis. *Id.* § 6. PMC received free access to much of Shutterstock's library, and discounted access to the remainder. *Id.* § 2(a).

Notably, the Contract imposed different requirements for PMC Events than for Third Party Events. For PMC Events, the Contract required that "Shutterstock will provide editorial photographic event coverage at Shutterstock's expense, for all PMC Events." Contr. § 3(a)(ii); *see also* FAC ¶ 42. The Contract does not impose any requirement that Shutterstock provide such coverage at Third Party Events, nor any prohibition on Shutterstock covering Third Party Events using its own credentials. *See* Contr. § 3(a)(iii).

Further, while the Contract provides Shutterstock with "the right to be the sole third party" to use PMC's credentials" for Third Party Events, it does not preclude PMC from using its own credentials to create content at those events; to the contrary, it expressly contemplated that PMC would continue to use its own photographers at Third Party Events, requiring that "The in-house staff photographers currently employed by PMC shall produce images, footage and/or audio content that will be contributed to … Third Party Event Content." Contr. §§ 3(a)(iii), 3(e).

### B.   Background of the Current Dispute

The parties' relationship was largely without dispute for nearly five years until it was jolted by the COVID-19 pandemic. *Id.* ¶¶ 23, 27-28. As a direct result of the pandemic, the events that form the backbone of the Contract were cancelled or presented in an extremely limited or online-only basis that precluded the very content for which Shutterstock had agreed to pay substantial yearly advances.[3] This presented a classic example of frustration of purpose: the purpose for Shutterstock to enter into the Contract—access to and the ability to generate new, in-

---

[3] *See* https://en.wikipedia.org/wiki/List_of_events_affected_by_the_COVID-19_pandemic.

4

demand content from high profile events—simply no longer existed in any meaningful way.

Thus, on May 18, 2020, Shutterstock delivered a letter to PMC stating its intent to terminate the Contract under its termination provision.[4] FAC ¶ 27. Rather than engage in any discussion to amicably resolve this dispute in a manner that recognizes the reality of the current once-in-a-lifetime environment, PMC resorted to this preemptive lawsuit.

### C.      PMC's Claims and Allegations

PMC filed this action on June 17, 2020. In its initial Complaint, PMC asserted four claims: (1) Breach of Contract/Anticipatory Breach; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) violation of the DMCA, 17 U.S.C. § 1202; and (4) Copyright Infringement. PMC voluntarily dismissed the fourth cause of action for Copyright Infringement. ECF Nos. 17-19. Shutterstock then filed a Motion to Dismiss directed to PMC's Implied Covenant and DMCA claims. ECF Nos. 20-22. Rather than oppose, PMC filed the FAC, which continued to assert the causes of action challenged by Shutterstock's motion, but also reasserted a cause of action for Copyright Infringement. ECF No. 30. This Motion is directed to PMC's implied covenant and DMCA claims, and to its new claim for Copyright Infringement.

In the FAC, PMC's claim for Breach of the Implied Covenant of Good Faith and Fair Dealing alleges that, "[o]n various occasions," Shutterstock attended Third Party Events using credentials it obtained itself rather than credentials provided by PMC, and thus, Shutterstock owned the photographs taken by Shutterstock's photographers at those events rather than PMC. FAC ¶ 46. PMC alleges that because the Contract granted Shutterstock the right to be the sole

---

[4] PMC makes various unfounded allegations ascribing ill motives to Shutterstock's decision to notify PMC of termination of the Contract. While these allegations are false, they are not relevant to determination of this Motion.

third party to use PMC's credentials to photograph Third Party Events, "rejecting the use of PMC's credentials unfairly interferes with PMC's right to receive the benefits it expected to receive under the contract (the copyright in photographs at any third-party event that Shutterstock photographed and to which PMC tendered its credentials to Shutterstock), unfairly competes with PMC, and violates Shutterstock's duty of good faith and fair dealing by diminishing the value of PMC's photograph collection by reducing the number of photographs PMC owns and adds to that collection and can commercially exploit." *Id.* While these allegations are largely the same as in PMC's original Complaint, PMC's FAC posits that, "[w]hen the parties negotiated the Archive & Event Agreement, the parties contemplated, and PMC reasonably and justifiably understood, that Shutterstock would use PMC's credentials to take photographs at these third party events, to the extent PMC offered such credentials to Shutterstock for, and Shutterstock wished to photograph, these events, especially given that PMC was obligated to give its credentials exclusively to Shutterstock." FAC ¶ 44.

