UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

PENSKE MEDIA CORPORATION,           :

                                          :           No. 1:20-CV-04583 (MKV)

                         Plaintiff,           :

                                          :

                  v.           :

                                          :

SHUTTERSTOCK, INC.           :

                                          :

                         Defendant.           :

-----------------------------------------------------------------x

**PLAINTIFF PENSKE MEDIA CORP.'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT SHUTTERSTOCK, INC.'S MOTION TO DISMISS THE SECOND,
THIRD, AND FOURTH CLAIMS FOR RELIEF IN THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.   PMC HAS PROPERLY ALLEGED THAT SHUTTERSTOCK
     BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR
     DEALING........................................................................................................... 3

     A.   PMC's Allegations State a Claim for Breach of the Implied
          Covenant ................................................................................................. 3

     B.   Shutterstock's Arguments Against the Existence of an Implied
          Covenant Lack Merit .............................................................................. 7

II.  PMC HAS PROPERLY ALLEGED SHUTTERSTOCK'S COPYRIGHT
     INFRINGEMENT............................................................................................. 12

III. PMC HAS PROPERLY ALLEGED A DMCA VIOLATION ......................................... 18

CONCLUSION..............................................................................................................24

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Agence France Presse v. Morel*,
769 F. Supp. 2d 295 (S.D.N.Y. 2011)...................................................................... 21

*Agence France Presse v. Morel*,
934 F. Supp. 2d 547 (S.D.N.Y. 2013)...................................................................... 16

*AppSoft Dev., Inc. v. Diers, Inc.*,
No. 13-CV-1520, 2014 WL 3893316 (M.D. Fla. Aug. 8, 2014) ............................. 20

*Arista Records LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009)...................................................................... 16

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)...................................................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................. 12

*BanxCorp. v. Costco Wholesale Corp.*,
723 F. Supp. 2d 596 (S.D.N.Y. 2010)...................................................................... 22

*BWP Media USA Inc. v. Polyvore, Inc.*,
922 F.3d 42 (2d Cir. 2019)................................................................................. 16, 17

*Calico Cottage, Inc. v. TNB, Inc.*,
No. 11-CV-0336 (DLI) (MDG), 2014 WL 4828774 (E.D.N.Y. Sept. 29, 2014) .................... 10

*Capitol Records, Inc. v. MP3tunes LLC*,
821 F. Supp. 2d 627 (S.D.N.Y. Aug. 22, 2011)....................................................... 17

*Cartoon Network LP, LLP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008)............................................................................... 16, 17

*Cole v. John Wiley & Sons, Inc.*,
No. 11-CV-2090 (DF), 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ...................... 13

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
650 F. Supp. 2d 314 (S.D.N.Y. 2009)........................................................................ 7

*Dalton v. Educ. Testing Serv.*,
   87 N.Y.2d 384 (1995) ................................................................................................ 4

*Dalton*, 87 N.Y.2d at 384; *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*,
   769 F.3d 807 (2d Cir. 2014) ...................................................................................... 7

*Design Basics, LLC v. WK Olson Architects, Inc.*,
   No. 17 C 7432, 2018 WL 3629309 (N.D. Ill. July 31, 2018) ................................... 22

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011) ........................................................................ 7

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) .................................................................... 22

*George Town Assocs. S.A. v. Abakan, Inc.*,
   No. 15-CV-3435 (DLC), 2015 WL 4923040 (S.D.N.Y. Aug. 18, 2015) .................... 5

*Goldstein v. Metro. Reg'l Info. Sys., Inc.*,
   No. 15-CV-2400, 2016 WL 4257457 (D. Md. Aug. 11, 2016) ................................. 17

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998) ........................................................................... 7

*Hirsch v. CBS Broad. Inc.*,
   No. 17-CV-1860 (PAE), 2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017) ............... 21, 22

*In re DDAVP Direct Purchaser Antitrust Litigation*,
   585 F.3d 677 (2d Cir. 2009) ...................................................................................... 22

*In re Musicland Holding Corp*,
   386 B.R. 428 (S.D.N.Y. 2008) ................................................................................... 10

*Int'l Fid. Ins. Co. v. Cty. of Rockland*,
   98 F. Supp. 2d 400 (S.D.N.Y. 2000) ........................................................................... 7

*Jarvis v. K2 Inc.*,
   486 F.3d 526 (9th Cir. 2007) ..................................................................................... 14

*John Wiley & Sons, Inc. v. DRK Photo*,
   998 F. Supp. 2d 262 (S.D.N.Y. 2014) ....................................................................... 14

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
   No. 08-CV-9116 (PGG), 2009 WL 321222 (S.D.N.Y. Feb. 9, 2009) ....................... 12

iii

*Kelly v. Arriba Soft Corp.*,
  77 F. Supp. 2d 1116 (C.D. Cal. 1999) ................................................................. 19

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811, 822 (9th Cir. 2003) ....................................................................... 19

*Krechmer v. Tantaros*,
  747 F. App'x 6 (2d Cir. 2018) .............................................................................. 23

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*,
  No. 17-CV-8613 (JFK), 2018 WL 4830091 (S.D.N.Y. Oct. 4, 2018) ................... 22

*Lima v. Hatsuhana of USA, Inc.*,
  No. 13-CV-3389 JMF, 2014 WL 177412 (S.D.N.Y. Jan. 16, 2014) ...................... 17

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
  83 F. Supp. 3d 501 (S.D.N.Y. 2015) ..................................................................... 13

*M/A-COM Sec. Corp. v. Galesi*,
  904 F.2d 134 (2d Cir. 1990) ............................................................................ 7, 11

*Mango v. BuzzFeed, Inc.*,
  970 F.3d 167 (2d Cir. 2020) ........................................................................ 3, 18, 19

*Masck v. Sports Illustrated*,
  No. 13-10226, 2014 WL 12658971 (E.D. Mich. Mar. 10, 2014) ........................... 22

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
  716 F. Supp. 1504 (S.D.N.Y. 1989) ................................................................ 11, 12

*Michael Grecco Prods., Inc v. GlowImages, Inc.*,
  No. 18-CV-902, 2020 WL 1866172 (D. Del. Apr. 6, 2020),
  2020 WL 1866000 (D. Del. Apr. 14, 2020) ..................................................... 14, 21

*Michael Grecco Prods., Inc. v. Alamy, Inc.*,
  372 F. Supp. 3d 131 (E.D.N.Y. 2019) ...................................................... 18, 20, 21, 22

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
  390 F. Supp. 3d 461 (S.D.N.Y. 2019) ............................................................. 14, 15

*Morgan v. Associated Press*,
  No. 15-03341-CBM-JEM, 2016 WL 6953433 (C.D. Cal. Mar. 16, 2016) .............. 22

*New Paradigm Software Corp. v. New Era of Networks, Inc.*,
  No. 99-CV-12409 (RMB) (AJP), 2002 WL 31749396 (S.D.N.Y. Dec. 9, 2002) ...... 9

*Noland v. Janssen*,
 No. 17-CV-5452 (JPO), 2020 WL 2836464 (S.D.N.Y. June 1, 2020) .................................... 18

