UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENSKE MEDIA CORPORATION,

                Plaintiff,

-against-

SHUTTERSTOCK, INC.,

                Defendant.

Case No. 20-cv-04583 (MKV)


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT SHUTTERSTOCK, INC.'S
MOTION TO DISMISS THE SECOND, THIRD, AND FOURTH
<u>CAUSES OF ACTION IN THE AMENDED COMPLAINT</u>**


MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendant Shutterstock, Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.   PMC IMPLIED COVENANT CLAIM FAILS ON MULTIPLE GROUNDS ................... 2

II.  PMC HAS NOT STATED A CLAIM FOR COPYRIGHT INFRINGEMENT ................ 5

III. PMC'S DMCA CLAIMS FAIL TO PLEAD ALL OF THE REQUIRED
     ELEMENTS ........................................................................................................................ 8

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................................................................9

*Authors Guild v. Google, Inc.*,
 804 F.3d 202 (2d Cir. 2015)................................................................................................8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................................9

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
 448 F.3d 605 (2d Cir. 2006)................................................................................................8

*Cartoon Network LP v. CSC Holdings, Inc.*,
 536 F.3d 121 (2d Cir. 2008)............................................................................................6, 7

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
 650 F. Supp. 2d 314 (S.D.N.Y. 2009), *aff'd*, 976 F.3d 239 (2d Cir. 2020) ......................2, 3

*D & L Holdings, LLC v. RCG Goldman Co.*,
 LLC, 734 N.Y.S.2d 25 (1st Dep't 2001)..............................................................................3

*Dominick & Dominick LLC v. Deutsche Oel & Gas AG*,
 No. 14 Civ. 06445 (PKC), 2016 WL 11259075 (S.D.N.Y. Aug. 15, 2016),
 *aff'd sub nom. Dominick & Dickerman LLC v. Deutsche Oel & Gas AG*,
 756 F. App'x 58 (2d Cir. 2018) ..........................................................................................4

*Dorset Indus., Inc. v. Unified Grocers. Inc.*,
 893 F. Supp. 2d 395 (E.D.N.Y. 2012) ................................................................................4

*Hirsch v. CBS Broad. Inc.*,
 No. 17 Civ. 01860 (PAE), 2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017) .........................10

*In Touch Concepts, Inc. v. Cellco P'ship*,
 788 F.3d 98 (2d Cir. 2015)..................................................................................................3

*Jarvis v. K2 Inc.*,
 486 F.3d 526 (9th Cir. 2007) ..............................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*John Wiley & Sons, Inc. v. DRK Photo*,
   998 F. Supp. 2d 262 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir. 2018) ..............................6

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) ....................................................................................................10

*Krechmer v. Tantaros*,
   747 F. App'x 6 (2d Cir. 2018) ................................................................................................8, 9

*M/A-COM Sec. Corp. v. Galesi*,
   904 F.2d 134 (2d Cir. 1990)........................................................................................................5

*Mango v. BuzzFeed, Inc.*,
   356 F. Supp. 3d 368 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020) ...............................8

*Michael Grecco Prods., Inc. v. Alamy, Inc.*,
   372 F. Supp. 3d 131 (E.D.N.Y. 2019) .....................................................................................10

*Michael Grecco Prods., Inc. v. GlowImages*,
   No. 18 Civ. 00902 (MN), 2020 WL 1866172 (D. Del. Apr. 6, 2020) .................................6, 10

*Reiss v. Fin. Performance Corp.*,
   97 N.Y.2d 195 (2001) .................................................................................................................3

*Schmitt v. VAG Grp., Inc.*,
   2020 WL 331782 (D. Or. Jan. 25, 2010) ...................................................................................6

*Security Plans, Inc. v. CUNA Mut. Ins. Soc.*,
   769 F.3d 807 (2d Cir. 2014).......................................................................................................2

*Sterling Inv'r Servs., Inc. v. 1155 Nobo Assocs. LLC*,
   30 A.D.3d 579 (2d Dep't 2006) .................................................................................................3

*Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*,
   30 N.Y.2d 34 (1972) ..................................................................................................................5

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
   775 N.Y.S.2d 765 (2004)............................................................................................................3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**RULES & STATUTES**

17 U.S.C. § 106 ................................................................................................................. 6, 7, 9

17 U.S.C. § 1202 ............................................................................................................... 8, 9, 10

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 3

**OTHER AUTHORITIES**

Glen Banks, 28 N.Y. Prac., Contract Law § 11:15 (2020) ...................................................... 4

**PRELIMINARY STATEMENT**

PMC's opposition confirms that its suit begins and ends with its claim that Shutterstock did not pay the final year's advance under the parties' Contract.[1] While Shutterstock believes its position is defensible, the other claims simply do not belong, and PMC's opposition identifies no other action Shutterstock took that would give rise to any other claim. PMC's novel claim of breach of the implied covenant runs counter to the Contract, effectively seeking for the first time to add new terms to a contract that has ended. PMC's request to delay dismissal of the implied covenant claim is not warranted: the plain language of the parties' Contract eliminates the basis for adding new terms as PMC tries to do. New York law holds that breach of implied covenant claims are available only in narrow circumstances, and this is not such a case.

PMC's copyright arguments are likewise misplaced. PMC concedes Shutterstock ceased licensing photographs as of the date of termination. PMC cannot plausibly say that Shutterstock did anything to any PMC CMI post-termination, which is when the DMCA violations allegedly materialized through no act of Shutterstock's own. Instead, PMC relies primarily on rhetoric and inapt case law, revealing that the claims are improper. In multiple instances, PMC claims a court made a holding on an issue that was not before it; PMC proffers rulings on motions for default judgment as being pertinent, and even those rulings do not involve analogous facts. PMC claims it is "brazen" to follow clear Second Circuit precedent, and excoriates Shutterstock for failing to undertake a belabored discussion of the fair use factors as part of an argument in the alternative. PMC's failure to take up these points on the merits, including citing authority for its position that the facts here have ever, in any case, given rise to an infringement or a DMCA claim demonstrates what Shutterstock explains below: these claims cannot survive in this context.

---

[1] Capitalized defined terms have the same meaning as set forth in Shutterstock's moving brief.

**ARGUMENT**

**I.    PMC IMPLIED COVENANT CLAIM FAILS ON MULTIPLE GROUNDS**

An implied covenant of good faith and fair dealing claim is justified "only in a narrow range of cases." *Security Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 817 (2d Cir. 2014). This is not such a case. ***First***, the implied covenant is not a means by which contracting parties can add terms that were allegedly "contemplated" but not expressly included in their contract. PMC concedes that the Contract does not require Shutterstock to photograph Third-Party Events (Opp'n at 7), but maintains that it impliedly prohibits Shutterstock from photographing Third-Party Events unless Shutterstock uses PMC's credentials and grants PMC copyright ownership in the photographs it takes—even where Shutterstock has its own credentials or access independent of PMC. *See, e.g.*, Opp'n at 8 (referring to Shutterstock's alleged "implied obligation to photograph Third-Party Events, *if at all*, using PMC credentials . . . .") (emphasis added).

It is inconceivable that such a significant term would have been considered by the parties, accepted by Shutterstock, and then omitted from the Contract. But that is exactly what PMC claims, *i.e.*, that "the parties contemplated" a contract term that would have required that Shutterstock photograph Third-Party Events "if at all" using PMC's credentials,[2] did not ultimately include it in the Contract, but nonetheless, the Court should now deem the parties to have agreed to it, as if they had expressly included it. *Cf.* Opp'n at 7.

