UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENSKE MEDIA CORPORATION,

                         Plaintiff,

        -against-

SHUTTERSTOCK, INC.,

                         Defendant.

Case No. 20-cv-04583 (MKV)

**DEFENDANT SHUTTERSTOCK, INC.'S ANSWER TO PLAINTIFF'S FIRST CAUSE OF ACTION IN AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

## ANSWER TO FIRST CAUSE OF ACTION

Defendant Shutterstock, Inc. ("Shutterstock") answers the First Cause of Action for Breach of Contract[1] in the Amended Complaint of Plaintiff Penske Media Corporation ("PMC"), dated September 11, 2020 (Dkt. No. 30) ("Amended Complaint"), as follows:

1.      Shutterstock denies each allegation of Paragraph 1.

2.      Shutterstock admits that, in June 2015, the parties entered into an Archive & Event Hosting and Licensing Agreement, and that the agreement provided Shutterstock with exclusive rights to certain photographs.  Shutterstock denies every other allegation of Paragraph 2.

3.      Shutterstock admits that PMC has failed to perform under the parties' contract, including on the ground that the pandemic has caused PMC to be unable to provide the new content at the core of the parties' contract.  Shutterstock otherwise denies each allegation of Paragraph 3.

---

[1] Shutterstock is not answering the Second, Third, and Fourth Causes of Action in the Amended Complaint at this time because they are the subject of Shutterstock's pending motion to dismiss.

4.     Shutterstock admits that all of the primary and core purposes of the parties' agreement were frustrated as a result of the pandemic, and further avers that PMC willfully expunged any value that remained by ceasing providing archival photographs in addition to event photographs.  Shutterstock otherwise denies each allegation of Paragraph 4.

5.     Shutterstock denies each allegation of Paragraph 5.

6.     Shutterstock denies each allegation of Paragraph 6.

7.     Shutterstock is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 7, and on that basis denies each allegation contained therein.

8.     Shutterstock admits that it issued a press release in April 2020 that it was well positioned financially with $296 million in cash and no debt and that it expected to produce significant earnings and free cash flow in 2020.  Shutterstock denies every other allegation of Paragraph 8.

9.     Shutterstock denies each allegation of Paragraph 9.

10.     Shutterstock admits the allegations of Paragraph 10 to the extent that they allege that PMC is a media and publishing company that publishes certain fashion and entertainment periodicals.  Shutterstock denies every other allegation of Paragraph 10.

11.     Shutterstock admits that it owns and operates a website involved in licensing digital imagery.  Shutterstock denies each and every other allegation of Paragraph 11.

12.     The allegations of Paragraph 12 call for legal conclusions as to which no response is required, but to the extent one is required, Shutterstock admits that the Court has subject matter jurisdiction over PMC's federal claims and supplemental jurisdiction over PMC's state-

law claims but denies that PMC's claims have merit and otherwise denies the remaining allegations of Paragraph 12.

13.     The allegations of Paragraph 13 call for legal conclusions as to which no response is required, but to the extent one is required, Shutterstock admits that Shutterstock's principal place of business is located within the State of New York and Shutterstock consented to exclusive jurisdiction of the courts located in New York.  Shutterstock denies any remaining allegations of Paragraph 13.

14.     The allegations of Paragraph 14 call for legal conclusions as to which no response is required, but to the extent one is required, Shutterstock admits that it resides in this District and has agreed to venue before this Court.  Shutterstock denies the remaining allegations of Paragraph 14 as unintelligible.

15.     Shutterstock admits the allegations of Paragraph 15.

16.     Shutterstock admits that the parties' agreement provided Shutterstock with exclusive rights to certain photographs and refers to the agreement for its terms and scope. Shutterstock denies every other allegation of Paragraph 16.

17.     Shutterstock admits that, in exchange for other valuable consideration, the parties' agreement grants it the exclusive right to PMC's credentials pertaining to certain events, and to attend and photograph certain PMC-hosted events, as well as to license photographs from those events in exchange for payment of royalties.  Shutterstock denies every other allegation of Paragraph 17 and refers to the agreement for its terms.

18.     Shutterstock denies each allegation of Paragraph 18.

19.     Shutterstock admits that Getty Images is a competitor of Shutterstock as a licensor of imagery.  Shutterstock denies every other allegation of Paragraph 19.

12601850.8

20.     Shutterstock admits that it acquired Rex Features in January 2015.  Shutterstock denies every other allegation of Paragraph 20.

21.     Shutterstock admits that the parties entered into an Archive & Event Hosting and Licensing Agreement, effective July 1, 2015.  Shutterstock refers to the cited materials for the truth and context of the partial and excerpted quotations in the fourth, fifth, and sixth sentences of Paragraph 21.  Shutterstock denies every other allegation of Paragraph 21.

22.     Shutterstock refers to the agreement for the truth of its contents, and otherwise denies each allegation of Paragraph 22.

23.     Shutterstock denies each allegation of Paragraph 23.

24.     Shutterstock admits it has credibility and a foothold in the editorial and news licensing market within the United States but denies that such credibility resulted from the parties' agreement and avers that it had such credibility prior to the parties' agreement. Shutterstock denies every other allegation of Paragraph 24.

25.     Shutterstock does not have knowledge or information sufficient to form a belief about whether Paul Melcher coined or otherwise used the term "golden pass."  Shutterstock denies every other allegation of Paragraph 25.

26.     Shutterstock admits that in the past, it has received rights to license images from PMC's photograph collection.  Shutterstock denies every other allegation of Paragraph 26.

