

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Cynthia S. Arato
carato@shapiroarato.com
Direct: 212-257-4882

April 7, 2021

The Honorable Mary Kay Vyskocil
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *Penske Media Corp. v. Shutterstock, In*c., 20-cv-4583 (MKV)

Dear Judge Vyskocil:

      Plaintiff and Counterclaim Defendant Penske Media Corporation and Defendant and Counterclaim Plaintiff Shutterstock, Inc. submit this joint letter pursuant to the Court's March 19, 2021 Notice of Initial Pretrial Conference and in advance of the April 14, 2021 Initial Pretrial Conference.

**Nature of the Case**

    **A.  PMC's Position**

      PMC's Claims.  PMC is a digital media and publishing company that publishes brands covering the entertainment and fashion industries, including the legendary *Women's Wear Daily*, *Variety*, and *Rolling Stone*, and PMC also owns and controls a vast and growing photograph collection related to these publications. Defendant Shutterstock owns and operates a website that historically licensed commercial digital imagery—aka "stock" photographs—to third parties on behalf of photographers and other content owners.

      In 2015, the parties entered into an Archive & Event Hosting and Licensing Agreement. That agreement provided Shutterstock exclusive worldwide rights to license photographic images from PMC's archive and allowed Shutterstock to leverage PMC's insider access to fashion and Hollywood events to photograph such events and license the resulting images, both on PMC's behalf.  PMC brings this action to remedy Shutterstock's pretextual invocation of the COVID-19 pandemic to re-write and terminate an agreement that Shutterstock has successfully used to transform itself from a provider of low value "stock" photographs to a purveyor of prestigious news and editorial content and to redress other wrongs.

      PMC's Amended Complaint contains four claims for relief: breach of contract, breach of the implied covenant of good faith and fair dealing, copyright infringement, and violations of the Digital Millennium Copyright Act.

The Honorable Mary Kay Vyskocil  
April 7, 2021

Page 2

     PMC's claim for breach of contract concerns Shutterstock's (1) wrongful termination of the agreement and its refusal to pay PMC sums due under that agreement for the contract year July 1, 2020 – June 30, 2021; and (2) refusal to attend and shoot various events sponsored by PMC in prior contract years.  Shutterstock contends that the consequences of COVID-19 caused PMC to breach a purported contractual obligation to provide Shutterstock with various events to attend and photograph and also allows Shutterstock to terminate the agreement on "frustration of purpose" grounds. PMC, however, had no obligation under the agreement to ensure that any such events were held or occurred. Rather, PMC was obligated to provide Shutterstock with access to any such events that were, in fact, held, and PMC has never breached that obligation. Shutterstock, accordingly, may not rely upon any theory of breach to justify its wrongful termination. Shutterstock also may not justify its termination on the doctrine of frustration of purpose, as that doctrine applies only where an agreement is rendered virtually worthless. Even with the impacts of COVID-19, Shutterstock earned tremendous benefits under the parties' agreement for the past five years, and, absent Shutterstock's premature and wrongful termination, Shutterstock would have continued to enjoy many of the key benefits under that deal, including the unrestricted right to license the photographs in the PMC collection and to attend and photograph events that continue to be scheduled within the parameters of COVID-19.

     PMC's claim for breach of the implied covenant of good faith and fair dealing alleges that Shutterstock declined to use PMC's credentials to attend and photograph so-called "Third-Party Events" for the parties' mutual benefit, but nevertheless went ahead and attended and photographed those events for itself.  Although the agreement did not expressly obligate Shutterstock to attend these events, it set up a cooperative framework for the parties to mutually benefit from the photographs that Shutterstock took at these events. Accordingly, PMC justifiably understood that Shutterstock would use PMC credentials to attend and photograph the Third-Party Events that Shutterstock did, in fact, attend and photograph.

     PMC's claim for copyright infringement concerns Shutterstock's continued exploitation of PMC's photographs even after Shutterstock wrongfully terminated the agreement from which Shutterstock's exploitation rights emanate.  Shutterstock contends that its continued post-termination use cannot constitute infringement because Shutterstock was authorized to exploit these works pre-termination, but that argument has no support in the law and is contrary to Shutterstock's own tacit admissions to the Court that it would need to halt its exploitation of PMC's works upon its purported termination date to avoid an infringement claim.

     PMC's claim for violations of the DMCA alleges that Shutterstock falsely identified itself as the copyright owner of PMC-owned works on the website that Shutterstock uses to license images to third parties, and that Shutterstock did so to conceal Shutterstock's own infringement. Shutterstock contends that the DMCA does not apply to the challenged conduct because Shutterstock never intended to convey false copyright information to induce its own customers to infringe PMC's works. That contention ignores the controlling case of *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020), which holds that a defendant violates the DMCA when it uses false copyright management information to hide its *own* infringing conduct.

