UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENSKE MEDIA CORPORATION,

                Plaintiff,

-against-

SHUTTERSTOCK, INC.,

                Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/9/2021

1:20-cv-04583 (MKV)

OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

Defendant Shutterstock, Inc. moves [ECF No. 35] to dismiss several of Plaintiff Penske Media Corporation's claims in this action. For the reasons that follow, Defendant's motion is denied.

## BACKGROUND

The facts as stated herein are taken from Plaintiff's Amended Complaint, ECF No. 29 ("AC") and are assumed to be true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Penske Media Corporation is the company behind a number of notable fashion and entertainment publications, including *Women's Wear Daily*, *Variety*, *Deadline Hollywood¸* and *Rolling Stone*. AC ¶ 10. As a result of the longevity of these publications, Penske owns a vast archive of photographs taken for and/or used in those magazines and websites. AC ¶ 10. Relevant to this case, Defendant Shutterstock, Inc. is a company that licenses "stock" and "editorial" photographs, videos, and other illustrations to media publications, commercial actors, and others. AC ¶ 11.

In June 2015, Penske signed the "Archive & Event Image Hosting and Licensing Agreement" (the "Agreement") with Shutterstock. AC ¶ 15. Among other things, the Agreement

1

provided Shutterstock an exclusive worldwide right and license to the photographs, videos, and audio in Penske's archive for a period of six years, absent termination by either party. AC ¶ 16; *see also* Agreement, ECF No. 37-1, ¶ 3(a).[1]  In exchange, Shutterstock paid Penske a royalty on Shutterstock's licensing and distribution of Penske-owned media, and, each year, provided an advance on the royalties to Penske. AC ¶ 22; Agreement ¶ 6.

In addition to providing access to the existing Penske archive, the Agreement also provided that Shutterstock would produce photographs for Penske, which would then become part of the Penske archive. Specifically, the Agreement provided that Penske would grant Shutterstock access to all events that Penske hosted and to which "third parties are invited generally," in order to allow Shutterstock photographers to attend the event. AC ¶ 17; Agreement ¶ 3(a)(ii). The Agreement provides, and Shutterstock does not dispute, that Shutterstock had an obligation to attend all such Penske-hosted events. *See* Agreement ¶ 3(a)(ii) ("During the License Period, Shutterstock will provide editorial photographic event coverage, at Shutterstock's expense, for all [Penske] Events.").

For events that Penske did not host ("Third Party Events"), the Agreement provides that Penske "will provide credentials, passes, and VIP access to significant events around the world to which [Penske] has access." Agreement ¶ 3(a)(iii). In relation to these Third Party Events, the Agreement further provided that Shutterstock held "the right to be the sole third party to leverage and utilize [Penske's] credentials and access to capture Third Party Event Content at Third Party

---

[1] The Agreement is incorporated by reference into Plaintiff's Amended Complaint. *See, e.g.*, AC ¶¶ 1, 15-17, 22; *see BankUnited, N.A. v. Merritt Env't Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018) ("To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010))). Shutterstock attached the Agreement to a declaration of counsel submitted in connection with its motion to dismiss. *See* ECF Nos. 37, 39. In the publicly accessible version of the agreement, Shutterstock redacted all information related to prices and the amounts of royalties paid between the parties. The Court previously approved of these redactions. *See* Order, ECF No. 41. Those amounts have no bearing on the decision on Defendant's motion to dismiss.

Events." Agreement ¶ 3(a)(iii).  While the Agreement also provided that Penske's in-house staff photographers could also use Penske's credentials at Third Party Events, *see* Agreement ¶ 3(e), Shutterstock otherwise held an exclusive right to Penske's credentials at such events. Importantly, and with few exceptions, Penske retained ownership of the copyright for all photographs produced as a result of the Agreement.  *See* Agreement ¶ 3(c).

According to Penske, the Agreement was fruitful for both parties for several years.  In addition to the royalties each company received based on Shutterstock's licensing of Penske-owned photographs to customers, Shutterstock allegedly gained "credibility" in the markets for editorial and news photography.  AC ¶ 24.  Penske alleges that Shutterstock leveraged the access Penske provided to develop relationships with event organizers in the fashion and entertainment industries.  AC ¶ 25.  Of particular note, Shutterstock began to receive its own credentials to cover Third Party Events, meaning that it could become less dependent on Penske in the future. AC ¶ 25.

