

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/21/2021

Eleanor M. Lackman
Partner
(212) 878-4890 Phone
(917) 546-7675 Fax
eml@msk.com

December 14, 2021

**VIA ECF**
The Honorable Mary Kay Vyskocil, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

Re:   <u>Penske Media Corp. v. Shutterstock, Inc., 20-cv-4583 (MKV)</u>

Dear Judge Vyskocil:

Following an unsuccessful effort to resolve the matter discussed herein, plaintiff Penske Media Corporation ("PMC") and defendant Shutterstock, Inc. ("Shutterstock") submit this joint letter regarding an issue pertaining to Shutterstock's request to reopen the deposition of Jay Penske.

**<u>Shutterstock's Statement</u>**

As the Court is aware, on November 4, Shutterstock requested that the deposition of Jay Penske – which had been set prior to the adjustment of the fact discovery close from November 24, 2021 to January 21, 2022 – be adjusted to permit the parties to complete paper discovery. The Court denied the request, ordering that the deposition to proceed as previously scheduled on November 18, 2021. ECF No. 89 at 5. The Court also stated that: "[i]f, contrary to Plaintiff's position, all relevant documents are not yet produced, the deposition may have to be reopened." *Id.*

Since the joint letter was submitted, PMC has produced several hundred documents. PMC stated in its November 4 letter that, "[o]ut of the thousands of documents that PMC has produced, Mr. Penske is a custodian and/or appears on less than 200." Therefore, it is particularly notable that when Shutterstock ran a search of the post-November 4 documents on December 3, 2021, it discovered that *over 220* of such documents identified Mr. Penske as the custodian and/or appears on the document. On the night of December 10, another production was made that contains dozens of documents with Jay Penske's email address on them, some which identify significant new material.

It is not simply the comparative volume that is troubling, however. These documents contain some of the most impactful of the array. They include Mr. Penske's comments about the parties' agreement upon closing – a message sent to several relevant custodians but produced for the first time *five days* after the Court's order and with insufficient time to load much less review before the deposition two days later. Particularly given PMC's representations, on which Shutterstock (and evidently the Court) relied, PMC should have been obligated to correct the representation or otherwise indicate that it would be producing extensive amounts of materials from Mr. Penske's

437 Madison Ave., 25th Floor, New York, New York 10022-7001
Phone: (212) 509-3900  Fax: (212) 509-7239  Website: WWW.MSK.COM



December 14, 2021
Page 2

files.  But it never identified any such documents at all at any time before the deposition, or at any time later.

The documents produced after the Court's Order also include, among other things, communications regarding Shutterstock's notice of breach and the response thereto, including whether such response complied with the provisions of the parties' agreement; presentations, produced several days after the deposition, on which Mr. Penske was lead and which corroborate Shutterstock's positions; and reports that touch on issues covered in the deposition and which appear to conflict with Mr. Penske's testimony, which likely would have been different had those documents been introduced.  Many of the 220 documents contain extensive redactions without basis.  The documents described above were not found elsewhere in the production in substance or form.  Accordingly, the scope of the deposition was prepared based on the scope that PMC represented existed.  Further, during the deposition, we discovered that Mr. Penske used at least one email address that was not searched, and that he did not produce communications via WhatsApp. (It is unclear to what extent the latter have been spoliated, but that is an issue that will be addressed separately.)  Given that PMC continues to produce documents as recently as December 10, despite their stated position that all documents except clean-up documents should be provided by September 30 (ECF No. 83), we do not know what other relevant documents may come.  And it cannot be true that Mr. Penske's personal email account turned up no documents given that the personal email address was identified on cc in another document; WhatsApp chats must be affirmatively deleted, and the message sent to Shutterstock's former CEO was dated after PMC contemplated litigation.  Others at PMC may have received messages, too.

PMC's points are a red herring.  Unlike PMC, Shutterstock made no representation to the Court regarding any production, nor did PMC file a request for relief regarding this minor witness.  In any case, the newly discovered 112 documents produced were specially segregated into a specific batch pertaining to the witness and produced hours after their discovery, and 92% of the volume consisted of 15 responsive but irrelevant editorial statements marked in an abundance of caution.  Nonetheless, unlike with Mr. Penske, Shutterstock offered to allow for rescheduling or a delayed start given PMC's promise that the witness was being sought on one discrete topic.  PMC declined and then proceeded to take the witness until well into the afternoon, declining until after lunch to get into the topic on which PMC indicated it wanted the witness.  PMC's claims regarding numbers also fall away when looking at compliance; for a relationship that spanned over five years, Shutterstock has produced over 160,000 pages of documents as compared to PMC's 23,000, a large portion of which were produced in the past couple of weeks.

Without disclosing further detail regarding the specific documents as to which Shutterstock would inquire so as to not preview Shutterstock's strategy as PMC appears to request, it is clear that "all relevant documents" had not yet been produced at the time of PMC's representation to the Court.  Further, PMC took no steps to advise the Court or Shutterstock otherwise.  Accordingly, Shutterstock respectfully requests that it be granted up to three hours (given Mr. Penske's style of narrative, non-responsive answers in response to questions) to address with Mr. Penske matters reasonably relevant to the belatedly produced documents, and that PMC be ordered to certify that *all* relevant documents pertaining to Mr. Penske have been produced prior to such time.



December 14, 2021
Page 3

**PMC's Statement**

Shutterstock examined Mr. Penske on November 18, 2021 for a full seven hours and deliberately chose not to reserve any time to recall him, even though Shutterstock told PMC on November 16 that it "will be asking to reopen the deposition." Shutterstock should not be allowed to depose Mr. Penkse for an additional three hours, for a total of ten, given its prior strategic decision to question him for a full seven hours after having had sufficient time to review the documents about which it now complains.

