

**Shapiro Arato Bach** LLP

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/21/2021
```

Cynthia S. Arato
carato@shapiroarato.com
Direct: 212-257-4882

November 11, 2021

The Honorable Mary Kay Vyskocil
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

     Re:  *Penske Media Corp. v. Shutterstock, In*c., 20-cv-4583 (MKV)

Dear Judge Vyskocil:

   After unsuccessfully meeting and conferring, the parties submit this letter in connection with Plaintiff Penske Media Corporation's ("PMC") request for an informal conference under Rule 3(d) of Your Honor's rules regarding Shutterstock, Inc.'s ("Shutterstock") objections to PMC's Request for Production ("RFP") 68-71.

**PMC's Position**

   The RFPs seek documents that are central to this breach of contract case. These documents will show what revenue Shutterstock earned under its Archive & Event Image Hosting Agreement (the "Agreement") with PMC before the pandemic and what revenue it earned during the pandemic months leading up to Shutterstock's wrongful termination of the Agreement. These documents are essential because Shutterstock purported to terminate the Agreement, and withhold payments and credits owed, on the grounds that the pandemic frustrated the Agreement's purpose. The revenues Shutterstock earned during the pandemic months under the Agreement will demonstrate that the pandemic did not frustrate the Agreement's purpose, but that the Agreement retained substantial value to Shutterstock. To calculate Shutterstock's earnings, PMC needs information about the timing of Shutterstock's underlying licensing activities and not just its cash receipts. Shutterstock has never previously provided that information in full and the summary it offers now does not cover that information.

   We briefly recite the factual background to illustrate the relevance of the documents sought. PMC owns notable fashion and entertainment publications, along with a vast and ever-growing archive of photographs taken for those publications. Shutterstock is a company that licenses "stock" and "editorial" photographs. The parties entered the Agreement as of July 1, 2015. Among other things, the Agreement appointed Shutterstock the exclusive licensor of PMC's images. In exchange, Shutterstock paid PMC a royalty for its licensing of PMC images to third parties, and, each year, provided PMC a guaranteed minimum advance against those royalties. The Agreement also provided that PMC would grant Shutterstock any access that PMC had to attend and photograph certain live events, at which Shutterstock could take photographs

The Honorable Mary Kay Vyskocil
November 11, 2021

Page 2

that would be added to PMC's image collection.  *Penske Media Corp. v. Shutterstock, Inc.*, No. 1:20-CV-04583 (MKV), 2021 WL 2894809, at *1 (S.D.N.Y. July 9, 2021).

Shutterstock purported to terminate the Agreement as of July 17, 2020, claiming that the Agreement's purpose was "frustrated" by the COVID-19 pandemic because live, in person events were cancelled as a result of the COVID-19 pandemic.  *Id*. at *2.  That position ignores that—as this Court has recognized—"even a quick review of the Agreement reveals that the royalty advances are consideration not only for Shutterstock's production of new photographs" at live events "but also for Shutterstock's efforts to market and license images already in the Penske archive."  *Id*. *5.  "[F]rustration of purpose discharges a party's duties" only where "a wholly unforeseeable event renders the contract *valueless* to one party."  *Gap, Inc. v. Ponte Gadea New York, LLC*, 2021 WL 861121, at *7 (S.D.N.Y. Mar. 8, 2021) (emphasis added); *accord Robert J. McRell Assocs., Inc. v. Ins. Co. of N. Am.*, 677 F. Supp. 721, 728–29 (S.D.N.Y. 1987) ("[T]he frustration of contract defense is available only when the circumstance that has ceased to exist was the foundation of the entire contract.").

PMC seeks the requested documents to show that the pandemic did not render the Agreement "valueless" or destroy the "foundation of the entire contract," given that Shutterstock could, and did, continue to license pre-existing PMC images to third parties even after the onset of the pandemic—even if no "new" images from "live" celebrity events were added to PMC's collection.  Thus, the requests seek documents revealing the (1) amount of revenues Shutterstock earned from its actual licensing of PMC images after the pandemic's onset, to show that Shutterstock continued to benefit from the Agreement during the pandemic; and (2) the amount of revenues Shutterstock earned from this same licensing activity pre-pandemic, to enable a comparison.  (*See* Exhibit 1:  Plaintiff's Second Set of Document Requests, dated Sept. 1, 2021, RFP 68-71).  Specifically, PMC seeks documents sufficient to show the revenue that Shutterstock earned from the actual licensing activity it conducted during each month of the Agreement—namely, top-line revenue numbers and documents sufficient to show when each image was licensed (and/or, per Shutterstock's database labels, "usage data" or "download dates), and for what amount.  All of this will show that Shutterstock continued to license PMC images to third parties post-pandemic, and at what level, and that Shutterstock thus continued to retain value from the Agreement during the pandemic.  Shutterstock agreed in its written responses to provide summary information for all these categories; it now agrees to do so only for the monthly receipt of revenue.

