

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Eleanor M. Lackman
Partner
(212) 878-4890 Phone
(917) 546-7675 Fax
eml@msk.com

December 30, 2021

**VIA ECF**
The Honorable Mary Kay Vyskocil, U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street, Room 2230
New York, NY  10007

Re:     <u>Penske Media Corp. v. Shutterstock, Inc., 20-cv-4583 (MKV)</u>

Dear Judge Vyskocil:

Following an unsuccessful effort to resolve the matter discussed herein, plaintiff Penske Media Corporation ("PMC") and defendant Shutterstock, Inc. ("Shutterstock") submit this joint letter regarding issues raised by Shutterstock pertaining to document discovery.

<u>**Shutterstock's Statement**</u>. PMC's document production remains deficient in several critical aspects:

First, PMC has taken the position that it need only produce those documents that support its allegations, and can those documents that undermine them. In response to multiple requests for production seeking documents that "support, substantiate, refute, or otherwise pertain or relate to" various of PMC's key allegations, PMC has expressly limited its production to those documents "it intends to rely upon in this action to prove PMC's allegations." (RFP Nos. 4-6, 17, 48, 55-61, 63-64, 68, 74, 76-79, 90 and others.)

This limitation is improper. Like documents provided with initial disclosures, those refuting or relating to PMC's allegations are discoverable. PMC's objection that it would purportedly invade PMC's work product if PMC were required to identify what documents refute its allegations is meritless. The documents sought by the requests are not work product. For instance, PMC alleged that Shutterstock "refus[ed] to attend and photograph events hosted by PMC," and documents showing Shutterstock attended such events on their face refute that allegation. Parties are required to make such determinations in responding to discovery in every single case. PMC is no exception.

PMC's timeliness objection is similarly meritless. Many of the responses at issue were served just last month, and PMC continues to produce documents recently. Further, Shutterstock could not have determined whether to seek court intervention until PMC produced documents. If PMC had complied with its obligations, responsive documents may have been produced in response to other requests, and PMC would not have created the strong impression that it is withholding materials harmful to its position. However, PMC's other deficiencies, which have only become clear as their document production continues (some of which were only revealed in their portion



December 30, 2021
Page 2

of this letter), demonstrate the need for an order that PMC is not permitted to withhold material harmful to their case. Tellingly, PMC does not argue otherwise.

Second, PMC has refused to indicate whether it has completed their production as to requests for which no documents presently exist. On Nov. 24, Shutterstock sent a letter to PMC that identified numerous requests for which PMC had not produced any responsive documents. Shutterstock made a simple request: "Please provide or identify responsive documents or confirm that there are none."

PMC refused to do so. While PMC produced some documents after the letter, it did not produce documents responsive to all the requests listed, nor did it tell Shutterstock if PMC believed any of its prior production included documents responsive to those requests or if the documents do not exist (with the exception of a few requests on discrete issues). This unreasonable position leaves Shutterstock in the position of approaching the close of discovery without knowing if PMC's production is complete. Metadata for Shutterstock to search is not sufficient; if, as PMC appears to admit in their joint portion of the letter, that it has no documents responsive to certain requests, it must supplement its response to say so. *Schwartz v. Mktg. Pub. Co.*, 153 F.R.D. 16, 21 (D. Conn. 1994). Shutterstock therefore requests that the Court: (1) order PMC to confirm for the requests at issue if their production is complete, or if no documents exist; and (2) if responsive documents exist but have not been produced, order them to be produced immediately.

Third, PMC still has not produced numerous critical documents and categories of documents:

- PMC has not produced any text messages, WhatsApp messages, or other chat type messages, even though Mr. Penske admitted using WhatsApp to discuss responsive topics and PMC's head of communications admitted PMC uses instant messaging. (Except for 2017-18, Shutterstock produced its own instant messages.)

- PMC has not produced documents identifying Events to which PMC offered or expected to offer access to Shutterstock after March 1, 2020 (RFPs 10-11, 14-15) or that were cancelled due to the pandemic after March 1, 2020 (RFPs 12, 16), or that occurred after March 1, 2020 (RFP 19).

- PMC has not produced documents showing the number of archive images it provided to Shutterstock in 2016 (RFP 20), or that it licensed to third parties such as Getty Images (RFP 96), which is relevant to the issue of PMC's good faith provision of such content.

- PMC has not produced any financial projections for the Agreement that predate execution, financial projections for live event content, or documents showing its profit and losses associated with the Agreement (even while PMC demands analogous information from Shutterstock) (RFP 94, 98).

- PMC has produced very few documents relating to attempts to renegotiate the Agreement, even though the parties made significant efforts to do so, or relating to Shutterstock's March 31, 2020 proposal to PMC to address circumstances caused by COVID, even though that issue has been discussed extensively in depositions by witnesses from both sides (RFP 99).



December 30, 2021
Page 3

- PMC has not produced contracts and related documents for events that were at one time scheduled between February 1, 2020 and June 30, 2021 (RFP 104), or contracts with third parties for its archive and/or live event content (RFP 105), such as other contracts PMC has for archive content, or any contracts for live events that were adjusted due to COVID.

PMC asserts that Shutterstock is not challenging its objections to RFPs 20, 94, 96, 98, 104, 105. Not true. For RFP 20, PMC agreed to meet and confer to provide the requested information, but did not do so. For RFPs 94, 96, 98, 104, 105, PMC's objection was essentially that it did not need to respond to another set of document requests, even though it served even *later* requests. Shutterstock challenges that improper objection and requests that the Court order PMC to produce such documents or state none exist.

