

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Eleanor M. Lackman
Partner
(212) 878-4890 Phone
(917) 546-7675 Fax
eml@msk.com

March 22, 2022

**VIA ECF**
The Honorable Mary Kay Vyskocil, U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street, Room 2230
New York, NY  10007

Re:   <u>Penske Media Corp. v. Shutterstock, Inc., 20-cv-4583 (MKV)</u>

Dear Judge Vyskocil:

Following an unsuccessful effort to resolve the matter discussed herein, plaintiff Penske Media Corporation ("PMC") and defendant Shutterstock, Inc. ("Shutterstock") submit this joint letter regarding issues raised by Shutterstock pertaining to PMC's 30(b)(6) witness designations.

**<u>Shutterstock's Statement</u>**. As to certain Rule 30(b)(6) topics, the witness PMC designated to testify was not prepared.  As to certain other Rule 30(b)(6) topics, PMC simply refused to designate a witness at all without ever seeking a protective order, a violation of Rule 37(d)(2) (a fact that I noted in an email to PMC's counsel on February 21, 2022).  The topics at issue are discussed in turn, below.

<u>Topic 2</u>: "The performance, scope, or meaning of the Agreement and its terms, and communications between Shutterstock and PMC regarding the same." PMC designated its EVP of Business Affairs and Chief Legal Officer, Todd Greene, to testify about the Agreement's "meaning."  PMC has inexplicably refused to designate a Rule 30(b)(6) witness on the "performance" of the Agreement, although Shutterstock has alleged PMC's failure to perform various contractual obligations as the foundation for several of its affirmative defenses. Answer and Counterclaim, ECF No. 79, Affirmative Defense Nos. 2, 4, 5, 7. As in most breach of contract litigation, performance of the Agreement is squarely at issue in this case. PMC's refusal to produce a Rule 30(b)(6) witness to testify to the same is inappropriate.

<u>Topic 12</u>: "Contracts between PMC, or any of its brands (including, without limitation, Fairchild Live Media, Variety, or RR1), on the one hand, and any venue, on the other hand, which relate to events that were at one time or another scheduled to occur between February 1, 2020 and June 30, 2021, and the performance, nonperformance, or modification thereof."[1] PMC designated Karl Walter to testify on this topic, "in part" only, without specifying which part. When Shutterstock deposed Mr. Walter, he said that knowledge about venue contracts was "not [his]

---

[1] Relatedly, Shutterstock propounded Requests for Production pertaining to this information (*e.g.*, RFP Nos. 98 and 104), which are raised both in the parties' joint letter to the Court of December 30, 2021 (ECF 94) and are the topic of ongoing meet and confers.  Thus far, PMC has refused to produce any responsive documents.

437 Madison Ave., 25th Floor, New York, New York 10022-7001
Phone:  (212) 509-3900  Fax:  (212) 509-7239  Website: www.msk.com

14025509.9



March 22, 2022
Page 2

line of business." Walter Tr., 1-18-2022, 251:12-251:13.[2] When Shutterstock asked Mr. Greene, he said such information would be in some elusive "files" that he could not locate and pointed to Judith Margolin (Greene Tr., 2-2-2022, 281:23-281:23), who was not designated to testify on this topic. When Shutterstock asked George Grobar, PMC's Chief Operating Officer, Mr. Grobar pointed to PMC's Senior Vice President of Finance who was never designated or disclosed, Ken DelAlcazar, and testified that any such information could be collected from an in-house database with which Mr. DelAlcazar was familiar called "NetSuite." Grobar Tr., 2-10-22, 78:13-79:16.

PMC failed to designate and prepare a witness to testify regarding Topic 12. Moreover, based on the testimony of its CLO and COO, it appears PMC actively avoided preparing anyone to testify on this subject—it is simply not believable that neither the CLO nor the COO of PMC have any knowledge regarding whether PMC or any of its brands received refunds of deposits it paid to venues that were to host events that were cancelled by the pandemic. Regardless, according to Mr. Grobar, Mr. DelAlcazar could gather such information. Grobar Tr., 103:3-104:21 ("I think you're asking whether Ken via his resources could gather that information […] the answer is yes."). PMC has taken the position that Shutterstock was required to pay a significant royalty advance even though the pandemic wiped out the live event access for which Shutterstock was paying. Shutterstock is entitled to discover what positions PMC took during the pandemic when the venues it contracted with could not deliver the consideration for which *PMC* was paying, and whether PMC's position was different under those circumstances, or the same as the opportunistic one it has taken here.

