

Shapiro Arato Bach LLP

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Cynthia S. Arato
carato@shapiroarato.com
Direct: 212-257-4882

March 23, 2022

The Honorable Mary Kay Vyskocil
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

     Re:   *Penske Media Corp. v. Shutterstock, Inc.*, 20-cv-4583 (MKV)

Dear Judge Vyskocil:

    Plaintiff Penske Media Corporation ("PMC") requests a pre-motion conference concerning its anticipated motion for summary adjudication.

## Background

    PMC is a digital media and publishing company that publishes brands covering the entertainment and fashion industries. PMC's publications obtain coveted press credentials to photograph various fashion and entertainment events. PMC also owns a growing collection of photographs taken for and/or used in those publications. Shutterstock owns and operates websites that historically licensed commercial digital imagery—aka "stock" photographs.

    In June 2015, PMC and Shutterstock entered into an Archive & Event Image Hosting and Licensing Agreement. Shutterstock entered into the Agreement to accomplish its longstanding goal to transform from a provider of low value "stock" imagery to a purveyor of prestigious news and editorial content. The Agreement provided Shutterstock with two distinct benefits to accomplish that goal. On the "archive" side," PMC granted Shutterstock the exclusive right to license PMC's photography collection. On the "event" side, PMC agreed to "provide Shutterstock access" to PMC-hosted events "to which third parties are invited generally" and "significant third-party events," like the Oscars and Grammys, "to which PMC has access." Shutterstock took photographs at these events on PMC's behalf and the Agreement gave Shutterstock the right to license photographs as well.

    In exchange, Shutterstock agreed to (1) pay PMC royalties for Shutterstock's licensing of PMC images; ███████████████████████████████████████████ ███████████████████████████████████████████████ and (4) supply photographers, at Shutterstock's expense, to attend and photograph PMC and third-party events on PMC's behalf. ██████████████████████████████████████████

████████████████████

The Honorable Mary Kay Vyskocil
March 23, 2022

Page 2

Shutterstock has publicly stated, including in its securities filings, that the Agreement gave it "credibility in the market for editorial content" and that "partnering with PMC" was a future "growth driver" for Shutterstock in the "editorial" space.  Shutterstock, moreover, continued to benefit from the Agreement in a variety of ways that continued after the pandemic's onset in March 2020, as described below.  Nevertheless, within days after the pandemic hit, Shutterstock decided to exploit the worldwide crisis, and the resulting cancellation of live events, to get a new and better deal with PMC.



—which, if done, would have given Shutterstock a better deal with the pandemic than Shutterstock would have had absent the pandemic.

Despite this, Shutterstock thereafter terminated the Agreement on purported "frustration of purpose" grounds.

## Argument

Shutterstock cannot prevail on its frustration of purpose defense because that "doctrine is a narrow one" (*Crown IT Servs., Inc. v. Koval-Olsen*, 11 A.D.3d 263, 265 (1st Dep't 2004)) that cannot be invoked unless "[t]here [is a] complete destruction of the basis of the underlying contract; partial frustration . . . is insufficient to establish the defense as a matter of law." *Dr. Smood NY LLC v. Orchard Houston, LLC*, 2020 NY Slip Op. 33707(U), *4 (N.Y. Sup. Ct. 2020).  As the Second Circuit and other courts have held, "discharge under this doctrine has been limited to instances where [the event] renders the contract *valueless* to one party." *U.S. v. General Douglas MacArthur Senior Village, Inc.*, 508 F.2d 377 (2d Cir. 1974) (emphasis added); *see also CAI Rail, Inc. v. Badger Mining Corp.*, 2021 WL 705880, at *9 (S.D.N.Y. Feb. 22, 2021) (contract must be rendered "worthless."); *Robert J. McRell Assocs., Inc. v. Ins. Co. of N. Am.*, 677 F. Supp. 721, 728-29 (S.D.N.Y. 1987) (the circumstances that has ceased to exist must be "the foundation of the entire contract.").  "Unforeseen economic forces, even the horrendous effects of a deadly virus," do not permit the Court to simply rip up a contract signed between two sophisticated parties," even if "defendant would not have entered into the [contract] if it knew there would be a pandemic" (*35 E. 7th St. Corp. v. Christian Louboutin LLC*, 2020 WL 7315470, at *4 (N.Y. Sup. Ct. 2020).  This is especially so where the party seeking to terminate obtained partial benefits from a long-term contract like the one here.  *Gap, Inc. v. Ponte Gadea New York LLC*, No 20 CV 4541-LTS-KHP, 2021 WL 861121, at *9 (S.D.N.Y. Mar. 8, 2021).

