UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENSKE MEDIA CORPORATION,<br><br>　　　　Plaintiff-Counterclaim Defendant,<br><br>　　　　-against-<br><br>SHUTTERSTOCK, INC.,<br><br>　　　　Defendant-Counterclaim Plaintiff. | Case No. 20-cv-04583 (MKV) |

<b><u>PMC'S RESPONSE TO SHUTTERSTOCK'S</u></b>

<b><u>DRAFT RULE 56.1 STATEMENT OF UNDISPUTED FACTS</u></b>

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York and Paragraph 4(A)(i) of this Court's Individual Rules of Practice in Civil Cases, Plaintiff Penske Media Corporation ("PMC"), by and through its undersigned counsel, respectfully submits the following response to the draft statement of undisputed facts submitted by Defendant Shutterstock Inc. ("Shutterstock") in support of its anticipated Motion for Partial Summary Judgment:

　　　　1.　　**Shutterstock's Contention**: Plaintiff-counterclaim defendant Penske Media Corporation ("PMC") and Shutterstock entered into the "Archive & Event Image Hosting and License Agreement" effective as of July 1, 2015 (the "Agreement"). *See* Dkt. No. 30 (Amended Complaint), Ex. A; *accord* Deposition of Todd Greene dated February 2, 2022 ("Greene Tr."), 71:3-72:19 & Ex. 4.

　　　　**PMC's Response**: No dispute.

　　　　2.　　**Shutterstock's Contention**: Paragraph 3(a)(iii) of the Agreement provides, in its entirety, as follows:

**TO BE FILED REDACTED/UNDER SEAL**

**TO BE FILED REDACTED/UNDER SEAL**

> PMC will provide to Shutterstock defined credentials, passes, and VIP access to significant events around the world to which PMC has access as defined herein ("Third Party Events"). All image, footage and/or audio content created hereunder at the Third Party Events is referred to herein as "Third Party Event Content". Subject to the Getty Agreement Restrictions, **PMC hereby grants to Shutterstock *the right to* be the sole third party to leverage and utilize PMC's credentials and access to capture Third Party Event Content at Third Party Events.** These Third Party Events shall initially include, but not be limited to, those events listed on Schedule "D". PMC shall work with Shutterstock in good faith to create additional access to third party events that will enable the Parties to further monetize the Third Party Event Content.

Agreement, ¶ 3(a)(iii) (emphasis added); *see also id.*, Schedule D (listing the following Third Party Events: "The Golden Globes Awards and Nominee Press Conference," "The Sundance Film Festival," "The Grammy Awards," "The Academy Awards," "The Tony Awards," The Emmy Awards," "The Cannes Film Festival," "The Screen Actors Guild Awards," "The Directors Guild of America Awards," "The Venice Film Festival," "The Independent Spirit Awards," and "The Toronto Film Festival").

**PMC's Response**: No dispute.

3.  **Shutterstock's Contention**: The Agreement could have included, but did not include, an express requirement that Shutterstock had to provide photographic coverage of Third Party Events using PMC's credentials (and *only* PMC's credentials) if PMC offered to provide such credentials to Shutterstock. See Agreement, ¶ 3(a)(iii).

**PMC's Response**: Partially disputed. The Agreement does not have an express provision requiring Shutterstock to use only PMC credentials at Third Party Events that Shutterstock choses to attend and when PMC offers Shutterstock those credentials, however, this is not material or relevant to PMC's *implied covenant* claim. PMC does not contend that the implied covenant required Shutterstock to attend all Third Party Events for which PMC made its

2

**TO BE FILED REDACTED/UNDER SEAL**

credentials available. (Opinion and Order, Dkt. 71, at 8 n.3 ("an obligation ***to attend*** all Third Party Events for which Penske makes its credentials available" is "simply is not the claim asserted in the Amended Complaint")).

    4.    **Shutterstock's Contention**: In contrast to Paragraph 3(a)(iii), Paragraph 3(a)(ii) of the Agreement, which addresses "PMC Events," provides, in relevant part, as follows:

> PMC will provide Shutterstock access to its events, galas, conferences, summits, and other event functions to which third parties are invited generally ("PMC Events"). . . . During the License Period, **Shutterstock *will provide* editorial event coverage, at Shutterstock's expense, for all PMC Events.** . . .

*Id.*, ¶ 3(a)(ii) (emphasis added).

