

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Cynthia S. Arato
carato@shapiroarato.com
Direct: 212-257-4882

March 28, 2022

The Honorable Mary Kay Vyskocil
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:     <u>Penske Media Corp. v. Shutterstock, Inc., 20-cv-4583 (MKV)</u>

Dear Judge Vyskocil:

We respond on behalf of Penske Media Corporation to Shutterstock's March 23, 2022 letter regarding Karl Walter. Mr. Walter may properly testify about the revenues that Shutterstock earrned from its licensing of PMC content both during and prior to the pandemic given that Shutterstock demanded that PMC produced a 30(b)(6) fact witness to testfy on the topic and Mr. Walter is a percipient fact witness regarding the subject. Even if the Court determines that some of Mr. Walter's testimony may straddle both fact and expert testimony, PMC properly designated Mr. Walter as a potential non-retained expert from whom no report was required. Mr. Walter's testimony summarizes otherwise voluminous information regarding Shutterstock's revenues and will be helpful to the determination of a fact in issue and his methodology tracks Shutterstock's contemporaneous evaluation of the economics of the parties' deal.

**This Dispute and Shutterstock's Revenues**. PMC and Shutterstock entered into an Archive & Event Image Hosting and Licensing Agreement as of June 2015. Under this Agreement, Shutterstock obtained rights through June 2021 to license various editorial photographs owned and controlled by PMC, including images taken at high-profile entertainment events like the Oscars and Grammys. Shutterstock purported to terminate the Agreement as of July 17, 2020 claiming that the Agreement's purpose was "frustrated," and the Agreement allegedly was rendered "worthless" because live events were temporarily cancelled in the Spring of 2020 as a result of the COVID-19 pandemic. PMC intends to demonstrate that Shutterstock continued to derive value from its exploitation of PMC content even after the pandemic hit and live events were cancelled. Among other things, by comparing Shutterstock's pre- and post-pandemic gross and net revenues earned under the Agreement, PMC intends to demonstrate that the pandemic did not alter the Agreement's economics in any way sufficient to support Shutterstock's defense.

**Mr. Walter, his knowledge of Shutterstock's revenues and costs, and his testimony**. Shutterstock served PMC with a deposition notice under Fed. R. Civ. P. 30(b)(6) seeking a PMC witness to testify about "[t]he revenues that SSTK earned for its exploitation of PMC [images] under the Agreement." PMC designated Karl Walter on the topic, given that Mr. Walter was the PMC employee responsible for managing PMC's relationship with Shutterstock and, in that role, he both reviewed monthly reports that Shutterstock sent documenting its exploitation of PMC

The Honorable Mary Kay Vyskocil  
March 28, 2022

Page 2

content and tracked Shutterstock reported revenues. (Walter Tr. 11:5-7; 68:19-24). Shutterstock sent many statements to Mr. Walter each month in the ordinary course of business through the period May 2020. In this litigation, Shutterstock produced revenue information for subsequent periods and also produced revenue information for the entire contract period on consolidated spreadsheets. Shutterstock also sent Mr. Walter a proposal on March 31, 2020 in the ordinary course of business asking to renegotiate the terms of the Agreement in which it reported its annual gross revenues and expenses under the Agreement.

Solely to the extent any of his testimony could be classified as including expert testimony, PMC identified Mr. Walter as a hybrid fact/expert witness on Shutterstock's gross revenues earned from its licensing of PMC content during and prior to the pandemic and the corresponding costs that Shutterstock incurred prior the pandemic and saved during the pandemic.

**Mr. Walter Did Not Need To Produce An Expert Report**. Mr. Walter was not required to submit an expert report because his testimony does not go beyond the facts learned in the normal course of his business dealings related to the lawsuit, as Shutterstock's own cases demonstrate. *Cantu v. U.S.*, No. 14 Civ. 00219, 2015 WL 12743881, at *5 (C.D. Cal. Apr. 6, 2015) ("Rule [26] does not require 'expert' disclosures from a witness 'whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit.'"); *see also*, *e.g.*, *Amica Mut. Ins. Co. v. WHAC LLC*, 447 F. Supp. 3d 6, 12 (W.D.N.Y. 2020) (investigator may testify as a hybrid witness concerning investigation of vehicle done in the ordinary course but not on different subject outside his regular work); *Fung-Schwartz v. Cerner Corp.*, No. 17 Civ. 0233, 2021 WL 863342, at *4 (S.D.N.Y. Jan. 27, 2021) (witness who did not become involved in matter until after litigation commenced is not a proper hybrid witness).

