

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Cynthia S. Arato
carato@shapiroarato.com
Direct: 212-257-4882

April 7, 2022

The Honorable Mary Kay Vyskocil
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:   <u>Penske Media Corp. v. Shutterstock, In</u>c., 20-cv-4583 (MKV)

Dear Judge Vyskocil:

After unsuccessfully meeting and conferring, the parties submit this letter regarding Plaintiff Penske Media Corporation's ("PMC") request to recall Candice Murray, head of Shutterstock's Editorial department, as one of Shutterstock's Rule 30(b)(6) deponents.

**PMC's Position:**  Shutterstock produced key documents only after Ms. Murray was deposed, such that PMC could not examine her on them, and Shutterstock challenges PMC's reliance on alternative documents. Ms. Murray also was unprepared to testify regarding the following topics.

**Topics 5 and 8 (Shutterstock's profits and losses and the revenue it earned from its licensing of PMC content pre- and post-pandemic).**  PMC seeks to depose Ms. Murray on documents which contain previously withheld information that this Court ordered Shutterstock to disclose. (Dkt. 93 at 1-2, 4).  On November 11, 2021, PMC moved to compel a response to PMC RFP 68-71. These requests sought documents sufficient to show all revenues from the exploitation of PMC content during the contractual term and for the period July 17, 2020 onward, as well as "usage date" (when Shutterstock customers used the images) and "download date" (when they downloaded the images). This information is significant because Shutterstock claims that the pandemic rendered PMC content "essentially worthless" beginning in March 2020, and PMC wishes to establish the extent to which Shutterstock exploited PMC content beginning in March 2020, and the revenues Shutterstock earned thereby.

On December 21, 2021, the Court ordered Shutterstock to produce the information by January 4, 2022. Shutterstock produced a spreadsheet on January 4 with revenue and usage date. On January 28, it produced a modified version of that spreadsheet, along with spreadsheets belatedly reporting download information. PMC simply wishes to depose Ms. Murray, Shutterstock's 30(b)(6) corporate designee, regarding these Court-ordered productions. (Dkt. 93 at 4).

PMC has made every effort to obtain the needed information through other means, but Shutterstock has obfuscated. PMC initially served Shutterstock with requests for admission regarding the amount of gross revenues Shutterstock earned from its licensing activity. Shutterstock refused to admit to the amounts, contending, disingenuously, that it earned no gross

The Honorable Mary Kay Vyskocil  
April 7, 2022

Page 2

revenues because it had paid royalty advances to PMC that had remained unrecouped. PMC served interrogatories, but Shutterstock again declined to state its gross revenues. Instead, Shutterstock directed PMC to the very spreadsheets that Shutterstock produced only after Ms. Murray's deposition and for which it refuses to bring Ms. Murray back to testify, yet Shutterstock now objects to PMC's reliance on the document. (Dkt No. 122-1).

Shutterstock claims that PMC should have examined Ms. Murray on other documents produced prior to Ms. Murray's deposition, but those documents do not contain the same information that the Court ordered Shutterstock to produce and which Shutterstock did produce in response to the Court's Order. Indeed, Shutterstock's counsel sent PMC an email dated January 18, 2022 in which she recognized that there were "two notable differences" between the Court ordered production and what Shutterstock produced prior to January 4, 2022.  The spreadsheet that Shutterstock produced on January 28 included a new category of information for invoice payment date and Shutterstock produced no download data until January 28, well after the Court-ordered deadline. Shutterstock also produced its earlier produced documents either without notice one business day before Ms. Murray's deposition (and lacking metadata that would have helped PMC to identify it), or in the middle of that proceeding. PMC did not maintain in the ordinary course all the "Statements of Sales" Shutterstock mentions below.

**Topics 17-18 ("Shutterstock's actions to effectuate its [July 17, 2021] termination of the Archive & Event Agreement" and its "[post-termination] display on its website of the images at issue in PMC's claim for copyright infringement"):**  Since the parties exchanged their portions of this letter, Shutterstock produced a spreadsheet documenting the dates on which PMC content was taken down after July 17th from the Shutterstock website. To the extent Shutterstock agrees that PMC may rely upon that spreadsheet and the take down dates set forth in them, PMC does not need to recall Ms. Murray to testify about this subject. PMC has narrowed the scope of its infringement claim. However, the data is relevant to PMC's claim under Section 1202 of the DMCA and the remainder of PMC's infringement claim.

