

MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Eleanor M. Lackman
Partner
(212) 878-4890 Phone
(917) 546-7675 Fax
eml@msk.com

May 10, 2022

**VIA ECF**

The Honorable Valerie Figueredo, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY  10007

**Re:**   *Penske Media Corp. v. Shutterstock, In*c., 20-cv-4583 (MKV)

Dear Judge Figueredo,

Pursuant to Your Honor's Order in ECF No. 128, plaintiff Penske Media Corporation ("PMC") and defendant Shutterstock, Inc. ("Shutterstock") respectfully submit this joint letter informing the court of what, if any, discovery disputes from the parties' joint letter of December 30, 2021 (ECF No. 94) remain outstanding and each party's current position as to that outstanding dispute.

**Shutterstock's Position:**

It is Shutterstock's position that all discovery issues pertaining to PMC's document production raised in ECF No. 94 remain outstanding except for those raised pertaining to Request for Production Nos. 68 and 74, for which the parties have agreed that no further documents exist. The other issues raised in ECF No. 94 were touched on in later joint letters to the Court (*see*, *e.g.*, ECF No. 105 at fn. 1 (filed on March 22, 2022) and ECF No. 106 (filed on March 23, 2022)) as unresolved. Since the filing of ECF No. 94, PMC has produced 2,493 documents, none of which resolve the disputes that were raised in the parties' December 30, 2021 letter, as they primarily consisted of copyright registration documents, photographs, and photo metadata information. Moreover, since the latest update to the Court on issues that encompassed and provided additional detail on those in the December 30, 2022 letter (i.e., since March 23, 2022), PMC has not produced any documents.

After receiving the Court's Order (ECF No. 128) on May 3, 2022, that same day, Shutterstock sought PMC's position asking whether PMC would confirm that all issues remained open and if not, whether PMC would confer. PMC said it would revert back to Shutterstock later that week, but despite Shutterstock's reaching out and following up repeatedly since May 3 in an effort to gain insight into what PMC believed had been resolved since December 30, 2021, Shutterstock first received PMC's positions (other than RFP Nos. 68 and 74, identified) at nearly 4 p.m. today, in a format that was over two pages long and well in excess of the proportionate room allotted by the District Court. As such, Shutterstock was only able to confirm that Request for Production Nos. 68 and 74 were resolved since the filing of ECF No. 94; as to the remainder, Shutterstock has had insufficient time to fully assess PMC's positions, particularly as it informed

437 Madison Ave., 25th Floor, New York, New York 10022-7001
Phone: (212) 509-3900 Fax: (212) 509-7239 Website: WWW.MSK.COM

14210873.3

Case 1:20-cv-04583-MKV-VF   Document 131   Filed 05/10/22   Page 2 of 5



The Honorable Valerie Figueredo, U.S.M.J.
May 10, 2022
Page 2

Shutterstock at 5:20 p.m. that it wanted to review and make even further revisions in response to Shutterstock's.[1] Despite the short turnaround, Shutterstock's positions as to PMC's recently received positions are as follows:[2]

*Text messages, instant messaging.* Other PMC witnesses besides Lauren Utecht admitted to using text messages and other messaging applications during their depositions, and PMC has not provided those documents and/or verified that they had been searched. Thus, this issue has not been resolved to Shutterstock's satisfaction.

*Events.* PMC's position regarding events misses the point of Shutterstock's argument in ECF. No. 94. PMC was asked to provide a list of Events to which PMC offered or expected to offer access to Shutterstock after March 1, 2020 (RFPs 10-11, 14-15) or that were cancelled due to the pandemic after March 1, 2020 (RFPs 12, 16), or that occurred after March 1, 2020 (RFP 19), and PMC's new position that it made a Lightbox available does not satisfy or adequately respond to those Requests.

*Number of archive images.* (Request No. 20). Again, PMC's position regarding archive images evades Shutterstock's points on the issue, as Shutterstock's request for this information was not solely relevant due to its connection to Shutterstock's damages.

*Licenses to third parties (including Getty Images).* (Request No. 96). Again, PMC's position regarding licenses to third parties misses Shutterstock's points on the issue. Both the number of archive images (RFP 20) and the licenses to third parties (RFP 96) are relevant to the issue of PMC's good faith provision of such content, not the Getty agreement itself, which related to a different Request for Production.

