# Exhibit 1

**CHART REGARDING DISPUTED RFPS**[1]

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| **Events—RFP 10-12, 14-16, & 19** | | | |
| **RFP 10:** Documents sufficient to identify all PMC Events (by name and date) on or after March 1, 2020 to which PMC offered and/or provided credentials, passes, and/or access to Shutterstock pursuant to the Agreement.<br><br>**RFP 11:** Documents sufficient to identify all PMC Events (by name and date) scheduled to occur on or after March 1, 2020 to which PMC expected and/or intended to offer and/or provide credentials, passes, and/or access to Shutterstock, but did not actually offer and/or provide credentials, passes, and/or access to Shutterstock due to COVID-19.<br><br>**RFP 12:** Documents sufficient to identify all PMC Events (by name and date) scheduled and/or expected to occur on or after March 1, 2020 which were cancelled, postponed, and/or not scheduled due to COVID-19.<br><br>**RFP 14:** Documents sufficient to identify all Third-Party Events (by name and date) on or after March 1, 2020 to which PMC offered and/or provided credentials, passes, and/or access to Shutterstock pursuant to the Agreement.<br><br>**RFP 15:** Documents sufficient to identify all Third-Party Events (by name and date) scheduled to occur on or after March 1, 2020 to which PMC expected and/or intended to offer and/or provide credentials, passes, and/or access to Shutterstock, but did not actually offer and/or provide credentials, passes, and/or access to Shutterstock due to COVID-19.<br><br>**RFP 16:** Documents sufficient to identify all Third-Party Events (by name and date) scheduled and/or expected to occur on or after March 1, 2020 which were cancelled, postponed, and/or not scheduled due to COVID-19.<br><br>**RFP 19:** All Documents and Communications consisting of, regarding, referring to, or relating to any or all Third Party Events that occurred after March 1, 2020, including but not limited to Documents and Communications relating to the format of those events, the opportunities for PMC to generate content at those events, PMC's access to those events, and any changes to those events due to COVID-19. | PMC produced the annual spreadsheet that the parties used to document third party events in 2020 to which Shutterstock was invited to attend and photograph. PMC also produced all non-privileged materials that it identified regarding Shutterstock's coverage of, or refusal to cover, individual PMC or third-party events occurring in 2020 and invitations or requests to cover the same. PMC also provided Shutterstock with access to a "Lightbox" system that houses photographs documenting events which PMC photographers attended and photographed between Shutterstock's July 2020 termination and June 30, 2021 (when the parties' agreement would have terminated in the ordinary course) and articles in PMC publications with photographs documenting the holding of live events during that period. | Shutterstock entered into the Agreement with PMC to gain insider access to live events put on by PMC and third parties. PMC expressly agreed to provide Shutterstock with such access, including to specific high-profile third-party events listed in the Agreement, and with the expectation of Shutterstock receiving access to several dozen events per month. Despite PMC's efforts (submitted to Shutterstock belatedly at 4:11 p.m. today, multiple days late) to use false testimony and irrelevant briefing to contort Shutterstock's defenses, counterclaims, and evidence beyond recognition, Shutterstock chiefly contends that PMC failed to fulfill its contractual obligation beginning in early-to-mid March 2020, leaving PMC in breach and rendering the Agreement effectively worthless to Shutterstock.<br><br>PMC has failed to make an adequate production of documents on this key issue. It has identified three categories of documents, which (even collectively) do not satisfy any of these RFPs:<br><br>**Annual spreadsheet for 2020:** This spreadsheet contains incomplete information related to certain of these RFPs and is entirely unresponsive to others. More specifically:<br><br>As for RFP 10 & 14, the spreadsheet identifies a handful of events "on or after March 1, 2020 to which PMC offered and/or provided" access to Shutterstock, but only through April 16, 2020. There is no information about subsequent events, even though the Agreement remained in effect through mid-July 2020. For the same reason, this spreadsheet is incomplete as to RFP 12 & 16.<br><br>As for RFP 11 & 15, PMC correctly notes that this spreadsheet only identifies events "to which Shutterstock *was invited* to attend and photograph." It provides no information about event access PMC "*did not actually offer*" to Shutterstock "due to COVID-19."<br><br>As for RFP 19, the spreadsheet does not identify "the format of the events, the opportunities for PMC to | Shutterstock entered into the Archive & Event Image Hosting and Licensing Agreement with PMC to transform itself from a stock imagery provider to a purveyor of prestigious editorial content. The Agreement provided Shutterstock with two distinct benefits to accomplish that goal: (1) PMC granted Shutterstock the exclusive right to license PMC's historic and ever growing photography collection and (2) PMC agreed to "provide Shutterstock access" to PMC-hosted events "to which third parties are invited generally" and to "significant third-party events," like the Oscars and Grammys, "to which PMC has access," so Shutterstock could take photographs at such events and license those photographs on PMC's behalf.<br><br>This case concerns Shutterstock's wrongful invocation of the "frustration of purpose" doctrine to terminate the Agreement based on the cancellation of live events in 2020 due to the COVID-19 pandemic, even though that doctrine requires that the entirety of a contract be reended "worthless" or "cease to exist" *Robert J. McRell Assocs., Inc. v. Ins. Co. of N. Am.*, 677 F. Supp. 721, 728-29 (S.D.N.Y. 1987); *see also Dr. Smood NY LLC v. Orchard Houston, LLC*, 2020 NY Slip Op. 33707(U), *4 (N.Y. Sup. Ct. 2020) ("there must be complete destruction of the basis of the underlying contract"), and Shutterstock continued to enjoy benefits under the deal even after live events were cancelled.<br><br>Shutterstock also contends that PMC "breached" the agreement by failing to provide Shutterstock with access to live events cancelled due to COVID-19, even though Shutterstock's lead negotiator for the deal conceded that PMC had no absolute obligation to provide access to events (Ben Pfeifer Deposition Transcript 98:5-100:9) and it would have been impossible for PMC to provide such access in any |

