

**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Eleanor M. Lackman
(212) 878-4890
eml@msk.com

March 23, 2022

**VIA ECF**

The Honorable Mary Kay Vyskocil, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, New York 10007

Re:     *Penske Media Corp. v. Shutterstock, Inc.*, 20-cv-04583 (MKV)

Dear Judge Vyskocil:

In accordance with Paragraph 4(A)(i) of this Court's Individual Rules of Practice in Civil Cases, defendant-counterclaim plaintiff Shutterstock, Inc. ("Shutterstock") seeks permission to file a motion for partial summary judgment to dispose of plaintiff-counterclaim defendant Penske Media Corporation's ("PMC") second claim for relief for breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 30 ("Amended Complaint"), ¶¶ 61-64. A draft Rule 56.1 Statement of Undisputed Facts accompanies this letter and is cited herein. As explained below, PMC's implied covenant claim fails as a matter of law and undisputed fact.[1]

**I.      Brief Background**

Paragraph 3(a)(iii) of the Archive & Event Image Hosting and Licensing Agreement (the "Agreement") requires PMC to provide Shutterstock with its credentials to access and photograph significant third-party entertainment and fashion industry events around the world ("Third Party Events"), such as the Academy Awards and the Sundance Film Festival. *See* SUF ¶¶ 1-2. In its second claim for relief, PMC contends that Shutterstock was required to use PMC's credentials if it decided to attend a Third Party Event and was forbidden from using any other credentials, including its own. *See* Amend. Compl., ¶¶ 46, 63. This purported restriction is not found in the text of Paragraph 3(a)(iii) or anywhere else in the Agreement; PMC contends that it is implied.

Shutterstock moved to dismiss PMC's implied covenant claim pursuant to Rule 12(b)(6). *See* Dkt. Nos. 35, 36. The Court denied Shutterstock's motion—PMC had done enough, "at the pleading stage," to plausibly state a claim. Dkt. No. 71, p. 12. But the Court noted that "[a]fter the development of a further record, Shutterstock may seek to revisit this conclusion." *Id.* Now, based on the evidence adduced in discovery, it is clear neither party ever intended or understood the Agreement to require Shutterstock to use PMC's credentials and forgo its own.

---

[1] As stated in the concurrently-filed joint letter (Dkt. No. 106), PMC has agreed to voluntarily dismiss its copyright infringement claim as to all of the images in the registrations for PMC Archive Collection Nos. 3 and 5-8 and does not maintain its DMCA claim as to the hundreds of images in the Amended Complaint that are concededly owned by Shutterstock. Based on PMC's commitment to partially dismiss these claims, Shutterstock does not presently seek permission to move for partial summary judgment on them.



March 23, 2022
Page 2

## II.     The Legal Standard

PMC "bears a heavy burden" to sustain its implied covenant claim at the summary judgment stage. *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69, 72 (1978) ("[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.").  This is because "it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists.  Thus, a party making such a claim must prove not merely that it would have been better or more sensible to include such a covenant, but rather that the particular unexpressed promise sought to be enforced is in fact implicit in the agreement viewed as a whole."  *Id.* at 69.

"[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue," as PMC would here, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988); *see also, e.g.*, *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (affirming summary judgment on grounds that the scope of the implied covenant was not so broad as to impose the obligation urged by opposing party).

## III.     PMC Cannot Prove An Implied Term Requiring Shutterstock To Only Use PMC Credentials To Access Third Party Events And To Forgo All Other Credentials, Including Its Own

Discovery has revealed three fundamental undisputed facts that make PMC's "heavy burden" on its implied covenant claim insurmountable.

