UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENSKE MEDIA CORPORATION,

    Plaintiff-Counterclaim Defendant,

-against-

SHUTTERSTOCK, INC.,

    Defendant-Counterclaim Plaintiff.

Case No. 20-cv-04583 (MKV)

**SHUTTERSTOCK, INC.'S DRAFT RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

    Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York and Paragraph 4(A)(i) of this Court's Individual Rules of Practice in Civil Cases, defendant-counterclaim plaintiff Shutterstock, Inc. ("Shutterstock"), by and through its undersigned counsel, respectfully submits the following draft statement of undisputed facts in support of its anticipated Motion for Partial Summary Judgment:

**A.**    **The Agreement Did Not Include An Express Provision Requiring Shutterstock To Use *Only* PMC's Credentials To Photograph Third Party Events.**

    1.    Plaintiff-counterclaim defendant Penske Media Corporation ("PMC") and Shutterstock entered into the "Archive & Event Image Hosting and License Agreement" effective as of July 1, 2015 (the "Agreement"). *See* Dkt. No. 30 (Amended Complaint), Ex. A; *accord* Deposition of Todd Greene dated February 2, 2022 ("Greene Tr."), 71:3-72:19 & Ex. 4.

    2.    Paragraph 3(a)(iii) of the Agreement provides, in its entirety, as follows:

> PMC will provide to Shutterstock defined credentials, passes, and VIP access to significant events around the world to which PMC has access as defined herein ("Third Party Events"). All image, footage and/or audio content created hereunder at the Third Party Events is referred to herein as "Third Party Event Content". Subject to the Getty Agreement Restrictions, **PMC hereby grants to**

> **Shutterstock *the right to* be the sole third party to leverage and utilize PMC's credentials and access to capture Third Party Event Content at Third Party Events.** These Third Party Events shall initially include, but not be limited to, those events listed on Schedule "D". PMC shall work with Shutterstock in good faith to create additional access to third party events that will enable the Parties to further monetize the Third Party Event Content.

Agreement, ¶ 3(a)(iii) (emphasis added); *see also id.*, Schedule D (listing the following Third Party Events: "The Golden Globes Awards and Nominee Press Conference," "The Sundance Film Festival," "The Grammy Awards," "The Academy Awards," "The Tony Awards," The Emmy Awards," "The Cannes Film Festival," "The Screen Actors Guild Awards," "The Directors Guild of America Awards," "The Venice Film Festival," "The Independent Spirit Awards," and "The Toronto Film Festival").

3. The Agreement could have included, but did not include, an express requirement that Shutterstock had to provide photographic coverage of Third Party Events using PMC's credentials (and *only* PMC's credentials) if PMC offered to provide such credentials to Shutterstock. *See* Agreement, ¶ 3(a)(iii).

4. In contrast to Paragraph 3(a)(iii), Paragraph 3(a)(ii) of the Agreement, which addresses "PMC Events," provides, in relevant part, as follows:

> PMC will provide Shutterstock access to its events, galas, conferences, summits, and other event functions to which third parties are invited generally ("PMC Events"). . . . During the License Period, **Shutterstock *will provide* editorial event coverage, at Shutterstock's expense, for all PMC Events.** . . .

*Id.*, ¶ 3(a)(ii) (emphasis added).

5. Further, Paragraph 3(e) of the Agreement provides that "[t]he in-house staff photographers currently employed by PMC shall produce images . . . that will be contributed to . . . Third Party Event Content." *Id.*, ¶ 3(e); *see also See* Declaration of Benjamin Melvin in Support of Motion for Partial Summary Judgment ("Melvin Decl.").

2

**B.     Variety Required Getty Images to Use Variety's Credentials To Photograph Third Party Events In The Similar Getty Agreement.**

6.     PMC owns Variety, Inc. ("Variety").  *See* Transcript of February 10, 2022 Deposition of George Grobar ("Grobar Tr.), 19:8-19.

7.     In 2010, Variety and Getty Images (US), Inc. ("Getty Images") entered into a "Photographic Services and Reciprocal Image License Agreement" (the "Getty Agreement"), pursuant to which Variety agreed, *inter alia*, to provide to Getty Images its credentials to various third-party events.  *See* Greene Tr., 269:23-271:6 & Ex. 28, ¶ 4.

8.     Paragraph 4.2 of the Getty Agreement provides, in relevant part, as follows:

> During the Term, Getty Images **will provide** the following photographic event coverage **using Variety's "Variety" credential**: . . .
>
> **Required Events**.  ***Getty Images will be obligated to provide coverage***, as requested by Variety, of the following events, free of charge . . . including, but not limited to:

Greene Tr., Ex. 28, ¶¶ 4.2 & 4.2.1 (emphasis added); *see also, e.g., id.*, ¶ 4.2.1(b) (listing among the Required Events: "The Golden Globes Awards and nominee press conference," "The Sundance Film Festival," "The Grammy Awards . . . ," "The Academy Awards . . . ," "The Tony Awards . . . ," The Emmy Awards . . . ," "The Cannes Film Festival," "The Screen Actors Guild Awards," "The Directors Guild of America Awards," "The Venice Film Festival," "The Independent Spirit Awards," and "The Toronto Film Festival").

