

500 Fifth Avenue, 40th Floor   New York, NY 10110
phone: 212-257-4880 | fax: 212-202-6417
www.shapiroarato.com

Cynthia S. Arato
carato@shapiroarato.com
Direct: 212-257-4882

March 28, 2022

The Honorable Mary Kay Vyskocil
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *Penske Media Corp. v. Shutterstock, In*c., 20-cv-4583 (MKV)

Dear Judge Vyskocil:

Plaintiff Penske Media Corporation ("PMC") responds to Shutterstock's request for a conference concerning its anticipated motion for summary adjudication. Shutterstock's motion will fail because it misapprehends the law and overlooks evidence giving rise to material factual disputes.

## Background

In June 2015, PMC and Shutterstock entered into an Archive & Event Image Hosting and Licensing Agreement. At the time, Shutterstock was looking to expand its editorial content and identified PMC as its "solution for U.S. entertainment and fashion access." (PMC's Response to Shutterstocks Statement of Undisputed Facts ("SUF") ¶ 25).

As part of the Agreement, PMC was to "provide to Shutterstock defined credentials, passes, and VIP access to significant events around the world to which PMC has access as defined herein ('Third Party Events')" and Shutterstock was "the sole third party to leverage and utilize PMC's credentials and access to capture." (Agmt.§ 3(a)(iii)). Shutterstock thereby held an exclusive right to PMC's credentials at such events. The Agreement also provided that PMC would own the photographs that Shutterstock took using PMC's credentials. (Agmt.§ 3(c)).

The Amended Complaint alleges that Shutterstock, as exclusive beneficiary of these credentials, breached the implied covenant of good faith and fair dealing by (1) refusing to accept PMC's credentials for numerous events; (2) nevertheless attending and shooting those events using credentials that Shutterstock obtained for itself; and (3) thereafter claiming ownership of the resulting photographs. (Dkt. 30 ¶¶ 61-64). In denying Shutterstock's motion to dismiss this claim, the Court reasoned that "'[i]t is settled law that the court will imply a duty on the part of an exclusive licensee to exploit the subject matter of the license with due diligence.'" *Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 377 (S.D.N.Y. 2021) (quoting *Vacuum Concrete Corp. of Am. v. Am. Mach. & Foundry Co.*, 321 F. Supp. 771, 772 (S.D.N.Y. 1971)). The Court concluded that, "[a]s alleged in the Amended Complaint, Shutterstock's failure to do so"—*i.e.*, its refusal to accept PMC credentials, despite being the exclusive beneficiary— "sufficiently states a claim for breach of the implied covenant." *Id*. The Court also characterized

The Honorable Mary Kay Vyskocil  
March 28, 2022

Page 2

as "meritless" Shutterstock's attempt to construe PMC's claim as "seek[ing] to impose on Shutterstock an obligation *to attend* all Third Party Events for which Penske makes its credentials available." *Id*. at 377 n.3. As the Court recognized, PMC's claim is that all of Shutterstock's "actions, taken together" (*i.e.*, "declining [] the credentials," "attending these events," and claiming ownership of the resulting photographs") constitute the breach." *Id.*

As a matter of law, Shutterstock's status as exclusive beneficiary required it to exercise diligence in using PMC's credentials. The question on summary judgment is thus whether Shutterstock did in fact exercise diligence, as alleged in the Amended Complaint. The evidentiary record makes clear that, as PMC alleged, Shuttestock did *not* exercise the requisite diligence when it rejected PMC's offered credentials in favor of its own. Between 2018 and 2020, there were over 80 events where Shutterstock told PMC it was "passing" on PMC's credentials to instead use its own credentials. (SUF ¶ 28). As we explained in our opening 56.1 statement (at ¶¶ 37-40), Shutterstock thought it was "stupendous" when it bypassed PMC and, by early 2020, made clear that it "[wa]sn't interested in [PMC] credentials." Indeed, in support of its motion Shutterstock offers no evidence that it made diligent efforts to use PMC credentials.

When Shutterstock covered an event using its own credential instead of a PMC credential, PMC lost ownership of photographs that Shutterstock took at the events; a percentage of licensing revenue earned from Shutterstock's exploitation of such works during the contract term; and the ability to exploit those images after the contract term ended. (SUF ¶ 34). Shutterstock's conduct further deprived PMC of its contractual right to be the first to publish photographs from these events in its editorial publications. (Agmt. § 3(a)).