PMC's restated claim for violation of the DMCA again alleges briefly (again, in four primarily boilerplate paragraphs) that Shutterstock has misrepresented itself, rather than PMC, as the copyright owner of "approximately 2,300 photographs" that PMC claims it owns; unlike in its prior Complaint, PMC omits reference to specific events and simply lumps all the photographs together. FAC at ¶¶ 51-54. PMC claims in perfunctory and confusing fashion that, at some point, a cause of action for violation of the DMCA materialized from "credits" to Shutterstock for photographs that PMC claims it owns, and that such information is "falsified." *Id.* at ¶ 52. Ignoring the contractual terms that led to crediting in the first place (and which likely prompted the withdrawal of the prior DMCA claim), PMC proposes that the alleged

6

misattribution allows Shutterstock to conceal the fact that the license for the photographs has been terminated and Shutterstock is no longer an authorized *licensor*. *Id.* at ¶ 53. PMC claims further, "[o]n information and belief," that Shutterstock's licensees for such photographs might have misattributed the ownership of the photographs in their own uses. *Id.* at ¶ 54. PMC does not provide any specific examples illustrating the claimed misattribution; PMC does not plead that the misattribution did in fact occur. And, critically, PMC does not allege that the alleged "falsification" was done for purposes of ensuring that the photographs are infringed by itself and others, as the statute requires. *See id.* at ¶¶ 51-54.

Buried within these allegations is a passing reference to actual licensing, which presumably forms the factual basis for PMC's new copyright infringement claim as to the same "approximately 2,300 photographs" that it claims remained on Shutterstock's website after the termination date. *See id.* at ¶ 54. The FAC fails to identify any specific transfer or distribution of any of the 2,300 registered photographs, much less the date of such distribution by Shutterstock. *Compare id.* at ¶ 54 (referring to uses by licensees after July 17, 2020).

## III.    THE COURT SHOULD DISMISS THE SECOND THROUGH FOURTH CLAIMS

The Court must dismiss a complaint, or any portion thereof, that fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) unless it provides sufficient facts that, if "accepted as true, … 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court also may consider "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted); *see also Roth v. Jennings*, 489 F.3d 499,

7

509 (2d Cir. 2007). This includes the contract that forms the basis of a plaintiff's claims. *Int'l Audiotext Network, Inc. v. AM. Tel & Tel. T Co.,* 62 F.3d 69, 72 (2d Cir.1995) (considering agreement that is "integral to the complaint"); *see also Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297–98 (S.D.N.Y. 2009).

A.  **The Second Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Fails To State A Claim Upon Which Relief Can Be Granted**

1.  **Legal Standard**

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). The implied covenant includes "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Rowe v Great Atl. & Pac. Tea Co.,* 46 N.Y.2d 62, 69 (1978) (quoting 5 Williston, *Contracts* § 1293, at 3682 (Rev. Ed. 1937)). It also "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Dalton*, 87 N.Y.2d at 389 (quoting *Kirke La Shelle Co. v Paul Armstrong Co.,* 263 N.Y. 79, 87 (1933)).

However, "[t]he covenant will be breached only in a narrow range of cases." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 817 (2d Cir. 2014). Those narrow circumstances "include situations where 'an implied promise was so interwoven in the whole writing of a contract as to be necessary for effectuation of the purposes of the contract' or 'a party's acts subsequent to performance on the contract so directly destroy the value of the contract for another party that the acts may be presumed to be contrary to the intention of the parties.'" *George Town Assocs. S.A. v. Abakan, Inc.*, No. 15CV3435 DLC, 2015 WL 4923040, at *9 (S.D.N.Y. Aug. 18, 2015).

The terms that may be implied are limited: "no obligation can be implied that would be inconsistent with other terms of the contractual relationship." *Dalton*, 87 N.Y.2d at 389. *See also Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (the implied covenant "cannot be used to impose obligations that were not explicitly part of the agreement …, or to create, in essence, new, affirmative duties … that were not expressly set forth in the contract.") (cleaned up). Moreover, "where the instrument contains an express covenant in regard to any subject, no covenants are to be implied in respect to the same subject." *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 Civ. 25 PGG, 2011 WL 3251554, at *13 (S.D.N.Y. July 28, 2011).

Because "it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists," "a party who asserts the existence of an implied-in-fact covenant bears a heavy burden." *Rowe*, 46 N.Y.2d at 69. "Thus, a party making such a claim must prove not merely that it would have been better or more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced *is in fact implicit in the agreement viewed as a whole*." *Id.* (emphasis added). Here, PMC cannot meet its heavy burden.

### 2.     The Contract Does Not Include PMC's Alleged Implied Terms.

PMC asserts that Shutterstock breached the implied covenant of good faith and fair dealing by "declining to use the credentials for third party events that PMC was required to provide exclusively to Shutterstock under the Archive & Event Agreement's terms, attending these events using credentials that Shutterstock obtained for itself, and thereafter claiming

ownership of the resulting photographs."[5] FAC ¶ 63. The unexpressed, implied terms PMC

assumes by this allegation simply cannot coexist with the express terms in the parties' contract.

      **a.**      **The Contract Does Not Require Shutterstock To Attend And Photograph Third Party Events.**

As a threshold matter, Shutterstock is not required to photograph *any* Third Party Events

under the Contract. Under well-established rules of contract interpretation, this conclusion is

indisputable. Section 3(a)(ii) of the Contract requires Shutterstock to photograph every PMC

Event. Contr. §3(a)(ii). As to Third Party Events, there is no such requirement. *Cf.* §3(a)(iii).