*Palmer Kane LLC v. Scholastic Corp.*,
 No. 12-CV-3890 (TPG), 2013 WL 709276 (S.D.N.Y. Feb. 27, 2013) ................................... 13

*Parker v. Paypal, Inc.*,
 No. 16-CV-4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) ............................................ 16

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
 No. 11-CV-5177, 2012 WL 414803, (N.D. Ill. Feb. 8, 2012) ................................................ 22

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
 572 U.S. 663 (2014).............................................................................................................. 15

*Poller v. BioScrip, Inc.*,
 974 F. Supp. 2d 204 (S.D.N.Y. 2013)....................................................................................... 7

*Psihoyos v. John Wiley & Sons, Inc.*,
 748 F.3d 120 (2d Cir. 2014).................................................................................................... 15

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*,
 No. 10-CV-24 (PGG), 2011 WL 3251554 (S.D.N.Y. July 28, 2011) ................................. 7, 9

*Rosen v. eBay, Inc.*,
 No. 13-CV-6801, 2015 WL 1600081 (C.D. Cal. Jan. 16, 2015) ............................................ 18

*Rowe, v Great Atl. & Pac. Tea Co.*,
 46 N.Y.2d 62 (1978) ...................................................................................................... 4, 10, 12

*Schmitt v. VAG Grp., Inc.*,
 No. 09-CV-380, 2010 WL 331782 (D. Or. Jan. 25, 2010) .................................................... 14

*SNS Bank, N.V. v. Citibank, N.A.*,
 777 N.Y.S.2d 62 (N.Y. App. Div. 1st Dep't 2004). .............................................................. 12

*Sterling Inv'r Servs., Inc. v. 1155 Nobo Assocs., LLC*,
 30 A.D.3d 579 (2d Dep't 2006) ............................................................................................... 7

*Stevens v. Corelogic, Inc.*,
 194 F. Supp. 3d 1046 (S.D. Cal. 2016)................................................................................... 22

*Vacuum Concrete Corp. of America v. American Machine & Foundry Co.*,
 321 F. Supp. 771 (S.D.N.Y. 1971).......................................................................................... 9

*Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.,*
　No. 18-CV-11449 (JGK), 2020 WL 3051768 (S.D.N.Y. June 8, 2020) ........................... 6, 7, 9

*W.W.W. Assocs., Inc. v. Giancontieri,*
　77 N.Y.2d 157 (1990) .................................................................................................. 7

*Wolf v. Travolta,*
　167 F. Supp. 3d 1077 (C.D. Cal. 2016) ........................................................................ 14, 15

**Statutes**

17 U.S.C. § 101 ............................................................................................................... 23

17 U.S.C. § 107 ............................................................................................................... 17

17 U.S.C. § 1202 ....................................................................................................... 18, 19, 22, 23

Plaintiff Penske Media Corporation ("PMC") respectfully submits this memorandum of law in opposition to Defendant Shutterstock, Inc.'s Motion to Dismiss.

## INTRODUCTION

PMC is a digital media and publishing company that publishes brands covering the entertainment and fashion industries, including the legendary *Women's Wear Daily*, *Variety*, and *Rolling Stone*.  PMC also owns and controls a vast and growing photography collection related to these publications.  Shutterstock owns and operates a website that historically has licensed so called "stock" photographs to third parties on behalf of photographers and other content owners. In 2015, the parties entered into an Archive & Event Hosting and Licensing Agreement.  That agreement provided Shutterstock exclusive worldwide rights to license photographic images from PMC's archive, including new images created and owned by PMC during the term.  It also gave Shutterstock insider access by means of PMC's exclusive credentials to photograph fashion and Hollywood events for PMC and to license the resulting images on PMC's behalf.  This action concerns (1) Shutterstock's wrongful and premature termination of the Archive & Event Agreement after Shutterstock used it to transform itself from a provider of "stock" photographs to a purveyor of prestigious news and editorial content; and (2) other wrongs.

Shutterstock first uses its memorandum to take unwarranted potshots at PMC's First Claim for Relief for breach of contract regarding Shutterstock's wrongful termination—even though Shutterstock is not moving to dismiss that claim.[1]  Shutterstock also levels empty attacks

---

[1] Contrary to Shutterstock's contentions, PMC did not fail to perform under the parties' agreement based on COVID-19-related cancellations of various live, in person events.  Rather, under the plain terms of the agreement, PMC had no contractual obligation to ensure that any such events were held or occurred. Nor has the pandemic rendered the parties' agreement "worthless" because, even with the impacts of COVID-19, Shutterstock has earned tremendous benefits under the parties' agreement for the past five years, and, absent Shutterstock's premature and wrongful termination, Shutterstock would have continued to enjoy many of the

that the PMC claims it is seeking to dismiss are "conjured up" and "made for litigation." Shutterstock's hyperbole and rhetoric aside, the claims that Shutterstock seeks to dismiss are necessary to remedy Shutterstock's blatant breach of its implied obligations under the parties' agreement and infringement of PMC's rights under federal law, and they state valid claims for relief.

PMC states an actionable claim for breach of the implied covenant of good faith and fair dealing. PMC alleges that Shutterstock declined to use PMC's credentials to attend and photograph so-called "Third-Party Events" for the parties' mutual benefit, but then went ahead and attended and photographed those events only for itself. None of Shutterstock's arguments defeat this validly pled claim. Among other things, (1) there is no contractual term that is inconsistent with an implied obligation that Shutterstock attend and photograph Third Party Events, if at all, using PMC's credentials; (2) PMC reasonably and justifiably understood that when PMC offered its credentials to Shutterstock for those Third Party Events, Shutterstock would use those credentials and not its own *if* it attended and photographed such events, especially given that the contract set up a *cooperative* framework for the parties to *mutually* benefit from coverage of such events; and (3) the implied covenant is designed precisely for this situation; namely, to fill the gaps left open by a contract's express terms so that a party like Shutterstock cannot destroy or injure PMC's right to receive all the fruits of its contract.

PMC similarly states an actionable claim for copyright infringement based on Shutterstock's continued exploitation of PMC's photographs even after Shutterstock wrongfully

---

key benefits under that deal, including the unrestricted right to license the photographs in the PMC photography collection and to attend and photograph other events that continue to be scheduled within the parameters of COVID-19, all of which PMC will demonstrate at the appropriate time in this case.

terminated the agreement from which Shutterstock's exploitation rights emanated. Shutterstock's brazen contention that its continued *post-termination* use cannot constitute infringement because Shutterstock was authorized to exploit PMC's works *pre-termination* has no legitimate support in the law and is contrary to Shutterstock's own tacit admissions to the Court that it would need to halt its exploitation of PMC's works upon its purported termination date to avoid an infringement claim.

PMC, finally, states a valid claim under Section 1202 of the DMCA because PMC alleges that Shutterstock falsely identified itself as the copyright owner of PMC-owned works to conceal Shutterstock's *own* infringement and that Shutterstock did so with the requisite intent. Shutterstock argues that it is nonsensical to believe that Shutterstock would have provided false copyright information to help its customers violate the DMCA and infringe PMC's works. That contention is not only wrong, but is irrelevant, because it ignores the controlling case of *Mango v. BuzzFeed, Inc*., 970 F.3d 167, 172 (2d Cir. 2020), which holds that a defendant violates the DMCA when it uses false copyright management information to hide its *own* infringing conduct.