The implied covenant "cannot be used . . . to create new, affirmative duties . . . [beyond those] expressly set forth in the contract," *Compania Embotelladora Del Pacifico, S.A. v. Pepsi*

---

[2] "When the parties negotiated the Archive & Event Agreement, ***the parties contemplated***, and PMC reasonably and justifiably understood, ***that Shutterstock would use PMC's credentials to take photographs at these third party events, to the extent PMC offered such credentials to Shutterstock for, and Shutterstock wished to photograph, these events***, especially given that PMC was obligated to give its credentials exclusively to Shutterstock." FAC ¶ 44 (emphasis added).

2

*Cola Co.*, 650 F. Supp. 2d 314, 324 (S.D.N.Y. 2009), *aff'd*, 976 F.3d 239 (2d Cir. 2020) (cleaned up),[3] especially where "the circumstances surrounding the formation of the contract indicate that the parties . . . must have foreseen the contingency at issue . . . when the contract was made," *Reiss v. Fin. Performance Corp.*, 97 N.Y.2d 195, 199 (2001).[4] PMC's allegation that the parties "contemplated" PMC's supposed implied "if at all" term, combined with the undisputed omission of any such term from the Contract, is thus dispositive of PMC's implied covenant claim. *Id. See also Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 775 N.Y.S.2d 765, 768 (2004) (courts "should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include") (citation omitted).

**Second**, and in any event, there is no plausible explanation for the parties' omission of a term so important that—from PMC's perspective—noncompliance "destr[oys] the value of the contract" (Opp'n at 11),[5] and PMC does not offer one. Implying such a term after the fact would be especially improper here, given the Contract explicitly required Shutterstock to use PMC's credentials **and** photograph as to PMC Events (Contr. § 3(a)(ii)), but **not** Third-Party Events. Under well-established rules of contract interpretation, the Court should assume that "omission was intentional." *Sterling Inv'r Servs., Inc. v. 1155 Nobo Assocs. LLC*, 30 A.D.3d 579, 581 (2d Dep't 2006).[6]

---

[3] PMC's attempt to distinguish *Compania* and other cases based on their procedural posture (Opp'n at 7 n.2) is baseless. Courts applying New York law regularly dismiss implied covenant claims at the pleading stage, and not only because they are duplicative of a breach of contract claim, as PMC suggests. *See, e.g.*, *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015) (affirming Rule 12(b)(6) dismissal of implied covenant claim because such claim "cannot be used to impose an obligation that is inconsistent with express contractual terms"); *D & L Holdings, LLC v. RCG Goldman Co.*, LLC, 734 N.Y.S.2d 25, 31 (1st Dep't 2001) (dismissing implied covenant claim seeking to "add a new term to a contract" between "sophisticated commercial parties").

[4] PMC asserts there was "nothing foreseeable about Shutterstock obtaining and using its own credential[s]" (Opp'n at 10-11), but even if true (which it is not), it is irrelevant. PMC indisputably foresaw that Shutterstock may decline PMC's credentials, which is the contingency it now seeks to address.

[5] As discussed *supra*, Shutterstock's use of its own credentials did not destroy the contract's value.

[6] PMC's purported understanding of the Agreement is not probative of the parties' mutual expressed intent, which is

3

*Third*, PMC's alleged implied term is not consistent with the Contract's merger clause, which provides that the Contract "constitutes the entire agreement between the parties" (Contr. § 16), "supersedes all prior or simultaneous agreements, discussions, negotiations[,] and statements" (*id*), and can only be amended by "written agreement signed by both Parties" (*id.* § 17). "A party cannot reasonably believe . . . the contract included a promise inconsistent with the agreement's explicit terms."  Glen Banks, 28 N.Y. Prac., Contract Law § 11:15 (2020). And an "integrated written agreement with a prohibition against modifications 'except by written agreement signed by all parties,' [ ] protects a party against [implied covenant] claims of this type." *Dominick & Dominick LLC v. Deutsche Oel & Gas AG*, No. 14 Civ. 06445 (PKC), 2016 WL 11259075, at *9 (S.D.N.Y. Aug. 15, 2016), *aff'd sub nom. Dominick & Dickerman LLC v. Deutsche Oel & Gas AG*, 756 F. App'x 58 (2d Cir. 2018).[7]