27.     Shutterstock admits that it delivered PMC a written "Notice of termination for cause" dated May 18, 2020 that provided PMC with a 45-day notice and cure period pursuant to the terms of the parties' agreement.  Shutterstock admits it sent PMC a second letter dated July 2, 2020 confirming that Shutterstock would terminate the agreement on July 17, 2020. Shutterstock denies every other allegation of Paragraph 27.

28.     Shutterstock admits that the end of the parties' agreement was a result of the COVID-19 pandemic frustrating the purpose of the parties' agreement and that Shutterstock is excused as a matter of both fact and law from paying the advance that was otherwise to be paid by July 1, 2020.  Shutterstock denies every other allegation of Paragraph 28.

29.     Shutterstock admits that the pandemic has frustrated the purpose of the agreement.  Shutterstock denies every other allegation of Paragraph 29.

30.     Shutterstock denies each allegation of Paragraph 30.

31.     Shutterstock denies each allegation of Paragraph 31.

32.     Shutterstock denies each allegation of Paragraph 32.

33.     Shutterstock admits that it continued to license images from PMC's photograph collection to third parties after some COVID-19 restrictions were implemented in the United States and prior to the effective date of termination of the parties' Contract pursuant to notice. Shutterstock denies every other allegation of Paragraph 33.

34.     Shutterstock admits that the parties' joint press release announcing their agreement in 2015 included the language quoted in the second sentence of Paragraph 34, among other language in which PMC references "Shutterstock's technology and innovative marketplace" and Shutterstock's "most compelling vision for the future of editorial imagery," and Shutterstock refers to the press release for its contents and context.  Shutterstock admits that its Form 10-K report for 2015 included the language quoted in the last sentence of Paragraph 34, and Shutterstock refers to the Form 10-K report for its contents and context.  Shutterstock denies every other allegation of Paragraph 34.

35.     Shutterstock denies each allegation of Paragraph 35.

36.     Shutterstock denies each allegation of Paragraph 36.

37.     Shutterstock admits that, on February 13, 2020, it announced that its founder and CEO would step down, assume the role of executive chairman, and be replaced by a new CEO. Shutterstock denies every other allegation of Paragraph 37.

38.     Shutterstock denies each allegation of Paragraph 38, and specifically avers that Shutterstock began to develop the "new royalty structure" referenced in Paragraph 38 prior to the COVID-19 pandemic in order to provide greater earnings potential to content creators for producing quality work that is fresh, relevant, and in demand by Shutterstock customers.

39.     Shutterstock denies each allegation of Paragraph 39.

40.     Shutterstock admits that it issued a press release in April 2020 that it was well positioned financially with $296 million in cash and no debt and that it expected to produce significant earnings and free cash flow in 2020.  Shutterstock denies every other allegation of Paragraph 40.

41.     Shutterstock denies each allegation of Paragraph 41.

42.     Shutterstock admits the allegations of the first sentence of Paragraph 42 and refers to the agreement for the truth and context of the statement.  Shutterstock denies every other allegation of Paragraph 42.

43.     Shutterstock admits that the parties' agreement granted Shutterstock the exclusive right to PMC's credentials to certain events and provided that PMC would own any photographs shot by Shutterstock at such events using PMC's credentials.  Shutterstock denies every other allegation of Paragraph 43.

44.     Shutterstock denies each allegation of Paragraph 44 and refers to the agreement for an accurate recitation of the parties' obligations.

45.     Shutterstock denies each allegation of Paragraph 45.

12601850.8

46.     Shutterstock denies each allegation of Paragraph 46.

47.     Shutterstock denies each allegation of Paragraph 47.

48.     Shutterstock denies each allegation of Paragraph 48.

49.     Shutterstock denies each allegation of Paragraph 49.

50.     Shutterstock denies each allegation of Paragraph 50.

51.     Shutterstock denies each allegation of Paragraph 51.

52.     Shutterstock denies each allegation of Paragraph 52.

53.     Shutterstock denies each allegation of Paragraph 53.

54.     Shutterstock denies each allegation of Paragraph 54.

55.     In response to Paragraph 55, Shutterstock incorporates by reference Paragraphs 1-54 of this Answer as though set forth in full herein.

56.     Shutterstock denies each allegation of Paragraph 56.

57.     Shutterstock denies each allegation of Paragraph 57.

58.     Shutterstock denies each allegation of Paragraph 58.

59.     Shutterstock denies each allegation of Paragraph 59.

60.     Shutterstock denies each allegation of Paragraph 60.

Shutterstock does not answer Paragraphs 61 through 79 of the Amended Complaint at this time because they relate solely to causes of action that are the subject of Shutterstock's pending motion to dismiss. If those causes of action are not dismissed as a result of Shutterstock's motion, Shutterstock will respond to Paragraphs 61 through 79 as required by the Federal Rules of Civil Procedure and applicable Local Rules.

## AFFIRMATIVE DEFENSES

Without waiving or excusing PMC's burden of proof or admitting that Shutterstock has any burden of proof, Shutterstock asserts the following affirmative defenses as to the First Cause of Action.

### FIRST AFFIRMATIVE DEFENSE

1.      PMC's First Cause of Action is barred, in whole or in part, because it fails to state a claim upon which relief can be granted, including as set forth in Shutterstock's motion to dismiss.

### SECOND AFFIRMATIVE DEFENSE

2.      PMC's First Cause of Action is barred, in whole or in part, by the doctrines of estoppel, laches, and waiver, including, but not limited to, resulting from the fact that PMC ceased performing under the parties' agreement.