     The parties dispute whether PMC owns the copyright to certain of the works at issue in PMC's copyright and DMCA claims and whether PMC's inclusion of the disputed works within various group copyright registrations renders those registrations invalid.  PMC and Shutterstock

The Honorable Mary Kay Vyskocil
April 7, 2021
Page 3

have been working to resolve their ownership dispute, and PMC disagrees that this issue could invalidate its registrations with respect to those images that Shutterstock concedes PMC owns.

Shutterstock's Counterclaims.  Shutterstock's first two Counterclaims are for Rescission and Restitution under the agreement. These claims are primarily mirror images of PMC's breach of contract claim regarding Shutterstock's wrongful termination of the agreement and fail primarily for the reasons explained above.  Shutterstock's third Counterclaim that PMC breached the agreement by failing to deliver a sufficient number of digital copies of archive images during the months in 2020 before Shutterstock terminated the agreement. This claim fails because the agreement did not obligate PMC to deliver any specific number of images and, to the extent Shutterstock seeks to assert a claim under the implied covenant, PMC acted at all times in good faith. Shutterstock's fourth and fifth Counterclaims for breach of Shutterstock's Website Terms of Use and violations of the Computer Abuse and Fraud Act alleges that PMC obtained 24 images from Shutterstock's website under the agreement after Shutterstock purported to terminate that contract. Despite PMC's repeated requests, Shutterstock has refused to provide PMC with any details regarding this claim, including the images that PMC allegedly obtained from Shutterstock after the date Shutterstock purported to terminate the agreement and which PMC user or users allegedly obtained those images. In addition, regardless of these facts, Shutterstock's claim fails as a matter of law to the extent Shutterstock wrongfully terminated the agreement, as PMC contends, such that its termination would not be legally valid.

**B.  Shutterstock's Position**

This lawsuit involves a business dispute over a five-year contract, namely, the Archive & Event Hosting and Licensing Agreement (the "Contract"), that is now terminated, and which would have expired by its own terms on June 30, 2021.  The claims set forth in PMC's Amended Complaint (Dkt. No. 26)—in particular, breach of contract, breach of the implied covenant of good faith and fair dealing, copyright infringement, and a claim under the Digital Millennium Copyright Act ("DMCA")—are rooted in Shutterstock's declination to pay a specific amount as an advance on services from PMC in the year July 1, 2020-June 30, 2021.  As detailed in its pending second motion to dismiss, the implied covenant claim is not permissible under New York contract law, the ill-fitting DMCA claim does not plausibly plead the required elements, and the copyright claim is similarly deficient.  Shutterstock additionally notes that while the motion has been pending, a panel of the Second Circuit recently affirmed the dismissal as a matter of law of DMCA claims, albeit under Section 1202(b), against a stock photography company that acted in accordance with its understanding of a license agreement and had no prior reason to know of any issues.  *See Zuma Press, Inc. v. Getty Images (US), Inc.*, 19-3029, 19-3177 (2d Cir. Mar. 3, 2021) (summary order), at 5-7.

The primary purpose of the parties' Contract was for PMC to provide photographs of live events.  Shutterstock argues that because the COVID-19 pandemic effectively eliminated all live events (including key events specifically mentioned in the Contract), and there was no sign of the pandemic being a short-term problem, the purpose of the parties' Contract was frustrated.  PMC refused to confer about the situation in good faith.  Indeed, when Shutterstock raised its concerns, PMC retaliated by severely reducing the content it could provide (*i.e.*, archival content), which itself made up a small part of the value of the parties' Contract.  After PMC rebuffed efforts to discuss a rational resolution and continued to refuse to perform under the parties' agreement,

The Honorable Mary Kay Vyskocil  Page 4
April 7, 2021

Shutterstock formally terminated the Contract.  PMC's position that it is entitled to a windfall for providing no services runs counter to black-letter principles of the frustration of purpose doctrine. Even PMC, in using the pandemic as an excuse for its own breaches, agrees that it cannot have it both ways.

On March 24, 2021, Shutterstock filed a Counterclaim (Dkt. No. 59).  In addition to seeking rescission and restitution under the frustration of purpose doctrine, Shutterstock's Counterclaim alleges causes of action pertaining to PMC's dramatic reduction of archival and live-event content in early 2020 (*i.e.*, breach of contract); PMC's continued access to and use of the Shutterstock image bank despite its insistence that the Contract terminated in mid-July (*i.e.*, breach of Shutterstock's terms of use and violation of the Computer and Fraud Abuse Act); and PMC's reckless or knowing registration of dozens of Shutterstock-owned photos with the U.S. Copyright Office to create standing to bring its off-target claims over unspecified copyright infringement (*i.e.*, declaratory judgment of invalid copyright registrations).