Penske's commenced this action in 2020 after Shutterstock terminated the Agreement. Penske's primary claim in this case asserts that Shutterstock terminated the Agreement without cause, and thereafter refused to pay royalties and advances as set forth in the Agreement.  AC ¶¶ 27, 29-31.  For its part, Shutterstock argues that its termination of the Agreement in May 2020 was valid because most, if not all, in person events at that time were cancelled as a result of the COVID-19 pandemic.  AC ¶¶ 27-28.  Shutterstock argues that the lack of live events to photograph frustrates the purpose of the companies' Agreement.  AC ¶¶ 28-29.  Penske alleges that the termination of the Agreement, Shutterstock's resulting refusal to pay the royalties and advances due in 2020 and 2021, and certain other events, constitute a breach of the Agreement by Shutterstock.  AC ¶¶ 40-41, 55-60 (Count One).  Penske also asserts claims for breach of the

implied covenant of good faith and fair dealing (Count Two), and two claims related to copyright protection of the photographs (Counts Three and Four).

The claim for breach of the implied covenant of good faith and fair dealing relates to the timeframe before Shutterstock terminated the Agreement. Specifically, Penske alleges that despite holding an exclusive right to use Penske's credentials at Third Party Events, Shutterstock instead used its own credentials to photograph high-profile Third Party Events. AC ¶¶ 45-46, 61-64. Penske alleges that Shutterstock had an implied obligation to use Penske's credentials at any event for which they were available. AC ¶ 46. Shutterstock argues in its motion that no such obligation existed.

As for the copyright-related claims, Penske asserts that it owns the copyright in approximately 2,300 photographs that Shutterstock created pursuant to the Agreement (*i.e.* photographs taken by Shutterstock either at Penske-sponsored events or at Third Party Events where Shutterstock used Penske's credentials).[2] AC ¶¶ 47-48. While Shutterstock held a license to use and market these images pursuant to the Agreement, Penske alleges that upon termination of the Agreement, Shutterstock was required immediately to remove the images from its website and to stop all distribution of the photographs. AC ¶ 50. Shutterstock's failure to do so, according to Penske, constitutes copyright infringement. AC ¶¶ 75-79. Penske's other copyright-related claim alleges a violation of the Digital Millennium Copyright Act. Penske claims that, both before after Shutterstock terminated the Agreement, Shutterstock falsely stated that it, and not Penske, owned the copyright to the photographs in question. AC ¶¶ 52-53, 65-74. Shutterstock denies both claims on a number of grounds.

---

[2] All of these images are attached as an exhibit to Penske's Amended Complaint. *See* AC Ex. 1.

Shutterstock has filed a motion to dismiss Penske's Amended Complaint for failure to state a claim. The breach of contract claim is not subject to the current motion. Instead, Shutterstock seeks to dismiss the other three claims asserted in Penske's Amended Complaint. In support of the motion, Shutterstock filed a memorandum of law [ECF No. 36] ("Def. Br.") and a declaration of counsel attaching the Agreement [ECF Nos. 37, 39]. Penske filed an opposition to the motion [ECF No. 45] ("Opp."), and Shutterstock thereafter submitted a reply [ECF No. 49] ("Reply"). At a previously scheduled status conference in this case on July 7, 2021, the Court ruled that the motion was denied. *See* Order, ECF No. 69. This opinion memorializes the Court's reasoning.

## ANALYSIS

In its motion, Shutterstock seeks dismissal of Penske's implied covenant and copyright-related claims. Essentially, Shutterstock argues, first, that the obligations Penske seeks to impose through the implied covenant claim are not intrinsic to the parties contract, and cannot be imposed on it. *See* Def. Br. at 8-15. In addition, Shutterstock seeks dismissal of the copyright claims on the ground that Penske has failed to allege that Shutterstock took any action to infringe Penske's copyright and lacked the necessary mental state for the claims. *See* Def. Br. at 15-24. As further set out below, Shutterstock's arguments regarding the implied covenant run contrary to long-established contract law, and the claim survives. Similarly, the attempts by Shutterstock to dismiss the copyright claims at the outset of this case fail, as Penske has satisfied its burden necessary to state a claim at the pleading stage.