The parties wrote the Court on November 4 regarding when Mr. Penske should be deposed. Even though Shutterstock had previously told the Court that it needed only two weeks to review *all* the documents to be produced in this case (ECF No. 84, at 3), Shutterstock complained that it would not have sufficient time to review documents related to Mr. Penske if compelled to depose him on November 18, as the parties had previously agreed. PMC challenged that position, explaining that Mr. Penske's deposition implicated only a small number of documents, in that "out of the thousands of documents which *both* PMC and Shutterstock have produced, Mr. Penske is a custodian and/or appears on less than 300." On November 10, the Court ordered the deposition to proceed on November 18, and stated that "if, contrary to Plaintiff's position, all relevant documents are not yet produced, the deposition may have to be reopened."

PMC's reference to 300 documents in its prior letter was mistakenly based on a count of documents in PMC's review platform vs the documents already produced, and PMC apologizes to the Court for that error. Nevertheless, PMC submits that the operative document production date under the Court's order is November 10 and not November 4 (given the Court' use of the phrase "not yet produced" versus "were not produced as of November 4") and that the documents that PMC produced since November 10 do not justify a continued deposition.

Between November 10 and November 16, 2021, PMC produced 101 families (121 documents, 381 pages) sent to, from, or cc'ing Mr. Penske, and Shutterstock had more than enough time to review those documents in advance of Mr. Penske's November 18 deposition. Of those families, 31 (39 documents, 169 pages) had previously been produced by Shutterstock. Of the remaining 70 families (82 documents, 212 pages), 18 (19 documents, 48 pages) are duplicated/repeated in threads, 8 (13 documents, 20 pages) are ministerial emails (calendar invitations, instructions for connecting to meeting, google doc invites), 2 (3 documents, 6 pages) are forwards of emails that Shutterstock sent to PMC in May 2020, and 11 (12 documents, 24 pages) are short (mostly one-sentence) responses to group emails. That leaves 31 families (35 documents, 114 pages) that include more substantive or unique threads. Four of those families (4 documents, 9 pages) were produced on November 11, or almost one week before Mr. Penske's deposition. To the extent Shutterstock complains of documents produced before November 10, Shutterstock had even more time to review those materials. Another four families (8 documents, 35 pages) produced on November 16 are forwards of drafts of the term sheet which the parties previously exchanged, and which Shutterstock may also possess but has not yet produced. PMC shared this information with Shutterstock before Mr. Penske was deposed and Shutterstock could have obtained this same information itself, given the metadata that accompanies the documents and the available search tools. PMC has since produced a



December 14, 2021
Page 4

handful of additional documents on which Mr. Penske's name appears which are not significant to this case, including for example, emails between others on which he is cc:ed discussing entering into a non-disclosure agreement or wishing him a happy Father's Day.

We cannot meaningfully respond to Shutterstock's cryptic statements regarding the "impactful" nature of these documents. We suggest, however, that the statements are exaggerated. Shutterstock's reference to "Mr. Penske's comments about the parties' agreement upon closing" appears to reference a two sentence non-substantive email celebrating the signing of the parties' term sheet. Shutterstock's meager statement that unspecified reports "appear to conflict with Mr. Penske's testimony" further underscores the weakness of its contentions.

Shutterstock's own conduct in this case belies its position that it did not have sufficient time to review or analyze the identified documents. PMC is deposing Shutterstock employee Candice Murray, Shutterstock's designated 30(b)(6) witness on the vast majority of PMC's noticed 30(b)(6) topics, on December 13-14. Shutterstock nevertheless produced over 1,200 new documents (totaling over 47,000 pages) on December 8 (while PMC was deposing Shutterstock's founder and former CEO) and just three business days before Ms. Murray's deposition commenced) over 300 of which are sent to, from, or cc her, list her as custodian, or include her name in the text. PMC deposed Shutterstock employee Steven Sammut on December 7, 2021, and Shutterstock produced approximately 3,000 pages of documents at 1:00 a.m. that day, representing that the production consisted of documents related to him. Shutterstock did not notify us of this production until 11:30 pm on December 6, and its offer to reschedule his deposition at that late date was unworkable, especially given the already packed deposition schedule. The volume of Shutterstock's last minute productions is an order of magnitude greater than the number of documents it complains about receiving from PMC.

Shutterstock's remaining points are empty. It is correct that Mr. Penske did not search his personal email account. He has since done that and, as expected, no responsive documents were found. The two WhatsApp messages he sent to Shutterstock's former CEO were not retrievable. The former CEO apparently screen shot and produced them in this case, and they are immaterial.

For each of these reasons, this Court should deny Shutterstock's request to re-depose Mr. Penske. Should the Court enter such an order, Shutterstock should be limited to no more than 60 minutes of questions, all of which should be confined to documents produced after November 10. Shutterstock should not be allowed to re-do the deposition on the pretext of documents produced after November 4 or 10 or the erroneous and unsupported statement regarding Mr. Penske.



December 14, 2021
Page 5

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Eleanor M. Lackman

    Eleanor M. Lackman

*Attorneys for Shutterstock, Inc.*

SHAPIRO ARATO BACH LLP

By: /s/ Cynthia S. Arato

    Cynthia S. Arato

*Attorneys for Penske Media Corporation*

---

The deposition of Jay Penske may be reopened. The deposition shall be limited to one and a half hours, and the scope of the deposition shall be confined to documents produced after November 4. SO ORDERED.

Date: 12/21/2021
New York, New York

Mary Kay Vyskocil
United States District Judge