PMC, moreover, cannot glean this information from whatever Shutterstock may have sent to PMC in the ordinary course under the Agreement, to the extent retained (PMC did not retain all such reports).  As Shutterstock knows, the information Shutterstock did send during that time is incomplete and insufficient to conduct the needed comparison. Among other things, (1) the reports appear to be reporting revenues on a cash receipts basis (and not based on when the underlying licensing activity occurred); and (2) many of the entries on the reports do not identify the date on which Shutterstock licensed the images for which Shutterstock is reporting revenue.  Regardless, Shutterstock is the party that licensed the images and collected the revenue, and it is Shutterstock's burden to disclose that information from its own internal records (a computerized database), regardless of what it previously sent to PMC.  Finally, although Shutterstock has made representations about revenue post-pandemic, PMC requires the

The Honorable Mary Kay Vyskocil
November 11, 2021

Page 3

underlying documents to validate Shutterstock's representations, to clarify any ambiguities about when revenue was earned (as opposed to just collected or received) and ensure no aggressive accounting measures are being utilized.

The documents are relevant and go to the very heart of this case, and Shutterstock has offered no coherent reason for refusing to provide them.  We respectfully ask the Court to compel their production.

**Shutterstock's Position**

In the opening paragraph of this letter, PMC characterizes the document requests at issue as merely seeking the revenue that Shutterstock earned under the Agreement before the COVID-19 pandemic began, and the revenue it earned after PMC was no longer able to provide access to live events due to the pandemic.  But Request Nos. 68 through 71 are actually not so limited.  For example, Request Nos. 68 and 69 also seek "documents sufficient to show any exploitation of" of archive content and live event content, respectively.  Request Nos. 70 and 71 are entirely misplaced, seeking image "usage data" and "download dates."  PMC has not even attempted to show that any of this extraneous information is relevant.  Nor can it.  Therefore, as a threshold matter, the scope of Request Nos. 68 through 71 should be limited to the revenue that Shutterstock earned under the Agreement before and during the pandemic—the information PMC purports to seek in the first paragraph of this letter.

But PMC already has access to *that* information.  Shutterstock sent royalty reports to PMC throughout the term of the Agreement in the normal course thereof, and PMC knows the formula for the calculation of royalties it was owed.  Shutterstock's offered records, from the data kept in the ordinary course of business, *do and will summarize revenue to Shutterstock* from licensing on a monthly basis from archival and live event content, which is exactly what PMC requested.  PMC has not indicated how the timing of licensing and payment materially differs or that it does at all, and even if did, how it impacts PMC's legal theories regarding pre-pandemic revenues versus post-pandemic revenues. (Revenue as to PMC is of course irrelevant, given that PMC never recouped on the advance.)  Indeed, and notwithstanding PMC's imprecise and expansive "documents sufficient to show" phrasing, in response to Request Nos. 68 through 71, Shutterstock offered to produce pre and post-shutdown revenue data by means of "a chart or document summarizing the requested information in lieu of documents."  PMC fails to explain what more it needs and why.  Indeed, PMC has refused to provide a Rule 30(b)(6) witness on the topic of the revenues that the parties earned from the exploitation of PMC Content.

Instead, PMC seems to have used this manufactured discovery dispute as an opportunity to mischaracterize the facts and argue the merits.  For example, PMC states above that the Agreement "provided that PMC would grant Shutterstock *any access that PMC had* to attend and photograph certain live events" (italics added), citing its own complaint.  In reality, the Agreement does not contain the italicized words or anything like them.  This is PMC's *argument*.  *I.e.*, that PMC could, consistent with the Agreement, claim that it was excused from the obligation to provide live event content due to the pandemic, and simultaneously demand that Shutterstock pay PMC the advance on royalties—the very consideration offered for the live event access which PMC could not deliver.  As Shutterstock will show, PMC's argument finds no support in the

The Honorable Mary Kay Vyskocil                                                         Page 4
November 11, 2021

Agreement itself, and is illogical and meritless under the doctrine of frustration of purpose and other fundamental principles of contract performance and breach.

But resolution of the merits is not at issue here, in this discovery dispute.  To the extent PMC believes revenue data will show that Shutterstock's principal purpose in entering into the Agreement was not "substantially frustrated" by an unforeseen event (*see, e.g.*, Restatement (Second) of Contracts § 265), Shutterstock has already committed to provide pre and post-shutdown revenue information in chart form.  PMC has not established an entitlement to anything more, or that Shutterstock should be forced to undertake the burdensome task of searching for and producing every document under the sun that could conceivably relate to revenue.

Indeed, PMC is in no position to complain about discovery.  To date, Shutterstock has produced over 108,000 pages of responsive documents regarding an event-driven agreement that PMC now (in direct contradiction of its own Amended Complaint) paints as an agreement about licensing of material from PMC's comparatively low-value archive.  Shutterstock has produced extensive amounts of relevant documents pertaining to Archive Content, PMC Content, *and* Third-Party Content, as those terms are defined under the agreement, to PMC.  PMC, by contrast, has produced far less—roughly 19,000 pages of documents, much of them copies of photographs and other "filler."

The parties have many other significant discovery matters to address, and Shutterstock regrets that this one risks occupying valuable time needed to address PMC's severe production deficiencies and to prepare for several additional depositions that PMC has requested on a shorter timeframe than originally proposed, as outlined in Shutterstock's letter of last week.  PMC's request should be denied.

Sincerely,

/s/ *Cynthia S. Arato*          /s/ *Eleanor M. Lackman*

Cynthia S. Arato              Eleanor M. Lackman

---

The Court has reviewed the letter filed at ECF No. 90 and has determined that a conference is not necessary.  On or before January 4, 2021, Shutterstock shall produce the documents that relate to PMC's Request for Production Numbers 68-71. SO ORDERED.

Date: 12/21/2021
New York, New York              Mary Kay Vyskocil
                                United States District Judge