**PMC's Statement**. This Court should deny Shutterstock's untimely demand that PMC produce untold additional documents beyond the 23,000 plus pages PMC has produced to date. PMC long ago asserted appropriate, proper, and timely objections to Shutterstock's 127 voluminous and overly broad requests, in which it notified Shutterstock of the categories of documents it did not agree to produce. Shutterstock sat on PMC's objections for months, despite the Court's directive that parties seek relief "in a timely fashion" and "not wait until near the close of discovery to raise an issue that should have been raised earlier." Since serving its objections, PMC has completed a voluminous document review and witnesses have been deposed. With discovery set to close in three weeks, it is unfair and prejudicial for Shutterstock to challenge at this late date dozens of PMC's objections across a myriad of subject matters. Even if Shutterstock had timely sought relief from the Court, Shutterstock's challenges are unjustified and should be rejected.

Shutterstock's contention that PMC "failed" to produce documents or "refuses" to state whether no documents exist ignores PMC's proper and timely served objections. With the one exception discussed below, Shutterstock does not address the substance of those objections or meaningfully challenge them. Instead, Shutterstock levels the empty charge that PMC "failed" to produce documents which PMC had objected, on multiple grounds, to having to search for and produce. *See* RFPs 20, 94, 96, 98, 104, 105.

PMC objected to RFPs 4-6, 17, 48, 55-61, 74, 76-79 on May 28 and October 15, 2021, between seven and two and one-half months ago. PMC objected to RFP 90 on November 4, 2021. PMC properly objected on a variety of grounds, including that the requests were overly broad and unduly burdensome, sought irrelevant documents, were disproportionate to the needs of the case, and/or sought to invade work product. Shutterstock lumps the requests together as covering discrete "factual allegations," but they vary, along with PMC's objections. For example, many (a) cover large portions of the case as a whole;[1] (b) concern PMC's legal contentions;[2] or (c)

---

[1] 48, 61, 63-64 (all documents "refuting" affirmative defenses/regarding entire causes of action).
[2] 4 (all documents "refuting" PMC's allegation that Shutterstock had no valid basis to terminate the agreement), 17 (all documents concerning PMC's contention that Shutterstock would have continued to enjoy benefits under the agreement if it had not terminated the agreement); and 55-57, 59, 66 (all documents related to PMC's allegations that Shutterstock acted unfairly/violated the covenant of good faith/acted with knowledge).



December 30, 2021
Page 4

sought documents that PMC consulted in drafting court and discovery responses.[3] Rather than refuse to produce any documents in response to Shutterstock's objectionable demands, PMC agreed to produce any document on which it would rely. That compromise position was proper, as Shutterstock may not force PMC to search for, identify, and produce any and all documents that concern or "refute" the overly broad topics and legal contentions covered by Shutterstock's requests. RFP 90 asked PMC to produce only those documents "supporting" any of PMC's denials of Shutterstock's requests to admit, and Shutterstock does not explain why it is entitled to other "supportive" documents upon which PMC does not intend to rely.  If Shutterstock believed otherwise, it should not have waited until just a few weeks before discovery is set to close and after PMC has completed a voluminous document review to submit these issues to the Court.

PMC also properly objected to RFP No. 6—the sole request which Shutterstock details above. Shutterstock contends that it is entitled to documents showing that Shutterstock attended various events hosted by PMC so that Shutterstock may "refute" PMC's allegation that Shutterstock "refus[ed] to attend and photograph events hosted by PMC." But PMC has never contended that Shutterstock refused to attend all PMC-hosted events during the parties' five-year relationship. PMC contends that Shutterstock refused to attend only certain events, and PMC agreed to produce documents it possessed evidencing those refusals.

PMC does not understand Shutterstock's inclusion of RFPs 68, 74, or 76-79. PMC either agreed to produce responsive documents without the above challenged objection or stood on its objections based on relevancy and other grounds which Shutterstock does not address.

Regarding the bulleted RFPs, PMC has either produced responsive documents or stood on its objections, and, for the former, there is no basis for Shutterstock's insistence that PMC identify for Shutterstock specific documents in PMC's production that cover specific subjects. PMC's documents have metadata and are text searchable, and it is Shutterstock's responsibility to review those documents itself, just as PMC has done with Shutterstock's even more voluminous production. *See Heartland Food Products, LLC. v. Fleener*, 2019 WL 2501862, 18-cv-2250-JAR-TJJ (D. Kansas June 17, 2019) (ESI produced with sufficient metadata qualifies as production of documents in the ordinary course such that no organization or labeling by demand is required). For the other documents it agreed to produce, PMC has also told Shutterstock it believes its production to be complete, in the same way Shutterstock has now done as well.

PMC's production is also not incomplete because it contains no text messages; Shutterstock also produced no texts. Shutterstock's reference to WhatsApp is unavailing. Mr. Penske previously sent just two WhatsApp messages to Shutterstock's former CEO, and we believe the former CEO produced screen shots of them. We do not yet have the transcript of the deposition of the former head of communications (currently head of HR), but while she testified about the current existence of Slack, she was not asked anything about how it is used or by whom or when, and, with the exception of one message that PMC produced related to an ancillary claim, PMC does not believe it is or was a source of relevant communications.

---

[3] 49 and 50 (all documents which PMC consulted in drafting its Reply/interrogatory responses).



December 30, 2021
Page 5

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Eleanor M. Lackman

     Eleanor M. Lackman

*Attorneys for Shutterstock, Inc.*

SHAPIRO ARATO BACH LLP

By: /s/ Cynthia S. Arato

     Cynthia S. Arato

*Attorneys for Penske Media Corporation*