Topic 24: "Shutterstock's alleged breach of the Agreement, as alleged in PMC's amended complaint, and any alleged damages PMC suffered as a result thereof." PMC designated Karl Walter and Todd Greene to testify on this topic, again "in part," without specifying which "part." exactly. Mr. Walter testified about the alleged breach, so naturally, Shutterstock expected to examine Mr. Greene on the other "part," damages. However, Mr. Greene testified that he did not prepare for Topic 24 at all. Greene Tr., 18:16-19:3. To date, no PMC witness has been able to articulate what damages—if any—PMC suffered as result of Shutterstock's purported breach of implied covenant of good faith and fair dealing. Greene Tr., 256:9-265:20.

This failure to prepare warrants a designation by PMC of a new, knowledgeable witness for this topic. *See Starr Indemnity & Liability Co. v. Water Quality Insurance Syndicate*, 320 F. Supp. 3d 549 (S.D. N.Y. 2018), *aff'd*, 775 Fed. Appx. 4 (2d Cir. 2019) ("A Rule 30(b)(6) witness need not have personal knowledge concerning the matters set for examination. But when the deponent lacks personal knowledge, the corporation is obligated to prepare the witness to give knowledgeable answers."); Wright & Miller, Fed. Prac. & Proc. Civ. § 2103 (3d ed.) ("One remedy frequently invoked when the witness initially designated is unable to provide adequate answers is to require that another witness be designated."). Even if Mr. Greene had testified that he *did* recall preparing for Topic 24, his complete lack of knowledge about PMC's damages is akin to non-appearance on this part of Topic 24. *See, e.g., Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d at 433-34 (5th Cir. 2006) ("If the designated agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily

---

[2] While deposition transcripts have not been lodged with the Court, Shutterstock will submit them upon request in order to view the references made in this letter.

14025509.9



March 22, 2022
Page 3

identifiable witness, then the appearance is, for all practical purposes, no appearance at all.") (citing *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d at 197 (5th Cir. 1993)).

Of course, Shutterstock is entitled to obtain testimony regarding PMC's alleged damages, if any.

**PMC's Statement**

Shutterstock has known of PMC's objections to Shutterstock's 30(b)(6) notice since November 2021, and Shutterstock proceeded to take its 30(b)(6) depositions with that knowledge and without seeking any relief from the Court. PMC's objections were and are appropriate and valid, but if Shutterstock wished to challenge them, Shutterstock should have done so before the depositions took place and not after the depositions concluded. Shutterstock, moreover, misstates the record in contending that PMC's witnesses were not prepared to testify on the relevant topics. PMC was not required to move for a protective order to preserve its objections, as the case Shutterstock previously cited to PMC demonstrates. *Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1296 (S.D. Fla. 2019) (corporation objecting to 30(b)(6) topic "is to give advance notice to the requesting party of those objections" so requesting party may narrow topic or move to compel.).

On November 3, 2021, PMC sent Shutterstock its Rule 30(b)(6) designations for the majority of the noticed topics and identified other topics to which it objected. On November 15, 2021, PMC sent Shutterstock additional information regarding PMC's objections. The parties met and conferred and memorialized the meet and confer in emails dated November 30, 2021. Shutterstock thereafter took its 30(b)(6) depositions.

Topic 2.  PMC objected to this four-part topic as, among other things, overbroad and seeking irrelevant information. The topic covered the performance, scope, or meaning of the Agreement as a whole, and communications regarding the same, even though Shutterstock and PMC's pleadings challenged only select issues under that Agreement. During the meet and confer, PMC agreed to provide a witness regarding the meaning of the Agreement. Shutterstock memorialized that agreement in a November 30, 2021 email, confirming that PMC would "provide a witness who was involved in the negotiation of the agreement and thus understands the intended meaning of the terms," and PMC designated Todd Greene to testify on this topic, as to non-privileged information. Shutterstock did not raise this issue again, and PMC reasonably understood that the scope of the 30(b)(6) topic had been finalized and produced Mr. Greene. Shutterstock should not be allowed to re-visit this subject now, after his deposition has concluded.