There is no material dispute that the Agreement retained value post-pandemic, even with the cancellation of live events for some time.  Shutterstock received 2.5 million premium fashion and entertainment images under the Agreement, and, during the pandemic, Shutterstock kept all those images up on its websites and "readily available" for Shutterstock's customers to license.

The Honorable Mary Kay Vyskocil                                                    Page 3
March 23, 2022

Shutterstock continued during the pandemic to tout PMC content on its websites as "world class content" from "industry leaders" and identified PMC's archive as a "highlight[] of [its] editorial collection." PMC delivered thousands of new images to Shutterstock between March and July 2020, when Shutterstock terminated the Agreement. Finally, Shutterstock licensed thousands of these images to paying customers during the pandemic. All of this was in addition to Shutterstock having successfully leveraged PMC's cachet to become a key player in the world of entertainment and fashion media. It is thus no surprise that Shutterstock's Founder and Executive Chairman testified that ███████████████████████████████████████ ████████████████████████████████████ For these reasons, the Court should grant summary adjudication to PMC on this claim, and ███████████████████████████████████ █████████████████████████████████████, along with pre-judgment interest.

This Court also should grant summary adjudication on liability for Shutterstock's continuing to display various PMC images on its website for close to two months after Shutterstock terminated the Agreement and thus forfeited any rights to use those works.

This Court should further dismiss Shutterstock's First and Second Counterclaims. These Counterclaims seek to "rescind" the Agreement, and request partial "restitution" of a payment that Shutterstock made in 2019 under the Agreement, based on the same frustration of purpose ground discussed above and upon which Shutterstock cannot prevail.

This Court should also dismiss Shutterstock's Third Counterclaim for breach of contract. PMC did not breach the Agreement by "failing" to provide Shutterstock with access to events cancelled due to the pandemic. The pandemic, not PMC, caused live events to be cancelled in 2020. PMC never promised that a health crisis would not disrupt live events at some point during the Agreement's six-year term. All PMC promised was to provide Shutterstock access to events "to which third parties are invited" or "to which PMC has access," and Shutterstock's lead deal negotiator has admitted ████████████████████████████████████████ ██████████████████████████████████████

Nor did PMC breach the agreement by failing to deliver a certain number of historic archive images in good faith in the first months of 2020. There is no requirement in the Agreement that PMC deliver a particular number of images on any timeline; PMC historically delivered historic archive images to Shutterstock in the third quarter; and Shutterstock never complained about any supposed shortfall.

Shutterstock also cannot prevail on its Fourth and Fifth Counterclaims. The claims allege that PMC violated the Computer Fraud Abuse Act ("CFAA") and the Shutterstock website Terms of Use (Dkt. 59 ¶¶ 39, 64-76) because, after Shutterstock wrongfully terminated the Agreement, Shutterstock made a mistake and failed to shut down one of PMC's accounts and a single junior PMC employee erroneously (and despite having received instructions not to do so) continued to use the account to download a handful of images, ███████████████, using pre-termination login credentials. Shutterstock, moreover, has not suffered the $5,000 of minimum damages needed to assert a CFAA claim.

The Honorable Mary Kay Vyskocil
March 23, 2022

Page 4

Sincerely,

/s/ Cynthia S. Arato