    **PMC's Response**: No dispute.

    5.    **Shutterstock's Contention**: Further, Paragraph 3(e) of the Agreement provides that "[t]he in-house staff photographers currently employed by PMC shall produce images . . . that will be contributed to . . . Third Party Event Content." *Id.*, ¶ 3(e); *see also See* Declaration of Benjamin Melvin in Support of Motion for Partial Summary Judgment ("Melvin Decl.").

    **PMC's Response**: Partially disputed as to materiality. There is no dispute that the quoted language appears in ¶ 3(e) of the Agreement, however, that provision is not material or relevant to PMC's implied covenant claim. (*See* Opinion at 10 ("the Court cannot find, as Shutterstock urges, that…Penske's opportunities to take pictures itself preclude an implied obligation in the Agreement for Shutterstock to diligently use the rights it was granted in the Agreement")).

    6.    **Shutterstock's Contention**: PMC owns Variety, Inc. ("Variety"). *See* Transcript of February 10, 2022 Deposition of George Grobar ("Grobar Tr."), 19:8-19.

    **PMC's Response**: Disputed. Variety *Media, LLC* is an indirect subsidiary of PMC. There is no entity "Variety, Inc." In deposition testimony that Shutterstock cites, George Grobar testified: "I think of [PMC] as a tightly interwoven set of business units that are sort of symbiotic

3

TO BE FILED REDACTED/UNDER SEAL

with the corporate team that supports all of those business units….Variety, Women's Wear Daily. Those would be brands and business units there." Grobar Tr. 19:8-19.

7.  **Shutterstock's Contention**: In 2010, Variety and Getty Images (US), Inc. ("Getty Images") entered into a "Photographic Services and Reciprocal Image License Agreement" (the "Getty Agreement"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Greene Tr., 269:23-271:6 & Ex. 28, ¶ 4.

**PMC's Response**: No dispute.

8.  **Shutterstock's Contention**: Paragraph 4.2 of the Getty Agreement provides, in relevant part, as follows:



Greene Tr., Ex. 28, ¶¶ 4.2 & 4.2.1 (emphasis added); *see also, e.g., id.*, ¶ 4.2.1(b) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

**PMC's Response**: Partially disputed as to materiality. No dispute that the Getty Agreement contains this language, however neither the Getty Agreement, nor this language is material or relevant to PMC's implied covenant claim.

**TO BE FILED REDACTED/UNDER SEAL**

9. **Shutterstock's Contention**: The Getty Agreement and the limitations it would place on PMC and Shutterstock's business relationship is addressed in the Agreement itself. *See* Agreement, ¶ 18.

**PMC's Response**: Partially disputed as to materiality. No dispute that PMC had an agreement with Getty, however, that agreement is not material or relevant to PMC's implied covenant claim. There is no dispute that the Agreement references the agreement with Getty in certain select ways, but that reference is not material or relevant to PMC's implied covenant claim.

10. **Shutterstock's Contention**: PMC's Chief Legal Officer, Todd Greene, was the author of all of PMC's edits to the Agreement and was designated by PMC, pursuant to Rule 30(b)(6), to testify regarding the meaning of the Agreement and the Getty Agreement. *See* Greene Tr., 16:19-17:4, 64:12-14, 75:20-77:11.

**PMC's Response**: Partially disputed. In 2015 Todd Greene was not PMC's Chief Legal Officer, he was General Counsel and Senior Vice President of Human Resources. (Greene Tr. 65:11-13). In addition, Todd Greene was not the author of all of PMC's edits. (*See* Pfeifer Deposition Exhibit 8 at p.9-18 (list of mark ups from redline of term sheet draft dated Apr. 23, 2015, PMC_0007269, showing edits by Paul Woolnough); Pfeifer Deposition Exhibit 10, at p.16 (list of mark ups of term sheet draft dated May 4, 2015, PMC_0022600, showing edits by Jay Penske)). PMC designated Todd Greene to testify to the Getty Agreement in general, not specifically as to the agreement's "meaning." (*See* Shutterstock's 30(b)(6) Notice, Schedule A, at ¶ 13 ("Other agreements that PMC has entered, other than the Agreement, to exploit its archive content or live event content, including with Getty Images.")); December 22, 2021 email from C.

**TO BE FILED REDACTED/UNDER SEAL**

Arato to E. Lackman ("We will agree to provide a witness [Todd Greene] to discuss generally the terms of the Getty agreement.").

      11.    **Shutterstock's Contention**: Mr. Greene could not explain why PMC did not include a term in the Agreement ███████████████████████████████ ███████████████, similar to the one in the Getty Agreement. *See* Greene Tr., 270:19-271:12 (███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████); *see also, id.*, 268:12-19 (███████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████).