Shutterstock reported its revenues to PMC in the ordinary course through the period May 2020. It is immaterial that Mr. Walter relied on an omnibus spreadsheet that Shutterstock produced in this litigation and not on the voluminous individual statements that Shutterstock previously produced in the ordinary course, given that the information in these documents overlapped, as Shutterstock previously conceded. *See* January 18, 2022 email from M. Lewis to C. Arato ("In any event, both spreadsheets merely consolidate the information that was provided, in large part, to PMC over the course of the Agreement in the form of "Statements of Sales."). Mr. Walter, moreover, relied on the omnibus spreadsheet because PMC had not in the ordinary course retained the monthly statements for earlier contract years; Shutterstock improperly withheld its rmonthly reports for the period June 2020 onward, even though Shutterstock should have produced them in the ordinary course; and the omnibus statement is comprehensive. Regarding costs, Mr. Walter similarly relied on information that Shutterstock presented to PMC in the ordinary course of business in its March 31, 2020 proposal. (Walter Tr. 16:15-8:5).

**Mr. Walter Is Qualified to Opine on Shutterstock's Revenues and Costs**. Mr. Walter's on the job practical experience qualifies him to provide testimony as a hybrid witness. As Shutterstock's own cited cases demonstrate, "[i]n the Second Circuit, courts have construed the inquiry into an expert's qualifications with an eye towards the 'liberal thrust' of the Federal Rules and their general relaxation of traditional barriers to 'opinion testimony.'" *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 Civ. 4209, 2013 WL 5815472, at *13 (S.D.N.Y.

The Honorable Mary Kay Vyskocil   Page 3
March 28, 2022

Oct. 29, 2013) (citations omitted)). Among other things, "a lack of formal training does not necessarily disqualify an expert from testifying if he or she has equivalent relevant practical experience." *Id.* (citation omitted). "In considering a witness's practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth." *Valentin v. New York City*, No. 94 Civ. 3911 (CLP), 1997 WL 33323099, at *14 (E.D.N.Y. Sept. 9, 1997); *see also Arista Records LLC v. Lime Grp. LLC*, No. 06 Civ. 936, 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011).

Mr. Walter's testimony will assist the trier of fact in arriving at the truth. The spreadsheet at issue consists of voluminous amounts of raw, granular data, and a witness is needed to summarize, organize, and total that information for a trier of fact. Accordingly, Mr. Walter may properly calculate the data contained in that document, as Shutterstock's own cases establish. *See Fung-Schwartz*, 2021 WL 863342, at *4 (allowing expert to testify as a damages expert whose main function was to add up unpaid invoices and calculate contractual late fees and interest); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546-47 (S.D.N.Y. 2004) (precluding witness from testifying about documents produced in the case only because witness sought to draw disputed inferences regarding intent from the documents, which the jury could do for itself).

Mr. Walter also employed a proper methodology. Mr. Walters explained that he relied on average monthly earnings because the data Shutterstock produced did not allow for a true month to month comparison across all licensing activity (Tr. 82:10-18); did not take account of when or whether Shutterstock was actually paid because he was analyzing when Shutterstock actually earned its revenues (*id*. at 73:22-74:10; 81:16-82:9); and allocated all "undated" revenue to the pre-pandemic period because it gave Shutterstock the benefit of the doubt as to when the revenue was earned (*id.* at 25:21-24). For the pandemic period, Mr. Walters considered the same freelance costs that Shutterstock tracked in its March 31, 2020 report and which Shutterstock's own 30(b)(6) witness admitted that Shuttertock saved because of the pandemic. (Murray Tr. 185:16-187:10). Shutterstock does not suggest that any of the so called flaws in Mr. Walter's methodology overestimate the post-pandemic revenue compared to the pre-pandemic revenue. Any challenge to the assumptions on which Mr. Walter relied, moreover, goes to weight and not admissibility. *See Arista Recs. LLC v. Lime Grp. LLC*, No. 06 CV5936KMW, 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011).

In any event, Mr. Walter may testify about these matters as a fact witness, including opinions under Fed. R. Evid. 702, as Shutterstock's cases demonstrate. *Castaldi v. Land Rover N. Am., Inc.*, No. 06 Civ. 1008, 2007 WL 4165283, at *6 (E.D.N.Y. Nov. 21, 2007); *Hutch Enters., Inc. v. Cincinnati Ins. Co.*, No. 16 Civ. 01010, 2019 WL 5783574, at *14 (W.D.N.Y. Aug. 12, 2019).

PMC, finally, has sought to document Shutterstock's net revenues in a variety of ways and Shutterstock has consistently obfuscated on this issue. PMC had to move this Court to compel Shutterstock to produce the spreadsheet noted above (and other revenue related documents) and Shutterstock began producing those documents only after its 30(b)(6) witness on the topic was deposed (that issue is the subject of a separate letter that PMC will file with the Court separately). Shutterstock separately refused to state its revenues in response to requests to admit and interrogatories and also declined to discuss stipulating to this basic information. Against this background, it should not be allowed to preclude Mr. Walter from testifying on this topic.

The Honorable Mary Kay Vyskocil  Page 4
March 28, 2022

                                Sincerely,

                                /s/ Cynthia S. Arato