**Topic 19 ("Any licenses provided by Shutterstock to any third party on or after July 17, 2020, for te exploitation of any of the images at issue in PMC's claim for copyright infringement.).**  Shutterstock has conceded that it granted renewal licenses for certain images, but Ms. Murray testified that she had "no idea" whether "Shutterstock granted any renewal licenses" after "July 16, 2020" and "did not" take "steps . . . to educate" herself on the topic. Shutterstock belatedly produced a document regarding the licenses on February 28, 2022.

**Topic 12 ("delivery and/or pace of delivery to Shutterstock" of PMC Content):**  
Shutterstock is playing games with the documents it produced evidencing the quantity of images PMC delivered to Shutterstock. PMC examined Ms. Murray about a detailed spreadsheet (SSTK00006) that Shutterstock had produced. Shutterstock initially contended that PMC should have examined Ms. Murray about a different spreadsheet (SSTK161815) that Shutterstock had produced without notice one business day before Ms. Murray's deposition (and lacking metadata that would have helped PMC to identify it). Shutterstock, however, eventually contended that PMC did not need to reexamine Ms. Murray on SSTK161815 because that new document "merely summarizes the information produced" in SSTK00006. PMC was content with this response and notified Shutterstock that it considered this issue resolved. Shutterstock, however,

The Honorable Mary Kay Vyskocil  
April 7, 2022

Page 3

has again switched course and now contends both that PMC should not be able to rely on SSTK00006 (because it is allegedly incomplete) and that PMC should not be able to examine Ms. Murray on any different spreadsheet. Shutterstock has failed to explain how SSTK00006 is supposedly incomplete. To the contrary, SSTK00006 is the only document that includes both delivery dates along with the date the images were taken, and their headline.

PMC believes it could resolve a number of these issues via a stipulation, but Shutterstock has not been willing to discuss such a resolution.

**_Shutterstock's Position:_**  Despite taking a two-day, fourteen-hour deposition of Ms. Murray, as both an individual and Rule 30(b)(6) witness on many topics, PMC now—approximately three-and-a-half months after the deposition—contends it needs more time. There is no legitimate basis to reopen Ms. Murray's deposition.  PMC had materially all of the information contained in any later-produced documents at the time of the deposition, and to the extent Ms. Murray was "unprepared" to answer any question within the scope of her topics (which Shutterstock does not concede), the information sought is minor and has been provided to PMC in another form. Moreover, the parties' recent submissions on their anticipated summary judgment motions include detailed facts related to these topics, and PMC fails to identify any additional material that it needs.

**Topics 5 & 8.**  Putting aside PMC's mischaracterizations of Shutterstock's positions on these topics, PMC had ample opportunity to question Ms. Murray about them at her deposition (on December 13 and 14, 2021), including about the information in the revenue-related spreadsheet produced thereafter (on January 4, 2022) pursuant to—and in full compliance with—the Court's December 21, 2022 Order (Dkt. 93).  While the creation of the Court-ordered spreadsheet required significant effort on Shutterstock's part, the information therein was not new to PMC.  Shutterstock already had provided such information—including "usage" dates—to PMC in discovery and/or during the course of the Agreement in the form of "Statements of Sales."  There are no "notable differences" between the information in the Court-ordered spreadsheet and the information that Shutterstock produced prior, and—contrary to PMC's blatant misrepresentation—Shutterstock's counsel has never acknowledged otherwise.  That Shutterstock consolidated the prior-produced information into one spreadsheet does not make the information new or subject Ms. Murray to further questioning, especially as PMC already asked her about many of the underlying documents and even marked many Statements of Sales as exhibits.  Notably, PMC did not ask to adjourn Ms. Murray's deposition due to its then-pending motion (Dkt. 90)—which PMC filed over a month after receiving the relevant discovery responses—and reserved no time for further questioning.