*Financial projection/profits and losses.* (Request Nos. 94, 98). Shutterstock cannot assess its position on this as PMC has not identified the cost spreadsheet to which it refers in its portion of this letter. Further, its cryptic characterization of the issue alone indicates that the scope of this broad issue remains untouched.

Moreover, Shutterstock objects to PMC's raising new arguments or adding issues to circumvent its failure to timely raise these issues and remain within the scope set by Judge Vyskocil. PMC's efforts to argue timeliness of Shutterstock's request have already been ruled upon by the District Judge and should be disregarded. Shutterstock's production was over two times as large as PMC's, and the depositions taken in this case revealed that PMC was not producing documents as it should, which is why Shutterstock sought the Court's assistance by ECF No. 94 and other filings.

---

[1] Given the hour, Shutterstock needs to get its letter on file notwithstanding PMC's efforts to stonewall and otherwise interfere with the Court's instructions on this issue. There may be issues as to which Shutterstock disagrees, and Shutterstock respectfully requests a suitable amount of time to vet these issues without the characteristic gamesmanship that has marked this litigation.
[2] To avoid any confusion, in addition to the issues that indisputably remain unresolved, Shutterstock addresses the claims made by PMC to the extent it can regarding what PMC claims is now resolved.

14210873.3



The Honorable Valerie Figueredo, U.S.M.J.
May 10, 2022
Page 3

**PMC's Position:**

PMC's positions remain as set forth in the December 30, 2021 letter with the following updates.

Since submitting the December 30, 2021 letter, PMC and Shutterstock engaged in additional meet and confers regarding subjects addressed in that letter and various witnesses have been deposed and have provided testimony relevant to certain of those subjects as set forth below:

*Request No. 68.* This request relates to Shutterstock's use of thumbnail versions of various images. PMC confirmed in a February 27, 2022 letter that it had no responsive documents to produce related to thumbnails and that it had previously produced metadata for relevant images shot by the PMC photographer Michael Buckner. Mr. Buckner is the only PMC (as opposed to Shutterstock) photographer who shot images in dispute and he did not supply metadata for all his images. PMC reiterated this information during a March 18 telephonic meet and confer.

*Request Nos. 74 (and 58).* At a March 18, 2022 meet and confer, PMC informed Shutterstock that PMC had no responsive documents notifying Shutterstock that Shutterstock was providing false copyright management information (CMI) regarding the images in dispute, other than the pleadings in the case (Shutterstock continued to display images and the related CMI after the filings of those documents).

*Text messages, instant messaging.* PMC received the transcript of the deposition of Lauren Utecht (formerly Gullion), PMC's former head of communication, after the parties submitted their December 30 letter. The transcript confirms that Shutterstock asked Ms. Utecht only generally about the existence of Slack at PMC (Q: "Do you use . . . for work . . . any other form of messages . . . ." A: "We do have Slack, yes."), but did not ask how Slack is used or for what purpose, or by whom or when, and her testimony, accordingly, does not support Shutterstock's contention that PMC should have searched the various Slack accounts used by certain of its publications. (Deposition Transcript of Lauren Ultecht, Dec. 23, 2021, 12:17-25). Since December 30, Shutterstock has taken five additional depositions of PMC employees and, except for the two WhatsApp messages addressed in the December 30 letter, no PMC employee described using Slack, texts, or other instant messaging platforms in connection with the Shutterstock relationship or related to issues in the case. PMC reiterated these points at the March 18 meet and confer.

*Events.* On December 28, 2021, PMC made available a "Lightbox" production of all images shot by PMC between July 17, 2020 (the date Shutterstock terminated the parties' agreement) and June 30, 2021 (the date the agreement would have terminated by its own terms absent Shutterstock's early termination). In addition to the documents PMC previously produced, those images further identify and document third party and PMC-hosted events occurring after March 1, 2020 which Shutterstock could have exploited had it not terminated the parties' agreement as of July 17, 2020. Shutterstock's portion of the December 30 joint letter remain unchanged regarding this topic after this "Lightbox" and it is unclear if Shutterstock factored it in.