---

[1] This chart addresses all of the RFPs that remain in dispute and provides the following information for each: (1) the text of Shutterstock's RFP; (2) PMC's description of the documents, if any, that PMC has produced; (3) a brief statement by Shutterstock explaining what it perceives to be the deficiency in PMC's document production; and (4) a brief statement by PMC responding to Shutterstock's claimed deficiency. The parties respectfully refer the Court to the accompanying **Exhibits 2-5** for PMC's written responses and/or objections to each of the disputed RFPs.

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| | | generate content at those events," or "any changes to those events due to COVID-19."  Plus, the only events in the spreadsheet that actually "occurred after March 1, 2020" were just before live event cancellations and/or modifications became prevalent.<br><br>**Lightbox:**  The Lightbox consists of thousands of images and provides limited information for each (*i.e.*, image file, file name, file type, date created, date uploaded).  It does not identify the event at which the images were taken; provides no information as to whether PMC offered and/or provided access to Shutterstock; and is particularly non-responsive as to RFP 12 & 16, which seek information about events "which were cancelled" and/or "not scheduled" (and thus, did not result in any images).<br><br>**Other documents:**  Shutterstock is not aware of any other materials in PMC's production "regarding Shutterstock's coverage of, or refusal to cover, individual PMC or third-party events occurring [*on or after March 1*,] 2020 and invitations or requests to cover the same."  (Any events occurring prior to this date are outside the scope of these RFPs.)  Tellingly, PMC has not specifically described these documents.  Regardless, it is clear from PMC's vague description that these documents would have no bearing whatsoever on RFP 11-12, 15-16, & 19. | event given the cancellation of events due to the pandemic.<br><br>PMC did not submit its response late. The parties agreed to a schedule in writing, consistent with the Court's order, in which PMC would provide Shutterstock with a description of the documents produced, Shutterstock would provide its position, and PMC would respond. The parties never agreed that Shutterstock would then reply to PMC's position by revising its position, which it has now done. Nor did the parties agree on a timetable under which PMC would provide its response multiple days ago.<br><br>**Spreadsheet** – this shared spreadsheet was the primary vehicle by which the parties communicated about upcoming events to be covered by Shutterstock photographers under the Agreement. The parties also communicated by email regarding such events.  The spreadsheet was updated in real time and reflects events that were scheduled to occur and known to PMC.  The fact that the spreadsheet lists only a few events on or after March 1, 2020 is not an indication of a deficient document production. It reflects the state of the world on and after March 2020, when no new events were being scheduled and/or events were cancelled.<br><br>Shutterstock does not explain the relevance of its distinction between "invite" and "did not actually offer." There is no dispute, however, that historically PMC invited Shutterstock to attend and cover dozens of events per month between March and June and that, had the pandemic not occurred, the parties anticipated that such volume would not have materially changed for 2020-2021.<br><br>It is irrelevant that the spreadsheet does not address the format, changes, etc regarding the events. PMC produced any and all emails it identified from the applicable custodians for the applicable period regarding those topics.<br><br>**Other documents**. PMC produced any and all emails it identified from applicable custodians for the applicable period regarding Shutterstock's coverage of, or refusal to cover, individual PMC or third-party events occurring on or after March 1, 2020; |