*First*, PMC was well-aware that it could demand an express provision in the Agreement that restricted Shutterstock to using only PMC credentials to access and photograph Third Party Events—in fact, PMC's subsidiary, Variety, Inc. ("Variety"), did just that in its agreement with Getty Images (US), Inc. ("Getty Images") executed five years earlier.  *See* SUF ¶¶ 3-4, 5-7.  Like the Agreement at issue here, the Variety and Getty Images "Photographic Services and Reciprocal Image License Agreement" (the "Getty Agreement") granted Getty Images access to various high-profile third-party events using Variety's credentials.[2]  *Id.*, ¶¶ 7-8.  But Variety did not merely grant Getty Images the right to use its credentials; it required Getty Images to use them to access and shoot the events.  *See id.* ¶ 8 ("During the Term, Getty Images ***will provide*** the following photographic event coverage ***using Variety's "Variety" credential***: . . . ***Getty Images will be obligated to provide coverage***, as requested by Variety, of the following events, free of charge . . . .") (emphasis added).  When asked why PMC did not include a similar clause in its Agreement with Shutterstock, Todd Greene—PMC's Chief Legal Officer, the author of all of PMC's edits to the Agreement, and the Rule 30(b)(6) designee on the Agreement's meaning and the Getty Agreement—had ***no*** explanation:

> Q. Do you have any understanding as to why you didn't include a similar term in the PMC Shutterstock agreement if the intent really

---

[2] The Getty Agreement and the limitations it would place on the PMC and Shutterstock's business relationship is addressed in the Agreement.  *See* SUF ¶ 9.



March 23, 2022
Page 3

was to require Shutterstock to use PMC's credentials if offered to third-party events?

A. No, I don't.

SUF ¶¶ 10-11.

*Second*, PMC knew, long before it executed the Agreement, that Shutterstock had acquired Rex Features as part of its launch of a comprehensive editorial photography product, and it was well-known that Rex—the largest independently owned photographic press agency in Europe—had access to many of the same third party events as PMC.  *See* SUF ¶¶ 12-14.  Thus, if PMC truly intended to restrict Shutterstock to using ***only*** PMC's credentials, it certainly would have made that term explicit in light of Shutterstock's obvious and easy access to Rex Feature's credentials—just as Variety did in the Getty Agreement.

*Third*, throughout the term of the Agreement and as early as 2016, Shutterstock "passed" on PMC's Third Party Event credentials on occasion and instead used its own, with the full knowledge of PMC, ***and PMC never objected***.  *See* SUF ¶¶ 15-20, 23.  In fact, in a presentation delivered to PMC in June 2016 regarding the first year of the Agreement, Shutterstock's use of its own credentials to cover events was memorialized and celebrated as a success.  *See* SUF ¶ 18.  "In a situation where an agreement involves repeated occasions for performance . . . any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." *Conzo v. City of New York*, 438 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) (internal quote marks and brackets omitted).  *Ocean Transp. Line, Inc. v. Am. Philippine Fiber Indus., Inc.*, 743 F.2d 85, 91 (2d Cir. 1984) ("The parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent."); Restatement (Second) of Contracts § 202 cmt. g ("The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning.").  Here, the parties' course of performance confirms that PMC manufactured its implied covenant claim purely for litigation.[3]  Even PMC's Rule 30(b)(6) designee on "Shutterstock's alleged violation of the covenant of good faith and fair dealing" and its point-person on the day-to-day performance of the Agreement testified that he didn't know of any reason why Shutterstock would not be able to use its own credentials.  *See* SUF ¶¶ 21-22.

**IV.     Conclusion**

In light of the record, there is only one explanation for PMC's failure to demand an express provision requiring Shutterstock to use only PMC's credentials to photograph Third Party Events, and PMC's parallel failure to ever object to Shutterstock's use of its own credentials: PMC's alleged implied term does not, in fact, exist.  Shutterstock respectfully requests the opportunity to formally challenge PMC's implied covenant claim via a motion for partial summary judgment.

---

[3] When asked which credentials Shutterstock declined, whether PMC had suffered any damages as a result, and if so, what those damages were, PMC's relevant Rule 30(b)(6) designee refused to answer based on his counsel's attorney-client privilege and work product instructions.  SUF ¶ 24.



March 23, 2022
Page 4

Respectfully submitted,

Eleanor M. Lackman

cc:     All Counsel of Record (via ECF)