9.     The Getty Agreement and the limitations it would place on PMC and Shutterstock's business relationship is addressed in the Agreement itself.  *See* Agreement, ¶ 18.

10.     PMC's Chief Legal Officer, Todd Greene, was the author of all of PMC's edits to the Agreement and was designated by PMC, pursuant to Rule 30(b)(6), to testify regarding the

meaning of the Agreement and the Getty Agreement. *See* Greene Tr., 16:19-17:4, 64:12-14, 75:20-77:11.

11. Mr. Greene could not explain why PMC did not include a term in the Agreement requiring Shutterstock to use PMC's credentials to photograph Third Party Events, similar to the one in the Getty Agreement. *See* Greene Tr., 270:19-271:12 ("Q. Do you have any understanding as to why you didn't include a similar term in the PMC Shutterstock agreement if the intent really was to require Shutterstock to use PMC's credentials if offered to third-party events? A. No, I don't."); *see also, id.*, 268:12-19 ("Q. And remember, Mr. Greene, the question is, as the exclusive author of revisions to this agreement for PMC, why didn't you include a clause that required Shutterstock to use credentials to third-party events if offered by PMC and no other credentials? A. The answer to your question is I don't know.").

C. **Prior To The Execution Of The Agreement, PMC Knew Shutterstock Had Its Own Event Access Credentials Through Rex Features, A Shutterstock Acquisition.**

12. On or about January 15, 2015, Shutterstock entered into an agreement to acquire Rex Features, the largest independently-owned photographic press agency in Europe. *See* Melvin Decl., ¶ __, Ex. __ (January 15, 2015 press release).

13. Shutterstock obtained credentials and access to significant third-party events around the world through its acquisition of Rex Features. *See* Melvin Decl., ¶ __.

14. At the time PMC and Shutterstock entered into the Agreement, PMC knew that Shutterstock had acquired Rex Features and that Shutterstock obtained credentials and access to various third-party events through such acquisition. *See* Transcript of January 18, 2022 Deposition of Karl Walter ("Walter Tr."), 130:23-133:6; Transcript of November 18, 2021 Deposition of Jay Penske ("Penske Tr."), 60:11-61:5 (Shutterstock "had just acquired Rex" during Mr. Penske's

initial discussions with Shutterstock's CEO, Jon Oringer, regarding the potential agreement); *id.*, 63:2-14 (same);  Greene Tr., 26:8-19 (Shutterstock's CEO, Jon Oringer, told Jay Penske that "[Shutterstock] had [ ] acquired a business called Rex Features" during their initial discussions regarding the potential agreement); *id.*, 114:25-115:20 (same); *see also id.*, 223:2-224:9 ("[PMC] met with a number of employees from . . . Rex" prior to the execution of the Agreement, including "in relation to getting . . . access to or credentials to third-party events").

### D. PMC Knew Shutterstock Used Its Own Credentials During The Course Of The Agreement And Did Not Object.

15. During the course of the Agreement, PMC and Shutterstock jointly maintained and referred to annual "shared production documents" to keep track of, *inter alia*, Third Party Events. *See* Melvin Decl., ¶ __ & Exs. __ (PMC_0019397, PMC_0019401, PMC_0019400, PMC_0019418) (2016, 2017, 2018, 2019 shared production documents); *see also* Walter Tr., 140:4-7, 167:13-168:3, 187:20-188:21.

16. On multiple occasions, and as early as 2016, Shutterstock expressly indicated in the shared production document that it was passing on PMC's credentials for a particular Third Party Event because Shutterstock already had its own credentials for that event. *See* Melvin Decl., ¶ __; *see also, e.g., id.*, Ex. __ (PMC_0019397 at "LA" Sheet, Row 35) (declining Variety credential for Third Party Event in 2016 because "SSTK already covering"); *id.*, Ex. __ (PMC_0019401 at "LA" Sheet, Row 356, 466) (declining Variety credential for Third Party Events in 2017 because "Chelsea already shooting for SSTK"); *id.*, Ex. 3__ (PMC_0019400 at "Los Angeles" Sheet, Row 475) ("SSTK passing" on Variety credential for Third Party Event in 2018 because Shutterstock "already ha[d] arrivals & fixed show [credentials]"); *id.*, Ex. __ (PMC_0019418 at "LA" Sheet,

Row 412) ("SSTK passing" on Variety credential for Third Party Event in 2019 because Shutterstock already "ha[d] arrivals cred[ential]").

17. In some instances, Shutterstock also informed PMC by email that it was passing on PMC's credentials for a particular Third Party Event because Shutterstock already had its own credentials for that event. *See, e.g.*, Melvin Decl., Ex. __ (PMC_0009489) (August 12, 2019 email from Ben Melvin to PMC passing on Variety's "fixed carpet" credential for Third Party Event because "[Shutterstock] already ha[d] [an] arrivals [credential]"); Declaration of Eleanor M. Lackman in Support of Motion for Partial Summary Judgment ("Lackman Decl."), Ex. __ (PMC_0015255) (February 4, 2020 email from Emily Taylor to PMC stating, "We won't be filling your credential [for the Third Party Event] as [Shutterstock has the] same access").