## Argument

"[B]ecause Shutterstock was granted an exclusive right to use Penske's credentials at Third Party Events, Shutterstock had an obligation to use Penske's credentials and not any others, including its own, at any Third Party Event Shutterstock decided to attend." *Penske Media Corp.*, 548 F. Supp. 3d at 377. That was this Court's conclusion on the motion to dismiss, and New York courts regularly imply a good faith obligation in similar circumstances. *See, e.g.*, *Don King Prods., Inc. v. Douglas,* 742 F.Supp. 741, 767 (S.D.N.Y.1990) ("In the context of agreements granting exclusive promotional or licensing rights, the promotor or exclusive licensee impliedly promises to use reasonable efforts to generate profits for the performer or licensor."); *G. Golden Assoc. of Oceanside, Inc. v. Arnold Foods Co., Inc.,* 870 F.Supp. 472, 476 (E.D.N.Y.1994) ("It is well settled under New York law that where ongoing commissions or royalties are to be paid in an exclusive arrangement, a court will imply a covenant on the part of an exclusive licensee/assignee to exploit the subject matter of the license/assignment with due diligence where such a covenant is essential as a matter of equity to give meaning and effect to the contract as a whole.").

Nothing in Shutterstock's anticipated motion alters that conclusion.

*First*, the lack of an express provision does not defeat PMC's claim. The implied covenant is designed precisely for this situation—to ensure that a party like Shutterstock cannot destroy or injure PMC's right to receive the fruits of its contract. *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).

The Honorable Mary Kay Vyskocil  
March 28, 2022

Page 3

Regardless, Shutterstock's reliance on Variety's prior deal with Getty is misplaced: that agreement imposed on Getty "an *obligation to attend* all [events] for which Penske makes its credentials available" and, as this Court has recognized, PMC is not contending that the implied covenant imposed such an absolute duty on Shutterstock. *Penske Media Corp.*, 548 F. Supp. 3d at 377 n.3. Because Variety's agreement does not evidence that PMC "was aware it could demand an express provision" barring the bad faith conduct at issue here, that agreement (and Mr. Greene's testimony about it) cannot impair PMC's claim. The same is true for Shutterstock's presentation showing use of its own credentials at various events and Karl Walter's testimony about whether Shutterstock could do so. (Shutterstock Letter, dated Mar. 23, 2022, at 3; SUF ¶¶ 18, 22). Neither implicates the core issue: whether Shutterstock could attend events using its own credentials *after declining to use PMC's credentials.* Mr. Walter was not asked that question in the cited testimony, and Shutterstock presents no evidence that the events identified in its presentation are events for which PMC had offered Shutterstock access. (*Id.*).

*Second*, Shutterstock is wrong to suggest that because it had *the ability* to access certain events using *its own* credentials (through Rex Features' relationships), it was not required to exercise diligence in using PMC's credentials. That is just another way of saying Shutterstock felt no obligation to exercise diligence in using PMC's credentials, even though PMC was contractually prohibited from offering them to anyone else. Moreover, the evidence on which Shuterstock relies demonstrates only that PMC was aware that Shutterstock had acquired Rex; it does not establish that PMC was aware that Shutterstock was obtaining credentials to United States events from Rex, much less that it intended to do so even where PMC provided Shutterstock with PMC's credentials. The evidence demonstrates that PMC understood that Rex Features was "very UK-centric, not strong in the US" and that access to PMC's credentials to major events was one of Shutterstock's motivations for entering into the Agreement. (SUF ¶¶ 14, 25). Thus, PMC's awareness of Shutterstock's acquisition of Rex does not negate the fact that PMC reasonably and justifiably understood that when PMC offered its credentials to Shutterstock for those Third Party Events, Shutterstock would use those credentials and not its own *if* it attended and photographed such events. This is especially so given that the contract set up a cooperative framework for the parties to work together in good faith to improve access to Third Party Events and the parties mutually benefited from coverage of such events by sharing profits.

*Third*, Shutterstock assumes that if PMC knew about Shutterstock's use of its own credentials, that absolved Shutterstock of its contractual obligations. But PMC filed its initial complaint on June 16, 2020, so Shutterstock's conduct is well within the six-year statute of limitations for a breach of the covenant of good faith and fair dealing under New York law. N.Y. C.P.L.R. § 213(2). Regardless, PMC *did* object to Shutterstock's use of its own credentials at Third Party Events instead of PMC credentials. (SUF ¶¶ 20, 23, 30). The parties had "any number of conversations about this topic," "there was an ongoing back and forth." (SUF ¶ 30). PMC's 30(b)(6) witness did not decline to answer questions about PMC's implied covenant claim. Shutterstock cites to the testimony of Todd Greene, PMC's Chief Legal Officer, but he was not PMC's corporate witness on this claim; Karl Walter was. (PMC's Response, SUF ¶ 24).

For these reasons, the Court should deny Shutterstock's request for summary adjudication of this claim.

The Honorable Mary Kay Vyskocil  Page 4
March 28, 2022

                                       Sincerely,

                                       /s/ Cynthia S. Arato