The parties' omission of a parallel requirement that Shutterstock photograph all Third

Party Events, while at the same time—and in the same subsection of the Contract—including

such a requirement for PMC Events, means that Shutterstock is *not* required to photograph all

Third Party Events. "Under accepted canons of contract construction, when certain language is

omitted from a provision but placed in other provisions, it must be assumed that the omission

was intentional." *Sterling Inv'r Servs., Inc. v. 1155 Nobo Assocs. LLC*, 30 A.D.3d 579, 581

(2006); *see also Int'l Fid. Ins. Co. v. Cty. of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000)

("Sophisticated lawyers ... must be presumed to know how to use parallel construction and

identical wording to impart identical meaning when they intend to do so, and how to use

different words and construction to establish distinctions in meaning.").

The parties knew how to require that Shutterstock photograph all Third Party Events—

they did so, expressly, as to PMC Events. The absence of such language is incontrovertible: As

to Third Party Events, Shutterstock had no such obligation. *See also, e.g., Dalton*, 87 N.Y.2d at

---

[5] To the extent PMC is alleging any other purported breach of contract alleged in the Complaint is a breach of the implied covenant, such claim is duplicative of PMC's express breach of contract claim and must be dismissed. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 205 (S.D.N.Y. 2011).

389 ("no obligation can be implied that would be inconsistent with other terms of the contractual relationship").

### b.  Shutterstock Did Not Deprive PMC of the Benefits of Its Bargain.

It necessarily follows that, as a matter of law, PMC cannot establish that it has been denied the benefits of the Contract. While PMC vaguely alludes to "unfair competition", the only harm PMC articulates is that it did not receive ownership of photos taken at Third Party Events that Shutterstock attended with credentials other than PMC's. FAC ¶ 46.

On inspection, this supposed injury is hollow: If Shutterstock had not attended the Third Party events at all—which the Contract plainly allows—PMC would have suffered the same illusory harm. Thus, PMC has not alleged damages that are traceable to Shutterstock's alleged breach of the covenant PMC asks this Court to read into the Contract, *i.e.*, that Shutterstock is *required* to use PMC's credentials at all Third Party Events.

PMC's allegation that it has been denied the benefits of the Contract is also contradicted by other plain language. The Contract expressly contemplated that PMC could still send its own photographers to Third Party Events to generate Third Party Event Content, which it would own and on which it would be paid royalties. Contr. § 3(e). That Shutterstock used its own credentials to attend Third Party Events did not preclude PMC from exercising these rights.[6] *See Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1517 (S.D.N.Y. 1989) (implied covenant only protects party from deprivation of "express, explicitly bargained-for benefits" of contract).

---

[6] That Shutterstock did not preclude PMC from using its own credentials, or interfere with PMC's ability to obtain credentials, distinguishes this case from *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *6 (S.D.N.Y. June 8, 2020), the only case PMC cited in its response to Shutterstock's pre-motion letter where an implied covenant was found to exist. In *Vibes*, the plaintiff alleged that the defendant convinced customers to stop doing business with the plaintiff and instead do business only with the plaintiff "for the purpose of ousting it from its position as the exclusive carrier of the defendant's marks in the territory." *Id.* No similar diversion of business is alleged here.

In reality, PMC has received substantial and numerous benefits under the Contract, including access to Shutterstock content, payment of royalties, and sizeable nonrefundable royalty advances, regardless of whether Shutterstock used PMC's credentials or its own. *See* Contr. §§ 2(a)-(d), 6.[7] Thus, PMC has not alleged any action by Shutterstock that "so directly destroy[s] the value of the contract for [PMC] that the acts may be presumed to be contrary to the intention of the parties," such that "the implied covenant of good faith may be implicated." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990).

### c.   The Alleged Implied Covenant Would Improperly Impose an Un-Bargained For Restriction on Shutterstock.

Rather, if PMC's argument is that the Contract allows Shutterstock to refrain from attending Third Party Events, but that a purported implied covenant bars Shutterstock from attending them using its own credentials, it is nothing more than an impermissible attempt "to undermine [Shutterstock]'s general right to act on its own interests" in a way that—at most— "may incidentally lessen [PMC]'s anticipated fruits from the contract." *M/A-COM*, 904 F.2d at 136. The implied covenant cannot be stretched that far. *Id.* This is an attempt at court-sanctioned "unfair competition"—not the other way around.[8]

New York has a "general public policy favoring robust and uninhibited competition." *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 214 (S.D.N.Y. 2013). This policy is so strong that

---

[7] PMC has not even alleged that it was deprived of royalties, over and above the advances it received, because Shutterstock used its own credentials. Even the grantor of exclusive rights is not entitled to an implied covenant, enforceable against the grantee, when the parties' written agreement provides for minimum advances, allows the grantor to exploit the rights themselves, and contains an integration provision, as this Contract does. *See Vacuum Concrete Corp. of Am. v. Am. Mach. & Foundry Co.*, 321 F. Supp. 771, 774 (S.D.N.Y. 1971).