## **ARGUMENT**

I.   **PMC HAS PROPERLY ALLEGED THAT SHUTTERSTOCK BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

A.   **PMC's Allegations State a Claim for Breach of the Implied Covenant**

PMC states an actionable claim for breach of the implied covenant through its allegations that Shutterstock declined to use PMC's credentials to attend and photograph various "Third-Party Events" for the parties' joint benefit, but then went ahead and attended and photographed those events for itself.  Shutterstock's misconduct is actionable because it (1) breached a promise that PMC "was "justified in understanding w[as] included" in the Archive & Event Agreement, namely, that Shutterstock would attend and photograph such events, if at all, using PMC's

3

credentials, and (2) "had the effect of destroying or injuring the right of [PMC] to receive the fruits of the contract," namely the right to own and exploit the images that Shutterstock took. (Mot. 8 (quoting *Rowe*, *v Great Atl. & Pac. Tea Co*., 46 N.Y.2d 62, 69 (1978) and *Dalton v. Educ. Testing Serv*., 87 N.Y.2d 384, 389 (1995))).

As the Amended Complaint establishes, PMC reasonably and justifiably understood that Shutterstock would use PMC credentials to attend and photograph the Third-Party Events, if it attended such events at all.  No other interpretation of the Archive & Event Agreement is reasonable or plausible, especially given the many provisions of the contract that set up a *cooperative* framework for the parties to *mutually* benefit from the photographs taken by Shutterstock at these events.

The Archive & Event Agreement establishes this framework in a variety of ways.  It: (1) provides that PMC "will provide to Shutterstock defined credentials, passes, and VIP access to significant events around the world to which PMC has access as defined herein ('Third Party Events')" (Agmt. § 3(a)(iii) (attached as Exhibit A to the Declaration of Eleanor Lackman (Dkt. # 37-1), FAC ¶ 30); (2) prohibits PMC from giving its credentials to anyone else, so that Shutterstock can "be the sole third party to leverage and utilize PMC's credentials and access to capture" photographs on PMC's behalf at the Third-Party Events (Agmt.§ 3(a)(iii)); and (3) provides for the parties to *share* in the revenues generated from Shutterstock's licensing of these images to Shutterstock's customers.  (Agmt. §§ 3(a) & 6).  Further evidencing this *mutually beneficial* arrangement, the Archive & Event Agreement identifies an initial list of Third Party Events and goes on to provide that "PMC shall work with Shutterstock *in good faith* to create additional access *at third party events* that *will enable the Parties to further monetize the Third Party Event Content*" (Agmt. § 3(a)(iii) (emphasis added)) and that "[t]he Parties will

4

*work together in good faith* to allow PMC to maximize . . . the distribution, licensing and syndication of [Third Party Event Content] by Shutterstock . . . ." (*id*. § 2(e)).

Shutterstock's promise to use PMC supplied credentials at any Third-Party Event that Shutterstock did, in fact, attend and photograph is "interwoven" into the mutually beneficial and cooperative approach to third-party coverage laid out in the above provisions. (*See* Mot. 8 (quoting *George Town Assocs. S.A. v. Abakan, Inc*., No. 15-CV-3435 (DLC), 2015 WL 4923040, at *9 (S.D.N.Y. Aug. 18, 2015)). Indeed, it would make no sense for PMC to promise its credentials exclusively to Shutterstock if Shutterstock could reject those credentials, capture photographs at the rejected Third-Party Events for itself, and prevent PMC from engaging other persons or companies to shoot those events on PMC's behalf, thereby impairing PMC's ability to obtain additional images which it could own, use on its own for its editorial content, and profit from. In this setting PMC has sufficiently plead that it reasonably and justifiably believed that Shutterstock would use PMC supplied credentials to take photographs at any Third-Party Event that Shutterstock chose to attend and photograph.

It is equally evident that Shutterstock diverted to itself PMC's expected benefits under the Archive & Event Agreement when Shutterstock attended Third-Party Events after declining PMC's credentials, but took photographs at these events only for itself and not for PMC.

At the most basic level, Shutterstock's use of its own credentials deprived PMC of the unlimited use of, and copyrights to, the photographs shot by Shutterstock at the Third-Party Events, which the Archive & Event Agreement provides PMC would own. (Agmt. § 3(c)). This diminished the value of PMC's photography archive by depriving PMC of assets to add to that collection. This also blocked PMC from participating in the revenue generated from the exploitation of these works during the term of the Archive & Event Agreement and prevents

PMC from exploiting these works on its own after the term of the Archive & Event Agreement ends.  (FAC ¶¶ 63–64).  Shutterstock's actions also  impaired PMC's ability to get photos for itself at these events, in that PMC was prohibited from offering its credentials to any other third-party.  (Agmt. § 3(a)(iii)).  (While PMC could send one of its own few, staff photographers if it wished to obtain images at such an event, those photographers were then not available to shoot other content.)  Shutterstock's conduct further deprived PMC of its contractual right to be the first to publish photographs from these events in its editorial publications.  (*Id*. § 3(a)).  Finally, Shutterstock's breach put PMC in competition with Shutterstock for the licensing of photographs taken at Third-Party Events, when PMC and Shutterstock were to *jointly* monetize those works. (*Id*. § 6; FAC ¶ 46).  In particular, the Archive & Event Agreement appointed Shutterstock the *exclusive* licensee authorized to exploit PMC-owned content (Agmt. § 3(a)(iii); FAC ¶ 43), such that any images that PMC took at these Third-Party Events could be offered for licensing only on Shutterstock's platform, where they would directly complete with the images taken by Shutterstock for itself.

In all these ways, the Amended Complaint plausibly alleges that Shutterstock's actions destroyed or injured PMC's right to receive the fruits of the Archive & Event Agreement.  *See, e.g.*, *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *6 (S.D.N.Y. June 8, 2020) (allegations that defendant diverted business away from plaintiff and to itself states claim for breach of the implied covenant).

PMC has stated a valid claim for relief.

### B.     Shutterstock's Arguments Against the Existence of an Implied Covenant Lack Merit

Shutterstock's contention that the implied covenant "simply cannot coexist with the express terms in the parties' contract" (Mot. 10) is unmoored from both the allegations of the

Amended Complaint and the Archive & Event Agreement from which PMC's rights and Shutterstock's obligations emanate.  It, and the litany of inapposite cases Shutterstock cites, do not support dismissal.[2]

   *First*, it does not matter that the Archive & Event Agreement imposes an express, affirmative obligation on Shutterstock to attend and photograph so-called PMC Events and does not impose a similar obligation on Shutterstock with respect to Third Party Events.  (Mot. 10). Indeed, PMC is not claiming that Shutterstock breached the covenant merely by declining PMC's credentials and not attending or photographing certain events; PMC is claiming that Shutterstock breached the covenant by declining PMC's credentials for these events *and* then attending and photographing these same events for itself and not for PMC.  That Shutterstock is not expressly prohibited from sitting out specific Third-Party Events does not diminish Shutterstock's implied obligations with respect to those events that it did attend.