*Fourth*, Shutterstock did not divert PMC's "expected benefits" under the Contract, much less "destroy" the value of the Contract for PMC. Opp'n at 5.[8] According to PMC, Shutterstock "deprived" it of the right to own and exploit the photos that Shutterstock took at Third-Party Events. *Id.* But that is not a right conferred by the Contract nor a benefit that PMC should have expected to receive.  Shutterstock agreed to grant PMC ownership of the copyright in photographs Shutterstock took at Third-Party Events ***when Shutterstock needed PMC's credentials to access the event***. Otherwise, in the event Shutterstock had its own access and did not need PMC's credentials, of course it did not agree to gratuitously transfer the copyright in its

---

the test.  And such understanding cannot be reconciled with the Agreement's terms applicable to PMC Events.  *See* 28 N.Y. Prac., Contract Law § 11:15 (reasonable expectation must be "derived from the text of the agreement").

[7] PMC's assertion that "a merger clause does not prevent a court from inferring a covenant of good faith and fair dealing" (Opp'n at 12 (citation omitted)) is misleading. This is the case only where *"the implied term is consistent with other terms in the contract,"* *Dorset Indus., Inc. v. Unified Grocers. Inc.*, 893 F. Supp. 2d 395, 407 (E.D.N.Y. 2012), and here, it is not.

[8] PMC has received substantial and numerous benefits under the Agreement.  *See* Mot. at 12.

4

photographs. Indeed, the idea that PMC's expected such to be among the "fruits of the contract" is inconsistent with the reality that Shutterstock was free to decline opportunities to photograph the Third-Party Events altogether—for any reason or no reason at all—resulting in no Third-Party Event Content for PMC to own and exploit.

*Fifth*, PMC claims that Shutterstock "impaired PMC's ability to get photos for itself at these events," but that is false on its face. Opp'n at 6. PMC always maintained the right to photograph Third-Party Events itself, and as for its desire, in hindsight, to have preserved the right to "offer[] its credentials to . . . third-part[ies]," it could have negotiated for that right to be included amongst the other substantial benefits PMC bargained for and received under the Contract. *Id*.

*Sixth*, and relatedly, PMC complains Shutterstock's use of its own credentials put the parties "in competition" for the licensing of Third-Party Event Content. *Id*. But again, the terms of the Contract do not purport to immunize PMC from lawful competition, and it is axiomatic that the implied covenant does not "extend so far as to undermine [Shutterstock's] general right to act on its own interests" by, for example, taking photographs using its own credentials and licensing them on its own platform, even if doing so "may incidentally lessen the [PMC's] anticipated fruits from the contract." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990); *see also, e.g.*, *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*, 30 N.Y.2d 34, 45 (1972) ("licensees are not deemed to limit themselves in their usual business enterprise to the promotion of the licensor's product, absent specific agreement to this effect").

## II. PMC HAS NOT STATED A CLAIM FOR COPYRIGHT INFRINGEMENT

As Shutterstock explained in its opening brief, PMC identifies no infringing act that Shutterstock engaged in at any time: PMC identifies no post-termination license or permission

that Shutterstock granted and in fact concedes (Opp'n at 12) there was none.[9] In opposition to the motion, PMC commits to positing that because small, watermarked examples of photographs previously offered for license remained visible for a short time (in the same manner as previously), this is an act of "display" that constitutes infringement. As a threshold matter, the Contract confirms that the length of the wind-down was not part of the Contract, and neither the license nor the parties' termination discussions provides an end-date for removal from display. PMC likewise does not allege that Shutterstock agreed to *remove* all of the samples off its website by Shutterstock's chosen date of termination, as opposed to ceasing *licensing* them; PMC identifies no provision of the Contract to the contrary. Nonetheless, Shutterstock explained how PMC was wrong, including that doing nothing is not a volitional "act" under § 106 of the Copyright Act, and that even if it were, the display is and was a fair use. *See* Mot. at 24.