### THIRD AFFIRMATIVE DEFENSE

3.       PMC's First Cause of Action is barred, in whole or in part, because the purpose of the parties' Archive & Event Image Hosting and Licensing Agreement (the "Contract") has been frustrated.  The central purpose of the Contract is, among other things, for PMC to provide access for Shutterstock to attend and photograph certain events.  The unforeseen and unforeseeable COVID-19 pandemic has resulted in the cancellation of these events, and thus, PMC has been unable to provide access for Shutterstock to attend and photograph any such events since at least as early as mid-March 2020, thereby substantially frustrating the purpose of the Contract.

## FOURTH AFFIRMATIVE DEFENSE

4.     PMC's First Cause of Action for breach of contract fails because there has been a material failure of consideration.  Pursuant to the parties' Contract, PMC was required, *inter alia*, to provide access for Shutterstock to attend and photograph certain events.  However, PMC has not provided access for Shutterstock to attend and photograph any such events since at least as early as mid-March 2020, resulting in a material failure of consideration under the Contract for a substantial period of time.

## FIFTH AFFIRMATIVE DEFENSE

5.     PMC is not entitled to enforce its Contract with Shutterstock because PMC materially breached the same by failing to provide access for Shutterstock to attend and photograph any events since at least as early as mid-March 2020.

## SIXTH AFFIRMATIVE DEFENSE

6.     PMC's First Cause of Action is barred, in whole or in part, because it would be unjustly enriched, at Shutterstock's expense, if allowed to recover the damages alleged in the Amended Complaint.  It would be against equity and good conscience to permit PMC to recover, *inter alia*, the ███████ in credit applicable to its licensing and use of Shutterstock's content and/or payment of the ███████ royalty advance for the period between July 1, 2020 and June 30, 2021 when the unforeseen and unforeseeable supervening COVID-19 pandemic has resulted in a material failure of the consideration owed to Shutterstock.

## SEVENTH AFFIRMATIVE DEFENSE

7.     PMC's cause of action for breach of contract fails because certain events that were a condition precedent to Shutterstock's performance under the Contract, including but not

limited to the fact that PMC's compliance with the Contract during the immediately preceding July 1, 2019 to June 30, 2020 Contract year did not occur.

## EIGHTH AFFIRMATIVE DEFENSE

8.      PMC's First Cause of Action is barred, in whole or in part, by the doctrine of unclean hands, including but not limited to PMC's continued and accelerated use of Shutterstock material without a license and without payment until November 2020, well after PMC has claimed the Contract was terminated.

## NINTH AFFIRMATIVE DEFENSE

9.      To the extent PMC has any valid claim for damages against Shutterstock, those damages should be offset by damages PMC caused Shutterstock as a result of PMC's wrongful conduct.

## TENTH AFFIRMATIVE DEFENSE

10.     PMC has failed to mitigate its alleged damages and/or losses and, to the extent PMC has suffered any damages and/or losses, recovery is barred or must be reduced accordingly.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     PMC is not permitted to recover any damages under the "Limitation of Liability" provision of the parties' Contract.

## RESERVATION OF RIGHTS

Shutterstock does not presently know all the facts and circumstances respecting PMC's claims and reserves the right to amend this Answer should it later discover facts demonstrating the existence of additional affirmative defenses.  Shutterstock further reserves the right to assert additional affirmative defenses to PMC's Second, Third, and Fourth Causes of Action, which are the subject of Shutterstock's pending motion to dismiss.

## COUNTERCLAIM

Shutterstock, Inc. ("Shutterstock") hereby brings this counterclaim ("Counterclaim") against Penske Media Corporation ("PMC") pursuant to Rule 13 of the Federal Rules of Civil Procedure, and states as follows:

## NATURE OF THE ACTION

1.      This action arises out of a June 1, 2015 Contract (defined below) between Shutterstock and PMC (together, the "Parties") pertaining to the creation, licensing, and use of photographic content.  The Parties' relationship was largely without dispute for nearly five years.  However, like many other business relationships, it was jolted by the COVID-19 pandemic.  As a direct result of the pandemic, the events that form the backbone of the Contract were cancelled, or if not cancelled, presented in an extremely limited or online-only basis that precluded the very content for which Shutterstock had agreed to pay substantial yearly advances.

2.      When Shutterstock initially raised concerns about the COVID-19 pandemic, PMC breached the Contract right away by substantially reducing distribution of Archive Images (defined below) to Shutterstock, refusing to negotiate, demanding payment of the full advance for the 2020-2021 Contract Period (defined below) despite not having treated the advance for the prior contract period in good faith when the pandemic hit, and refusing to discuss an appropriate wind-down period.  Then, PMC sued—crying poverty while buying up other media—and, when faced with Shutterstock's motion to dismiss their copyright claims, PMC registered as their own with the U.S. Copyright Office a whole slew of Shutterstock's photos and asserted new claims over them, all the while continuing to use their Shutterstock account until as recently as November 2020, and maintaining that the Contract was terminated such that even a display of

watermarked images during the wind-down period was a basis to demand windfall statutory damages.

3.      The COVID-19 pandemic and resulting cancellations of live, in-person events presented a classic example of frustration of purpose:  Shutterstock entered into the Contract for access to and the ability to generate new, in-demand content from high profile events; but in the midst of the pandemic, these events ceased to exist in any meaningful way.  Accordingly, the Contract should be considered rescinded, Shutterstock should be refunded pro-rata the amounts it paid for the 2019-2020 Contract Period, and Shutterstock should be excused from further payment of royalty advances for the extensive period in which PMC has been unable to substantially perform its contractual obligations.