PMC made a request for information about continued access during the parties' conference on April 2, 2021; there were no prior requests made, and Shutterstock is considering the request.  PMC has never previously asked for information on the images but rather information identifying the account accessed.  During that same conference, PMC also followed up requesting information about the improperly registered photographs; PMC had raised this question once in the midst of the briefing on the second motion to dismiss, and the matter fell through the cracks. Shutterstock has agreed to look into it, but notes that significant work may be involved and, given various factors, the issue may not be resolved in any event.

**Statement of Subject Matter Jurisdiction and Venue**

This Court has subject jurisdiction over PMC's claims of copyright infringement and violations of the Digital Millennium Copyright Act under 17 U.S.C. §§ 1331 and 1338(a).  This Court has subject matter jurisdiction over PMC's contract claims under 28 U.S.C. § 1367 because these claims are so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(a), because Shutterstock's principal place of business is located, and thus Shutterstock resides, in this District, and because Shutterstock waived in the agreement any and all objections to venue in the federal and state courts located in New York.

With respect to Shutterstock's Counterclaim, this Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1367(a), because the claims alleged therein form part of the same case or controversy as those alleged in PMC's Amended Complaint.  Subject matter jurisdiction also exists over the fifth and sixth causes of action set forth in the Counterclaim, pursuant to 28 U.S.C. § 1331 and/or the Declaratory Judgment Act, 18 U.S.C. § 2201, because the relief sought therein arises under the laws of the United States, including, in particular, the Computer and Fraud Abuse Act , 18 U.S.C. § 1030, and the Copyright Act, 17 U.S.C. § 101, *et seq*.  In addition, venue is proper in this District under 28 U.S.C. § 1391.  PMC waived in the Contract at issue any and all objections to venue in the federal and state courts located in New York.

**Procedural Posture**

Motions made and decided. No motions have been made which the Court has decided. Each of Plaintiff and Defendant anticipate making motions for summary judgment at or before the close of discovery with respect to one or more of the claims it has asserted in the action. Shutterstock previously filed a motion to dismiss PMC's claims for breach of the implied covenant, copyright infringement and violations of the DMCA. That motion is fully briefed, and the Court's decision is pending. At the conference, Shutterstock intends to address its request for an application for a stay of discovery, and the parties' positions on that issue are set forth at Dkt No. 51. Shutterstock clarifies that by submitting the proposed Case Management Plan, it does not intend to waive its arguments that discovery should be stayed for the reasons outlined in its prior letter.

Discovery. Each of the parties intends to serve written document requests, interrogatories, and requests for admission pertaining to the claims and counterclaims in this action, to the extent not dismissed on the pleadings. Each of the parties also intends to take depositions, including depositions of individuals and under Federal Rule of Civil Procedure 30(b)(6).

Settlement. PMC believes the parties have discussed settlement at various times before and after PMC filed its Complaint and Shutterstock filed its Counterclaims, including on April 2, 2021, pursuant to the Court's Notice of Initial Pretrial Conference. Shutterstock's view is that since the lawsuit was filed last June, settlement discussions have consisted of one offer to PMC last fall, which PMC rejected without any specific counter, and the parties' discussion last week centered primarily on why prior discussions broke down and whether PMC would be amenable to an early mediation without preconditions.

The parties disagree on the appropriate time to hold such a mediation. Shutterstock has suggested that the parties hold an early mediation in light of the facts that: (a) the parties were engaged in discussions when it became clear that the pandemic was going to impact the core content at the heart of the agreement, and those discussions ceased when PMC elected to sue in June 2020 (*i.e.*, four weeks after Shutterstock sent its initial letter invoking the provision of Section 8 of the Contract and prior to the notice of termination for failure to cure the breach); (b) the potential range of recovery as to both sides is easy to ascertain, and the facts are generally known and the effect of the pandemic on live events during the July 1, 2020-June 30, 2021 period is similarly known; (c) the cost of formal fact discovery as compared to the likely recovery for either side, not to mention the time, energy and effort involved therein, is relatively high, particularly given the amount and range of claims that the parties have asserted against each other; and (d) a mediated discussion with those responsible for the business concerns may result in a resolution before the parties have spent the bulk of the cost of litigating the case in fact discovery. Accordingly, Shutterstock requests that the parties be ordered to mediation, to be held in good faith, sooner rather than later. In light of the business interests at play, Shutterstock has recommended a private mediator, with the costs to be split between the parties.

PMC does not believe that an early mediation will be productive given the parties' positions. The parties' discussions regrettably ceased once Shutterstock made clear that it would not compromise its position that it had the right to terminate the agreement, a position that PMC maintains is erroneous. While PMC would be willing to agree to private mediation at the close of

The Honorable Mary Kay Vyskocil  
April 7, 2021

Page 6

fact discovery it would not consent to a private mediation at this stage and would not agree to bear the costs associated with such a proceeding.

                    Sincerely,

/s/ Cynthia S. Arato        /s/ Eleanor Lackman  
Cynthia S. Arato            Eleanor Lackman