Before addressing the merits of the parties' arguments, the Court notes that significant portions of Shutterstock's arguments in support of its motion, both in its opening brief and in its reply, are made only in footnotes. Shutterstock includes 17 footnotes in its 25-page opening

brief and another 16 footnotes in its 10-page reply brief. Most of these footnotes contain at least one citation (to either the record or precedent), and in total add more than 175 lines of text— nearly eight additional pages—to Shutterstock's briefing. While Shutterstock's abuse of footnotes is more apparent, Penske also adds nearly 115 lines—5 pages—across 13 footnotes in its opposition. The Court's Individual Practices impose page limits on counsel's briefs for a reason. While footnotes may be appropriate when used correctly in limited circumstances, counsel's abuse of them in connection with this motion is not appropriate.

Courts "routinely decline[] to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised." *Fin. Guaranty Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 264146, at *2 (S.D.N.Y. Jan. 17, 2020) (quoting *Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14 Civ. 10104, 2017 WL 3973951, at *20 n.36 (S.D.N.Y. Sept. 7, 2017)) (alteration in original). Because both parties abuse footnotes here, the Court will not, in this instance, find that any arguments are waived. However, counsel is admonished that further abuse will not be tolerated and will result in consequences.

### A.     *Legal Standard*

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78-79 (2d Cir. 2018)). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.* (quoting *In re Facebook Initial Public Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015)). In reviewing a motion to dismiss, the Court is limited the "facts stated on the face of the complaint, . . . documents appended to the complaint

or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n. 2 (2d Cir. 2016).

While federal statutory claims are governed by federal law, under New York choice of law principles, which the Court is bound to apply, the law governing litigants' contract claims may be designated by the parties in the contract. *See, e.g.*, *Commerce & Indus. Ins. Co. v. U.S. Bank Nat'l Ass'n*, 2008 WL 4178474, at *4-5 (S.D.N.Y. Sept. 3, 2008) (collecting cases holding that New York law permits a contractual choice of law clause to govern breach of contract and implied covenant claims). Because the Agreement contained a clause specifying that New York law governs the parties' Agreement, the Court wil apply New York law to the contract and implied covenant claims in this case. *See* Agreement ¶ 15.

## B.     Breach of the Implied Covenant

Penske alleges that Shutterstock breach the implied covenant of good faith and fair dealing by attending and photographing Third Party Events using its own credentials and not Penske's credentials. AC ¶¶ 44-46. Penske further alleges that Shutterstock's decision resulted in damage to Penske because it creates the opportunity for Shutterstock to argue (as it does) that Penske did not own the copyright to the photographs Shutterstock produced using its own credentials. AC ¶ 46.

New York law is clear that an implied duty of good faith and fair dealing exists in every contract, to the effect that neither party "shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (quoting *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (per curiam)). Implied obligations may not include any term inconsistent with the terms of the contractual relationship and may not "create duties which are not fairly inferable from the express terms of that contract." *Interallianz Bank AG v. Nycal*

*Corp.*, No. 93 Civ. 5024 (RPP), 1994 WL 177745, at *8 (S.D.N.Y. May 6, 1994) (citing *Fasolino Foods Co. v. Banco Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)).  However, the implied covenant will mandate obligations that a "reasonable person in the position of the promisee would be justified in understanding were included" in the contract.  *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) (citation omitted).

Here, Penske essentially argues that because Shutterstock was granted an exclusive right to use Penske's credentials at Third Party Events, Shutterstock had an obligation to use Penske's credentials and not any others, including its own, at any Third Party Event Shutterstock decided to attend.[3]  *See* AC ¶¶ 44-46, 63; Opp. at 4-6.  At this stage, accepting Penske's factual allegations as true, Penske has plausibly asserted a claim for breach of the implied covenant of good faith and fair dealing.  Relying on precedent dating back to then-Judge Cardozo's seminal decision in *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 24 (1917), courts routinely hold that "[i]t is settled law that the court will imply a duty on the part of an exclusive licensee to exploit the subject matter of the license with due diligence, where such a covenant is essential as a matter of equity to give meaning and effect to the contract as a whole."  *Vacuum Concrete Corp. of Am. v. Am. Mach. & Foundry Co.*, 321 F. Supp. 771, 772 (S.D.N.Y. 1971) (first citing *Wood*, 222 N.Y. 88, and then citing *Mechanical Ice Tray Corp. v. General Motors Corp.*, 144

---

[3] Among its meritless arguments, Shutterstock tries to construe this claim as something other than it actually is.  Specifically, Shutterstock argues that Penske seeks to impose on Shutterstock an obligation ***to attend*** all Third Party Events for which Penske makes its credentials available.  See Def. Br. at 10-11.  However, this simply is not the claim asserted in the Amended Complaint.  Specifically, Penske alleges:

> In declining to use the credentials for third party events that PMC was required to provide exclusively to Shutterstock under the Archive & Event Agreement's terms, attending these events using credentials that Shutterstock obtained for itself, and thereafter claiming ownership of the resulting photographs, Shutterstock has unfairly interfered with PMC's right to receive its expected benefits under the contract and has violated the covenant of good faith and fair dealing.