Shutterstock, moreover, sought and obtained 30(b)(6) depositions on relevant aspects of the parties' performance through its other 30(b)(6) topics, including any performance implicated by the above identified affirmative defenses. Those affirmative defenses implicate (a) whether PMC provided Shutterstock with access to live events or delivered copies of historic archive images to Shutterstock during the pandemic; (b) whether PMC requested that Shutterstock attend certain events using PMC's credentials; (c) whether PMC objected to Shutterstock using its own credentials to attend third party events after declining to use PMC's credentials; and (d) the



March 22, 2022
Page 4

occurrence of various live events. Those topics are covered by Shutterstock's 30(b)(6) topics 11, 14, 19, 20, 21, and 22, for which PMC designated and produced Karl Walter.

Topic 12.  PMC properly objected to producing a witness to testify regarding all contracts between PMC (or its many publishing brands) and third-party venues regarding live events which were scheduled to occur during the pandemic and any renegotiation or adjustment of those contracts. PMC objected to this topic (and to related document demands) as, among other things, overbroad and seeking irrelevant information.

PMC owns over a dozen publishing brands which host a variety of live events held at various third-party venues. There is no dispute that those events were cancelled in 2020 due to government orders prohibiting live gatherings, and Topic 12 does not seek information about that issue. Instead, Topic 12 seeks information on PMC's agreements third party venues, ostensibly to examine how PMC and the venues dealt with the pandemic and its impact on specified events that had to be cancelled in their entirety. Such venue agreements bear no similarity to the Agreement here. As relevant to this topic, this case concerns whether the cancellation of live events rendered the entirety of PMC's five-year, multi-faceted Agreement with Shutterstock "worthless" under the "frustration of purpose" doctrine where Shutterstock continued to exploit PMC images under that Agreement during the pandemic and before it terminated the Agreement. The Agreement is not comparable to agreements with third party venues to, for example, hold an event in a hotel space. PMC also objected to producing a witness on this subject because the of undue burden involved in searching for and reviewing the requested contracts (across various brands) and educating a single person on the topic or having multiple depositions.

PMC did not designate Karl Walter to testify on this subject. Rather, as memorialized in the parties' November 30 emails, PMC agreed to produce, and did produce, Mr. Walter as a corporate witness on the general topic of cancelled events. After the parties' memorialized their meet and confer, Shutterstock did not again raise Topic 12, and PMC produced Mr. Walter.

Topic 24. PMC identified each of Mr. Green and Mr. Walter as 30(b)(6) deponents regarding Shutterstock's alleged breach of contract and related damages. While Shutterstock now contends that it expected that only Mr. Greene would testify regarding damages, because Mr. Walter testified about liability, Shutterstock examined Mr. Walter about both liability and damages. In particular, Shutterstock asked Mr. Walter "what damages did PMC suffer as result of [Shutterstock's early] termination" of the Agreement, and Mr. Walter responded substantively (with a answer that disclosed information previously designated as confidential). Walter Tr., 559:18-560:2. Counsel for PMC explained at Mr. Greene's deposition that Mr. Greene had been designated on this topic only in part and that his designation was to cover "damages on the failure to pay the guarantee." Greene Tr., 261:2-10. After this clarification, Shutterstock did not ask Mr. Greene questions about the topic, and Shutterstock already had obtained testimony on the topic from Mr. Walter.  Shutterstock, and not PMC, possessed the information regarding the revenues Shutterstock earned from its exploitation of images at issue in PMC's claim for breach of the good faith covenant and PMC elicited testimony from Shutterstock on that topic.

14025509.9



March 22, 2022
Page 5

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By: /s/ Eleanor M. Lackman

      Eleanor M. Lackman

*Attorneys for Shutterstock, Inc.*


SHAPIRO ARATO BACH LLP

By: /s/ Cynthia S. Arato

      Cynthia S. Arato

*Attorneys for Penske Media Corporation*