      **PMC's Response**: Partially disputed. There is no dispute that Todd Greene answered "I don't know" in response to quoted questions about why there was no express provision ███████ ███████████████████████████████████████, however, this is not relevant or material to PMC's implied covenant claim. (*See supra* PMC Response to ¶¶ 3, 9; *see also* ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████; Opinion and Order, Dkt. 71, at 8 n.3 ("an obligation ***to attend*** all Third Party Events for which Penske makes its credentials available" is "simply is not the claim asserted in the Amended Complaint")). Regardless, Greene's answer of 'I don't know' would not negate PMC's implied covenant claim. (*See supra* ¶ 3).

6

TO BE FILED REDACTED/UNDER SEAL

12.     **Shutterstock's Contention**: On or about January 15, 2015, Shutterstock entered into an agreement to acquire Rex Features, the largest independently-owned photographic press agency in Europe. *See* Melvin Decl., ¶ __, Ex. __ (January 15, 2015 press release).

**PMC's Response**: No dispute.

13.     **Shutterstock's Contention**: Shutterstock obtained credentials and access to significant third-party events around the world through its acquisition of Rex Features. *See* Melvin Decl., ¶ __.

**PMC's Response**: Partially disputed. There is no dispute that prior to the PMC-Shutterstock Agreement, Rex Features covered live events outside of the United States and Canada, however, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *infra* ¶ 25).

14.     **Shutterstock's Contention**: At the time PMC and Shutterstock entered into the Agreement, PMC knew that Shutterstock had acquired Rex Features and that Shutterstock obtained credentials and access to various third-party events through such acquisition. *See* Transcript of January 18, 2022 Deposition of Karl Walter ("Walter Tr."), 130:23-133:6; Transcript of November 18, 2021 Deposition of Jay Penske ("Penske Tr."), 60:11-61:5 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *id.*, 63:2-14 (same); Greene Tr., 26:8-19

7

TO BE FILED REDACTED/UNDER SEAL

(█████████████████████████████████████████████

█████████████████████████████████████████████);

*id.*, 114:25-115:20 (same); *see also id.*, 223:2-224:9 (████████████████

█████████████████████████████████████████████

███████████████████████████).

    **PMC's Response**: Partially disputed. There is no dispute that PMC was aware of Shutterstock's Rex Features acquisition at the time of the PMC-Shutterstock Agreement, but the cited evidence does not establish that PMC knew what access and credentials Shutterstock obtained through Rex Features. (Walter Tr. 131:12-25 ("Rex was regional in its coverage….[T]hey didn't work with the Oscars. They didn't work with the Golden Globes. They didn't work with major events like that…their strength was regional, and that region was the U.K."); Penske Tr. 64:5-7 ("I would say [from] our perspective Rex was [] very UK-centric, not strong in the US"); Greene Tr. 115:15-18 ("they were looking for a media partner like us that could provide…access to events in different categories"); *see also supra* PMC Response to ¶ 3).

    15.    **Shutterstock's Contention**: During the course of the Agreement, PMC and Shutterstock jointly maintained and referred to annual "shared production documents" to keep track of, *inter alia*, Third Party Events. *See* Melvin Decl., ¶ __ & Exs. __ (PMC_0019397, PMC_0019401, PMC_0019400, PMC_0019418) (2016, 2017, 2018, 2019 shared production documents); *see also* Walter Tr., 140:4-7, 167:13-168:3, 187:20-188:21.

    **PMC's Response**: No dispute.

    16.    **Shutterstock's Contention**: On multiple occasions, and as early as 2016, Shutterstock expressly indicated in the shared production document that it was passing on PMC's credentials for a particular Third Party Event because Shutterstock already had its own

TO BE FILED REDACTED/UNDER SEAL

credentials for that event. *See* Melvin Decl., ¶ __; *see also, e.g., id.*, Ex. __ (PMC_0019397 at "LA" Sheet, Row 35) (█████████████████████████████████████████████████████████████████); *id.*, Ex. __ (PMC_0019401 at "LA" Sheet, Row 356, 466) (█████████████████████████████████████████████████████████████████); *id.*, Ex. 3__ (PMC_0019400 at "Los Angeles" Sheet, Row 475) (█████████████████████████████████████████████████████████████████); *id.*, Ex. __ (PMC_0019418 at "LA" Sheet, Row 412) (█████████████████████████████████████████████████████████████████).