Shutterstock has done nothing to "obfuscate" PMC's efforts to obtain the "needed information." To the contrary, Shutterstock has produced certain information beyond the Court's Order, where possible, in effort to appease PMC's unrelenting demands for information that is burdensome to collect and/or does not exist. Shutterstock's good-faith efforts culminated in a production on January 28, 2022 of:  (1) spreadsheets reporting download information; and (2) a modified version of the Court-ordered spreadsheet with "invoice payment dates."  PMC points to this production as evidence that Shutterstock's Court-ordered production was late and/or incomplete, but these spreadsheets are not responsive to PMC's Requests or the Court's Order and, pertinent here, contain no new information within the scope of Ms. Murray's topics.  The spreadsheets reporting download information are not responsive to PMC's Requests (and, thus, are not within the scope of the Court's Order) because they do not contain the requested "download date[s]" for the "_exploitation_" of PMC content.  Shutterstock has explained repeatedly to PMC that Shutterstock

The Honorable Mary Kay Vyskocil  
April 7, 2022

Page 4

does not track that information and, despite its best efforts to satisfy PMC's requests, cannot produce it. Moreover, PMC's characterization of the "invoice payment date[s]" as a "new category of information" that warrants reopening Ms. Murray's deposition is disingenuous at best. PMC never requested invoice payment dates because it has consistently maintained that Shutterstock's revenue should be measured from "when the underyling licensing activity occurred" (Dkt. 90 at 2), regardless of when the invoice was paid. *Id.* at 2 (seeking "documents sufficient to show the revenue that earned from the actual licensing activity it conducted during each month of the Agreement…"); *id.* (arguing reports which "appear[ed] to be reporting revenues on a cash receipts basis (and not based on when the underlying licensing activity occurred)" were "insufficient"). As explained at the time of production, Shutterstock gratuitously "endeavored to [provide] the invoice payment date[s]"—even "[]though this was not the focus on [PMC's discovery requests]"—because it is "the only other relevant date that can be tied to the licenses" which had not already been produced. As for the requests to admit, Shutterstock was constrained to answer PMC's vague requests as it did and, regardless, PMC had all the data required to calculate revenue on its own.

Finally, PMC's positions are based on a misunderstanding of the "frustration of purpose" doctrine and the nature of the claims generally, which include material breach by PMC and failure to cure. Shutterstock entered into the Agreement to obtain special access to key fashion and entertainment events. That Shutterstock may have earned a few dollars at a net loss during the pandemic from old images is beside the point, and does not negate the fact that the primary purpose of the Agreement was frustrated. PMC cites no authority for the idea that if a minor part of a relationship survives, the primary purpose is not frustrated. If it wishes to argue that point notwithstanding, it has all the information it needs to do so without recalling a witness whose testimony is not necessary on documents akin to those on which she was or could have been questioned previously.

**Topic 12:** Far from "playing games," Shutterstock advised PMC well before and during Ms. Murray's deposition that SSTK000006 was not reliable except as to certain specific information, which did not include the information at issue here related to PMC's delivery of archival images. Shutterstock inadvertently included certain archive-related information in SSTK000006 (which was produced in August 2020 not because it was responsive, but to report revenues to PMC for June and July 2020) and it was incomplete. That is why Shutterstock produced SSTK161815 three days in advance of Ms. Murray's deposition. There is no reason why PMC did not ask about it then. In any event, not only does SSTK161815 speak for itself, but PMC should already have all the relevant information in its own files—including, for example, the "date the listed [archival] images were taken" given that, by definition, those images predate the Agreement.

**Topics 17-18:** Ms. Murray fully addressed these topics. She testified Shutterstock removed all PMC-coded content (including thumbnails) from its site on July 17, 2020. In Ms. Murray's words: "My job was to effectuate the termination [of the Agreement by] making sure all of the coded images were removed by July 17, 2020. I did that. It was done." The relatively few images that remain in PMC's copyright claims were not coded to PMC, either because Shutterstock owned them (as PMC has admitted) or due to an inadvertent error (as stated in Shutterstock's interrogatory answers), which PMC did not raise until this lawsuit. Moreover, Shutterstock produced a spreadsheet documenting the relevant take-down dates, and even though Shutterstock advised that PMC may rely on that spreadsheet, PMC is insisting on recalling Ms. Murray to testify about this.

**Topics 19:** Ms. Murray was well-educated on this topic; it is unreasonable to expect her to recite the licenses for the 2300 images alleged in PMC's infringement claim, which has been a constantly moving target. Shutterstock identified the renewal licenses in a document which speaks for itself.

The Honorable Mary Kay Vyskocil                                                                 Page 5
April 7, 2022

                        Sincerely,

                        */s/ Cynthia S. Arato*        */s/ Eleanor M. Lackman*
                        Cynthia S. Arato            Eleanor M. Lackman