14210873.3



The Honorable Valerie Figueredo, U.S.M.J.
May 10, 2022
Page 4

*Number of archive images*. (Request No. 20). On February 18, 2022, PMC deposed Shutterstock's 30(b)(6) witness on the topic of Shutterstock's claimed damages. That witness (Shutterstock's CEO) testified that Shutterstock's claimed damages in this case are limited to (a) the loss of access to live events during the pandemic (when all events were prohibited by various laws and cancelled); and (b) PMC's (innocent) downloading of select images from the Shutterstock website after Shutterstock terminated the parties' agreement. (Deposition Transcript of Stan Pavlovsky, February 18, 2022, 288:5-23, 296:2-9). Shutterstock's CEO therefore conceded that Shutterstock has suffered, and seeks, no damages related to PMC's alleged failure to deliver sufficient historic archive images to Shutterstock between January and April 2020. Shutterstock's concession provides further support for PMC's relevance and burden objections to Shutterstock's request, which seeks documents regarding the number of archive images that PMC produced to Shutterstock between January and April 2016. PMC, moreover, previously explained to Shutterstock that it does not maintain records of such delivery, although Shutterstock has produced spreadsheets in this case on that subject and PMC has been willing to rely on the data Shutterstock produced.

*Licenses to third parties (including Getty)*. (Request No. 96). Since the parties submitted their December 30 letter, PMC produced the requested agreement with Getty (with agreed upon redactions). During the March 18 meet and confer, PMC explained that it would be unduly burdensome and disproportionate to require PMC to search for any and every "one off" license it may have issued in the last ten years. Other than this deal with Getty (which PMC inherited when it acquired assets related to its *Variety* publication), PMC is not aware of any other large scale license agreement predating its deal with Shutterstock.

*Financial projection/profits and losses*. (Request Nos. 94, 98). PMC informed Shutterstock in both its February 27 letter and the parties' March 18 meet and confer that PMC had produced any documents it had identified regarding valuations and/or Shutterstock's revenues. Since December 30, PMC produced available documents regarding the costs it incurred to digitize various historical archive images and a spreadsheet documenting revenues and expenses associated with hosting various PMC events (even though PMC disputes that PMC was obligated to hold the events under the agreement or that the costs associated with those events are costs under the agreement). Shutterstock sought this information to show that PMC allegedly "saved" money due to not holding events during the pandemic/after Shutterstock terminated the agreement and, therefore, might have welcomed Shutterstock's premature termination of the agreement. As PMC explained in its February 27 letter and the March 18 meet and confer, the spreadsheet demonstrates that PMC earns a profit on the events it hosts. No additional discovery on this topic is warranted.

The burden associated with any further document production is heightened by the status of other discovery. Discovery closed on February 28, 2022, and the parties have submitted pre-motion letters to the Court regarding certain anticipated motions for summary judgment, along with anticipated Rule 56.1 Statements and Counterstatements. Dkt. Nos. 110, 112, 117, and 122.

14210873.3



As of December 30, 2021, when Shutterstock first belatedly brought the disputed matters to the Court, nine witnesses already had been deposed. Discovery was set to close on January 21, 2022, or just three weeks later. Although the Court extended that deadline on January 4, 2022, it did so because PMC's main 30(b)(6) deponent became ill and was unavailable to be deposed in early January and, rather than reschedule just his deposition, Shutterstock contended that the order of depositions should remain unchanged. Dkt. No. 97; *see also* Dkt. No. 99 (Court ordering that the ill witness be deposed the week of January 17 and "[a]ll other depositions previously noticed should be rescheduled to occur <u>in the same order previously contemplated</u> after Penske Media Corporation's 30(b)(6) witness") (emphasis in original). Since then, an additional thirteen witnesses have been deposed (and one witness was deposed a second time).

PMC disputes Shutterstock's characterizations regarding this letter. Shutterstock informed PMC on May 3, within just hours of receiving the Court's order, that it believed every discovery item addressed in the prior December 30 letter remained open, with no exception. Shutterstock asked PMC on May 3 and again on May 4 to confirm its agreement with that contention. After an initial review of the case history, counsel for PMC explained on May 5 that they did not agree with Shutterstock's contention and that they would need time to respond, given the volume of material they needed to review and other work deadlines. While nothing prevented Shutterstock from doing the same independent review of the parties' meet and confers and PMC's document productions that PMC did, Shutterstock chose as late as today to rest on its prior letter. As it explained to Shutterstock, PMC believes, in good faith, that the length of its portion of the letter is consistent with Your Honor's local rules which direct that parties shall limit non-joint discovery letters limited to three pages.

Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP

By:     s/ Eleanor M. Lackman
Eleanor M. Lackman
ATTORNEYS FOR SHUTTERSTOCK, INC.


SHAPIRO ARATO BACH LLP

By:     s/ Cynthia S. Arato
Cynthia S. Arato
ATTORNEYS FOR PENSKE MEDIA CORPORATION