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| | | | invitations to or from PMC or requests to cover the same; and cancellations of the same. The emails are not numerous, but that is the consequence of world events at the time, not an indication of a deficient document production. |
| | | | **Lightbox**. The images contained in the Lightbox production evidence the events that occurred between Shutterstock's termination of the agreement as of mid-July 2020 and when the agreement would have expired on its own terms on June 30, 2021  The fact that the images do not contain background narrative does not make the document production insufficient. PMC produced a witness whom Shutterstock was free to examine about the events depicted on the images. It is also irrelevant that the Lightbox images do not address whether Shutterstock was invited to cover the event. The Lightbox images demonstrate the events that occurred after Shutterstock terminated the agreement. At this point in time, PMC had no occasion to and did not invite SSTK to cover events for PMC. PMC properly objected on relevance and burden grounds to producing all documents and communications regarding events (and details about those events) that occurred after Shutterstock terminated the agreement. |
| **Number of Archive Images—RFP 20** | | | |
| **RFP 20:**  Documents sufficient to identify the number of Archive Content images that PMC provided to Shutterstock between January 1, 2016 and April 30, 2016. | PMC produced all non-privileged material it identified in its review regarding its delivery to Shutterstock of historic archive images. PMC did not maintain records of its delivery to Shutterstock of historic archive images. | PMC's production is wholly deficient.  Although PMC has expressly acknowledged that the "number of Historic Archive Images [that PMC delivered to Shutterstock] during the first four months of the calendar year" is a material fact in this case (Dkt. No. 122-1, ¶ 143), PMC has not produced any documents showing the number it believes it provided between January 1, 2016 and April 30, 2016.  PMC's representation that it "did not maintain [relevant] records" is not enough.  Any documents, including emails, identifying the number of archival images that PMC provided during the specified time period would suffice. | PMC did not maintain records by date of its delivery of historical archive images. Because Shutterstock does maintain such records and has produced spreadsheets on that subject, PMC told Shutterstock that PMC was willing to rely on Shutterstock's data and to stipulate to the number of images delivered as reflected in that data. Shutterstock has never explained why that is not sufficient.

PMC reviewed the emails that exist from the January through April 2016 time period and produced non-privileged communication it identified on this subject. PMC did not exclude any communication that would have provided the requested information. Moreover, Shutterstock does not explain the relevance of this request. |
| **Licenses to Third Parties—RFP 96 & 105** | | | |

3

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| **RFP 96:** Documents sufficient to show how much of PMC's archive, whether or not provided to Shutterstock, it has licensed on an annual basis in the past 10 years.<br><br>**RFP 105:** All agreements that PMC has entered, other than the Agreement, to exploit its archive content and/or live event content, including with Getty Images, in effect since January 1, 2010. | PMC produced a requested agreement with Getty, including as amended and with agreed upon redactions and the licensing agreements it negotiated after Shutterstock terminated the agreement. PMC did not search for or produce any and all licensing agreements it may have entered into for the licensing of images over the last ten years. | PMC has taken the position that Shutterstock would have entered into the Agreement if only the archive content (and no live event content) was offered. The archive-related materials sought in these RFPs are relevant to show, among other things, that PMC's archive content has very little (if any) standalone value in the marketplace and was not the basis for Shutterstock entering into the Agreement or agreeing to pay a sizeable annual advance. PMC admits that it did not even search for, let alone produce, all responsive documents, and attempts to deflect by pointing to an out-of-context, irrelevant statement in the Court's analysis of PMC's breach of implied convenant claim at the pleadings stage. Tellingly, PMC has refused to specifically identify the "licensing agreements" that it purportedly produced. PMC should be required to produce responsive documents or confirm that none exist. Notably, doing so is not as burdensome as PMC makes it seem considering Shutterstock had exclusive rights to PMC's archive content during a substantial portion of the specified ten-year time period. Moreover, Shutterstock has never requested 'any and every 'one off' license for individual images." In any event, Shutterstock would be amenable to accepting any license agreements involving the right to exploit more than 50,000 archive images in satisfaction of these RFPs. | It is unduly burdensome and disproportionate to require PMC to search for any and every "one off" license for individual images that it may have issued over ten years. PMC has informed Shutterstock that, other than the produced agreement with Getty, PMC is not aware of other large scale license agreements for PMC's historic archive predating its deal with Shutterstock.<br><br>To the extent Shutterstock wants to argue that there is no established "standalone" value to the archive as a whole, it is free to rely on the absence of any overall licensing deal produced by PMC. Regardless, this issue is not relevant. As the Court already found, the Agreement covered both access to live events and the historic archive, and Shutterstock agreed to pay a unitary advance that did not differentiate between the two. *See* Dkt. 71 (Order Denying Shutterstock Motion to Dismiss) ("[E]ven a quick review of the Agreement reveals that the royalty advances are consideration not only for Shutterstock's production of new photographs but also for Shutterstock's efforts to market and license images already in the Penske archive." (citing Agreement ¶ 6)). Regardless of what Shutterstock seeks to establish regarding the standalone value of the historic archive, Shutterstock cannot rely on its frustration of purpose defense where the value of the historic archive did not decrease during the pandemic and Shutterstock continued to benefit from hosting and licensing PMC content throughout the pandemic and until it terminated the Agreement. |
| **Renegotiation—RFP 99** | | | |
| **RFP 99:** All Documents and Communications that evidence, refer, or relate to PMC's efforts to renegotiate the Agreement. | PMC has produced the non-privileged documents it identified regarding the parties' interactions and communications regarding the agreement. | Shutterstock's documents show that the parties discussed renegotiating the Agreement in mid-2020. This was corroborated by both parties' witnesses. Yet, PMC has produced relatively few documents—especially internal ones—relating to its efforts to renegotiate the Agreement. For example, there appear to be no discussions among PMC regarding the Shutterstock's proposal to renegotiate the Agreement. | PMC produced the documents that exist. The fact that PMC produced fewer internal written communications than Shutterstock does not establish any deficiency in PMC's document production. |
| **Venue Contracts—RFP 104** | | | |
| **RFP 104:** All contracts between PMC, or any of its brands (including, without limitation, Fairchild Live Media, Variety, or | PMC did not search for or produce responsive documents. | A central issue in this dispute is whether Shutterstock is required to pay a significant advance under the Agreement | Shutterstock is comparing apples to oranges when it compares the multi-year, multi-pronged agreement at |