18. In a presentation delivered to PMC in June 2016, Shutterstock indicated that Shutterstock used its own credentials to attend and photograph approximately 647 third party events held between January 2016 through May 2016. *See* Penske Tr., Ex. 50 (PMC_0022103-133) at PMC_0022103; *see also* Declaration of Candice Murray in Support of Motion for Partial Summary Judgment ("Murray Decl."), ¶ __.

19. During the term of the Agreement, PMC was aware that Shutterstock had passed on PMC's credentials and instead used its own credentials to attend and photograph multiple Third Party Events. *See* evidence cited in support of SUF ¶¶ 14-17, *supra*. *See also* Melvin Decl., ¶ __; Lackman Decl., Ex. __ (PMC_0010516) (September 12, 2019 email from PMC stating, "according to the doc SSTK was passing on sending photog[rapher] [to the Audi party because it] already had carpet & inside access . . ."); *id.* Ex. __ (PMC_0014096) (December 30, 2019 email from PMC stating, "I believe Shutterstock already has a photographer to cover the Disney/FX party on the carpet and inside (I believe via a partnership?) . . ."); *id.* Ex. __ (PMC_0015065) (January 22, 2020

6

email from third party to PMC, "We credentialed a Shutterstock photographer already [for the MusicCares event]").

20. Nonetheless, prior to filing this lawsuit, PMC did not object to Shutterstock's use of its own credentials, rather than PMC's credentials, to attend and photograph Third Party Events. *See* Murray Decl., ¶ __; Greene Tr., 271:15-272:12, 294:18-295:16; Walter Tr. 218:23-220:6, 610:5-25.

21. Karl Water was PMC's point-person on the day-to-day performance of the Agreement and PMC's Rule 30(b)(6) designee on the topic of "Shutterstock's alleged violation of the covenant of good faith and fair dealing." Walter Tr., 20:7-21:6; Murray Decl., ¶ __; Lackman Decl., Ex. __ (November 3, 2021 email from PMC's counsel).

22. Mr. Walter testified that he did not understand the Agreement to prohibit Shutterstock from using its own credentials for Third Party Events. *See* Walter Tr., 227:24-228:5 ("Q. Was Shutterstock prohibited from using its own credentials for third-party events? . . . A. I don't know why they would be.").

23. In multiple instances, PMC not only acknowledged and did not object to Shutterstock's use of its own credentials, rather than PMC's credentials, to attend and photograph Third Party Events, but also opted to use the photographs Shutterstock took instead of sending its own photographer. *See, e.g.*, Lackman Decl., Ex. __ (PMC_0014027) (December 12, 2019 email from PMC declining credential for a Third Party Event and stating, "Shutterstock already has [a photographer] covering so we'll use their photos versus sending a separate photog[rapher]"); *id.* Ex. __ (PMC_0015228) (February 3, 2020 email from PMC stating, "Shutterstock says they already have a photographer attending [the Third Party Event], so we'll use their photos!"); *see also* Murray Decl., ¶ __; Melvin Decl., ¶ __.

24. When asked which credentials Shutterstock declined, whether PMC had suffered any damages as a result, and if so, what those damages were, PMC's Rule 30(b)(6) designee on the topic of "Shutterstock's alleged breach of the Agreement . . . and any alleged damages PMC suffered as a result thereof" refused to answer based on instructions from his counsel. *See* Greene Tr., 261:12-24 ("Q. Mr. Greene, do you have any knowledge related in any way to the allegation that Shutterstock declined to use the credentials for third-party events, other than your conversation with [K]arl Walter, which you've refused to reveal, and your conversations with your outside counsel? A. Other than my conversations with [K]arl Walter that were conducted under attorney-client privilege and my conversations with my outside counsel, which were conducted under attorney-client privilege, I do not have additional ways in which I can verify that statement."); *id.*, 263:24-264:12 ("Q. And do you have any idea whether or not PMC was damaged at all by Shutterstock's alleged declination of credentials for third-party events? A. Any information I would have would have been through -- obtained through my conversations with [K]arl Walter under attorney-client privilege or my outside counsel through attorney-client privilege. Q. Do you know whether or not PMC was damaged?· Yes or no. MS. ARATO: I instruct the witness not to answer based on his answer that he just gave you.").

| | |
|---|---|
| Dated: New York, New York<br>March 23, 2022 | MITCHELL SILBERBERG & KNUPP LLP<br><br>By: /s/ Eleanor M. Lackman<br>    Eleanor M. Lackman<br>    Marissa B. Lewis<br>    437 Madison Avenue, 25th Floor<br>    New York, New York 10022<br>    Tel.: (212) 509-3900<br>    Fax: (212) 509-7239<br>    eml@msk.com<br>    mbl@msk.com<br><br>*Attorneys for Defendant-Counterclaim Plaintiff Shutterstock, Inc.* |

9