[8] PMC's bare allegation that Shutterstock's use of its own credentials constitutes "unfair competition," without allegations of facts supporting such a conclusion, are not sufficient to meet Rule 8's pleading standard, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

12

even express anti-competition covenants in contracts are routinely found to violate public policy. *See Calico Cottage, Inc. v. TNB, Inc.*, No. 11-CV-0336 DLI MDG, 2014 WL 4828774, at *5 (E.D.N.Y. Sept. 29, 2014) (courts balance "the competing public policies in favor of robust competition and freedom to contract").

There is no express clause here, and the implied covenant cannot be applied as a "gap-filler" to apply the handcuffs PMC now wishes to impose. Had PMC intended to restrict Shutterstock's ability to develop its own relationships and enjoy the fruits of the same—and had Shutterstock been willing to concede such servitude—the parties knew how to memorialize those kinds of terms. Instead, the parties restricted PMC's right to lend its access to Third Party Events to others, and did not restrict Shutterstock's right to use its own credentials. That the parties negotiated express covenants on this subject precludes the Court from inferring an implied covenant on the same subject. *RJ Capital*, 2011 WL 3251554 at *13.

Further, it was entirely foreseeable that Shutterstock would obtain credentials through new relationships (to say nothing of Shutterstock's existing relationships, which Shutterstock would have forfeited under PMC's theory). Indeed, PMC admits that this relationship-building was a natural consequence of the Contract. *See* FAC ¶ 21 (Shutterstock viewed the Contract as a means to "finally 'step[]into the world of red carpets and fashion runways.'"). Of course, PMC knew (or should have known) that, upon stepping into that world, Shutterstock would develop its own relationships and obtain its own event credentials. Despite this, PMC did not negotiate any restriction precluding Shutterstock from using those credentials.

This fact is dispositive, because "it is not the function of the courts to remake the contract agreed to by the parties" to add terms that PMC now believes "would have been better or more

13

sensible to include." *Rowe*, 46 N.Y.2d at 69. Such do-overs are not allowed via the implied

covenant of good faith and fair dealing or otherwise. *See Metro. Life Ins. Co*, 716 F. Supp. at

1519 ("While the Court stands ready to employ an implied covenant of good faith to ensure that

such bargained-for rights are performed and upheld, it will not, however, permit an implied

covenant to shoehorn into an indenture additional terms plaintiffs now wish had been

included."). And as noted above, PMC received substantial consideration supporting

Shutterstock's right to be the sole third-party recipient of PMC access.

> **3.     The Parties' Negotiations and PMC's Alleged Subjective
> Understanding of the Contract Cannot Create a New Contract Term.**

Recognizing the fatal deficiencies in this claim as it was originally pleaded, in the FAC,

PMC alleges that "[w]hen the parties negotiated" the Contract, they "contemplated" that

Shutterstock would use PMC's credentials if offered for an event Shutterstock wished to

photograph. FAC ¶ 44. This allegation fails to establish any enforceable covenant because the

parties did not incorporate their supposed "contemplation" into the Contract. Further, the parties

expressly agreed that the Contract "constitutes the entire agreement between the parties" and

"supersedes all prior or simultaneous agreements, discussions, negotiations and statements … ."

Contr. § 16. Where, as here, the parties have agreed to an integrated contract, evidence of the

parties' negotiations is inadmissible to add to the contract's terms. *See W.W.W. Assocs., Inc. v.

Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("[W]hen parties set down their agreement in a clear,

complete document, their writing should as a rule be enforced according to its terms. Evidence

outside the four corners of the document as to what was really intended but unstated or misstated

is generally inadmissible to add to or vary the writing.").

This rule is particularly applicable here because the parties clearly knew how to impose

the obligation urged by PMC, and did so with respect to PMC Events. If the parties considered whether Shutterstock should be required to use PMC's credentials if offered and *still* omitted any requirement that Shutterstock do so, that is an even stronger indication that the parties did not agree to bar Shutterstock from attending Third Party Events using its own credentials.

Moreover, while "a merger clause does not prevent a court from inferring a covenant of good faith and fair dealing …, such an obligation can only be found where the implied term is consistent with other terms in the contract." *SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 65 (2004). Here, adding an additional term to the Contract based on the parties' "contemplation" during their negotiations would directly contradict the parties' express agreement that the Contract "supersedes all prior … negotiations," in addition to contradicting the plain meaning of the Contract, as set forth above. Contr. § 16.

PMC has further added an allegation that PMC *only*—not both parties—understood that Shutterstock would use PMC's credentials if offered. FAC ¶ 44. This allegation is similarly irrelevant. PMC's own subjective understanding of the Contract, which is not reflected in the language of the Contract, "has no bearing on the construction of the contract." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 300(S.D.N.Y. 1998 ("[T]he 'undisclosed, subjective intent of the parties has no bearing' on the construction of the contract.").

For all of the foregoing reasons, the implied covenant that PMC asks this Court to recognize does not exist in the parties' Contract. Therefore, the Court should dismiss the Second Claim with prejudice.