---

[2] Nearly all of Shutterstock's cases were decided at summary judgment or later and thus do not demonstrate that PMC's claims are deficient at the pleading stage.  *E.g. Dalton*, 87 N.Y.2d at 384; *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc*., 769 F.3d 807 (2d Cir. 2014); *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134 (2d Cir. 1990); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co*., 650 F. Supp. 2d 314 (S.D.N.Y. 2009).  Many did not involve covenant claims at all. *E.g. W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157 (1990); *Sterling Inv'r Servs., Inc. v. 1155 Nobo Assocs., LLC*, 30 A.D.3d 579 (2d Dep't 2006); *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204 (S.D.N.Y. 2013); *Int'l Fid. Ins. Co. v. Cty. of Rockland*, 98 F. Supp. 2d 400 (S.D.N.Y. 2000).  In another, the covenant claim was not the subject of the defendant's motion to dismiss. *See Granite Partners, L.P. v. Bear, Stearns & Co*., 17 F. Supp. 2d 275, 305 (S.D.N.Y. 1998) (defendant "ha[d] no quarrel with" breach of implied covenant claim).  Two of the cases cited dismissed covenant claims only because the courts found them duplicative of the plaintiff's express breach of contract claim, a circumstance not present here.  *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 205 (S.D.N.Y. 2011); *RJ Capital, S.A. v. Lexington Capital Funding III, Ltd*., No. 10-CV-24 (PGG), 2011 WL 3251554, at *13 (S.D.N.Y. July 28, 2011).  The only case that concerns remotely similar allegations is *Vibes*, 2020 WL 3051768, at *6, which supports PMC (*see supra* p.6) and which Shutterstock relegates to a footnote (Mot. 11 n.6).

Shutterstock's implied obligation to photograph Third-Party Events, if at all, using PMC credentials is also not "inconsistent" with "the terms of the contractual relationship" regarding Third Party and PMC Events. (Mot. 9). In order to claim such an inconsistency, Shutterstock (1) notes that the Archive & Event Agreement does not affirmatively obligate Shutterstock to attend and photograph Third-Party Events, as it does for PMC Events; (2) interprets the absence of such an obligation as affirmatively permitting Shutterstock to decline PMC's credentials for Third-Party Events no matter the circumstance—including when Shutterstock attends and photographs the declined events; and (3) concludes that the implied covenant is inconsistent with Shutterstock's own invented clause. (*See* Mot. 10–11). That might be convenient for this lawsuit, but it is not how the implied covenant works. There is *no* term in the Archive & Event Agreement that authorizes the conduct at issue here and thus no term which could render Shutterstock's implied obligation inconsistent with the contract.

*Second*, PMC's damages are not rendered "hollow" because Shutterstock could have sat out certain Third-Party Events and not created content for either PMC or itself without breaching an express provision of the Archive & Event Agreement.[3] (Mot. 11). As an initial matter, Shutterstock did, in fact, attend and photograph these events. Shutterstock thus deprived PMC of the primary benefit afforded to PMC under the Archive & Event Agreement, namely, ownership of the copyright to those images that Shutterstock did create. (*See* FAC ¶ 64). Moreover, as set forth above, Shutterstock's conduct depleted PMC's resources and pitted Shutterstock against PMC in the licensing of images that the parties were to jointly monetize, each as described above. Thus, contrary to Shutterstock's argument, PMC has sufficiently alleged a "diversion of

---

[3] PMC would not agree that Shutterstock could decline to attend all, or even most or many, Third-Party Events consistent with its good faith obligations. That issue, however, is not before the Court.

business" akin to what the court found to constitute breach of the implied covenant in *Vibes*.  *See* 2020 WL 3051768, at *6.

Whatever other "substantial and numerous benefits" PMC received under the Archive & Event Agreement (Mot. 12) are irrelevant to whether Shutterstock breached the implied covenant by depriving PMC of the images from Third-Party Events.  PMC expected, and had the right to receive, *all* the benefits it is due under the Agreement.  That includes "access to Shutterstock content, payment of royalties, and sizeable nonrefundable royalty advances" (Mot. 12) *and* the copyrights to any photographs shot by Shutterstock at Third-Party Events to which PMC offered Shutterstock its credentials and which Shutterstock attended.[4]

*Third*, enforcing the implied covenant would neither pose an "un-bargained for restriction" on Shutterstock, nor create a restriction that is inconsistent with Shutterstock's "general right to act on its own interests" or New York "public policy" encouraging free competition.  (Mot. 12).

As an initial matter, the fact that the parties "negotiated an express provision" on the general subject of Third-Party Events does not "preclude the Court from inferring an implied covenant."  (*See* Mot. 13 (citing *RJ Capital*, 2011 WL 3251554, at *13).  While that general provision exists, it does not cover the specific misconduct at issue here, namely, Shutterstock's

---

[4] *Vacuum Concrete Corp. of America v. American Machine & Foundry Co.*, 321 F. Supp. 771 (S.D.N.Y. 1971), does not change the result.  That case (1) concerns whether a distributor-type licensee must use "best efforts" to sell the licensor's product, *id.* at 772–74; and (2) has been confined to its facts by other courts because it is in tension with the "landmark rule" that such distribution-type contracts *must* contain an implied covenant to use "reasonable efforts" or else fail for lack of consideration.  *See, e.g.*, *New Paradigm Software Corp. v. New Era of Networks, Inc.*, No. 99-CV-12409 (RMB) (AJP), 2002 WL 31749396, at *11 (S.D.N.Y. Dec. 9, 2002) (accumulating Second Circuit cases post-dating *Vacuum Concrete*).  In addition, while the court declined to impose a best efforts obligation where the licensor retained the right to exploit the work itself, here, as explained above (*supra* p. 6), PMC relied on Shutterstock to attend and photograph Third Party Events even though PMC could send its own photographers.

decision to pass on PMC's credentials to Third Party Events and to nevertheless attend and photograph those events for itself.  The implied covenant thus can "be applied as a 'gap-filler'" (Mot. 13), which is precisely what the implied covenant is designed to do.  *See In re Musicland Holding Corp*, 386 B.R. 428, 439 (S.D.N.Y. 2008) (point of the covenant is to allow a court to "fill a gap" left open by a contract's express terms).