In opposition, PMC cites a series of non-binding cases suggesting that merely leaving something up, including during a period in which a contract is being wound-down, is infringement. None of the cases PMC cites in support is in-circuit, nor is any on-point.[10]

Despite the clear mandate that a party "do" something (*i.e.*, engage in an affirmative act) in order to engage infringement, *see Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121,

---

[9] Despite trying to preserve its licensing argument in a footnote, PMC concedes that it has no facts to support the allegation of post-termination licensing, nor does it address Shutterstock's explanation (Opp'n at 17-18) as to why such an allegation would be implausible.

[10] PMC's passing reference to *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 287 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir. 2018), for the principle of "scope," shows the standard requires a specific breach. Here, mere continued display without more is not enough. *Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007), did not hold that online display beyond a license period is infringement; the case involved a contract with a specific end date, yet the defendant decided to take the affirmative steps of scanning the ads and posting them on its website. *Id.* at 528. Moreover, the court did not decide the issue because the defendant conceded its acts were infringing. *Id.* at 530. In *GlowImages*, the court found, on a motion for default judgment, that the complaint contained facts demonstrating that the defendant "reproduced, distributed, put on public display, *and* offered for sale" plaintiff's works. No. 18 Civ. 00902 (MN), 2020 WL 1866172, at *2 (D. Del. Apr. 6, 2020) (emphasis added). And in *Schmitt v. VAG Grp., Inc.*, the defendant used photographs in conjunction with the sale of separate products after a pro se plaintiff issued a notice of termination. No. 09 Civ. 00380 (HU), 2020 WL 331782, at *2 (D. Or. Jan. 25, 2010). The court did not hear any arguments: like *GlowImages*, *Schmitt* involved a motion for default judgment. *Id.* at *1.

130-32 (2d Cir. 2008), PMC puts forth a counterintuitive argument (Opp'n at 14-15): that an ongoing display is only infringing if the original post was *not* infringing, whereas there is no new act of infringement from continued display if the original post was infringing.  This construct not only turns copyright law on its head, but it runs directly contrary to the principles of *Cartoon Network* and the letter of *Minden* and *Wolf*, which state that an *act* giving rise to a violation of the display right occurs only once.[11]  PMC does not argue that *removing* material from where it was displayed is infringement.  Nor is contract termination one of the acts in 17 U.S.C. § 106.[12]

On the alternative argument that any display is fair use, PMC argues that the Court should ignore multiple on-point cases, but not because they are distinguishable.  Rather, PMC's counter is that Shutterstock's point is "frivolous" simply because it did not walk the Court through the specific fair use factors.  PMC's need to resort to such an argument shows that PMC has no basis to distinguish Shutterstock's on-point authorities, which readily establish that displaying the content to show what is for sale is a classic form of fair use.  As the Court can easily see, a licensee would need to get an idea of what it is planning to license (making the use transformative under the first factor as in the cited cases at Mot. p. 24), and it is implausible to believe that displayed images for license are a substitute for the original (as noted in the cited cases at Mot. p. 24 discussing the fourth factor). Indeed, if a watermark-protected example somehow were a substitute for the original, the licensing provisions in the parties' contract

---

[11] Neither *Wolf* nor *Minden* qualify their holdings in the context of the statute of limitations, as PMC asserts.  Rather, they turn on when an act within the exclusive rights of the copyright owner (such as the right to display) takes place. *See* Mot. at 24.