4.      Furthermore, PMC should be held accountable for willfully breaching its obligation to supply Archive Images in good faith under the Contract and its improperly-obtained copyright registrations should be invalidated, and PMC should be ordered – at a minimum – to pay Shutterstock licensing fees for its unrestrained helping of itself to Shutterstock content for free through November 2020 – nearly four months after PMC claims the Contract terminated in full.

## **PARTIES**

5.      Shutterstock is a Delaware corporation with its principal place of business in New York, New York.

6.      PMC is a Delaware corporation with its principal place of business in Los Angeles, California.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Shutterstock's Counterclaim under 28 U.S.C. § 1367(a) because the claims alleged in this Counterclaim are so related to the claims alleged by PMC in the Amended Complaint, dated September 11, 2020 (Dkt. No. 26) ("Amended Complaint"), that they form part of the same case or controversy under Article III of the U.S. Constitution.

8.      This Court also has subject matter over Shutterstock's Fifth and Sixth Causes of Action under 28 U.S.C. § 1331 and/or the Declaratory Judgement Act, 18 U.S.C. § 2201, because the relief sought therein arises under the laws of the United States, including, in particular, the Computer and Fraud Abuse Act , 18 U.S.C. § 1030, and the Copyright Act, 17 U.S.C. § 101, *et seq.*

9.      This Court has personal jurisdiction over PMC in this Court because, among other things, PMC consented in the Contract at issue to the exclusive jurisdiction of the federal and state courts located in New York and submitted to the personal jurisdiction of this Court in filing its Amended Complaint.

10.      Venue is proper in this District under 28 U.S.C. § 1391.  PMC waived in the Contract at issue any and all objections to venue in the federal and state courts located in New York.

## FACTUAL ALLEGATIONS

**A.      The Parties Enter Into The Contract At Issue, Effective July 1, 2015.**

11.      Shutterstock is a leading global provider of high-quality licensed photographs, vectors, illustrations, videos, and music to business, marketing agencies, and media organizations around the world.  Working with its growing community of over one million contributors,

13

Shutterstock adds hundreds of thousands of images each week, and currently has more than 350 million images and more than 20 million video clips available on its platform.

12.     Shutterstock, founded in 2003, historically provided premium, professional-grade "stock" photographs to creative companies and corporate marketing departments.  As it expanded, Shutterstock has also established itself as an industry leader in the field of editorial imagery.  Shutterstock solidified its entry into editorial imagery through its acquisition of Rex Features—the largest independently-owned photographic press agency in Europe—for $33 million in or around January 2015, giving it access to a library of 13 million digital images and coverage of celebrity-driven events.

13.     Further expanding into the field of editorial imagery, in June 2015, Shutterstock and PMC announced they had entered into the Archive & Event Image Hosting and Licensing Agreement (the "Contract"), effective as of July 1, 2015.  PMC is a digital media company that owns brands such as *Women's Wear Daily*, *Variety*, and *Rolling Stone*.  Pursuant to the Contract, PMC agreed to provide to Shutterstock licensing rights to, *inter alia*, PMC's archival content (the "Archive Content") as well as opportunities for Shutterstock to create new content at two different types of events.  Specifically, PMC is contractually obligated to provide to Shutterstock:  (i) exclusive access to attend and photograph events put on by PMC ("PMC Events"); and (ii) access to attend and photograph events put on by third parties via PMC's credentials ("Third-Party Events").  Shutterstock then has the right to license all photos taken at those events.

14.     PMC previously had a similar deal with Shutterstock's competitor, Getty Images, but according to PMC's Chairman and CEO, PMC "saw a better opportunity for aligning the PMC brands with Shutterstock, which [it] believe[d] to be the ascending platform for imagery

14

and video."  In the press release announcing the parties' multi-year alliance, PMC recognized that Shutterstock had "the most compelling vision for the future direction of editorial imagery" and noted that it intended to "leverage Shutterstock's outstanding technology and innovative marketplace for [PMC's] editorial photography business."  One of PMC's publications reported that PMC expected the deal with Shutterstock to result in more than $50 million in long-term aggregate value for PMC.

15.     The parties' alliance promised to bolster Shutterstock's collection of editorial imagery.  PMC's provision of access for Shutterstock to attend and photograph the PMC Events and Third-Party Events—thereby enabling Shutterstock's photographers to take timely, highly-consumable, entertainment and fashion-focused content, which would be offered for license exclusively on Shutterstock's website—is, by far, the most valuable component of the consideration due to Shutterstock under the Contract.  Absent access to the PMC Events and Third-Party Events and the ability to license photos from those events, Shutterstock would not have entered into the Contract with PMC.

16.     In exchange for this consideration, based on the value of the entire package of PMC's above-listed obligations, Shutterstock agreed that PMC would retain ownership of the content created by Shutterstock at PMC Events and at Third-Party Events for which Shutterstock used PMC's credentials.  Additionally, Shutterstock agreed to pay to PMC certain royalties (the "Royalties") on the revenue generated from content owned by PMC, both archival and new, along with substantial royalty advances to be paid on an annual basis (the "Royalty Advances").