AC ¶ 63.  Penske does not argue that each action described in that paragraph constitutes an independent breach of the implied covenant, but rather that the actions, taken together, constitute the breach.  *See* Opp. at 4-6.

F.2d 720 (2d Cir. 1944), and then citing *Guardino Tank Processing Corp. v. Olsson*, 89 N.Y.S.2d 691 (Sup. Ct. N.Y. Cty. 1949)).  Based on that longstanding precedent, Shutterstock, as the exclusive licensee of Penske's credentials for Third Party Events, had an obligation to "exploit" that license "with due diligence."  *Id.*  As alleged in the Amended Complaint, Shutterstock's failure to do so sufficiently states a claim for breach of the implied covenant.

Shutterstock's arguments to the contrary are unavailing.  First, Shutterstock argues that its decision to use its own credentials and its corresponding refusal to use Penske's credentials did not deprive Penske of its benefits from the contract.  Def. Br. at 11-12.  Among other formulations, Shutterstock supposes that Penske still received substantially all of its benefits from the Agreement because it was receiving royalty advances and because Penske was free to send its own photographers to Third Party Events as well.  Def. Br. at 11-12.  Those royalties and opportunities, Shutterstock asserts, protected Penske from precisely the actions about which it now complains and mean that no implied obligation can be inferred.  *See* Def. Br. at 12.

Shutterstock misapprehends New York law, which does imply a good faith obligation in circumstances similar to those alleged here.  *See New Paradigm Software Corp. v. New Era of Networks, Inc.,* No. 99-CIV-12409 (RMB) (AJP), 2002 WL 31749396, at *11 (S.D.N.Y. Dec. 9, 2002) (noting that other "decisions applying New York law have implied some obligation on the licensee despite an up-front or other payment in addition to the payment of royalties.").  As Magistrate Judge Peck noted in *New Paradigm*, numerous New York state and federal courts, all applying New York law, have conducted a more granular balancing of the protections in the contract against the expectations of the parties and the potential for additional revenue from the licensed property.  *Id.* at *11-14 (collecting cases).  Here, Shutterstock points to royalty advances as a large portion of the protection afforded to Penske against Shutterstock's non-performance.

9

Def. Br. at 11.  However, even a quick review of the Agreement reveals that the royalty advances are consideration not only for Shutterstock's production of new photographs but also for Shutterstock's efforts to market and license images already in the Penske archive.  Agreement ¶ 6.  Moreover, the Agreement also clearly envisions that ownership of the copyright resulting from Shutterstock's production effort is a form of consideration (and, thus, protection) for Penske.  Agreement ¶ 3(c).  When viewed as a whole then, the Court cannot find, as Shutterstock urges, that the royalty advances and Penske's opportunities to take pictures itself preclude an implied obligation in the Agreement for Shutterstock to diligently use the rights it was granted in the Agreement.  *See Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *6 (S.D.N.Y. June 8, 2020) (denying motion to dismiss claim for breach of the implied covenant where plaintiff alleged defendant diverted business from plaintiff to defendant's benefit).

Second, Shutterstock's objection to an implied obligation on the ground that it would constitute "court-sanctioned 'unfair competition'" and an "un-bargained for" restrictive covenant" is without merit.  *See* Def. Br. at 12-14.  Penske correctly points out that competition concerns, if they are relevant at all, are minimized in the context of a contract between two sophisticated business parties.  *See* Opp. at 10 (citing *Calico Cottage, Inc. v. TNB, Inc.*, No. 11-CV-0336 DLI MDG, 2014 WL 4828774, at *5 (E.D.N.Y. Sept. 29, 2014) ("[W]here two business entities agree to a restrictive covenant, there is generally no concern about the loss of individual's livelihood or an imbalance of bargaining power "that would implicate New York's public policy disfavoring restrictive covenants.'" (quoting *Nat'l Elevator Cab & Door Corp. v. H&B, Inc.*, 2008 WL 207843, at *9 n. 21 (E.D.N.Y. Jan. 24, 2008)))).