**PMC's Response**: No dispute.

17. **Shutterstock's Contention**: In some instances, Shutterstock also informed PMC by email that it was passing on PMC's credentials for a particular Third Party Event because Shutterstock already had its own credentials for that event. *See, e.g.*, Melvin Decl., Ex. __ (PMC_0009489) (█████████████████████████████████████████████████████████████████); Declaration of Eleanor M. Lackman in Support of Motion for Partial Summary Judgment ("Lackman Decl."), Ex. __ (PMC_0015255) (█████████████████████████████████████████████████████████████████).

**PMC's Response**: No dispute.

18. **Shutterstock's Contention**: In a presentation delivered to PMC in June 2016, Shutterstock indicated that ████████████████████████████████████████ ████████████████████████████████████████████████████████. *See* Penske

9

TO BE FILED REDACTED/UNDER SEAL

Tr., Ex. 50 (PMC_0022103-133) at PMC_0022103; *see also* Declaration of Candice Murray in Support of Motion for Partial Summary Judgment ("Murray Decl."), ¶ __.

**PMC's Response**: Partially disputed as to materiality. There is no dispute that Shutterstock delivered this presentation, however, this is not material or relevant to PMC's implied covenant claim because the presentation does not evidence that PMC offered credentials to Shutterstock for the events that Shutterstock covered as documented in the presentation. For example, the majority of Shutterstock's credentials were in the United Kingdom. (PMC_0022104).

19. **Shutterstock's Contention**: During the term of the Agreement, PMC was aware that Shutterstock had passed on PMC's credentials and instead used its own credentials to attend and photograph multiple Third Party Events. *See* evidence cited in support of SUF ¶¶ 14-17, *supra*. *See also* Melvin Decl., ¶ __; Lackman Decl., Ex. __ (PMC_0010516) (███████████ ███████████████████████████████████████████████████████████████████████); *id.* Ex. __ (PMC_0014096) (███████████████████████████████████████████████████████████████████████████████████████); *id.* Ex. __ (PMC_0015065) (███████████████████████████████████████████████████████████████████████████████████).

**PMC's Response**: No dispute.

20. **Shutterstock's Contention**: Nonetheless, prior to filing this lawsuit, PMC did not object to Shutterstock's use of its own credentials, rather than PMC's credentials, to attend and photograph Third Party Events. *See* Murray Decl., ¶ __; Greene Tr., 271:15-272:12, 294:18-295:16; Walter Tr. 218:23-220:6, 610:5-25.

10

TO BE FILED REDACTED/UNDER SEAL

**PMC's Response**: Disputed. PMC raised concerns to Shutterstock about Shutterstock's practice of using its own credentials instead of PMC's and "there was an ongoing back and forth." *See infra* ¶ 30.

21. **Shutterstock's Contention**: Karl Water was PMC's point-person on the day-to-day performance of the Agreement and PMC's Rule 30(b)(6) designee on the topic of "Shutterstock's alleged violation of the covenant of good faith and fair dealing." Walter Tr., 20:7-21:6; Murray Decl., ¶ __; Lackman Decl., Ex. __ (November 3, 2021 email from PMC's counsel).

**PMC's Response**: No dispute.

22. **Shutterstock's Contention**: Mr. Walter testified that he did not understand the Agreement to prohibit Shutterstock from using its own credentials for Third Party Events. *See* Walter Tr., 227:24-228:5 (█████████████████████████████████████████████████████████████████████████████████).

**PMC's Response**: Partially disputed. There is no dispute that Karl Walter gave this testimony, however, this is not material or relevant to PMC's implied covenant claim because PMC does not claim that Shutterstock could only cover events when PMC offered credentials and Mr. Walter was not asked in this question whether Shutterstock was prohibited from using its own credentials for third party events after it declined credentials provided by PMC. On that topic, Mr. Walter testified: "We believe that if they were shooting events and not using our credentials and using other credentials to attend those events, that it was a breach of the good faith agreement of the agreement." (Walter Tr. 598:8-12) (with typo for last word, which was transcribed as "argument," corrected in an errata).

TO BE FILED REDACTED/UNDER SEAL

23. **Shutterstock's Contention**: In multiple instances, PMC not only acknowledged and did not object to Shutterstock's use of its own credentials, rather than PMC's credentials, to attend and photograph Third Party Events, but also opted to use the photographs Shutterstock took instead of sending its own photographer. *See, e.g.*, Lackman Decl., Ex. __ (PMC_0014027) (███████); *id.* Ex. __ (PMC_0015228) (███████); *see also* Murray Decl., ¶ __; Melvin Decl., ¶ __.