4

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| RR1), on the one hand, and any venue, on the other hand, which relate to events that were at one time or another scheduled to occur between February 1, 2020 and June 30, 2021, and all Documents and Communications that evidence, refer, or relate to the performance, nonperformance, or modification thereof. | | even though the pandemic wiped out the live event access for which Shutterstock was paying the significant up-front annual payment.  PMC's position is that Shutterstock must pay despite no performance, a situation that PMC contends resulted from pandemic restrictions.  Shutterstock is entitled to discover the positions that PMC took when the situation was reverse—i.e., where a third-party with whom PMC contracted was unable to deliver the consideration for which PMC was paying.  There is no dispute that PMC had contracts with third-party venues for cancelled events, and PMC's Chief Operating Officer testified that PMC's finance team could gather information on any refunds or other monetary relief that PMC obtained.  PMC has refused to do so and, apparently, did not even search for responsive documents.  (PMC also refused to produce a Rule 30(b)(6) witness on this topic.  *See* Dkt. No. 105.) | issue with one-off agreements that PMC's brands had with various venues for the holding of one day events. Unlike such venue agreements which were for events cancelled in their entirety, Shutterstock benefited for years from the Agreement before the pandemic hit and Shutterstock continued to exploit PMC images under that Agreement during the pandemic. It is thus irrelevant to the Agreement how PMC and these venues dealt with the pandemic with respect to single events that were prohibited due to COVID-19, as these agreements do not implicate the partial frustration that Shutterstock wishes to establish here but which is insufficient to establish frustration of purpose. As explained briefly, a party can invoke this doctrine only when the entirely of an agreement is rendered worthless or valueless and the doctrine does not apply to a partial frustration. *Robert J. McRell Assocs.,* 677 F. Supp. at 728-29; *Dr. Smood NY*, 2020 NY Slip Op. 33707(U) at *4. Given the lack of relevance, it would be unduly burdensome and disproportionate to compel PMC to search for and produce the requested contracts. PMC owns over a dozen publishing brands which each host numerous live events at various third-party venues. This discovery dispute does not relate to PMC's proper objections to producing a 30(b)(6) witness on this irrelevant topic. |
| **Limitation to Documents "On Which PMC Intends to Rely"—RFP 4-6, 17, 48, 55-60, 63-64, 76, 90** | | | |
| **RFP 4:** All Documents and Communications that support, substantiate, refute, or otherwise pertain or relate to PMC's allegation in Paragraph 58 of the Complaint that "Shutterstock had no valid basis to terminate the [ ] Agreement." | PMC searched for, and produced, documents concerning the issues underlying the parties' claims in this case regarding Shutterstock's termination.  PMC did not separately seek to determine what other documents might exist that could include information that could refute its allegations.  PMC did not withhold any documents based on any conclusion that such documents did not support PMC's contentions. | Shutterstock's issue with respect to this RFP is PMC's express limitation of its production to those documents "it intends to rely upon in this action to prove PMC's allegations."  This limitation is improper and it is unclear whether and/or to what extent PMC is withholding responsive documents.  PMC's statement that it has not withheld documents on the basis that they "did not support" its contentions is evasive.  PMC should be ordered to directly state whether it is withholding non-privileged documents that "support, substantiate, refute, or otherwise pertain or relate to" the allegation referenced in this RFP.  Any improperly withheld documents must be produced. | PMC's representation is clear and not evasive.  In the original discovery dispute letter (Dkt. 95) Shutterstock's complaint was only that PMC improperly restricted its response to what it would rely on and thus could intentionally withhold "bad" documents. PMC has made clear that it did not do that. Shutterstock's complaint has never been about whether PMC produced all documents that "support or substantiate" PMC's contentions and Shutterstrock has not explained why it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. Shutterstock has failed to explain how a document that neither supports, substantiates, or refutes a contention could "otherwise pertain or relate |