### B.      PMC's Allegations Do Not State a Claim for a Violation of the DMCA

As PMC's allegations—threadbare as they are—show, PMC's claim for a violation of Section 1202(a) of the DMCA, 17 U.S.C. § 1202(a), has no place in PMC's "straightforward

breach of contract claim." *Krechmer v. Tantaros*, 747 F. App'x 6, 10 (2d Cir. 2018). To plead a cause of action for a violation of Section 1202(a), PMC must proffer sufficient facts to meet multiple elements. Despite its push for a strict pleading standard for DMCA claims, *see* Defs.' Memo. of Law, *Werner v. Penske Media Corp.*, No. 2:17-cv-6191, 2017 WL 9519565, § III.C (C.D. Cal. Nov.13, 2017), PMC falls far short and fails on multiple fundamental grounds. Indeed, by its own admissions, and as bolstered by its own lingering artifacts in its FAC, PMC cannot state a claim—not even after having been educated on the deficiencies previously in Shutterstock's original Motion to Dismiss.[9]

### 1.    PMC Fails to Plead the Core Facts of Actual Infringement that the DMCA Requires.

As a threshold matter, PMC's claim ignores the fundamental element of infringement. This is fatal to its claim. As the text of the statute makes clear, the DMCA's purpose and function is to curtail infringement of copyright rights. *See* 17 U.S.C. § 1202(a) (providing that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal *infringement* – (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false.") (emphasis added); *see also Fischer v. Forrest*, 2020 WL 4457943 at *14-15 (2d Cir. Aug. 4, 2020) (describing purposes of DMCA and elements in conjunction with infringement). Accordingly, actual or likely infringement must result. *Ward v. Nat'l Geographic Soc.*, 208 F. Supp. 2d 429, 449-50 (S.D.N.Y. 2002) (an intent to induce, enable, facilitate or conceal an infringement is a

---

[9] As a way to get around the fact that the DMCA claim sounded only in "misattribution" rather than "infringement," *see* Part III.C.1., *infra*, PMC changed its definition of the bulk photographs from "Misattributed Photographs" to "the 2,300 Photographs." However, at the heart of its DMCA claim, PMC left in the term, FAC ¶ 71, which confirms that PMC's DMCA claim is no stronger than it was previously. Indeed, as explained below, it appears to have additional problems than it did previously.

prerequisite for liability under Section 1202(a)); *Schiffer Pub., Ltd. v. Chronicle Books, LLC*, No. Civ.A. 03-4962, 2004 WL 2583817, at *13 (E.D. Pa. Nov. 12, 2004); *compare Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (DMCA claim failed where thumbnail images, offered for purposes of identification, omitted CMI, and plaintiff failed to show that users were more likely to infringe other than as should be reasonably expected). Failure to allege facts relating to some infringement gives the DMCA no viability. *See id.*; *see also Odom v. Navarro*, No. 09-21480-CIV-UNGARO, 2010 WL 11505459, at *7 (S.D. Fla. Mar. 11, 2010) (Section 1202(a) "clearly requires a showing of Defendants' intent to induce, enable, facilitate, or conceal infringement of the Images.").

As Shutterstock noted in its first Motion to Dismiss, PMC alleges no facts suggesting that the vaguely alleged "miscrediting" will "induce, enable, facilitate, or conceal" any infringement of any type. It again alleges only that as a result of the license of certain of the 2,300 photographs, Shutterstock's customers and licensees will in turn "*misattribute* the copyright ownership information in connection with their own uses of the licensed images." FAC ¶ 54 (emphasis added). This is no different than saying that PMC may not get credit, or that Shutterstock will account incoming license revenue to itself rather than to PMC. Thus, putting aside that PMC fails to allege that any of these scenarios has ever happened, neither of these scenarios sounds in infringement: at best, if true, they are breaches of the parties' contract.[10]

But perhaps most telling as to the sufficiency of the claim, as well as PMC's belief in it,

---

[10] If PMC believes it is not being paid for the licensed uses, its recourse is against Shutterstock under the contract; likewise, if Shutterstock's licensees are not properly providing credit, PMC can look to Shutterstock under Section 3(d) of the Contract. At this stage, Shutterstock has insufficient information to know what the nature or extent of the photographs is supposed to be. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (dismissing DMCA claim where plaintiff provided no facts to show what CMI was removed and how).

17

is that the *only* places that the term "infringement" or any other variation of the word exist

appear in connection with two conclusory and boilerplate recitations of elements. The first

mention is in PMC's conclusory statement that Shutterstock's unspecified "exploitation" of the

2,300 Photographs is infringing. FAC ¶ 53. Taken at face value, PMC's allegation is that

Shutterstock seeks to trick its own customers into thinking the customer has a license to use the

photographs, only to find out that the use is infringing, which in a typical case would cause the

licensee to demand indemnification from Shutterstock. Thus, PMC's scenario is not plausible.