In addition, the Archive & Event Agreement's implied obligation does not "handcuff[]" Shutterstock's business.  (*See* Mot. 13).  Had Shutterstock photographed the Third Party Events in dispute using PMC's credentials (as it did other similar events), Shutterstock still would have been able during the contract term to license and earn royalties from all of the photographs it took at these events (with PMC owning the copyrights to those photographs and sharing in gross revenues, just as the Archive & Event Agreement contemplated).  Contrary to Shutterstock's hyperbole, such an obligation is not "servitude" that implicates New York's policy against restrictive covenants.  (*See* Mot. 12–13).  Indeed, this policy applies to individuals so that they may secure gainful employment; it does not apply to agreements between corporations, as Shutterstock's cited case makes clear.  *See Calico Cottage, Inc. v. TNB, Inc*., No. 11-CV-0336 (DLI) (MDG), 2014 WL 4828774, at *5 (E.D.N.Y. Sept. 29, 2014) (cited Mot. 13) ("[W]here two business entities agree to a restrictive covenant, there is generally no concern about the loss of individual's livelihood or an imbalance of bargaining power that would implicate New York's public policy disfavoring restrictive covenants.").[5]  There was certainly nothing foreseeable

---

[5] Shutterstock's other cases (Mot. 14), *Rowe* and *Metropolitan Life*, are factually inapposite and offer Shutterstock no support.  *See Rowe*, 46 N.Y.2d 62 (supermarket lease agreement that gave landlord percentage of gross receipts from supermarket's sales did not include implied covenant against assignment); *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504 (S.D.N.Y. 1989) (indentures for corporate bond agreements did not include implied covenant preventing corporation from incurring new debt to facilitate a leveraged buy-out).

about Shutterstock obtaining and using its own credential for Third Party Events during the term of the Archive & Event Agreement and refusing to photograph on behalf of PMC.  The most that was foreseeable was that Shutterstock would develop its own relationships with Third Party Event organizers and PR firms, to exploit once the term of the Archive & Event Agreement had ended.

Shutterstock's self-serving conduct did more than just "incidentally lessen [PMC]'s anticipated fruits from the contract."  (*See* Mot. 12).  As alleged, Shutterstock's use of its own credentials at Third-Party Events, to the exclusion of the credentials supplied by PMC, is the "sole and direct cause[] of destruction of the value of the contract for" PMC because it diverted to Shutterstock the specific, expected benefits afforded to PMC under the Archive & Event Agreement: ownership of photographs that Shutterstock took at the events; a percentage of licensing revenue earned from Shutterstock's exploitation of such works during the contract term; and the ability to exploit those images after the contract term ended.  *See M/A-COM*, 904 F.2d at 136 (explaining when the implied covenant is breached).[6]

*Fourth*, PMC's "understanding" regarding the promises implied in the Archive & Event Agreement lies at the heart of PMC's implied covenant claim—PMC's understanding is not an improper consideration and evidence of such understanding is not barred by any merger clause or the parole evidence rule.  (Mot. 14).  As Shutterstock's own authorities make clear, the implied covenant gives effect to an "unexpressed promise" that "a reasonable person in the position of

---

[6] Shutterstock's cites *M/A-COM* in support of its contention that PMC's alleged damages are too incidental to be recoverable.  But *M/A-COM* involved an indirect causation chain not present here.  It held (on summary judgment) that a party that opposed a merger of a third-party company, that then filed for bankruptcy, did not breach of any implied covenant because "the chain of causation" between the challenged actions "in an unrelated transaction" and the third party's bankruptcy "[wa]s simply too attenuated." 904 F.2d at 136.

11

the promisee" would be "justified in understanding w[as] included"  *Rowe*, 46 N.Y.2d at 69

(cited Mot. 8); *see also JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-CV-9116

(PGG), 2009 WL 321222, at *4 (S.D.N.Y. Feb. 9, 2009) ("[A]n implied covenant of good faith

and fair dealing . . . arises out of the known reasonable expectations of the other party . . . .").

That is the understanding which PMC will proffer in this case; not a mere "subjective" or

"undisclosed" intent, as Shutterstock wrongly implies.  (Mot. 14).  In addition, as Shutterstock

also acknowledges, "a merger clause does not prevent a court from inferring a covenant of good

faith and fair dealing."  (Mot. 15); *see SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 65

(N.Y. App. Div. 1st Dep't 2004).  The parole evidence rule is equally immaterial because, as

Shutterstock's own cases explain, "courts will . . . consider extrinsic evidence to evaluate the

scope of an implied covenant of good faith."  *Metro. Life*, 716 F. Supp. at 1515 (cited Mot. 11,

14).

## II.    PMC HAS PROPERLY ALLEGED SHUTTERSTOCK'S COPYRIGHT INFRINGEMENT

Shutterstock does not dispute that it lost its "right and license" to "publicly display,"

"license," and otherwise exploit PMC's copyrighted content when it prematurely terminated the

Archive & Event Agreement as of July 17, 2020.  (Agmt. § 3(a); FAC ¶ 50).  Indeed, when

Shutterstock sought the dismissal of PMC's original infringement claim, Shutterstock told the

Court that it would "cease[] its exploitation of PMC's works" upon that termination date.  (*See*

Dkt. # 15 at 3).  Shutterstock nevertheless continued to publicly display and offer for licensing

and distribution a multitude of PMC's copyrighted images on its website.  (FAC ¶¶ 47–50; *see*

*also id.* Ex. 1 (providing copies of the photographs)).  That is copyright infringement.

PMC has sufficiently pled Shutterstock's infringement, especially given that "detailed

factual allegations" are "not require[d]."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The

Amended Complaint alleges:  (1) the photographs that are the subject of the infringement claim (*see* FAC ¶¶ 47–50 & Ex. 1); (2) that PMC "is the holder of the exclusive rights under the Copyright Act" to the photographs (FAC ¶ 47); (3) the registration numbers for the photographs (*see* FAC, Ex. 1); and (4) that Shutterstock infringed PMC's copyrights by reproducing, distributing, and displaying the photographs on its website after July 17, 2020 (FAC ¶ 50).[7] PMC also provided the titles of the infringing photograph sets as they appeared on Shutterstock's website after July 17, 2020.  (*See* FAC, Ex. 1).[8]  This more than satisfies PMC's pleading obligation.  (*See* Mot. 23 (setting forth the four elements that must be pled to state an infringement claim).

The fact that the Archive & Event Agreement authorized Shutterstock to exploit PMC's photographs *before* Shutterstock terminated the contract does not immunize Shutterstock for continuing that exploitation *after* Shutterstock terminated that contract and lost those rights. (Mot. 24).  Indeed, courts readily hold that such continued public display of copyrighted material after expiration of an applicable contract term constitutes infringement.  *See Jarvis v. K2 Inc.*,

---

[7] The Amended Complaint also alleges on information and belief that after July 17, 2020, Shutterstock granted licenses to third-parties to use one or more of the photographs.  (FAC ¶ 54). It is neither "implausible" nor "absurd" to believe such licensing occurred.  (*See* Mot. 22). Shutterstock would not have continued to offer the photographs for licensing on its websites unless Shutterstock hoped and intended to issue such licenses, as confirmed by Shutterstock's self-characterization as a "photograph supplier that depends on licensing."  (Mot. 2).

[8] Shutterstock's cited cases (Mot. 23) do not support dismissal of PMC's infringement claim based on a pleading deficiency.  Unlike PMC, the plaintiffs in those cases failed to plead the requisite elements of their infringement claim.  *See Palmer Kane LLC v. Scholastic Corp.*, No. 12-CV-3890 (TPG), 2013 WL 709276, at *3 (S.D.N.Y. Feb. 27, 2013) (plaintiff provided a "no[n-]exhaustive" list of images in dispute, failed to specify the "time period" of infringement, and alleged only that the defendant "exceeded the licenses"); *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 508 (S.D.N.Y. 2015) (complaint contained no reference to time period of infringement); *Cole v. John Wiley & Sons, Inc.*, No. 11-CV-2090 (DF), 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012) (pleading that defendant infringed one of dozens of photographs without identifying which one).