[12] The claim that a party must be a "service provider[]" to avail themselves of black-letter law (Opp'n at 16) is a classic red herring designed to confuse.  None of Shutterstock's cited cases turns on any such distinction, and indeed, the defendants were sued for direct infringement, *i.e.*, they were the alleged infringers, just as here.  PMC's problem is that literally **nothing happened** with the displayed content from the time before termination until the content was finally removed except that it came down.  In other words, unlike in the server cases, no party is alleged to have engaged in any infringing act – not the original uploader nor any third-party platform.

would make no sense, and PMC points to no term pertaining to such uses. PMC's complaint that the thumbnails took longer to take down than PMC now says it would have liked does not render the purpose of the use any different than it was before. And, while the first and fourth factors carry the most weight, *see Authors Guild v. Google, Inc.*, 804 F.3d 202, 213-14 (2d Cir. 2015), the second and third factors also favor Shutterstock. *See id.* at 220-223 (scans of full works); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) (discussing use of reduced sized images for purposes of illustration). Importantly, PMC makes no argument to the contrary.

### III.  PMC'S DMCA CLAIMS FAIL TO PLEAD ALL OF THE REQUIRED ELEMENTS

Even assuming *arguendo* that PMC can plausibly plead an infringement, which it cannot, PMC's position on the DMCA underscores the frailty of its claim. Indeed, PMC relies almost entirely on the purportedly "controlling" *Mango* case, a § 1202(b) case, as the basis for its opposition. But this is a § 1202(a) case, making the decision inherently *not* controlling. Indeed, even the district court in *Mango* noted that the provisions are different, and one cannot be relied on for interpretation of the other. *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020) (expressly rejecting *Krechmer*, a § 1202(a) decision, in § 1202(b) case on ground that a § 1202(a) case is not instructive). Thus, it is false to say that *Mango* is "on all fours" with this case, Opp'n at 19, and the heavy reliance on it calls PMC's DMCA argument into doubt.[13]

---

[13]  The failure to discuss an inapt decision does not merit the accusation that it was "ignored," and PMC cites no place where any argument that Shutterstock made contradicted what the Second Circuit held. *See* Mot. at 16, 19 n.11 (referencing "infringement" without qualification). As noted above, the case is not pertinent (except, perhaps, to further underscore the double scienter requirement), given the different provision and very different facts (where the court believed that the witness replaced credit information in order to conceal that he had no permission from the copyright owner to use the photograph). Notably, PMC itself acknowledges as much, including distinguishing § 1202(b) cases as being inapplicable on a § 1202(a) claim. *See* Opp'n at 22 n.12. PMC cannot have it both ways.

8

The controlling case for PMC's § 1202(a) claim is *Krechmer v. Tantaros*, 747 F. App'x 6 (2d Cir. 2018), which PMC improperly dismisses in perfunctory fashion at the end of its argument. This attempt to bury the case is telling: the case not only addresses a § 1202(a) claim but a situation where, as here, a party with a breach of contract claim asserts a DMCA claim arising out of the contractual dispute.[14]  As *Krechmer* and other § 1202(a) decisions hold, a plaintiff must plead not just infringement, but it *also* must put forth sufficient facts to allege that the defendant provided or distributed false CMI, *and* that this was done (a) knowingly, *and* (b) with the intent to induce, enable, facilitate, or conceal infringement.  *See* Mot. at 15-23.  As Shutterstock noted, *id.*, not only does PMC fail to put forth plausible facts on all of these elements, as *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) require, but PMC's formulations skip many of the elements entirely.  PMC even declines to address the fact that the gravamen of the claim is that someone may think Shutterstock is still licensed to distribute the photographs and therefore may misattribute the licensor's name.  *See, e.g.*, FAC ¶ 54; Mot. at 16-19; Opp'n at 23 (referencing *licensor*).  As the statute confirms, misattribution, including as to licensing authority, is not an infringement of one of the enumerated rights in § 106 of the Copyright Act.

On top of PMC's failure to identify any false CMI and any third-party use, it also cannot possibly claim that Shutterstock was trying to "cover its tracks" or interfere with PMC's copyright protection measures, as the DMCA contemplates.  That is so because there is no "hiding" by the defendant here, as in other cases involving the policies and application of the DMCA.  As PMC does not dispute and as the FAC confirms, the photograph samples on

---

[14] PMC misunderstands the point of the reference to the contract as it relates to credits.  The point is that, as in *Krechmer*, the issue is one of contract, and PMC fails to plead that the designations that were on the photographs during the term of the agreement were not consented to by PMC, which is further illustrated by the fact that PMC withdrew its claim pertaining to all pre-termination crediting – crediting that was not alleged to have changed at any time.  *See* Mot. at 20-21 & n.15.