17.     Up to a high limit, Shutterstock further agreed to provide PMC with free access to much of Shutterstock's content and to waive license fees for PMC's use of the remainder of Shutterstock's content.  Pursuant to the Contract, Shutterstock provided PMC with a special

account to facilitate such access.  Shutterstock also agreed to provide PMC with access to its cloud-based digital asset management service, which PMC noted would be used "to support its editorial and creative teams' needs to store, organize and manage visual content on a cloud-based platform."

18.     Over the course of the Contract, prior to 2020, Shutterstock paid to PMC the requisite Royalty Advances on an annual basis and PMC provided to Shutterstock the requisite access to attend and photograph the PMC Events and Third-Party Events (including those set forth in Schedule D to the Contract).

**B.      PMC Fails to Perform For A Substantial Portion of the 2019-2020 Contract Period Due to the COVID-19 Pandemic.**

19.     In or around July 2019, Shutterstock paid the annual Royalty Advance to PMC (the "2019-2020 Royalty Advance"), which applied as against the Royalties generated from content owned by PMC under the Contract from July 1, 2019 to June 30, 2020 (the "2019-2020 Contract Period").

20.     Starting in early 2020, part-way through the 2019-2020 Contract Period, the unforeseen and unforeseeable supervening event of the COVID-19 pandemic resulted in the cancellation of PMC Events and Third-Party Events, including specific events listed in a schedule to the parties' Contract. The remaining Third Party Events scheduled to occur during the 2019-2020 Contract Period did not occur.  For instance, the 2020 Cannes Film Festival was cancelled.  The 2020 Tony Awards, originally scheduled for June 7, 2020, were postponed indefinitely (and now are planned to occur "digitally" in the "fall/winter," but no date has been announced).  Without a red carpet, PMC could not deliver on its obligation to provide red-carpet and other event images, nor could it make access open to Shutterstock to send photographers to

12601850.8

shoot on the red carpet and or otherwise create licensable images from these high-profile, high-interest events.

21.    Accordingly, PMC was unable to perform its contractual obligations for approximately four months of the 2019-2020 Contract Period.  In fact, the only arguable "event" access requiring PMC "credentials" that PMC provided from March 1, 2020 through June 30, 2020 consisted of a portrait session – not the typical type of premiere or similar event that was contemplated under the Contract in any case.  As such, the primary purpose for which Shutterstock entered into the Contract ceased to exist.

### C.    It Becomes Clear That PMC Will Be Unable to Substantially Perform for the 2020-2021 Contract Period Due to Pandemic-Related Event Cancellations.

22.    It soon became clear that PMC would continue to be unable to fulfill its contractual obligations to provide access to the PMC Events and Third-Party Events for most—if not all—of the 2020-2021 Contract Period due to the COVID-19 pandemic.

23.    Even before the expiration of the 2019-2020 Contract Period, certain PMC Events and Third-Party Events scheduled between July 1, 2020 and June 30, 2021 (the "2020-2021 Contract Period") had been affirmatively cancelled or postponed for the indefinite future due to COVID-19 guidance and restrictions.  For instance, on or about June 15, 2020, the Academy and ABC announced that the 2021 Academy Awards, originally scheduled for February 28, 2021, would be postponed to April 25, 2021, a date that is likely to be further postponed. The 2021 Golden Globes Awards, Screen Actors Guild Awards, Directors Guild Awards, and Independent Spirit Awards were also rescheduled.

24.    And, to the extent events continued to occur, they were held in a substantially altered manner that eliminated or minimized the value of the access for which Shutterstock had bargained.  For instance, the 2020 Emmy Awards occurred with a live host, but nominees and

12601850.8

winners did not attend and gave speeches remotely.  As such, the usual opportunity for red carpet photography essentially did not exist.  Indeed, PMC's *Variety* ran a story noting that "[t]he usual red carpet at the 72nd Emmy Awards is very different," and highlighting photographs of stars that the stars posted to their own Instagram pages, depriving Shutterstock of the opportunity to create and license such content from the event.

25.     Given the current status of the pandemic and that widespread vaccination is not likely to occur prior to the end of the 2020-2021 Contract Period, it is apparent that the COVID-19 pandemic will continue to deprive Shutterstock of meaningful opportunities to photograph PMC Events and Third Party Events and to license content from such events.

26.     The fundamental change in circumstances resulting in the cancellation and/or alteration of PMC Events and Third Party Events entirely frustrated Shutterstock's purpose for entering the Contract, rendering it essentially worthless and thus excusing payment of the significant Royalty Advance that would otherwise be due for the 2020-2021 Contract Period (the "2020-2021 Royalty Advance").

### D.    PMC Substantially Reduces Distribution of Archive Content to Shutterstock.

27.     Pursuant to Section 3(a)(i) of the Contract, the Parties agreed to "work together in good faith in the creation, management, hosting, distribution and syndication of" the Archive Content.  Further, PMC granted Shutterstock "an exclusive worldwide right and license [ ] in all right, title and interest that PMC has in the Archive Content" to "upload and host" such content.

28.     Because it is not dependent on the occurrence of new events, PMC's supply of Archive Content should not have been affected by the COVID-19 pandemic.  However, when Shutterstock initially raised concerns regarding the pandemic, PMC retaliated against Shutterstock by substantially reducing the amount of Archive Content that Shutterstock could

offer for license:  Shutterstock received just 119 archival images for the four-month period from January through April 2020, which is far less than the number of submissions for the same period in 2019.  In 2019, Shutterstock received, on average, 437 archival submissions *per month*, resulting in a year-over-year drop of *93%* as compared to expectations for archival content.