Moreover, Shutterstock is incorrect that the obligation Penske urges the Court to imply "undermine[s]" Shutterstock's "general right to act on its own interests" in a way that—at most—"may incidentally lessen [Penske's] anticipated fruits from the contract." *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (cited at Def. Br. at 12). Unlike in *M/A-COM*, the obligation here is necessarily intertwined in the matters addressed in the parties' contract. In *M/A-COM*, the Second Circuit affirmed a District Court decision which found that a company had no implied obligation to resist lobbying against a merger where the merger's failure might have some effect on the stock of the merger partner. *Id.* at 136-37. The company previously had agreed with the merger partner's controlling shareholder "never . . . to take any action undermining the value of [the shareholder's stock in the merger partner]." *Id.* at 135. Importantly, the Second Circuit noted that the unsuccessful merger was not a primary cause of the resulting decline in the merger partner's stock price. *Id.* at 137. The same cannot be said here. As alleged, Shutterstock's refusal to use the credentials Penske provided to it was both a direct and proximate cause of the damages alleged to Penske and Penske's inability to grow its photograph archive. That the Agreement also provided for Penske's ability separately to take photographs at most signals that there is a question of fact about parties' intentions. It does not, as Shutterstock alleges, foreclose the claim against it.

Third, Shutterstock argues that the implied obligation here would be based only on Penske's unstated understanding of the contract and therefore would violate the Agreement's merger clause. *See* Def. Br. at 14-15. This argument merits little discussion. The merger clause would only bar an obligation that is not "consistent with other terms in the contract." *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355, 777 N.Y.S.2d 62, 65 (1st Dep't 2004) (citing *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304, 448 N.E.2d 86 (1983)). As discussed above,

the obligation at issue here intrinsically is intertwined with the other requirements in the contract and Shutterstock points to no contrary language. The Court also does not rely on or consider either party's unstated contemplation of the contract's meaning in reaching its conclusions here.

In short, the Agreement between Penske and Shutterstock reasonably can be read to include an implied obligation that Shutterstock diligently exercise the rights it was granted to use Penske's credentials to photograph Third Party Events in order to build Penske's photo archive. The Court has no basis to depart from the otherwise clear law imposing this kind of requirement in similar cases. After the development of a further record, Shutterstock may seek to revisit this conclusion. However, at the pleading stage, Penske has plausibly stated a claim and the motion to dismiss the implied covenant claim is denied.

C.     *Copyright Infringement*

Shutterstock also moves to dismiss Penske's claim for copyright infringement. This claim targets Shutterstock's failure to remove more than 2,300 photographs for which Penske owns the copyright from its website after Shutterstock had terminated the agreement providing it a license to use the images. AC ¶¶ 47-54, 74-79. Shutterstock argues that the Amended Complaint does not contain sufficient allegations to sustain the claims. For the reasons that follow, the Court disagrees.

In order to state a claim of copyright infringement, Penske needs to allege: "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003)). Concerning the first element, "[r]egistration constitutes *prima facie* evidence of ownership and validity absent an affirmative demonstration of fraud on the [Copyright Office]." *Iantosca v. Elie Tahari, Ltd.*, 2020 WL 5603538, at *3 (S.D.N.Y. Sept. 18, 2020) (citing *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 401 (S.D.N.Y. 2016)). As to

the second element, in the context of a licensor-licensee relationship related to the copyrighted work, the Second Circuit has clarified that "unauthorized" copying occurs whenever there is use "outside of the license." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998).

Penske has adequately alleged both elements of its copyright infringement claim. As to the first element, Penske attaches to its Amended Complaint a nearly 75-page exhibit with each of the photographs it alleges Shutterstock infringed. *See* Amended Complaint Ex. 1. In connection with each group of related photographs, Penske provides the copyright registration number and title of the registration with the Copyright Office. *See, e.g.*, Amended Complaint Ex. 1 at 2 (Registration Number VA0002215216 corresponding to "PMC Archive Collection No. 9"). Plaintiff's inclusion of the registration numbers in the Amended Complaint is sufficient "proof" of the copyright registration. *Elie Tahari*, 2020 WL 5603538, at *4; *Goodman v. Universal Beauty Prods. Inc.*, No. 17-cv-1716 (KBF), 2018 WL 1274855, at *5 (S.D.N.Y. Mar. 9, 2018). And Defendant "has neither suggested how Plaintiff could have obtained a registration number without a registered copyright nor pointed to any caselaw indicating that a registration number is deficient proof." *Id.*[4]