**PMC's Response**: Partially disputed. There is no dispute that PMC did not object in the two instances cited by Shutterstock, however Karl Walter testified that there was an ongoing dialogue about Shutterstock's use of Shutterstock credentials instead of PMC credentials. (*See supra* PMC's Response to ¶ 20; *infra* ¶ 30). PMC's use of Shutterstock's photographs instead of sending their own photographer is not material or relevant to PMC's implied covenant claim. PMC had limited photographers and sometimes covered multiple events in one night. (*See infra* ¶ 32). Even if PMC was able to use Shutterstock's photographs of an event, when Shutterstock used its credentials and not PMC's credentials, PMC lost ownership of photographs that Shutterstock took at the events; a percentage of licensing revenue earned from Shutterstock's exploitation of such works during the contract term; and the ability to exploit those images after the contract term ended. (*See infra* ¶ 25).

24. **Shutterstock's Contention**: When asked which credentials Shutterstock declined, whether PMC had suffered any damages as a result, and if so, what those damages were, PMC's Rule 30(b)(6) designee on the topic of "Shutterstock's alleged breach of the

TO BE FILED REDACTED/UNDER SEAL

Agreement . . . and any alleged damages PMC suffered as a result thereof" refused to answer based on instructions from his counsel. *See* Greene Tr., 261:12-24 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ); *id.*, 263:24-264:12 ( ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ).

**PMC's Response**: Partially disputed. There is no dispute about the quoted Todd Greene testimony, however, Karl Walter was the designee of the topics related to PMC's implied covenant claim, not Todd Greene. More specifically, Karl Walter was the designee to testify to "Any Third Party Events, as that term is defined in the Agreement, to which PMC offered credentials to Shutterstock, that Shutterstock attended and photographed using credentials other than those offered by PMC, and any alleged damages PMC suffered as a result thereof;" and "Shutterstock's alleged violation of the covenant of good faith and fair dealing, as alleged in PMC's amended complaint, and any alleged damages PMC suffered as a result thereof." (Shutterstock's 30(b)(6) Schedule A ¶¶ 22, 25). In addition, both Karl Walter and Todd Greene

**TO BE FILED REDACTED/UNDER SEAL**

were designated to testify to "Shutterstock's alleged breach of the Agreement, as alleged in PMC's amended complaint, and any alleged damages PMC suffered as a result thereof." (*Id.* ¶ 24). Moreover, neither Mr. Walter nor Mr. Greene would be in a position to know all of the benefits to Shutterstock from its use of its own credentials, including which photographs were taken and the revenues those photographs yielded for Shutterstock.

## PMC'S ADDITIONAL RELEVANT FACTS

25. At the time the parties entered into the Agreement, Shutterstock did not have its own credentials to photograph the major Third Party Events and Shutterstock identified PMC as its ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████

26. During the course of the agreement, Shutterstock ██████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

14

**TO BE FILED REDACTED/UNDER SEAL**

███████████████████████████████████████████████████

█████████████████████████████████

27. ███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

28. ███████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████ *see also,* Deposition of Benjamin Melvin ("Melvin Tr.") 12:11-14:11, 17:14-18:20, 22:25-25:1, 74:9-75:16; *e.g.*, ███████████████████████████████; *see also supra* ¶¶ 16-17).

29. By early 2020, Shutterstock stopped covering various Third Party Events using PMC credentials, like the events listed in Schedule D of the Agreement, and instead covered them with its own credentials. ████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

15

**TO BE FILED REDACTED/UNDER SEAL**

[redacted]

30. PMC raised the issue of Shutterstock using its own credential to cover Third Party Events instead of the PMC credential and "there was an ongoing back and forth." (Walter Jan. 18, 2022 Tr. 218:13-14; [redacted]

31. PMC had between two and five staff photographers from 2015 to 2020. (*See* Walter Tr., dated Jan. 18, 2022, 83:3).

32. At times PMC covered multiple events in one night. *E.g.*, Walter Decl. ¶__; Deposition of Michael Buckner (Buckner Tr.) 98:4-9 (describing Princess and the Frog and Paleyfest occurring at the same time).

33. When SSTK declined to cover an event, PMC could send one of its photographers, but then that photographer was not available to shoot other events. Walter Decl. ¶__; [redacted]

TO BE FILED REDACTED/UNDER SEAL



Dated: New York, New York  
March 28, 2022

SHAPIRO ARATO BACH LLP

By: /s/ Cynthia S. Arato  
Cynthia S. Arato

500 Fifth Avenue, 40th Floor  
New York, NY 10110  
Telephone: (212) 257-4882  
Facsimile: (212) 202-6417  
carato@shapiroarato.com

*Attorneys for Plaintiff Penske Media Corporation*