5

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| | | | to" the requested topic. Nor should PMC be obligated to guess or develop legal theories not identified by Shutterstock as to what otherwise pertains or refutes this generalized allegation/topic. |
| **RFP 5:** Documents sufficient to identify all PMC Events (by name and date) that Shutterstock "refus[ed] to attend and photograph" during the term of the Agreement. | PMC produced the annual spreadsheets that the parties used during their relationship to track third-party events to which Shutterstock was invited and which Shutterstock attended or declined to attend. PMC also produced all non-privileged material that it identified regarding Shutterstock's coverage of, or refusal to cover, individual PMC or third-party events and invitations or requests to cover the same. | Shutterstock's issue with respect to this RFP is PMC's express limitation of its production to those documents "on which [PMC] intends to rely" in this action. This limitation is improper and it is unclear whether and/or to what extent PMC is withholding responsive documents. PMC should be ordered to directly state whether it is withholding non-privileged documents "sufficient to identify" the matter set forth in RFP 5 and/or that "support, substantiate, refute, or otherwise pertain or relate to" the allegation referenced in RFP 6. Any improperly withheld documents must be produced. | This request is not properly classified as one for which PMC placed any express limitation. In response to this request, PMC agreed to produce responsive, non-privileged documents within its custody and control within thirty days. PMC also stated that it would produce additional documents as identified and on which it intended to rely, but this was an error in drafting. In any event, documents that identify events that Shutterstock refused to attend are by definition, documents that support PMC's contentions, and Shutterstock does not explain why it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. |
| **RFP 6:** All Documents and Communications that support, substantiate, refute, or otherwise pertain or relate to PMC's allegation in Paragraph 59 of the Complaint that Shutterstock "refus[ed] to attend and photograph events hosted by PMC." | PMC produced the annual spreadsheets that the parties used during their relationship to track third-party events to which Shutterstock was invited and which Shutterstock attended or declined to attend. PMC also produced all non-privileged material that it identified regarding Shutterstock's coverage of, or refusal to cover, individual PMC or third-party events and invitations or requests to cover the same. | Shutterstock's issue with respect to this RFP is PMC's express limitation of its production to those documents "on which [PMC] intends to rely" in this action. This limitation is improper and it is unclear whether and/or to what extent PMC is withholding responsive documents. PMC should be ordered to directly state whether it is withholding non-privileged documents "sufficient to identify" the matter set forth in RFP 5 and/or that "support, substantiate, refute, or otherwise pertain or relate to" the allegation referenced in RFP 6. Any improperly withheld documents must be produced. | In the original discovery dispute letter (Dkt. 95) Shutterstock's complaint was only that PMC improperly restricted its response to what it would rely on and thus could intentionally withhold "bad" documents. Shutterstock's complaint has never been about whether PMC produced all documents that "support or substantiate" PMC's contentions and Shutterstrock has not explained why it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. Shutterstock has failed to explain how a document that neither supports, substantiates, or refutes a contention could "otherwise pertain or relate to" the requested topic. Nor should PMC be obligated to guess or develop legal theories not identified by Shutterstock as to what otherwise pertains or refutes this topic. But regardless, PMC did not withhold any documents based on any conclusion that such documents did not support PMC's contentions. |
| **RFP 17:** Documents and Communications that support, substantiate, refute, or otherwise pertain or relate to PMC's allegation in Paragraph 4 of the Complaint "that, absent . . . termination [of the Agreement], Shutterstock would have continued to enjoy . . . the unrestricted right . . . to attend and | See above. PMC did not withhold documents based on any conclusion that such documents did not support PMC's contentions. | Shutterstock's issue with respect to this RFP is PMC's express limitation of its production to those documents "it intends to rely upon in this action." This limitation is improper and it is unclear whether and/or to what extent PMC is withholding responsive documents. PMC's statement that it has not withheld documents on the basis | PMC's representation is clear and not evasive. In the original discovery dispute letter (Dkt. 95) Shutterstock's complaint was only that PMC improperly restricted its response to what it would rely on and thus could intentionally withhold "bad" documents. PMC has made clear that it did not do |