Moreover, even taking PMC's absurd allegations as true, they provide very little factual

material pertaining to use of the photographs, none of which shows infringement or any violation

of other independently required elements of the DMCA. PMC only provides sets of thumbnail

images containing watermarks of the sites where the photographs were displayed, along with

information about the copyright registration at the bottom of the page. *See* FAC, Ex. 1. It is

unclear what this exhibit depicts, but it does not appear to be a true and correct copy of

Shutterstock-provided material, and the FAC provides no examples to show what it is talking

about. *See id.* at ¶ 67. If display of thumbnail images is the alleged "infringement," it does not

give rise to a DMCA claim as a matter of law. *See Kelly*, 77 F. Supp. 2d at 1122.

There is no factual material showing that Shutterstock issued a post-termination license

for *any* of the photographs, nor is there any other information indicating that any license did not

include credit that was proper at the time of the license. PMC does not provide any example of

unlicensed use (*see* Part II.D., *infra*), much less one that shows an omission of credit as required.

Rather, its cursory and confusing treatment of this issue confirms that PMC has no facts to

support the infringement element. *See Free Speech Sys.*, 390 F. Supp. 3d at 1175 (dismissal for

18

failure to identify "what" and "how" in removal of CMI); *see also* n.16, *infra*.

The second instance of the word "infringement" does not show up until the boilerplate recitation of elements at Paragraph 71 of PMC's Complaint. As noted in Shutterstock's prior motion, this indisputably "will not do" under the *Twombly/Iqbal* pleading standards. Given the absence of facts and the speculative nature of the claims themselves, the facial deficiency of the DMCA claim is clear, and the claim should be dismissed accordingly.[11]

> **2.      PMC Fails to Meet the Pleading Test for the Double Scienter Requirement Under Section 1202(a).[12]**

While the DMCA claim already fails for the reasons set forth above, the failure to sufficiently set forth facts to meet the "double scienter requirement," as described by the Second Circuit in *Krechmer*, underscores that the DMCA is not the proper vehicle for PMC's claims. 747 F. App'x at 9. "In order to plead a violation of § 1202(a), plaintiff … must plausibly allege that defendant knowingly provided false information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Id.* Here, in addition to there being no sufficiently pleaded infringement, PMC has failed to plausibly plead both scienter elements, as the law additionally requires.[13]

---

[11] Adding in a reference to Shutterstock itself is a distinction without a difference; none of Shutterstock's prior arguments turned or relied on any such caveat.

[12] While the Complaint does not specify which subsection of Section 1202 PMC intends to invoke, PMC's pre-motion letter identifies Section 1202(a) as the basis for the claim. ECF No. 15. Regardless, claims pertaining to removal or alteration under Section 1202(b) contain similar elements and similarly are routinely dismissed at the pleading stage for failure to identify how identifiable infringements have been or will be affected, *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673-75 (9th Cir. 2018), *cert denied*, 139 S. Ct. 1222 (2019), identify specifically what and how CMI was removed, *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018), or plead facts supporting mental state. *See, e.g., Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 632 (S.D.N.Y. 2016).

[13] While intent can be pleaded generally, a plaintiff still needs to proffer enough facts. *Iqbal*, 556 U.S. at 686-87 ("Rule 9 merely excuses a party from pleading [malice] under an elevated pleading standard. It does not give him license to evade the less rigid – though still operative – strictures of Rule 8"); *Masck v. Sports Illustrated*, No. 13-10226, 2014 WL 12658971, at *4 (E.D. Mich. Mar. 10, 2014) (amended complaint futile because it made "only a conclusory allegation with no factual basis for this Court to plausibly infer actual knowledge under the DMCA").

*First*, the FAC is vague as to whether and what information is false and, if false, supplied by Shutterstock with knowledge that it was false. As PMC acknowledged in its pre-motion letter, PMC supplies the metadata for images under the Contract. *See* ECF No. 15 at 3 (referencing Section 4 of the Contract). If the information it supplied caused the alleged misattribution, then Shutterstock had no basis to know that the credit was false, and PMC is the one responsible for the purported error. PMC certainly puts forth no facts that Shutterstock provided this information *anew* after July 17, 2020, so the outcome here is no different when alleging post-termination violations than it was before when PMC withdrew the claim.

Indeed, there is no way to glean from the FAC what is false—knowing or not. PMC fails to provide any specificity or examples of how the "certain of the 2,300 Photographs" (FAC ¶ 54) were supplied and to whom, what the misinformation looked like (for example, whether "owner" referred to party responsible for licensing versus party with copyright ownership versus creator of the photograph, as is possible under Paragraph 3(c) of the parties' Contract), or any other fact that show that the information is false. As noted, PMC mentions use on two Shutterstock-affiliated photograph licensing websites but fails to provide anything showing what the use looked like—not as to a single one of the 2,300 photographs. Where that predicate information is unknown, it cannot be assumed that Shutterstock provided anything that constituted false CMI. *See Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, No. 17 Civ. 8613, 2018 WL 4830091, at *3 (S.D.N.Y. Oct. 4, 2018) (finding bare allegation that defendant replaced plaintiff's CMI with its own to be conclusory under *Iqbal*).[14]