486 F.3d 526, 530 (9th Cir. 2007) ("online display" of plaintiff's images beyond the license

period infringed plaintiff's copyrights); *Michael Grecco Prods., Inc v. GlowImages, Inc*., No. 18-

CV-902, 2020 WL 1866172, at *2 (D. Del. Apr. 6, 2020), *report and recommendation adopted*

2020 WL 1866000 (D. Del. Apr. 14, 2020) (photo agencies' continued "display[] and offer[] to

license Plaintiff's copyrighted works" after expiry of 18-month license term "establish that

Defendant is liable for direct copyright infringement"); *Schmitt v. VAG Grp., Inc*., No. 09-CV-

380, 2010 WL 331782, at *2 (D. Or. Jan. 25, 2010) (defendant's continued display of plaintiff's

photographs on its website "after the expiration of [two-year] license . . . established defendants'

liability for copyright infringement of the photographs"); *cf. John Wiley & Sons, Inc. v. DRK

Photo*, 998 F. Supp. 2d 262, 287 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir. 2018) ("It is

black-letter law that a claim for copyright infringement lies when a party's use of copyrighted

material exceeds the scope of its license.").  In fact, when done with the requisite knowledge,

such conduct constitutes not just infringement, but *willful* infringement.  *See, e.g.*, *GlowImages*,

2020 WL 1866172, at *3 (infringement was willful where "Defendant knew that its rights [to

publicly display and offer to license] Plaintiff's images under the agreements had expired but,

nevertheless, continued to display and offer licenses for the works on its website").

Shutterstock's reliance on *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461

(S.D.N.Y. 2019), and *Wolf v. Travolta*, 167 F. Supp. 3d 1077 (C.D. Cal. 2016), is unavailing.

(Mot. 24).  Those cases address the statute of limitations governing public displays that (1) were

always unauthorized and (2) began outside the applicable limitations period.  *See Minden*, 390 F.

Supp. 3d at 467 (infringement claims accrued for limitations purposes when website first posted

photographs without authorization); *Wolf*, 167 F. Supp. 3d at 1099 & n.13 (infringement claim

14

time-barred where defendant first published the material on website outside the applicable three-year limitations period).

Neither *Minden* nor *Wolf* considered an infringement claim that began only after a previously licensed use had ended.  These cases, accordingly, do not support  Shutterstock's contention that, simply because Shutterstock "originally" uploaded the images with PMC's authorization, PMC can never state a claim for Shutterstock's continued public-display of PMC's images after that authorization expired.  (*See* Mot. 24).  To the contrary, both cases implicitly support PMC's claim, given that the statute of limitations is an affirmative defense for conduct that *otherwise is infringing*.  *See, e.g.*, *Minden Pictures*, 390 F. Supp. 3d at 466–67 (dismissing as time-barred claim that defendant posted 24 of the plaintiff's photographs online because the plaintiff  "'should have discovered' *that its copyright was being violated*" more than three years before suit.) (emphasis added).

At most, *Wolf* and *Minden Pictures* stand for the unremarkable proposition that an infringement claim challenging an unauthorized on-line display accrues only once for statute-of-limitations purposes.  That principle does not extinguish PMC's claim, because PMC's claim accrued no earlier than July 17, 2020, when Shutterstock elected to deem the license terminated, such that its use of the photographs became infringing at that time.  *See Wolf*, 167 F. Supp. 3d at 1099 n.13 (claim untimely where the plaintiff's document "remained on defendant's website" within three years of suit, because plaintiff's damages constituted "harm from past violations that . . . continu[ed]," not a "*new wrong*" (emphasis altered)) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014) (infringement claims accrue when "the copyright holder discovers, or with due diligence should have discovered, *the infringement.*") (emphasis added)).

A contrary conclusion would yield absurd results.  PMC and other copyright owners (including Shutterstock) would be left remediless and without recourse to stop public displays that exceed the scope of a pre-negotiated license for a set term.  That is plainly not the law, as the above cases make clear.  *See supra* 14 (collecting cases).

Shutterstock's attempt to disavow the "volitional[ity]" of its conduct is likewise misplaced.  Shutterstock relies on *Parker v. Paypal, Inc*., No. 16-CV-4786, 2017 WL 3508759, at *4–5 (E.D. Pa. Aug. 16, 2017) (Mot. 24), which held that a cloud-server company could not be liable for its users having stored infringing content on the company's servers.  But *Parker*, and other similar volitional conduct cases, concern "service providers" who were challenged for their users' infringing conduct and whom courts have held cannot be liable for direct infringement absent evidence that the providers themselves took "some affirmative, volitional step to infringe."  *See BWP Media USA Inc. v. Polyvore, Inc*., 922 F.3d 42, 47 (2d Cir. 2019) (Walker, J., concurring); *cf. Cartoon Network LP, LLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131–33 (2d Cir. 2008) (automated copying of content at user request, by company providing hosted DVR service to customers, was not volitional conduct supporting infringement claim) (cited Mot. 24).

These cases do not shield companies like Shutterstock that display content online for their own benefit.  *See Agence France Presse v. Morel*, 934 F. Supp. 2d 547, 569 (S.D.N.Y. 2013), *reconsidered on other grounds* 934 F. Supp. 2d 584 (S.D.N.Y 2013) (evidence that stock-photo agency "maintains the customer-facing website on which the Photos–at–Issue were displayed, had control over whether the Photos–at–Issue were displayed, and may have taken actions to allow the Photos–at–Issue to appear on its website" precluded finding of no volitional conduct); *Arista Records LLC v. Usenet.com, Inc*., 633 F. Supp. 2d 124, 148 (S.D.N.Y. 2009) (holding defendants' conduct volitional as matter of law where defendants knew of infringement

and took active steps including "human review" to allow access to infringing content).[9]  Because Shutterstock was acting as a copyright "owner" with respect to the infringed works and not a "passive" conduit for third-party content, it remains liable for its own violations of PMC's copyrights.[10]  *See BWP Media*, 922 F.3d at 47 (Walker, J., concurring).  Here, moreover, there was nothing "un-volitional" about Shutterstock prematurely terminating the Archive & Event Agreement; representing to the Court that it would remove all of PMC's copyrighted content prior to July 17, 2020; and failing to do so.

Further, Shutterstock's conclusory assertion that its unauthorized display of PMC's images was protected "fair use" is frivolous.  Shutterstock does not even mention, much less address, *any* of the applicable fair-use factors, 17 U.S.C. § 107, and the Court should reject Shutterstock's contention for this reason alone.  *See Lima v. Hatsuhana of USA, Inc.*, No. 13-CV-3389 JMF, 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) (party waives "perfunctory" argument).