Shutterstock's site were displayed as they always had been, with PMC's full knowledge, with the same watermarks or other designations as before. Whatever CMI existed at the time is not alleged to have changed contemporaneously with the wind-down of the parties' relationship.[15] PMC's election to drop its prior DMCA claim, based on pre-termination use, alone estops PMC from taking the position that the termination is the catalyst for a multi-element DMCA claim. As a matter of basic tort law, there were no "acts" that took place (*i.e.*, no ownership or authorship credit was "added"), and certainly not with any requisite mental state that would be tied to torts that did not take place. As the holes in PMC's arguments demonstrate, a law designed to thwart interference with copyright owners' enforcement protections has no place in an action that centers on a contractual dispute, and that is all that exists here.[16]

## CONCLUSION

Shutterstock's motion should be granted without leave to replead again.

---

[15] PMC's citation to *Kelly v. Arriba Soft Corp.* at Opp'n p. 19 n.11 is misleading. The Circuit did **not** hold that larger versions would not be a fair use; it reversed because the parties **never moved on the issue** and therefore the issue was not before the Circuit. *See* 336 F.3d 811, 822 (9th Cir. 2003). In any case, the FAC does not identify any images as used, much less anything about purported "enlarged" images (as opposed to the watermarked thumbnails shown as PMC's purported IP), an opposition brief is not the place to amend a complaint that has already been amended once. PMC also misrepresents the exhibit to its complaint, which it claims are examples of its photographs, not "screenshots" showing Shutterstock's alleged use. Indeed, there is no basis to conclude that the exhibit shows a website or platform of any type.

[16] PMC's cited cases, Opp'n at 21, are distinguishable as a result – factually and legally. While PMC suggests that *Michael Grecco Prods., Inc. v. GlowImages*, No. 18 Civ. 00902 (MN), 2020 WL 1866172 (D. Del. Apr. 6, 2020), a case in a different Circuit, was decided on a motion to dismiss, it actually involved a motion for default judgment on facts that appear to have involved false watermark information on a specific photograph that the plaintiff alleged specifically was actually distributed after the 18-month wind-down period. Likewise, in *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019), a case centered on § 1202(c), the plaintiff identified specific facts involving the express **post-termination placement** of a watermark, to falsely identify ownership, with respect to *continued sales*; no such facts are alleged here; no sales are alleged to have continued after the effective date of termination. Notably, the *Alamy* court distinguished another case on a ground present here – namely, that the claim was nothing more than another claim in disguise. *Id.* at 138. *Hirsch v. CBS Broad. Inc.*, No. 17 Civ. 01860 (PAE), 2017 WL 3393845, *8 (S.D.N.Y. Aug. 4, 2017), is a § 1202(b) case where the defendant took a photograph that contained CMI and used it, for infringing purposes, in a way that cropped out the prominent "gutter credit" CMI. This is not a case where Shutterstock is alleged to have taken a PMC photograph and omitted credit. Moreover, while courts may be lenient on scienter issues, the test is not so lenient that it overrides the general requirements of pleading. *See* Mot. at 19 n.13; 21.

| | |
|---|---|
| Dated: New York, New York<br>November 20, 2020 | Respectfully submitted,<br><br>MITCHELL SILBERBERG & KNUPP LLP<br><br><br>By: <u>s/Eleanor M. Lackman</u><br>Eleanor M. Lackman<br>437 Madison Ave., 25th Floor<br>New York, New York 10022-7001<br>Telephone: (212) 509-3900<br>Facsimile: (212) 509-7239<br>Email: eml@msk.com<br><br>*Attorneys for Defendant*<br>*Shutterstock, Inc.* |

11