29.     All the while, PMC ensured that it would use up its annual the credit towards its use of Shutterstock's content.  Even after the COVID-19 pandemic caused the cancellation of PMC Events and Third Party Events, depriving Shutterstock of new contents from those events, and after PMC significantly reduced its contribution of new Archive Content, PMC continued to make full use of Shutterstock's content without paying license fees to Shutterstock.  PMC further continued to use Shutterstock's digital asset management system.  And PMC retained the advance for the 2019-2020 Contract Period.  Thus, PMC continued to retain all or nearly all of its benefits under the Contract, while depriving Shutterstock of the benefits it was due.

30.     Indeed, as discussed below, PMC continued to use its account – despite acknowledging the termination of the parties' Contract – through November 5, 2020 and without permission from Shutterstock.  PMC has failed to pay any licensing fees for its rampant use of Shutterstock photographs.

### E.      Shutterstock Delivers a Termination Notice and PMC Files This Lawsuit.

31.     Based on the foregoing, and in light of PMC's election to retaliate against Shutterstock in response to the pandemic rather than address a serious matter in good faith based on the realities of the global crisis, on May 18, 2020, Shutterstock delivered a letter to PMC stating its intent to terminate the Contract pursuant to its termination provision.

32.     Specifically, Shutterstock notified PMC that, given PMC's cancellation of PMC Events and Third Party Events—the most valuable consideration PMC owed to Shutterstock under the parties' Contract—PMC had failed to perform its contractual obligations.

33.     Shutterstock also provided PMC forty-five days to cure its lack of performance pursuant to Section 8 of the Contract.

34.     PMC not only failed to cure, but it also never confirmed that it could provide access to PMC Events or Third-Party Events in the future and did not offer any kind of substitute compensation or other alternative.  In fact, PMC did not respond to Shutterstock's May 18, 2020 letter at all, refusing to engage in a dialogue to find a reasonable way forward in light of the clear frustration of purpose caused by the COVID-19 pandemic.

35.     Instead, PMC filed a lawsuit without warning, seeking, among other things, payment of the Royalty Advance on revenue that Shutterstock was to earn on its sale of content created during the 2020-2021 Contract Period at PMC Events and Third-Party Events—*i.e.*, the very consideration that PMC cannot deliver.  PMC has pleaded poverty despite paying, in the very same month as the filing of its Amended Complaint, a reported $225 million for an 80% stake in the parent company of *The Hollywood Reporter*.  *See DOJ in antitrust probe of Penske Media's deal to buy The Hollywood Reporter*, N.Y. POST, Nov. 19, 2020.

36.     PMC's bad faith and uncooperative conduct has continued into this litigation.  In response to Shutterstock's original motion to dismiss copyright-related claims, PMC dropped those claims entirely and filed an Amended Complaint wherein it alleges copyright infringement of more than 2,300 photographs based largely on improperly-obtained copyright registrations. Indeed, to cover for its admittedly baseless copyright claims in its original Complaint, PMC

20

rushed to register these allegedly infringing photographs with the U.S. Copyright Office—
*hundreds* of which PMC now *admits that it does not own*.

37.     On or about September 29, 2020, Shutterstock notified PMC that more than half
of the allegedly infringing photographs do not belong to PMC—*i.e.*, 716 of the photographs were
shot by Shutterstock photographers under Shutterstock credentials; and an additional 593 were
supplied by third-party suppliers.  PMC refused to correct this material error and, to date,
continues to claim rights in all such photographs in its Amended Complaint.

**F.     PMC Continues to Download Images from Shutterstock's Image Bank.**

38.     Despite demanding millions in damages pertaining to alleged unauthorized
display of images during a few days after the July 17, 2020 termination as Shutterstock wound
down the agreement, PMC continued to help itself to thousands of dollars' worth of photos in
Shutterstock's image bank after the Contract was terminated.

39.     In particular, to the extent that the Contract terminated in July 17, 2020, as PMC
alleges in its Amended Complaint, starting on or about July 22, 2020, PMC improperly accessed
Shutterstock's image bank using the account provided pursuant the Contract and downloaded at
least 24 images without authorization.

40.     Shutterstock caught PMC red-handed and shut down the account on or about
November 5, 2020.  To date, PMC has not paid the license fees for these images.

**FIRST CAUSE OF ACTION**
**(Rescission Under the Frustration of Purpose Doctrine)**

41.     Shutterstock incorporates by reference the allegations in each of the preceding
paragraphs as if fully set forth herein.

42.     Under New York law, frustration of purpose applies to a situation where an
unforeseen event has occurred which, in the context of the entire transaction, destroys the

21

purpose that was so completely the basis of the contract that the transaction would have made little sense without it, thus operating to discharge a party's duties of performance.

43.    The central purpose of the Contract is, among other things, for PMC to provide to Shutterstock:  (i) exclusive access for Shutterstock to photograph PMC Events with exclusive rights for Shutterstock to license such content; and (ii) access for Shutterstock to photograph Third-Party Events via exclusive use of PMC's own access and to license such photographs.

44.    Starting in early 2020 through the present, the unforeseen and unforeseeable supervening event of the COVID-19 pandemic has resulted in the cancellation of the PMC Events and Third-Party Events and/or has required that such events occur in a format that totally eliminates the benefit Shutterstock expected to and would have received from photographing those events and licensing such photographs.

45.    As a result, PMC has been unable to provide access to Shutterstock to attend and photograph PMC Events and/or Third-Party Events since at least as early as mid-March 2020, thereby substantially frustrating the purpose of the Contract.