With respect to the second element, Penske alleges that Shutterstock continued to display Penske's copyrighted photos on the Shutterstock website after the termination of Shutterstock's license to use the images. *See* AC ¶¶ 50, 78. The law is clear that "[a] licensee acts outside the scope of a license, and hence may be held liable for copyright infringement, where it continues to use copyrighted material after the license expires." *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206, 224 (S.D.N.Y. 2016) (first citing *Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 230 (2d Cir. 1982) ("Once the contract had expired,

---

[4] Shutterstock appears to suggest that certain of the registrations Penske references may be invalid because Penske does not own the photographs. *See* Def. Br. at 25 n. 17.

13

Robbins was liable for infringement of Kamakazi's copyrights."), and then citing *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F.Supp.3d 565, 581–82, 2016 WL 4534896, at *14 (S.D.N.Y. Aug. 30, 2016) (holding that licensee's use of photograph after license expired infringed licensor's copyright)). As alleged by Penske, once Shutterstock terminated the Agreement, its license to use the Penske-owned photographs expired but Shutterstock continued to display the images on its website. AC ¶ 50, 78. This is sufficient plausibly to allege a claim for infringement.

Shutterstock seeks to escape liability by arguing that it engaged in no "volitional" conduct following the expiration of the license, and, therefore, is not liable. *See* Def. Br. at 24; *see also Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 130-32 (2d Cir. 2008) (considering "the volitional conduct that causes the copy [of a copyrighted work] to be made."). Cases dismissing copyright claims on the basis of a lack of volitional conduct appear almost uniformly to deal with website owners who are deemed not responsible for infringement related to copies of copyrighted works produced by a third party and placed onto the website by that third party. *See Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 122-23 (S.D.N.Y. 2015) (collecting cases). That the actual "copying" of the protected work in those cases is accomplished by a third party is dispositive. *Id.* at 122 (citing *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 355 (S.D.N.Y. 2014)) (noting that the "volitional conduct" requirement aims to hold "defendants directly liable for copies made by other parties [only] in extreme cases."). Shutterstock points to no case where a Defendant's use of copyrighted material after the expiration of his right to use it is deemed to lack volitional conduct and does not provide any rationale for creating such an exception here.

Finally, Shutterstock devotes a single sentence in its opening brief to say that its use of any copyrighted photographs was fair use. *See* Def. Br. at 24. While Shutterstock develops this argument in its reply, the Court refuses to consider it here because it was effectively waived for purposes of this motion. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n. 7 (2d Cir. 2005) (holding that party's "single conclusory sentence" of argument on claim was tantamount to a waiver of that claim); *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) ("It is well established, of course, that arguments first raised in reply briefs are forfeited or waived.").

Penske's Amended Complaint adequately alleges a copyright infringement claim against Shutterstock related to the 2,300 photographs attached to the complaint. Shutterstock's arguments to the contrary are unavailing, and it has provided no other basis to dismiss the claims at this stage. As a result, the motion to dismiss the copyright infringement claim is denied.

### D.     *Falsification of Copyright Management Information*

Penske's final claim is brought under the Digital Millennium Copyright Act ("DMCA") for alleged falsification by Shutterstock of copyright management information for the 2,300 photographs attached to the Amended Complaint. AC ¶¶ 51-54, 65-74. Shutterstock seeks dismissal of this claim based on Penske's purported failure to allege several elements of the claim. *See* Def. Br. at 15-23. As explained below, Shutterstock's arguments fail.

The DMCA makes it unlawful to "knowingly and with the intent to induce, enable, facilitate, or conceal infringement provide copyright management information that is false, or distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). To state a claim under Section 1202(a), a plaintiff must allege (1) the provision or distribution of copyright management information ("CMI"); (2) that the CMI was false; (3) that the defendant knew that the CMI was false; and (4) that the Defendant acted with the intent to

15

cause or conceal copyright infringement. *Accord Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018) ("In order to plead a violation of § 1202(a), plaintiff thus must plausibly allege that defendant knowingly provided false copyright information and that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement.").