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| photograph other events that continue to be scheduled within the parameters of COVID- 19." | | that they "did not support" its contentions is evasive. PMC should be ordered to directly state whether it is withholding non-privileged documents that "support, substantiate, refute, or otherwise pertain or relate to" the allegation referenced in this RFP. Any improperly withheld documents must be produced. | that. Shutterstock's complaint has never been about whether PMC produced all documents that "support or substantiate" PMC's contentions and Shutterstrock has not explained why it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. Shutterstock has failed to explain how a document that neither supports, substantiates, or refutes a contention could "otherwise pertain or relate to" the requested topic. Nor should PMC be obligated to guess or develop legal theories not identified by Shutterstock as to what otherwise pertains or refutes this generalized allegation/topic. |
| **RFP 48:** All Documents and Communications, not otherwise covered by the Requests above, supporting, substantiating, refuting, or otherwise pertaining or relating to PMC's affirmative defenses to Shutterstock's Counterclaim. | PMC searched for, and produced, documents regarding the issues raised in the affirmative defenses amenable to a document review (i.e., not purely legal defenses). PMC did not separately seek to determine what other documents might exist that could include information that could refute its allegations. PMC did not withhold any documents based on any conclusion that such documents did not support PMC's defenses. | Shutterstock's issue with respect to this RFP is PMC's express limitation of its production to those documents "it intends to rely upon in this case to support the noted defenses." This limitation is improper and it is unclear whether and/or to what extent PMC is withholding responsive documents. PMC's statement that it has not withheld documents on the basis that they "did not support" its defenses is evasive. PMC should be ordered to clearly and directly state whether it is withholding non-privileged documents that "support, substantiate, refute, or otherwise pertain or relate to" the defenses referenced in this RFP. Any improperly withheld documents must be produced. | PMC's representation is clear and not evasive. In the original discovery dispute letter (Dkt. 95) Shutterstock's complaint was only that PMC improperly restricted its response to what it would rely on and thus could intentionally withhold "bad" documents. PMC has made clear that it did not do that. Shutterstock's complaint has never been about whether PMC produced all documents that "support or substantiate" PMC's contentions and Shutterstrock has not explained why it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. Shutterstock has failed to explain how a document that neither supports, substantiates, or refutes a contention could "otherwise pertain or relate to" the requested topic. Nor should PMC be obligated to guess or develop legal theories not identified by Shutterstock as to what otherwise pertains or refutes this generalized allegation/topic. |
| **RFP 55:** All Documents and Communications concerning or relating to PMC's contention in paragraph 46 of the First Amended Complaint that Shutterstock's actions "unfairly interfere[d] with PMC's right to receive the benefits it expected to receive under the contract (the copyright in photographs at any third-party event that Shutterstock photographed and to which PMC tendered its credentials to Shutterstock)." **RFP 56:** All Documents and Communications concerning or relating to PMC's contention in paragraph 46 of the First Amended Complaint that "Shutterstock's actions unfairly compete[d] with PMC." | PMC searched for, and produced, documents regarding the issues underlying its claims in this action. PMC did not separately seek to determine what other documents might exist that could include information that could refute its allegations. PMC did not withhold any documents based on any conclusion that such documents did not support PMC's contentions in this action. | Shutterstock's issue with respect to these RFPs is PMC's express limitation of its production to those documents "it intends to rely upon in this action to support the referenced contention." This limitation is improper and it is unclear whether and/or to what extent PMC is withholding responsive documents. PMC's statement that it has not withheld documents on the basis that they "did not support" its contentions is evasive. PMC should be ordered to clearly and directly state whether it is withholding non-privileged documents that "support, substantiate, refute, or otherwise pertain or relate to" the | Unlike the above Shutterstock requests, these requests do not ask PMC to produce documents that "refute" the stated allegations or topics. Moreover, PMC's representation is clear and not evasive. In the original discovery dispute letter (Dkt. 95) Shutterstock's complaint was only that PMC improperly restricted its response to what it would rely on and thus could intentionally withhold "bad" documents. PMC has made clear that it did not do that. Shutterstock's complaint has never been about whether PMC produced all documents that "support or substantiate" PMC's contentions, and Shutterstock has failed to |