---

[14] Because PMC does not include any examples of the violation, it proffers nothing to show that the information provided was in fact false CMI in any instance, much less all of them, which is another basis for dismissal. *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11 C 5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012) (no DCMA claim where claimed information was not CMI); *see also Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d

If Shutterstock could somehow figure out what PMC is talking about, PMC still fails to identify facts that would lead Shutterstock to *know* that these unidentified 2,300+ photographs were in fact misattributed. As PMC effectively admits by withdrawing its prior claim as to pre-termination uses, it is pivotal on the knowledge question that PMC does not allege that it ever gave Shutterstock—a multiyear licensee under a significant contract—notice of the alleged problem and an opportunity to cure, and PMC does not allege that Shutterstock did anything new after the Contract ended.[15]

Indeed, the existence and terms of the Contract make it implausible to support the requisite knowing falsity, much less the acts that Shutterstock allegedly took, before or after the termination date, to "falsify" anything. Even PMC hedges: when it comes time to put forth the "who, what, where, why, and how," PMC's only allegations as to knowing falsity are made "on information and belief." *See* FAC ¶ 68; *compare Morgan v. Associated Press*, No. 15-03341-CBM, 2016 WL 6953433, at *3 (C.D. Cal. Mar. 16, 2016) ("a formulaic recitation of the elements of a cause of action, including allegations regarding a defendant's state of mind, are not sufficient" for a DMCA claim; further noting that where defendant believed it had permission to use the photographs, allegations of intent against defendant were "not plausible"). Accordingly,

---

1046, 1052 (S.D. Cal. 2016) (placing one's own copyright notice on the same page as plaintiff's photographs does not constitute false CMI). Where a plaintiff does "not identify the CMI at issue in the case," the defendants are left "without a basis to understand the nature of the claim against them" and the claim should be dismissed. *Design Basics, LLC v. WK Olson Architects, Inc.*, No. 17 C 7432, 2018 WL 3629309 at *4 (N.D. Ill. July 31, 2018).

[15] Indeed, the concern may never have arisen because the licensees *did* credit PMC pursuant to Section 3(d) of the Contract, and it was only the desire to manufacture an expensive-looking cause of action that led to PMC's sudden realization of alleged "rampant" violations, none of which PMC has identified with any specificity. Paragraph 3(d) provides how credit is to be supplied where a licensee uses a PMC photograph. *See* Contr. § 3(d) ("Shutterstock shall use commercially reasonable efforts to include in all license agreements entered into after the date hereof that any PMC Content licensed and used by licensees shall include a copyright attribution to PMC if such PMC Content is used in an editorial context. PMC shall have the right to waive the foregoing requirement in its sole reasonable discretion. PMC hereby acknowledges that Shutterstock has no obligation to amend any existing license agreements, the terms of which may include broad waivers of attribution.").

in light of the above, the Complaint falls far short of pleading that Shutterstock "knowingly

provided false [copyright management] information." *Krechmer*, 747 F. App'x at 9.

*Second*, it is implausible that Shutterstock provided false information with the intention

to "induce, enable, facilitate, or conceal" an infringement. *See id.* As noted above, even PMC

cannot bring itself to say that Shutterstock's goal was to conceal or encourage infringement;

PMC's only claimed injury is misattribution. Moreover, it is absurd to think that an entity with

licensing as its lifeblood was seeking to promote unlicensed uses in allegedly providing the

collective 2,300 photographs without the attribution that PMC alleges was warranted.

Even where intent may be pleaded generally, plausibility is still required. *Twombly*, 550

U.S. at 561-62. And an allegation has facial plausibility only "when the plaintiff pleads factual

content that allows the court to draw the *reasonable* inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). A complaint's factual allegations

should be rejected as implausible in the face of an "obvious alternative explanation." *Id*. at 682

(citation omitted). Courts have thus declined to accept factual allegations that, as here, are

contrary to "common sense." *Id*. at 679. Moreover, in the only paragraph where infringement is

mentioned in the context of the DMCA claim, *see* FAC ¶ 71, PMC alleges intent only on

information and belief, with no supplied facts. This is not enough. *Iqbal*, 556 U.S. at 678;

*AppSoft Dev., Inc. v. Diers, Inc.*, No. 3:13-cv-1520, 2014 WL 3893316, at *4 (M.D. Fla. Aug. 8,

2014) (reciting language of Section 1202(a) and making generalized allegations that defendants

have committed the act was insufficient to avoid dismissal of DMCA claim).

Accordingly, because PMC fails to plead likelihood of infringement, knowing falsity of

the information provided in the 2,300 photographs *and* Shutterstock's intent to aid infringement,

PMC cannot state a claim. Moreover, as the elements cannot be pleaded under the circumstances alleged, namely where no further infringement is alleged at all much less plausibly, the DMCA claim should be dismissed with prejudice.

### C.    PMC Has Failed to State a Claim for Copyright Infringement

As noted above, PMC alleges in a brief boilerplate statement (FAC ¶¶ 76-79) that Shutterstock has engaged in 2,300 acts of copyright infringement. Such claims are implausible and otherwise deficient on multiple grounds.