This throw-away argument fails on the merits anyway.  Unsurprisingly, Shutterstock's conduct fails all four fair use factors:  (1) displaying PMC's photos on its website constitutes a "commercial" and non-transformative use; (2) the works in question are original, creative

---

[9] In any event, even in this service provider setting, it is nearly impossible at the motion to dismiss stage to "rule out the possibility that a defendant engaged in the necessary volitional conduct to establish direct copyright infringement."  *See Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. 15-CV-2400, 2016 WL 4257457, at *4 (D. Md. Aug. 11, 2016) (display of photographs on website plausibly alleged volitional conduct by website owner).

[10] Shutterstock would also be liable for contributory infringement for any image it licensed to a third-party after its authority to do so ended.  *See Cartoon Network*, 536 F.3d at 131 (cited Mot. 24).  Therefore, even if the Court agreed with Shutterstock's theory, PMC could amend its complaint and state a cognizable contributory infringement claim.  *E.g. Capitol Records, Inc. v. MP3tunes LLC*, 821 F. Supp. 2d 627, 649 (S.D.N.Y. Aug. 22, 2011) (finding defendant liable for contributory infringement for other's use of copyrighted material which the defendant failed to remove from the internet).

photographs; (3) Shutterstock displayed the images in their entirety; and (4) Shutterstock's use

usurps the licensing market for those photographs.  *See Arista Records, LLC v. Doe 3*, 604 F.3d

110, 123 (2d Cir. 2010) (applying factors).

Finally, because Shutterstock had no authority to license PMC's content after July 17,

2020, Shutterstock cannot rely on cases finding "fair" the display or distribution of an image to

facilitate a parties' "*legitimate*" sale of a copy of such work.  *Rosen v. eBay, Inc.*, No. 13-CV-

6801, 2015 WL 1600081, at \*15–20 (C.D. Cal. Jan. 16, 2015) (emphasis added); *accord Noland

v. Janssen*, No. 17-CV-5452 (JPO), 2020 WL 2836464, at \*4 (S.D.N.Y. June 1, 2020) (both

cited Mot. 24).

## III.    PMC HAS PROPERLY ALLEGED A DMCA VIOLATION

Shutterstock ignores the controlling *Mango* case, which holds that a defendant violates

the Digital Millennium Copyright Act ("DMCA") when it uses false copyright management

information to hide its own infringing conduct.  970 F.3d at 172.  Under that settled law, the

Amended Complaint plausibly alleges each of the three elements of a § 1202(a) DMCA claim:

(1) that Shutterstock provided or distributed copyright management information ("CMI");

(2) knowing the CMI was false; and (3) "with the intent to induce, enable, facilitate, or conceal

infringement."  17 U.S.C. § 1202(a); *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d

131, 137 (E.D.N.Y. 2019); (*see also* FAC ¶¶ 51–54, 65–74).  Neither Shutterstock's string of

citations and quotations of abstract points, divorced from any context, nor its myopic focus on

whether "Shutterstock's customers and licensees" would also "misattribute the copyright

ownership information" (Mot. 17 (emphasis omitted)), demonstrates otherwise.

PMC's DMCA claim does not "ignore[] the fundamental element of infringement."

(Mot. 16).  Rather, it is Shutterstock that ignores the gravamen of PMC's claim—that

Shutterstock violated the DMCA by "miscrediting" itself as the copyright owner of the

photographs, thereby "enable[ing], facilitat[ing], or conceal[ing]" (Mot. 17) Shutterstock's *own* infringement of the photographs.  (FAC ¶ 53).  That is precisely what *Mango* holds is actionable under DMCA—the use of false CMI in connection with "an infringement committed by the defendant himself."  *Mango*, 970 F.3d at 172.

In *Mango*, the defendant Buzzfeed published plaintiff's image without crediting plaintiff as the copyright owner.  Just as Shutterstock does here, Buzzfeed argued to the Second Circuit that it could not be liable for this act under the DMCA, because the statute required proof that Buzzfeed knew its conduct would lead to "future, third party infringement" and its own infringement did not constitute third party infringement.  *Id.* at 169.  The Second Circuit disagreed, finding that the plain language of the DMCA neither limited infringement by actor (*i.e.*, third party) or time (*i.e.* future) and that Buzzfeed's reasonable awareness that improperly attributing the photograph would conceal its own infringement satisfied the DMCA.  *Id*. at 172.[11] Shutterstock fails to cite *Mango*, but *Mango* is on all fours and forecloses Shutterstock's motion.

The Amended Complaint satisfies the DMCA's "double" scienter requirement that a defendant both know that it is providing false CMI and intend for such use to enable, facilitate, or conceal infringement.  *See* 17 U.S.C. § 1202(a).  With respect to knowledge, the Amended Complaint alleges that (1) PMC is the exclusive copyright owner of the photographs; (2) Shutterstock "knew that PMC—not Shutterstock—owned th[os]e copyright[s];" and (3) Shutterstock "nevertheless credited itself (sometimes along with the applicable photographers) as

---

[11] *Kelly v. Arriba Soft Corp.* (Mot. 18) is not to the contrary.  There, the court found that a search engine's display of thumbnail versions of the plaintiff's photographs for general search purposes was a non-infringing fair use.  77 F. Supp. 2d 1116, 1121–22 (C.D. Cal. 1999).  On appeal, the Ninth Circuit reversed *Kelly*'s grant of summary judgment in the search engine's favor as to enlarged images.  *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003).  Shutterstock is not a search engine; it displayed enlarged versions of PMC's images, and; critically, its continued public display was not a fair use, as explained above.

the owner of these works" on its website and in metadata associated with the photographs.  (FAC ¶¶ 47, 52).

Shutterstock's fallback contention that PMC may have "supplied" the CMI that "caused the alleged misattribution" (Mot. 20) amounts to the kind of "simple denial of the complaint's factual contentions" that "is not an appropriate ground on which to dismiss the complaint at the pleadings stage." *See Alamy*, 372 F. Supp. 3d at 135–36.  In any event, Shutterstock mischaracterizes the terms of the Archive & Event Agreement. The agreement, at most, obligates PMC to provide the "name of [the] contributor" and event information when delivering certain photographs to Shutterstock—but even that requirement does not extend to  images that Shutterstock itself photographed for PMC.  (Agmt. § 4).  The Agreement also requires that Shutterstock "facilitate the creation of all metadata." (*Id*.)  The responsibility for inaccurate CMI regarding ownership thus lies with Shutterstock.

With respect to intent, the Amended Complaint alleges that:  (1) Shutterstock terminated the Archive & Event Agreement; (2) knew the termination deprived Shutterstock of the right to further license or display PMC's photographs; and (3) Shutterstock nevertheless displayed the works and "credited itself . . . as the owner . . . to conceal the fact that Shutterstock does not have authority to" continue to "reproduce, distribute, or display" the images, "nor to license others to do so," and "that its exploitation of the works is infringing."  (FAC ¶¶ 49–53, 71).  Those allegations do more than merely "recit[e] the language of [the DMCA]."  (Mot. 22 (citing *AppSoft Dev., Inc. v. Diers, Inc.*, No. 13-CV-1520, 2014 WL 3893316, at *4 (M.D. Fla. Aug. 8, 2014)).  They plausibly allege that Shutterstock intentionally misidentified itself as the copyright owner to falsely convey that it was authorized to exploit the photographs and to make it more difficult for PMC to identify Shutterstock's post-termination infringement.  (*See* FAC ¶ 53).