46.    Upon information and belief, PMC will not be able to substantially perform its obligations under the Contract before the original end-date of June 30, 2021.  In fact, even when in-person events such as PMC Events and Third-Party Events are permitted to resume, such events likely will be drastically limited in number and capacity.  When events do return to the levels expected at the time of the parties' contracting, the frustration of purpose will have long been realized.

47.    PMC's inability to provide access for Shutterstock to photograph the PMC Events and Third-Party Events due to the COVID-19 pandemic is completely outside of Shutterstock's control and was not foreseeable at the time the parties executed the Contract.

12601850.8

48.     Shutterstock would not have entered into the Contract had it known that PMC would be unable to provide access for Shutterstock to photograph the PMC Events and Third-Party Events.

49.     An actual justiciable controversy exists between Shutterstock and PMC concerning the rights and obligations of the parties under the Contract.  Specifically, PMC seeks to enforce the Contract and require Shutterstock to pay the 2020-2021 Royalty Advance, despite the fact that the Contract is rescinded under the doctrine of frustration of purpose.

50.     Shutterstock has a legally protectable interest in this controversy.  Specifically, Shutterstock has a pecuniary interest in a declaration affirming that it maintains no obligation to pay the 2020-2021 Royalty Advance, in addition to other obligations that PMC claims Shutterstock had under the Contract.

51.     This controversy is ripe for adjudication and a judicial declaration is necessary to end the present controversy.  Shutterstock has no adequate remedy at law.

52.     Shutterstock is thus entitled to a declaratory judgment that the Contract has been rescinded under the doctrine of frustration of purpose as a result of the COVID-19 pandemic.

**SECOND CAUSE OF ACTION**
**(Restitution After Rescission)**

53.     Shutterstock incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

54.     Shutterstock duly performed all conditions, covenants, and promises on its part to be performed under the Contract, except as excused or rendered impossible by the unforeseen and unforeseeable supervening event of the COVID-19 pandemic.

55.     Among other consideration, Shutterstock paid a substantial Royalty Advance to PMC for the 2019-2020 Contract Period, in consideration for, among other things, PMC to

provide to Shutterstock during such period:  (i) exclusive access for Shutterstock to photograph PMC Events with exclusive rights for Shutterstock to license such content; and (ii) access for Shutterstock to photograph Third-Party Events via exclusive use of PMC's own access.

56.    Because PMC was unable to and did not provide access for Shutterstock to attend and photograph PMC Events and Third-Party Events for a substantial portion of the 2019-2020 Contract Period, particularly, from approximately March 1, 2020 through June 30, 2020 (and thereafter), due to COVID-19, there was a material failure of consideration under the Contract during such time.

57.    Shutterstock, at its election, may elect to partially rescind the Contract and obtain restitution of all amounts paid to PMC under the Contract during the relevant time period.

58.    Shutterstock is thus entitled to restitution of a pro rata share of the 2019-2020 Royalty Advance, corresponding to the approximate four-month period in which PMC failed to substantially perform, less any Royalties actually earned by PMC for sale of its content during such period.

### <u>THIRD CAUSE OF ACTION</u>
**(Breach of Contract)**

59.    Shutterstock incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

60.    To the extent the purposes of the Contract were not frustrated prior to termination, the Contract between Shutterstock and PMC was valid and, prior to its termination, enforceable.

61.    Shutterstock duly and fully performed its obligations under the Contract at all relevant times in good faith.

62.    PMC's acts and/or omissions, discussed above, including the failure to provide Archival Content in good faith starting in early 2020, constituted willful and material breaches of

the Contract, including, without limitation, the duties imposed on PMC by Section 3(a)(i) of the Contract.

63.     As a direct and proximate result of PMC's material breaches of the Contract, Shutterstock has suffered and continues to suffer damages in an amount to be determined at trial, but in no event less than ████████, plus interest, costs, and attorney's fees.

## FOURTH CAUSE OF ACTION
### (Breach of Terms of Use)

64.     Shutterstock incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

65.     The Terms of Use, available at https://www.shutterstock.com/terms, consist of a valid and enforceable agreement which sets forth the terms and conditions under which PMC may use the website, software, apps, and/or plug-ins made available by Shutterstock or its affiliates (collectively, the "Site") after the effective date of termination of the Contract.

66.     Shutterstock has duly and fully performed its obligations under the Terms of Use at all relevant times in good faith.

67.     Section 2.2 of the Terms of Use provides, in relevant part, that "[a]ny unauthorized use of any Shutterstock Content"—including "[a]ll content on [the] Site, including but not limited to Images, Footage, Music, and related metadata"—"violates . . . this Terms of Use.  Except as expressly provided [in the Terms of Use] or in a separate license agreement between [PMC] and Shutterstock, Shutterstock does not grant any express or implied permission to use [Shutterstock's] Site or any Shutterstock Content.  [PMC] agree[s] not to copy, republish, frame, link to, download, transmit, modify, adapt, create derivative works based on, rent, lease, loan, sell, assign, distribute, display, perform, license, sublicense or reverse engineer [Shutterstock's] Site or any Shutterstock Content."

68.     Section 2.3 of the Terms of Use provides, in relevant part, that "[PMC] may not download, distribute, display and/or copy any Shutterstock Content" unless it "enter[s] into a [separate] license agreement with Shutterstock."