Shutterstock argues that Penske has failed to allege the necessary scienter and has failed to allege any likelihood of infringement. But, Shutterstock does not provide support for its position and resorts largely to arguing without citation to precedent other than for generic statements about pleading standards. *See* Def. Br. at 19-22.

The reasoning in *Michael Grecco Products., Inc. v. Alamy, Inc.*, is persuasive with regard to the Court's analysis of the Section 1202(a) claim here. 372 F. Supp. 3d 131 (E.D.N.Y. 2019). The facts in *Alamy* are nearly identical to what is alleged in this case. In *Alamy*, the plaintiff photography studio had licensed photographs to a company, the defendant, to be marketed, licensed, and distributed. *Id.* at 134. As here, the parties' license agreement ended but the defendant company continued to display "thumbnail" versions of the photographs on its website. *Id.* The versions on the defendant's website contained a watermark with the defendant's name, but nowhere explained that another company (the plaintiff) owned the copyright, just as Penske alleges here. *Id.* The defendant in *Alamy, Inc.* raised a scienter argument identical to that raised here by Shutterstock. *See Alamy, Inc.*, 372 F. Supp. 3d at 139. Relying on allegations in a complaint substantially similar to those here, the court held that the plaintiff "plausibly pleaded that Defendant acted with knowledge and intent in placing watermarks on the Copyrighted Works in order to conceal copyright infringement." *Id.* The court further noted that Second Circuit precedent "requires district courts to be lenient in allowing scienter issues to survive

16

motions to dismiss 'because such issues are appropriate for resolution by the trier of fact.'" *Id.* (quoting *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009)).

The same reasoning warrants denial of Shutterstock's motion to dismiss. Penske alleges that Shutterstock "knew that [Penske]—not Shutterstock—owned the copyright in the 2,300 Photographs[,]" and that Shutterstock's license to use them had expired when Shutterstock unilaterally terminated the Agreement. AC ¶¶ 51-52. Penske further alleges that Shutterstock "misrepresented itself as the copyright owner of the 2,300 Photographs in connection with its reproduction, distribution, and/or display of those works on" multiple websites and in metadata associated with the photographs, including by the use of watermarks on the images.[5] AC ¶ 51. Finally, Penske alleges that the falsified information "allows Shutterstock to conceal the fact that Shutterstock does not have authority to reproduce, distribute, or display the 2,300 Photographs, nor to license others to do so and that its exploitation of the works is infringing." AC ¶ 53. Penske also alleges, on information and belief, that Shutterstock has licensed use of the photographs to others after the termination of the agreement, further distributing the false CMI. AC ¶ 54. These allegations are more than sufficient to state that Shutterstock's actions were intended either to "induce, enable, facilitate, or conceal" infringement, whether that infringement was allegedly committed by Shutterstock by continuing to display the images after the termination of the Agreement or whether it was allegedly committed by use of the photograph by

---

[5] Shutterstock argues that Penske does not include "examples of the violation" and "fails to provide anything showing what the use looked like." Def. Br. at 20. This, it posits, means that Shutterstock cannot possibly "figure out what [Penske] is talking about." Def Br. at 21. The Court is confused by this argument. Each of the photographs included in Penske's exhibit to the Amended Complaint clearly displays a watermark overlaid on the image that says "Shutterstock." *See* Amended Complaint Ex. 1. Penske's argument, as the Court understands it, is that the watermark is at least some of the falsified CMI. *See, e.g.*, Opp. at 21-22. Thus, Shutterstock has access to 2,300 "examples of the violation." Absent any further explanation from Shutterstock about what is lacking, the Court will not consider this argument further.

a third party after Shutterstock licensed it to them without the authority to do so. *Alamy, Inc.*, 372 F. Supp. 3d at 139.

In short, Penske has plausibly stated a claim under the DMCA. The motion to dismiss Count Three of the Amended Complaint is denied.

## CONCLUSION

For the foregoing reasons, Defendant Shutterstock, Inc.'s motion to dismiss [ECF No. 35] Plaintiff Penske Media Corporation's Amended Complaint is DENIED. The request [ECF No. 50] by Shutterstock for oral argument on its motion is DENIED as moot.

The Clerk of Court respectfully is requested to close the motions at ECF No. 35 and 50.

**SO ORDERED.**

**Date:  July 9, 2021**
  **New York, New York**

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**