7

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| **RFP 57:** All Documents and Communications concerning or relating to PMC's contention in paragraph 46 of the First Amended Complaint that Shutterstock's actions "violate[d] Shutterstock's duty of good faith and fair dealing by diminishing the value of PMC's photograph collection." <br><br> **RFP 59:** As to each and all of the 2,300 Photographs at issue in the above-captioned action, all Documents and Communications concerning or relating to PMC's contention in paragraph 52 of the First Amended Complaint that "Shutterstock knew that PMC—not Shutterstock—owned the copyright in the 2,300 Photographs." <br><br> **RFP 61:** All Documents and Communications concerning or relating to PMC's second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing. | | contentions referenced in these RFPs. Any improperly withheld documents must be produced. | explain why it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. PMC responded to various document demands concerning identified issues in the claim in dispute. The demands for all documents concerning entire causes of action is overly broad and improper. |
| **RFP 58:** All Documents and Communications concerning or relating to PMC's contention in paragraph 51 of the First Amended Complaint that as to each and all of the 2,300 Photographs at issue in the above-captioned action, "Shutterstock has misrepresented itself as the copyright owner of the 2,300 Photographs in connection with its reproduction, distribution, and/or display of those works [identified in Exhibit 1] on RexFeatures.com and Shutterstock.com, and in metadata attached to the images which Shutterstock distributes to its customers and licensees." <br><br> **RFP 60:** All Documents and Communications consisting of, regarding, referring to, or relating to PMC's ownership of each and every of the 2,300 Photographs at issue in the above-captioned action, as referenced in Exhibit 1 to the First Amended Complaint. <br><br> **RFP 63:** All Documents and Communications concerning or relating to PMC's third Cause of Action for violation of the Digital Millennium Copyright Act. <br><br> **RFP 64:** All Documents and Communications concerning or relating to PMC's fourth Cause of Action for Copyright Infringement. | PMC produced screenshots from the Shutterstock website documenting the misattribution; metadata demonstrating that PMC did not provide any information that would have caused the misattribution; and documents it identified that concern the ownership of the images (the parties' agreement, which provides that PMC is the owner of all images shot by Shutterstock under a PMC credential, the agreements between the photographers and Shutterstock, the spreadsheets and materials identified above showing which credentials were used to access various event, and calendar invitations obtained from various photographers that identified the credentials that were used to access various events). PMC did not withhold documents based on any conclusion that such documents did not support PMC's contentions in this action. | Shutterstock's issue with respect to these RFPs is PMC's express limitation of its production to those documents "it intends to rely upon" in this action. This limitation is improper and it is unclear whether and/or to what extent PMC is withholding responsive documents. PMC's statement that it has not withheld documents on the basis that they "did not support" its contentions is evasive. PMC should be ordered to directly state whether it is withholding non-privileged documents "concerning or relating to" the matters set forth in RFP 58 & 63-64 and/or "consisting of, regarding, referring to, or relating to" the matter set forth in RFP 60. Any improperly withheld documents must be produced. | These requests also do not ask PMC to produce documents that "refute" the stated allegations or topics. Moreover, PMC's representation is clear and not evasive. In the original discovery dispute letter (Dkt. 95) Shutterstock's (erroneous) complaint was only that PMC improperly restricted its response to what it would rely on and thus could intentionally withhold "bad" documents. PMC has made clear that it did not do that. Shutterstock's complaint has never been about whether PMC produced all documents that "support or substantiate" PMC's contentions, and Shutterstock has failed to explain why it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. PMC responded to various document demands concerning identified issues in the claims in dispute. The demands for all documents concerning entire causes of action is overly broad and improper. |
| | | | |
| **RFP 76:** All Documents and Communications evidencing actual misattribution by licensees of each and every one of PMC's claimed 2,300 Photographs in the above-captioned action. | PMC did not locate responsive documents for the time period commencing on July 17, 2020. | Shutterstock's issue with respect to this RFP is PMC's express limitation of its production to those documents "on which PMC intends to rely." This limitation is improper and it is unclear whether and/or to what extent PMC is withholding responsive documents. PMC should be ordered to directly state whether it is withholding non- | PMC has made clear that it did not locate—and is therefore not withholding—responsive documents. In any event, this request asked PMC to produce only those documents "supporting" PMC's allegation. PMC agreed to produce any document on which it intends to rely. Shutterstock has failed to explain why |