First, generalized statements such as "Shutterstock has, within the United States, reproduced, distributed, and/or displayed the 2,300 Photographs on and after July 17, 2020" are insufficient to meet the notice pleading requirements in general and similarly fall short of the *Twombly/Iqbal* test. A properly pleaded copyright infringement claim must allege "1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyright have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Palmer Kane LLC v. Scholastic Corp.*, No. 12 CV 3890, 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398) (motion to dismiss granted where complaint did not identify which works were infringed when, and contained broad assertions regarding exceeding scope of license); *see also LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 507-09 (S.D.N.Y. 2015); *Cole v. John Wiley & Sons*, No. 11 Civ. 2090 (DF), 2012 WL 3133520, at *11-14 (S.D.N.Y. Aug. 1, 2012) (similar).

Second, assuming that Shutterstock has sufficient information to know which photographs PMC is alleging were infringed and in what manner, which Shutterstock does not,

23

the claim is implausible. To allege a claim for copyright infringement a plaintiff must identify ownership of valid, registered copyrights; and unauthorized copying of the original elements of the plaintiff's work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Additionally, to state a direct copyright infringement claim, a plaintiff must allege volitional conduct on the part of the defendant. *See Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 130-32 (2d Cir. 2008). PMC does not allege that the 2,300 photographs were uploaded originally without authorization, and therefore the claim logically sounds, if at all, in the fact that Shutterstock allegedly did not remove the 2,300 photographs from its website by July 17, 2020. The theory fails, however, because leaving something up is not a volitional act of infringement under the Copyright Act. *See, e.g., Parker v. Paypal, Inc.*, No. CV 16-4786, 2017 WL 3508759, at *4 (E.D. Pa. Aug. 16, 2017) (mere hosting is not infringement); *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 n.13 (C.D. Cal. 2016); *see also Minden Pictures, Inc. v. BuzzFeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) (copyright infringement claim accrued when photographs were first posted on website). Moreover, offering images for the purpose of identifying what is being sold (such as the low-resolution thumbnail images shown here, which are offered to demonstrate the image that would be licensed) also is a classic example of fair use, which makes the claim untenable for a separate reason. *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007); *Rosen v. eBay, Inc.*, No. CV 13-6801 MWF (Ex), 2015 WL 1600081, at *15-20 (C.D. Cal. Jan. 16, 2015) (photographs of magazine photographs, used to represent physical magazines for sale, is fair use); *see also Noland v. Janssen*, 17-cv-5452 (JPO), 2020 WL 2836464, at *4, *5-6 (S.D.N.Y. June 1, 2020) (granting motion to dismiss).

PMC references that "certain" of the 2,300 photographs have been licensed, FAC ¶ 54,

but the FAC leaves little further detail. The only specific photograph mentioned as being used in any manner, other than by being posted online for license, is one that appeared in the cover of *Us Weekly* magazine, which showed a print date of July 27, 2020. FAC ¶ 33.[16] But at best, this only shows use by a licensee after the effective date of termination of the Contract. PMC notably fails to allege that *Shutterstock* acted outside the scope of the parties' Contract via this use, *i.e.*, that it provided content to any third party after July 17, 2020. Further, because PMC fails to allege that the photograph was within the scope of the registrations that have been issued by the U.S. Copyright Office. Without such a registration, the claim fails as a matter of law. *See Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881, 886 (2019) (no claim for infringement may be instituted until registration issues).[17]

## IV.    CONCLUSION

While Shutterstock disputes PMC's breach of contract claim, its lawsuit sounds in nothing more than that. As a matter of law, PMC cannot renegotiate the parties' contract to give it a claim for breach of the implied covenant, and as PMC's two unavailing bites at the apple show, its DMCA and infringement claims have no place in a dispute arising from a contract. Accordingly, Shutterstock respectfully requests that this Court dismiss PMC's Second, Third, and Fourth Causes of Action with prejudice.

---

[16] As is common knowledge among anyone who has ever purchased a print magazine, magazine print dates generally post-date their actual newsstand arrival dates. Moreover, a magazine does not choose an image the date that the magazine ships. Accordingly, where the only alleged use is for a magazine that likely shipped before July 17, 2020, precision in PMC's allegations is particularly necessary if this isolated reference is to be sufficient to state a plausible claim.

[17] Shutterstock believes that PMC has included in its group registrations hundreds of photographs that PMC does not own. To the extent that PMC agrees that any asserted registrations are invalid, there would be no basis to find infringement. *See Medforms v. Healthcare Mgmt. Solns, Inc.*, 290 F.3d 98, 109 (2d Cir. 2002).

New York, New York                    Respectfully submitted,
October 9, 2020
                                      MITCHELL SILBERBERG & KNUPP LLP


                                      By:  s/Eleanor M. Lackman
                                           Eleanor M. Lackman
                                           437 Madison Ave., 25th Floor
                                           New York, New York 10022-7001
                                           Telephone: (212) 509-3900
                                           Facsimile: (212) 509-7239
                                           Email: eml@msk.com

                                           *Attorneys for Defendant*
                                           *Shutterstock, Inc.*