20

These allegations are sufficient.  *See GlowImages*, 2020 WL 1866172, at *2 (allegations

that stock photo agency annotated plaintiff's photographs with its own watermark to induce

customers into believing it "owned or control[led] the copyright in the infringed copyrighted

works rather than [p]laintiff" stated DMCA claim); *Alamy*, 372 F. Supp. 3d at 139

("[A]lleg[ations] that Defendant placed watermarks on the Copyrighted Works in order to

facilitate its continued marketing and sale of licenses. . . . are sufficient as stated to survive a

motion to dismiss."); *Hirsch v. CBS Broad. Inc.*, No. 17-CV-1860 (PAE), 2017 WL 3393845, at

*8 (S.D.N.Y. Aug. 4, 2017) (allegations on information and belief that the defendant's removal

of CMI was "undertaken in support of [its] infringement of the Photo give rise to a plausible

inference of intentional removal of CMI").

PMC has also sufficiently pled that the false information provided was "copyright

management information" under the DMCA.  (*See* Mot. 20 n.14).  The Amended Complaint

alleges that Shutterstock "credited itself" or the "applicable photographers" when it

"reproduc[ed], distribut[ed], and/or display[ed]" the photographs on its websites and "in

metadata attached to the" photographs.  (FAC ¶¶ 51–52).  As Shutterstock concedes, and

screenshots taken after July 17, 2020 confirm, the photographs also bear Shutterstock's

watermark.  (*See* Mot. 18; FAC, Ex. 1).  Each of these counts as CMI.  *See Alamy*, 372 F. Supp.

3d at 138 ("[A] watermarked corporate name or symbol may refer to the author or copyright

owner when displayed on a copyrighted work in connection with the marketing of that work for

sale or license . . . [and] constitute CMI for the purpose of stating a violation of § 1202(a).");

*Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 304–05 (S.D.N.Y. 2011) (credit naming

stock photo agency and photographer was CMI).  This belies Shutterstock's contention that

PMC's allegations of false CMI are conclusory and "implausible." (Mot. 21).  "Providing an

actual example of" false CMI "is obviously more than a conclusory allegation." *BanxCorp. v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 610 (S.D.N.Y. 2010).[12]

Rule 9 of the Federal Rules of Civil Procedure does not require more.  That Rule allows intent and knowledge to be alleged generally, and the Second Circuit requires leniency in scienter pleading.[13]  *See*, *e.g.*, *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 693 (2d Cir. 2009) (courts are to be "lenient" because "scienter issues are 'appropriate for resolution by the trier of fact.'") (citation omitted); *see also Hirsch*, 2017 WL 3393845, at *8 (courts must be "lenient in allowing scienter issues . . . to survive motions to dismiss.").  For this reason, courts have sustained pleadings with similar—or less—detail regarding scienter than the Amended Complaint pleads.  *See Alamy*, 372 F. Supp. 3d at 139 (allegation that photo licensing agency continued using plaintiff's photographs with agency watermark after license expired satisfied DMCA scienter requirement); *Hirsch*, 2017 WL 3393845, at *8 (denying motion to

---

[12] Shutterstock's cases are not to the contrary.  These cases dismissed complaints because the plaintiff failed to allege that (1) the plaintiffs' work contained CMI when the defendants used those works; or (2) defendants removed or altered CMI under 17 U.S.C. § 1202(b).  *E.g. Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (plaintiff did not "identify which photographs had CMI removed" nor "describe what the removed or altered CMI was"); *Design Basics, LLC v. WK Olson Architects, Inc*., No. 17 C 7432, 2018 WL 3629309 at *4 (N.D. Ill. July 31, 2018) (plaintiff "d[id] not identify the CMI"); *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, No. 17-CV-8613 (JFK), 2018 WL 4830091, at *4 (S.D.N.Y. Oct. 4, 2018) (no allegation that product name conveyed ownership information); *Morgan v. Associated Press*, No. 15-03341-CBM-JEM, 2016 WL 6953433, at *3 (C.D. Cal. Mar. 16, 2016) (plaintiff "has not described the CMI he specifically alleges was either placed or removed."); *Stevens v. Corelogic, Inc*., 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016) ("Plaintiffs cannot point to a single photograph that had CMI" and failed to "show that [defendant] removed or altered any CMI"); *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, No. 11-CV-5177, 2012 WL 414803, at *6 (N.D. Ill. Feb. 8, 2012) (information that did "not link up in any way to the copyright registration" is not CMI).

[13] Shutterstock relies on *Masck v. Sports Illustrated*, No. 13-10226, 2014 WL 12658971 (E.D. Mich. Mar. 10, 2014) (Mot. 19 n.13), but the court does not set forth the allegations at issue, making it impossible to discern why the court found them conclusory.  Id. at *4.

dismiss where plaintiff alleged "on information and belief" that defendant "knowingly removed" plaintiff's CMI).

It is, moreover, irrelevant whether the CMI suggested that Shutterstock was merely "responsible for licensing," or a "copyright owner[]" or a "creator" (Mot. 20), in that by July 17, 2020, it was false for Shutterstock to identify itself as any of those things. *See* 17 U.S.C. § 1202(c) (CMI includes information about copyright owner or author); 17 U.S.C. § 101 (defining exclusive licensor as copyright owner).

Finally, Shutterstock's DMCA violation is not a mere "straightforward breach of contract." (*See, e.g.*, Mot. 15–16, 25). Shutterstock prematurely terminated the Archive & Event Agreement as of July 17, 2020 (FAC ¶ 27), so its post-termination conduct is neither authorized nor governed by that contract and it cannot rely on that contract to shield its post-termination conduct. If PMC proves its DMCA claim, it is entitled to elect statutory damages or actual damages plus all profits, if any, Shutterstock earned from the violations. *See* 17 U.S.C. § 1203(c)(1). PMC is not limited to an "account[ing]" of "licensing revenue" based on the rates that applied during the contract's term. *Krechmer* is not to the contrary. (*See* Mot. 19). Unlike PMC, the plaintiff in *Krechmer* failed to allege that it owned the work bearing the allegedly false CMI and was merely seeking damages for the defendant's non-payment under contract. *See Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018).

//

//

23

## <u>CONCLUSION</u>

For these reasons, PMC respectfully requests that the Court deny Shutterstock's motion to dismiss the Second, Third, and Fourth Claims for Relief in PMC's Amended Complaint.

Dated: New York, New York
      November 6, 2020

SHAPIRO ARATO BACH LLP

By:  <u>/s/ Cynthia S. Arato</u>
    Cynthia S. Arato
    Lauren M. Brody

500 Fifth Avenue, 40th Floor
New York, NY 10110
Telephone: (212) 257-4882
Facsimile: (212) 202-6417
carato@shapiroarato.com

*Attorneys for Plaintiff Penske Media Corporation*

24