69.     PMC's acts and/or omissions, discussed above, including its continued use of the Site to download valuable Shutterstock Content for several months *after* the termination of the Contract, constitutes willful and material breaches of the Terms of Use, including, without limitation, the duties imposed on PMC by Section 2.2 and Section 2.3 of the Terms of Use. PMC had no separate license agreement with Shutterstock or other permission to use the Site and/or download Shutterstock Content during such time.

70.     As a direct and proximate result of PMC's material breaches of the Terms of Use, Shutterstock has suffered and continues to suffer damages in an amount to be determined at trial, but in no event less than the value of licenses from continued use of image bank after July 17, 2020, plus interest, costs, and attorney's fees.

### FIFTH CAUSE OF ACTION
### (Violation of Computer and Fraud Abuse Act , 18 U.S.C. § 1030(a))

71.     Shutterstock incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

72.     To the extent that the Contract terminated on July 17, 2020, as PMC alleges in its Amended Complaint, PMC admittedly was no longer authorized to use the account provided pursuant to the Contract effective as of such date.

73.     Starting on or about July 22, 2020, PMC continued to access the account provided pursuant to the Contract to which it knowingly lacked permission and downloaded images in Shutterstock's image bank at discounted rates.

26

12601850.8

74.     Thus, PMC intentionally accessed a computer without authorization and/or exceeded authorized access and thereby obtained information from a protected computer, in violation of 18 U.S.C. § 1030(a).

75.     As a result of PMC's conduct, Shutterstock has incurred significant damages and "loss," as defined by 18 U.S.C. § 1030(e)(1), aggregating to at least $5,000.

76.     Accordingly, Shutterstock is entitled to recover damages in an amount in excess of $5,000 to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment of Invalid Copyright Registrations)

77.     Shutterstock incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

78.     PMC improperly obtained copyright registrations—particularly, Registration Nos. VA 2-211-262, VA 2-213-579, VA 2-214-092, VA 2-215-218, and VA 2-215,215 (collectively, the "Registrations")—for certain of the photographs at issue in the Amended Complaint (the "Photographs") by executing and filing copyright applications with the U.S. Copyright Office that contained material misrepresentations and/or omissions concerning the authorship and/or ownership of the Photographs included therein.

79.     Upon information and belief, in the copyright applications that resulted in the issuance of the Registrations, PMC falsely represented to the Copyright Office that PMC is the sole author and owner of the copyright in the Photographs therein, despite having knowledge that certain of those Photographs were taken and/or owned by Shutterstock or other third parties. This knowing and deliberate failure to disclose the actual authors and owner of the copyright in the Photographs constitutes fraud on the Copyright Office.

12601850.8

80.     Upon information and belief, the Copyright Office relied on PMC's material misrepresentations and/or omissions and, had the Copyright Office known that PMC's copyright applications contained inaccurate information concerning the authorship and/or ownership of certain of the Photographs, the Copyright Office would not have issued the Registrations to PMC.

81.     An actual justiciable controversy exists between Shutterstock and PMC concerning the authorship and ownership of the Photographs in the Registrations.

82.     Shutterstock has a legally protectable interest in this controversy.  Specifically, Shutterstock has an interest in a declaration affirming its ownership and interest in certain of the Photographs included in the Registrations.

83.     This controversy is ripe for adjudication and a judicial declaration is necessary to end the present controversy.

84.     Shutterstock has no adequate remedy at law.

85.     Accordingly, Shutterstock seeks a declaratory judgment from this Court that PMC's Registrations are invalid and should be cancelled.

## PRAYER FOR RELIEF

WHEREFORE, Shutterstock prays that the Court enter judgment as follows:

1.     Dismissing all claims in PMC's Amended Complaint with prejudice and ordering the PMC take nothing by way of this action;

2.     Declaring that the Contract is rescinded under the doctrine of frustration of purpose;

3.     Declaring that Shutterstock is excused from performance of any obligations under the Contract, including, in particular, payment of the 2020-2021 Royalty Advance;

12601850.8

4.      Ordering PMC to immediately return a pro rata share of the 2019-2020 Royalty Advance corresponding to the period from the start of PMC's breaches in early 2020 through June 30, 2020, less any Royalties actually earned by PMC for sale of its content during such period;

5.      Ordering PMC to pay to Shutterstock all damages resulting from PMC's breach of the Contract, including, without limitation, all actual damages, incidental damages, and consequential damages, in an amount to be proven at trial, but no less than █████████;

6.      Ordering PMC to pay to Shutterstock all damages resulting from PMC's breach of the Terms of Use, including, without limitation, all actual damages, incidental damages, and consequential damages, in an amount to be proven at trial, but no less than $5,000;

7.      Ordering PMC to pay to Shutterstock all damages result from PMC's violation of 18 U.S.C. § 1030(a), including, without limitation, all actual damages and losses, in an amount to be proven at trial, but no less than $5,000;

8.      Declaring that PMC's Registrations are invalid and should be cancelled;

9.      Awarding Shutterstock its costs and reasonable attorneys' fees incurred in this case; and

10.      Granting Shutterstock such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Shutterstock requests that this case be tried by a jury on all issues triable by a jury.

12601850.8

DATED:  New York, New York
        March 24, 2021

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP


By:  /s/ Eleanor M. Lackman
     Eleanor M. Lackman
     Marissa B. Lewis
     437 Madison Ave., 25th Floor
     New York, New York 10022-7001
     Telephone: (212) 509-3900
     Facsimile: (212) 509-7239
     Email:  eml@msk.com
             mbl@msk.com

*Attorneys for Defendant Counterclaim Plaintiff
Shutterstock, Inc.*

12601850.8