8

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| | | privileged documents on this basis. Any improperly withheld documents must be produced. | it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. |
| **RFP 90:** All Documents and Communications supporting any denial by PMC in response to Shutterstock's Requests for Admission, Set One. | PMC did not search for or produce documents responsive to these requests other than any on which it intends to rely, but PMC did not withhold documents otherwise responsive to other requests even if they were responsive to these requests. | Consistent with PMC's express limitation in its written response to this RFP, PMC has only undertaken a search for responsive documents "on which it intends to rely." This is improper. PMC should be ordered to conduct a comprehensive search and produce any additional non-privileged documents responsive to this RFP. | To the extent PMC has documents that support its denials of Shutterstock's requests to admit, such documents necessarily support PMC's positions. PMC agreed to produce any document on which it intends to rely. Shutterstock has failed to explain why it should be entitled to compel the production of additional documents that support PMC's contentions but upon which PMC does not intend to rely. |
| **RFP 78-79** | | | |
| | | | |
| **RFP 78:** All Documents and Communications reflecting any communications with any plaintiff in any claim against PMC regarding any violation of Section 1202 of the Digital Millennium Copyright Act, including but not limited to correspondence in *Werner v. Penske Media Corp.*, 2:17-cv-6191 (C.D. Cal.). | PMC did not search for or produce documents responsive to this request. | PMC has admitted that it did not search for or produce documents responsive to these RFPs, which are plainly relevant. In the referenced case, PMC argued that the DMCA did not apply despite allegations that it took willful, affirmative steps, whereas here, PMC argues that Shutterstock should be held liable under the DMCA despite doing virtually nothing. PMC should be ordered to conduct a comprehensive search and produce any non-privileged responsive documents. | The cited case concerns a garden variety DMCA claim—that one of PMC's media publications displayed an image as part of a published news story from which it allegedly removed copyright management information and/or distributed an image knowing such information had been altered or removed. The case has nothing to do with the unique DMCA issues raised here, which concern Shutterstock's display of PMC images on its website (and offers to third parties to license those images), after Shutterstock terminated its agreement with PMC. Shutterstock has not identified anything of relevance in any of the pleadings or motions publicly filed in the noted action, as it has produced no such documents in this action. |
| **RFP 79:** All Documents and Communications concerning or relating to PMC's acts of "work[ing] together in good faith" to provide content as set forth in the parties' Agreement during the period January 1, 2020 through July 31, 2020. | PMC produced all non-privileged materials it identified regarding the parties' interactions during this time period. | In its written response, PMC flatly objected to this RFP without stating whether it would search for and produce documents. Its assertion that it produced all non-privileged materials "regarding the parties' interactions" does not suffice. PMC should be ordered to conduct a comprehensive search and produce any non-privileged documents responsive to this RFP. Considering this is a targeted RFP relating to a seven-month period, PMC's timeliness and burden objections are not well-taken. | The parties first circulated document requests in April 2021 and PMC asserted appropriate, proper, and timely objections. In October, six months after discovery had commenced, when PMC was finishing its second level comprehensive review of tens of thousands of documents in response to Shutterstock's fifty requests, the parties sought an extension to the November 24, 2021 discovery deadline. They explained to the Court that document review had been unexpectedly onerous, which caused depositions to be delayed. Dkt. 85. On October 7, 2021, the Court extended the deadline to January 21, 2022 but cautioned that no further extensions would be granted. Dkt. 86. |

| Shutterstock's RFPs | PMC's Description of Documents | Shutterstock's Statement of Deficiency | PMC's Response |
|---|---|---|---|
| | | | In light of the Court's warning, the parties needed to wrap up—and not prolong—their document production, especially because no witnesses had been deposed and the holidays would make scheduling difficult (the parties eventually conducted 25 depositions).  But a week later, on October 15, 2021, Shutterstock served a demand with over three dozen additional requests seeking, not targeted clean up issues, but information across a range of broad topics, including many like RFP 79 that overlapped with Shutterstock's prior demands.<br><br>It was unduly burdensome for PMC to re-review the voluminous documents just because Shutterstock served new, belated requests with slightly different wording or focus on that late date. Moreover, PMC believes it produced all relevant documents because it did a comprehensive review of its communications during the relevant period in response to Shutterstock's prior requests concerning events to which PMC provided access, such as RFPS 9-16 and 19. Shutterstock does not explain why PMC's contention that it produced materials regarding the parties' interactions during the relevant time period does not suffice. |